1  ALAN J. WATSON (SBN 177531)
   ROBERT J. LABATE (SBN 313847)
2  HOLLAND & KNIGHT LLP
   400 South Hope Street, 8th Floor
3  Los Angeles, CA 90071
   Telephone: (213) 896.2400
4  Facsimile: (213) 896.2450
   Email: alan.watson@hklaw.com
5         robert.labate@hklaw.com

6  Attorneys for Petitioning Creditors

7

8              **UNITED STATES BANKRUPTCY COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10                   **LOS ANGELES DIVISION**

11 | In re:                          | ) | Case No.: 2:17-bk-19548-NB
12 |                                 | ) |
   | LAYFIELD & BARRETT, APC         | ) | Chapter 7 Case
13 |         Debtor.                 | ) | **PETITIONING CREDITORS'**
14 |                                 | ) | **EMERGENCY MOTION FOR**
   |                                 | ) | **APPOINTMENT OF AN INTERIM**
15 |                                 | ) | **TRUSTEE UNDER 11 U.S.C. §**
   |                                 | ) | **303(G) AND GRANTING**
16 |                                 | ) | **EMERGENCY RELIEF**
17 |                                 | ) | Date:  to be set
   |                                 | ) | Time: to be set
18 |                                 | ) | Place: Roybal Federal Building
   |                                 | ) |        Courtroom 1545
19 |                                 | ) |        255 E. Temple St.
   |                                 | ) |        Los Angeles, CA 90012
20 |                                 | ) |
21 |                                 | ) | [*filed concurrently with the Declaration*
   |                                 | ) | *of Nellie Q. Barnard; Declaration of*
22 |                                 | ) | *Patricia D. Salcedo; and Declaration*
   |                                 | ) | *of Joseph Barrett*]
23 |                                 | ) |

24

25

26

27

28
                **PETITIONING CREDITORS' EMERGENCY MOTION FOR**
   **APPOINTMENT OF AN INTERIM TRUSTEE UNDER 11 U.S.C. § 303(G)**
                **AND GRANTING EMERGENCY RELIEF**

**TO THE HONORABLE NEIL W. BASON, UNITED STATES BANKRUPTCY COURT JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALLEGED DEBTOR AND PARTIES IN INTEREST:**

PLEASE TAKE NOTICE THAT The Dominguez Firm ("**TDF**"), Mario Lara ("**Mr. Lara**"), Nayazi Reyes, and Maria A. Rios (collectively "Petitioning Creditors") will and hereby do move for entry of an order on less than 48 hours notice pursuant to Local Bankruptcy Rule 9075-1 and 11 U.S.C. § 303(g) directing the United States trustee to appoint an Interim Trustee, under 11 U.S.C. § 701 to preserve property of the estate and to prevent loss to the estate of the Alleged Debtor, Layfield & Barrett, APC ("**Alleged Debtor**"). As set forth more fully in the Memorandum of Points and Authorities, appointment of an interim trustee on an emergency basis is necessary to ensure that the interests of all of Alleged Debtor's creditors, and in particular its clients, are fully protected and that the assets of Alleged Debtor are not further concealed and wasted.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declarations of Patricia D. Salcedo, Nellie Q. Barnard, Todd D. Wakefield, Joseph Barrett and Exhibits thereto, on all pleadings and papers on file in this matter, and on such further briefing as may be filed and any oral argument that may be made at the hearing on this motion.

The hearing is set for _____ on August ___, 2017 in Courtroom 1545 255 E. Temple St., Los Angeles, CA 90012.  Alleged Debtor may bring its response, if any, to the hearing.

Dated:  August 3, 2017    HOLLAND & KNIGHT

/s/ Alan J. Watson
Alan J. Watson

ALAN J. WATSON
ROBERT J. LABATE
Holland & Knight LLP
Counsel for Petitioning Creditors

- ii -

# TABLE OF CONTENTS

Page

Table of Authorities ................................................................................. iv

I. INTRODUCTION ................................................................................ 1

II. JURISDICTION AND VENUE ......................................................... 2

III. BACKGROUND ............................................................................... 2

    1.    Formation of Alleged Debtor .................................................... 2

    2.    Cessation of Alleged Debtor's Business Activities .................. 3

    3.    Funds Due to Clients and Creditors of Alleged Debtor ........... 4

    4.    Creation of Maximum Legal By Several of Alleged Debtor's Former Managers and Employees ............................................ 5

    5.    Transfer, Encumbrance and Concealment of Alleged Debtor Assets ....... 6

IV. AN ORDER ON LESS THAN 48 HOURS NOTICE IS JUSTIFIED ............... 7

V. RELIEF REQUESTED ...................................................................... 7

VI. SUFFICIENT CAUSE EXISTS TO APPOINT AN INTERIM TRUSTEE ...... 8

VII. WAIVER OF THE FRBC 2001(b) BOND ....................................... 9

VIII. CONCLUSION ............................................................................. 10

1

# TABLE OF AUTHORITIES

2

3                                                                    **Page(s)**

4   **Cases**

5   *In re Pucci Shoes, Inc.*,

6       120 F.3d 38 (4th Cir. 1997) ............................................................8

7   **Statutes**

8   11 U.S.C. §§ 105(a), 303(g) and 701 ...................................................2

9   11 U.S.C. §§ 303(g) and 701 ...............................................................8

10  11 U.S.C. § 303(g), Section 701(a)(1)...................................................8

11  28 U.S.C. §§ 157 and 1334.................................................................2

12  28 U.S.C §§ 1408 and 1409................................................................2

13  3, Exhibit B. In 2014, The Layfield Law ............................................3

14  Bankruptcy code Chapter 11 ..............................................................6

15  Code § 303(i) ..................................................................................10

16  **Other Authorities**

17  Federal Rule of Bankruptcy Procedure 2001(b)...................................9

18  California Professional Conduct Rules Rule 4-100 ............................2

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Layfield & Barrett, APC (the "**Alleged Debtor**") is a recently-defunct personal injury law firm whose managing partner, Philip Layfield, ("**Mr. Layfield**") appears to have fled the county.[1]   Settlement proceeds have not been distributed and may no longer exist, vendors and other creditors have not been paid and clients are effectively unrepresented in some 80 pending cases.  The Dominguez Firm ("**TDF**"), Mario Lara ("**Mr. Lara**"), Nayazi Reyes, and Maria A. Rios (collectively referred to as the "**Petitioning Creditors**") are creditors of the Alleged Debtor pursuant to these undistributed settlements.

The other named partner of the Alleged Debtor, Joseph Barrett, supports the involuntary chapter 7 petition filed on August 3, 2017 and supports the Petitioning Creditors' Motion to appoint an interim trustee as essential to protect and preserve property of the Alleged Debtor's estate and to prevent concealment, waste, loss or conversion of the assets of the estate by Mr. Layfield, who continues to control the Alleged Debtor's Interest On Lawyer Trust Account ("IOLTA").

At the time of its collapse in early June 2017, the Alleged Debtor was counsel of record in approximately 140 cases in active or pre-litigation. The Alleged Debtor failed to notify clients of its collapse and failed to inform clients regarding funds it received from settlement of cases. Settlement funds continue to accrue, but the Alleged Debtor has either refused to disburse those funds or lost them to Mr. Layfield's misappropriation. The Alleged Debtor is unable to comply with California rules governing the protection of client funds which, pursuant to Rule 4-100 of the Professional Conduct Rules of the State Bar of California, are required to be placed in an IOLTA. The Alleged Debtor's IOLTA is under the control of Mr. Layfield – the

---

[1] Philip Layfield was previously known as Philip Pesin and the California State Bar lists two attorneys with the same bar number 204836 – Philip James Layfield and Philip S. Pesin.

IOLTA's sole signatory – and Mr. Layfield transferred assets of the Alleged Debtor to a company which he controls.

In short, the Alleged Debtor cannot account for millions of dollars of funds belonging to clients. Immediate appointment of an interim trustee is essential to protect the Alleged Debtor's creditors, and to prevent irreparable waste, loss or conversion of the assets of the estate.

## II.

## JURISDICTION AND VENUE

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and venue is proper in this district pursuant to 28 U.S.C §§ 1408 and 1409 because Alleged Debtor is a California professional corporation with California Secretary of State File Number C3330712 and with principal place of business in the County of Los Angeles within the last 180 days. The statutory basis for the relief requested is 11 U.S.C. §§ 105(a), 303(g) and 701 and Rule 2001 of the Federal Rules of Bankruptcy Procedure.

## III.

## BACKGROUND

On August 3, 2017, Petitioning Creditors filed an involuntary petition ("**Involuntary Petition**") under chapter 7, title 11 of the United State Code (the "**Bankruptcy Code**") seeking an order for relief against Alleged Debtor [Docket No. 1] and subsequently filed this emergency Motion. The Petitioning Creditors served a copy of the Involuntary Petition via first class mail and overnight delivery on Alleged Debtor, care of California Corporate Agents, Inc., 16830 Ventura Boulevard, Suite 360, Encino, CA 91436, the Alleged Debtor's registered agent for service of process. See Declaration of Nellie Q. Barnard ("**Barnard Declaration**") ¶ 2, Exhibit A.

1.    Formation of Alleged Debtor

Alleged Debtor is a California law firm representing plaintiffs in personal injury cases. Declaration of Joseph Barrett ("**Barrett Declaration**") ¶ 4.  Alleged Debtor was

- 2 -

originally organized in 2010 as "The Layfield Law Firm, APC." Barnard Declaration ¶ 3, Exhibit B. In 2014, The Layfield Law Firm changed its name to "Layfield & Wallace, APC". Barnard Declaration ¶ 4, Exhibit C.

In 2015, the firm again changed its name, this time to "Layfield & Barrett, APC." Barnard Declaration ¶ 5, Exhibit D. On March 7, 2017, Alleged Debtor filed a Statement of Information (Form SI-550) with the California Secretary of State noting that its principal place of business was 9170 Irvine Center Drive, Irvine, CA 92618. Barnard Declaration ¶ 6, Exhibit E.  On May 23, 2017, Alleged Debtor filed another Statement of Information (Form SI-550) with the California Secretary of State noting that its principal place of business changed to 2720 Homestead Road, Suite 210, Park City, UT 84098 and that its principal California office was 633 West 5th Street, Suite 3300, Los Angeles, CA 90071.  Barnard Declaration ¶ 2, Exhibit A.

Philip Layfield is the CEO and secretary of Alleged Debtor. *Id*. Mr. Layfield held sole signatory authority for Alleged Debtor's principal trust account. Barrett Declaration ¶ 8; Declaration of Patricia D. Salcedo ("**Salcedo Declaration**") ¶ 2, Exhibit A (hereafter referred to as "**Wakefield Declaration**") ¶ 7.[2]

2.    Cessation of Alleged Debtor's Business Activities

In early June 2017, Alleged Debtor ceased operations. Barrett Declaration ¶ 7. Alleged Debtor's case management system was used by the Alleged Debtor and its attorneys to organize and keep track of approximately 140 cases for individuals who were clients of Alleged Debtor at the time it ceased operation. Wakefield Declaration ¶ 12; Barrett Declaration ¶ 5. The case management systems tracked, among other things, client costs and accounting information needed to discharge the attorney's legal and ethical duties upon receipt of gross settlement proceeds on client matters.

---

[2]  The Wakefield Declaration was filed in the related case of *In re Maximum Legal (California), LLP* filed in the U.S. Bankruptcy Court for the Central District of California, Los Angeles Division as Case No: 2:17-bk-18433-NB, in support of "Debtor's Ex Parte Motion for an Order Extending the Time to File Schedules of Assets and Liabilities," Statement of Financial Affairs, and Related Documents, Doc. No. 19, dated July 25, 2017.

Wakefield Declaration ¶ 12; Barrett Declaration ¶ 5.   Despite the cessation of operations, Alleged Debtor is still counsel of record on a number of cases in California. Barrett Declaration ¶ 6.

Since the Alleged Debtor ceased operations, neither it nor Mr. Layfield have provided any information to former partners, referring lawyers or to clients regarding the status of net settlement proceeds belonging to clients. Barrett Declaration ¶ 7.  The Alleged Debtor's Los Angeles phone has been disconnected, and Alleged Debtor's website, www.lawfieldbarrett.com, is no longer functioning. Salcedo Declaration ¶ 3.

### 3. Funds Due to Clients and Creditors of Alleged Debtor

Settlement funds received by Alleged Debtor were deposited into Alleged Debtor's IOLTA, which is controlled by Philip Layfield as the sole person with signatory authority with respect to that account. Wakefield Declaration ¶ 7; Barrett Declaration ¶ 8. Alleged Debtor has stopped disbursing net settlement proceeds belonging to clients received by Alleged Debtor after settlement of cases. Wakefield Declaration ¶ 6; Barrett Declaration ¶ 10.

Upon its collapse, Alleged Debtor took no steps to inform clients of the status of their cases or to provide clients with information regarding distribution of their net settlement proceeds in Alleged Debtor's client fund accounts. Barrett Declaration ¶ 11.[3] The amount of client net settlement proceeds owing and not yet distributed to Alleged Debtor's clients may total several million dollars. Wakefield Declaration ¶ 7. At least two of Alleged Debtor's clients have filed bar complaints in the last four months alleging that they did not receive settlement proceeds. Salcedo Declaration ¶ 4.

---

[3] For instance, on July 26, 2017, Mr. Barrett, formerly a partner at Alleged Debtor now at Maximum Legal, appeared in *Jose Nunez et al v. U-Haul Co of California et al.*, (BC562784), on behalf of Jose and Catalina Nunez at a hearing. Salcedo Declaration ¶ 7. Mr. Layfield checked into the hearing via telephone, but disconnected when addressed by the judge. *Id.* Mr. Nunez informed the court that he had not been contacted by anyone at Alleged Debtor for over a month. *Id.*

For instance, Mr. Lara's case settled on March 10, 2016 for $750,000, and Alleged Debtor received and negotiated the settlement check. Salcedo Declaration ¶ 5. He received a cost sheet detailing the gross recovery, attorney fees, and costs and a letter purporting to enclose a check for $287,054.29; the cost sheet states that Mr. Lara's net recovery is $307,054.29. Salcedo Declaration ¶ 5, Exhibit B. Mr. Lara has not received a check for his net recovery. Salcedo Declaration ¶ 5. Nor has Mr. Lara received additional information or documentation of the costs detailed in the cost sheet despite repeated requests. Salcedo Declaration ¶ 5.

In addition, vendors and other creditors of Alleged Debtor have not been paid debts owed to them. Wakefield Declaration ¶ 7; Barrett Declaration ¶ 12; Salcedo Declaration ¶ 6.

4.    Creation of Maximum Legal By Several of Alleged Debtor's Former Managers and Employees

Maximum Legal (California), LLP ("**Maximum Legal**"), which was formed on or about May 10, 2017, is now associated with a number of cases previously handled by the Alleged Debtor. Wakefield Declaration ¶ 6; Barrett Declaration ¶¶ 1 & 16. A number of the Alleged Debtor's former attorneys, managers and employees are now employed by Maximum Legal, which is owned and operated by several former managers and employees of the Alleged Debtor, including Mr. Barrett and Mr. Wakefield. Wakefield Declaration ¶ 6, 9; Barrett Declaration ¶ 1.

The Alleged Debtor's case management system, Smart Advocate, is being used by Maximum Legal to obtain information for Maximum Legal's approximately 40 active litigation cases and another 40 cases in pre-litigation stage. Wakefield Declaration ¶¶ 4, 6; Barrett Declaration ¶ 5, 14. The Smart Advocate case management system was used by the Alleged Debtor and its attorneys to organize and keep track of approximately 140 cases for individuals who were clients of Alleged Debtor at the time it ceased to operate. Wakefield Declaration ¶ 12; Barrett Declaration ¶ 5.

1    Maximum Legal is now associated as counsel on cases previously handled by

2 the Alleged Debtor. Wakefield Declaration ¶ 6; Barrett Declaration ¶ 16. Maximum

3 Legal personnel are accessing Alleged Debtor's case management system and

4 "working to protect the interests of clients who otherwise would be abandoned and

5 unrepresented." Wakefield Declaration ¶ 12. Maximum Legal anticipates that certain

6 litigation recoveries will be received in the near future with respect to cases in which

7 it is associate counsel.  Wakefield Declaration ¶ 8; Barrett Declaration ¶ 16.

8    On July 12, 2017, former managers of Alleged Debtor filed a voluntary petition

9 for relief under Chapter 11 of the Bankruptcy code for Maximum Legal. Wakefield

10 Declaration ¶¶ 4, 6. Maximum Legal filed for bankruptcy because it was "under attack

11 from current and former clients" of Alleged Debtor "who have not received

12 disbursement of funds received by [Alleged Debtor] in settlements of their cases."

13 Wakefield Declaration ¶ 6.

14    5.    Transfer, Encumbrance and Concealment of Alleged Debtor Assets

15    In the last four months, Alleged Debtor appears to have taken steps to conceal

16 assets. On April 7, 2017, it appears that Alleged Debtor issued four quit claim deeds to

17 certain parcels of real property to Layfield V, LLC, an entity owned or controlled by

18 Philip Layfield and his wife.[4] Salcedo Declaration ¶ 8, Group Exhibit C. Layfield V,

19 LLC was registered in Utah on April 21, 2017 and appears to be owned and managed

20 by Philip Layfield and Christine Layfield. Barnard Declaration ¶ 7, Exhibit F.

21    Since March 2017, Alleged Debtor has entered into financing agreements and

22 granted liens on its assets to certain secured creditors. Salcedo Declaration ¶¶ 9-11,

23 Exhibits D, E, F.

24    Mr. Layfield recently moved to Costa Rica and had the servers for Alleged

25 Debtor sent to him there. Barrett Declaration ¶¶ 3, 17.

26

27

28

---

[4] One of the quit claim deeds was for 2720 Homestead Road, Suite 210, Park City, UT 84098, the property listed as Alleged Debtor's principal place of business in its most recent Statement of Information.  *See* Barnard Declaration ¶ 6, Exhibit E.

There is not yet an order for relief in this case. An interim trustee is necessary to preserve property of Alleged Debtor's estate, prevent further loss to the Alleged Debtor's estate and its creditors, and to expeditiously clarify the status of Alleged Debtor's active cases to fully protect the interests of Alleged Debtor's clients.

## IV.

## AN ORDER ON LESS THAN 48 HOURS NOTICE IS JUSTIFIED

Based on the forgoing facts, Petitioning Creditors are justified in seeking an order from the court on this motion on less than 48 hours' notice.  The CEO of Alleged Debtor and sole signatory on the IOLTA has fled the country and recently transferred significant assets to a company that he controls.  Barnard Declaration ¶ 8.  Settlement proceeds belonging to clients have not been disbursed and Mr. Layfield has refused repeated requests for disbursement.  *Id.*

The collapse of Alleged Debtor has created massive confusion for its clients and may be jeopardizing their legal claims.  At the time of its collapse, the Alleged Debtor was counsel of record in over 140 cases in active or pre-litigation.  *Id.*  Alleged Debtor has failed to notify clients of its collapse, the status of their funds, and the status of their cases.  *Id.*  Critical deadlines, including those that may bar future claims, may be approaching for these clients, and there is great uncertainty as to the status of these cases.  *Id.*   It is imperative that an interim trustee be named as soon as possible to adequately protect those clients' interests.

## V.

## RELIEF REQUESTED

By this Motion, the Petitioning Creditors seek the appointment of an interim trustee with all rights and duties under 11 U.S.C. §§ 303(g) and 701. Given the complicated and sensitive nature of this matter, Petitioning Creditors seek an interim trustee with experience in handling lawyer trust accounts and client funds, along with a solid understanding of legal ethics, who can quickly move to protect the interests of Alleged Debtor's clients.

# VI.

## SUFFICIENT CAUSE EXISTS TO APPOINT AN INTERIM TRUSTEE

The nature and purpose of bankruptcy is to protect the assets of the estate. But in an involuntary case, there is a "gap" period after the petition has been filed but before relief has been granted in which assets of the estate may be in jeopardy. *In re Pucci Shoes, Inc.*, 120 F.3d 38, 41 (4th Cir. 1997). Section 303(g) provides for the Court to appoint an interim trustee for the safekeeping of those assets:

> At any time after the commencement of an involuntary case under chapter 7 of this title but before an order for relief in the case, the court, on request of a party in interest, after notice to the debtor and a hearing, and if necessary to preserve the property of the estate or to prevent loss to the estate, may order the United States trustee to appoint an interim trustee under section 701 of this title to take possession of the property of the estate and to operate any business of the debtor. Before an order for relief, the debtor may regain possession of property in the possession of a trustee ordered appointed under this subsection if the debtor files such bond as the court requires, conditioned on the debtor's accounting for and delivering to the trustee, if there is an order for relief in the case, such property, or the value, as of the date the debtor regains possession, of such property.

11 U.S.C. § 303(g).[5]

Petitioning Creditors seek the immediate appointment of an interim trustee to protect the assets of Alleged Debtor's estate for all creditors, prevent concealment, waste or loss of assets, and most importantly, to avoid irreparable harm to Alleged Debtor's clients. Because the status of Alleged Debtor's clients is unknown, and because they may not even be aware of recent events set out above, an interim trustee is necessary to sort through the confusion and uncertainty created by the collapse of the Alleged Debtor. For instance, there may be statutes of limitation or other case

---

[5] Section 701(a)(1) provides:

> "Promptly after the order for relief under this chapter, the United States trustee shall appoint one disinterested person that is a member of the panel of private trustees established under section 586(a)(1) of title 28 or that is serving as trustee in the case immediately before the order for relief under this chapter to serve as interim trustee in the case."

deadlines nearing that, if overlooked, will irreparably harm clients. Moreover, additional settlement proceeds for current or former clients of the Alleged Debtor are forthcoming. Immediate intervention is necessary to protect those funds from the same fate as Mr. Lara and others and to secure those assets to pay existing debts.

Where there is no on-going business of the involuntary debtor, the negative impact on the debtor by the appointment of a trustee would be slight. Here, the Alleged Debtor does not appear to be in operation. Its Los Angeles phone has been disconnected, its website is inoperable, and its principal partner is no longer in the country. Salcedo Declaration ¶ 3; Barrett Declaration ¶ 3.

Because there is a pressing need to protect the legal interests and net settlement proceeds of Alleged Debtor's clients and prevent concealment, conversion or waste of assets, the equities weigh in favor of the appointment of an interim trustee.

## VII.

## WAIVER OF THE FRBC 2001(b) BOND

Federal Rule of Bankruptcy Procedure 2001(b) generally requires a bond from the petitioner in order to appoint an interim trustee: "An interim trustee may not be appointed under this rule unless the movant furnishes a bond in an amount approved by the court, conditioned to indemnify the debtor for costs, attorney's fee, expenses, and damages allowable under § 303(i) of the Code." However, a bond is not necessary in this matter because Alleged Debtor has ceased operation, meaning there is no harm that can be done to the firm, and there is a clear emergency based on the unknown status of Alleged Debtor's clients' cases.

Alternatively, Petitioning Creditors request that the amount of any bond required by this Court be established after the appointment of an Interim Trustee.

//

//

# VIII.

## CONCLUSION

For all the reasons stated herein, the appointment of an interim trustee is necessary to protect the interests of the creditors, the most important of which are Alleged Debtor's clients. Movants respectfully requests that this Court: a) enter an order granting this motion; b) appoint an interim trustee with experience in lawyer trust accounting issues and legal ethics; and c) grant any other such relief as is just and equitable.

Dated:  August 3, 2017                    HOLLAND & KNIGHT

                                          /s/ Alan J. Watson
                                          Alan J. Watson

                                          ALAN J. WATSON
                                          ROBERT J. LABATE
                                          Holland & Knight LLP
                                          Counsel for Petitioning Creditors