WEILAND GOLDEN GOODRICH LLP
Jeffrey I. Golden (133040)
Faye C. Rasch, (253838)
650 Town Center Dr., Suite 950
Costa Mesa, CA 92626
Phone: 714-966-1000
jgolden@wgllp.com

BRADLEY ARANT BOULT CUMMINGS LLP
Roger G. Jones (admitted *pro hac vice*)
1600 Division Street
Suite 700
Nashville TN 37219
615-252-2323
rjones@Bradley.com

Attorneys for Wellgen Standard, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>LAYFIELD & BARRETT, APC,<br><br>Debtor. | ) Case No. 2:17-bk-19548-NB<br>)<br>) Chapter 11<br>)<br>)**OBJECTION TO TRUSTEE'S**<br>)**MOTION TO SURCHARGE**<br>)**CREDITOR'S COLLATERAL;**<br>)**DECLARATION OF**<br>)**ROGER G. JONES IN SUPPORT**<br>**THEREOF**<br>)<br>)<br>) |

Comes now Wellgen Standard, LLC ("Wellgen"), successor in interest to

Advocate Capital, Inc. ("Advocate"), by and through its counsel, and, hereby objects to

the motion of Richard M. Pachulski (the "Trustee") to surcharge Wellgen's collateral (the

"Trustee's Motion").  Wellgen would show the Court as follows:

1

**TABLE OF CONTENTS**

2

TABLE OF AUTHORITIES ........................................................................................ iii

I.      BACKGROUND ................................................................................................. 1

II.     THE TRUSTEE'S REQUESTED SURCHARGE ............................................. 4

III.    ARGUMENT ...................................................................................................... 5

    A.   The Trustee's Recovery of a Surcharge Under 11 U.S.C. § 506(c)
        Requires the Filing of an Adversary Proceeding. ................................... 5

    B.   The Trustee Does Not Allege that Wellgen Holds an Allowed Secured
        Claim as Required Under 11 U.S.C. § 506(c). ...................................... 6

    C.   The Trustee's Motion is Premature ........................................................ 7

    D.   The Trustee Has Failed to Carry His Burden of Proof Under 11 U.S.C.
        § 506(c). ................................................................................................. 7

    E.   Neither Wellgen Nor Advocate Consented to the Surcharge of its
        Collateral. ............................................................................................. 11

IV.     CONCLUSION ................................................................................................. 18

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*In re Alliance Financial Capital, Inc.*,

5
    2009 WL 2823261 (Bankr. N.D. Cal. 2009)...........................................................8

6

*In re Blaisure*,

7
    150 B.R. 343 (Bankr. M.D. Pa. 1992).......................................................................6

8

*In re Bob Grissett Golf Shoppes, Inc.*,
    50 B.R. 598 (Bankr. E.D. Va. 1985) ........................................................13, 15, 16

9

*In re Cascade Hydraulics and Utility Service, Inc.*,

10
    815 F.2d 546 (9th Cir.1987)...........................................................7, 8, 9, 17

11

*In re Cass*,

12
    2015 WL 2194796 (C.D. Cal. 2015) ......................................................................17

13

*In re Chicago Lutheran Hosp. Ass'n*,
    89 B.R. 719 (Bankr.N.D.Ill.1988)..........................................................................17

14

*In re Choo*,

15
    273 B.R. 608 (BAP 9th Cir. 2002)..............................................................8, 9, 10

16

*CIT Corp. v. A & A Printing, Inc.*,
    70 B.R. 878 (Bankr. M.D. N.C. 1987) ............................................................14, 15

17

*In re Compton Impressions, Ltd.*,

18
    217 F.3d 1260 (9th Cir. 2000)..............................................................8, 11, 17

19

*In re Debbie Reynolds Hotel Casino, Inc.*,

20
    255 F.3d 1061 (9th Cir. 2001) ................................................................................8

21

*In re GTI Capital Holdings, L.L.C.*,
    2007 WL 7532277 (BAP 9th Cir. 2007) ...............................................................12

22

*In re H&R Properties*,

23
    1991 WL 242160 (Bankr. N.D. Ill. 1991).......................................................16, 17

24

*Hartford Underwriters Ins. Co. v. Union Planters Bank N.A.*,

25
    530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) ................................................12

26

*In re Hotel Associates, Inc.*,
    6 B.R. 1980 (E.D. Pa. 1980).............................................................................13, 16

27

*In re Orfa Corp. of Philadelphia*,

28
    149 B.R. 790 (Bankr. E.D. Pa. 1993)..............................................................15, 16

*In re Orfa Corp. of Philadelphia*,
    170 B.R. 257 (E.D. Pa. 1994)...........................................................................15, 16

*Pachulski v. Layfield V, LLC*,
    Adv. Pro. No. 2:18-ap-01050-NB ...............................................................................7

*In re Schlotzky's Inc.*,
    2004 WL 3244254 (W.D. Tex. 2004) ..........................................................................6

*Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.*,
    549 U.S. 443, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007) ...........................................12

*In re Trim–X, Inc.*,
    695 F.2d 296 (7th Cir.1982)......................................................................................17

*United States v. Ron Pair Enterprises*,
    489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) ..........................................11

**Statutes**

11 U.S.C. § 303(g) ...........................................................................................................2

11 U.S.C. § 326 ..............................................................................................................13

11 U.S.C. § 502(b)(1) .....................................................................................................12

11 U.S.C. § 506 .................................................................................................6, 7, 8, 11

11 U.S.C. § 506(c) ...................................................................................................*passim*

11 U.S.C. § 706(a) ............................................................................................................2

11. U.S.C. § 1112(a) .........................................................................................................2

UCC § 9-607 ...............................................................................................................1, 10

**Rules**

Fed. R. Bankr. P. 7001(1)..............................................................................................5, 6

**Other Authorities**

H.R. Rep. No. 595, 95th Cong., 1st Sess. 357 (1977).....................................................11

S. Rep. No. 989, 95th Cong. 2d Sess. 68 (1978).............................................................11

# I.    BACKGROUND

Layfield & Barrett, APC ("L&B") is a California for-profit corporation, which was formed on November 1, 2010.  At formation, L&B was known as Layfield Law Firm, APC.  L&B later changed its name to Layfield & Wallace, APC and then to Layfield & Barrett.  On August 7, 2016, L&B executed an Amended and Restated Master Loan and Security Agreement in favor of Advocate (the "Amended and Restated Loan Agreement").  (*See* Wellgen Proof of Claim, No. 222).  The Amended and Restated Loan Agreement constitutes an amendment and restatement of numerous prior loan agreements substantially in the same form (the "Prior Loan Agreements", and together with the Amended and Restated Loan Agreement, collectively, the "Loan Agreement").  (*Id*.)  As of the Petition Date, the amount outstanding under the Loan Agreement was $4,087,390.52.  (*Id*.).

Under the Loan Agreement, L&B granted Advocate a continuing security interest in various collateral including, but not limited to, the following (the "Collateral"):

> All accounts, instruments, chattel paper, general intangibles, payment intangibles (all as defined in Article 9 of the Code), and all similar rights that Borrower may have of every nature and kind, including specifically and without limitation, all of Borrower's rights to receive payment or otherwise, for legal and other services rendered and to be rendered, and for costs and expenses advanced and to be advanced, and all other rights and interest that Borrower may have in and with respect to each and every Client Matter.

(Wellgen Proof of Claim, No. 222).  The Collateral includes, but is not limited to, any and all amounts that are now, or in the future, owed to L&B including, but not limited to, any and all legal fees due L&B, as well as any and all reimbursements due L&B for any costs and expenses advanced by L&B arising out of any lawsuits.  (*Id*.)  Advocate perfected the security interest granted under the Loan Agreement by filing a UCC

1

1    financing statement with the office of the Secretary of State for the State of California on

2    August 14, 2013.  (*Id*.)

3         Subsequent to the filing of this case, Advocate assigned the Loan Agreement and

4    its claim against L&B to Wellgen. Wellgen is Advocate's parent company. (*See* Wellgen

5    Proof of Claim, No. 222).

6         On August 3, 2017, an involuntary petition was filed against L&B in this Court.

7    The petitioning creditors filed an Emergency Motion for Appointment of an Interim

8    Trustee Under 11 U.S.C. § 303(g) and Granting Emergency Relief (Docket No. 3).  The

9    Trustee's Motion alleged that Mr. Philip Layfield ("Mr. Layfield"), who claimed to be

10   L&B's sole shareholder, had stolen client funds and fled to Costa Rica.  (*Id*.)

11

12        In response to the Trustee's Motion, L&B filed a Motion to Convert Case Under

13   11 U.S.C. §§ 706(a) or 1112(a) on August 8, 2017 (Docket No. 19) (the "Conversion

14   Motion"), seeking to convert the Case to one under Chapter 11 of the Bankruptcy Code.

15   Mr. Layfield filed a Declaration in support of the Motion to Convert testifying that

16   Advocate's Collateral was more than sufficient to pay Advocate in full.  (*See* Docket No.

17   18 ¶¶ 40-44.)  According to Mr. Layfield, L&B had a case portfolio that would generate

18   more than $6,000,000 in legal fees and approximately $2,000,000 in expense

19   reimbursements.  (*Id*.)  This Court entered orders granting the Conversion Motion

20   (Docket No. 25), and denying the Trustee's Motion, (Docket No. 24).

21

22        On August 16, 2017, Advocate, L&B and the petitioning creditors entered into a

23   Stipulation for the Appointment of a Chapter 11 Trustee (Docket No. 38), which the Court

24   approved by order on August 17, 2017 (Docket No. 42).  On August 21, 2017, the United

25   States Trustee (the "UST") filed its Notice of Appointment of Chapter 11 Trustee,

26   appointing Richard M. Pachulski as Chapter 11 Trustee in the Case (Docket No. 51).

27   Also on August 21, 2017, the UST filed an Application for Order Approving

28

Appointment of Chapter 11 Trustee (Docket No. 53), which application was granted by the Court's order entered the following day (Docket No. 56). On August 28, 2017, the Trustee filed his Notice of Acceptance accepting the appointment as Trustee. (Docket No. 63).

On August 29, 2017, the Trustee filed his Application to Employ Pachulski Stang Ziehl & Jones (the "Trustee's Firm") as bankruptcy counsel (Docket No. 64), and, on September 5, 2017, this Court entered its order approving that Application (Docket No. 81).

On September 5, 2017, a few days after the Trustee accepted his appointment as Trustee, the Trustee filed his Emergency Motion for Order (i) Authorizing Trustee to Implement Client Transition Protocol and (ii) Approving Compromise of *Quantum Meruit* Claims (the "Transition Protocol Motion") seeking this Court's approval of a protocol to transition L&B's clients to new representation (the "Transition Protocol"). (Docket 74). In the Transition Protocol Motion, the Trustee expressly stated that the primary purpose of the Trustee's efforts was to protect L&B's existing clients. (Docket No. 74, at p. 2). According to the Trustee, his "first order of business [was] to determine the identities and contact information of [L&B's] clients" and that "his first priority" was to ensure that "[L&B's] existing clients have continuing legal representation." (Docket No. 74, at pp. 2 and 4). On September 8, 2017, this Court entered its order approving the Transition Protocol. (Docket No. 84).

On December 21, 2017, the Trustee filed his Motion for Order Authorizing and Approving Procedures for Resolving Estate Fee and Costs Claims (the "Settlement Procedures Motion") seeking authority and approval of procedures for settling L&B's claims for attorney's fees and expense reimbursements from cases that had once been handled by L&B (the "Settlement Procedures"). (Docket No. 183). L&B's claims for

3

attorney's fees and expense reimbursements from cases that had once been handled by L&B constitute Wellgen's Collateral.  (*See* Wellgen Proof of Claim No. 222).

On January 16, 2017, this Court entered its order approving the Settlement Procedures.  (Docket No. 204).  Since that time, Advocate and Wellgen have cooperated with the Trustee in connection with various settlements as provided for in the Settlement Procedures.

Subsequent to the Trustee's appointment, the Trustee's Firm repeatedly contacted Advocate's counsel asking for Advocate to consent to payment of the Trustee's fees and expenses from Advocate's Collateral.  (Declaration of Roger G. Jones ¶ 3).  Each time, Advocate's counsel stated that Advocate could not agree to a blank check and asked the Trustee's counsel to submit a proposed budget of the expenses to be incurred and a description of the work to be performed.  Each time, the Trustee's counsel agreed to provide a budget, but never did so.  (*Id.*)

## II.    THE TRUSTEE'S REQUESTED SURCHARGE

The Trustee does not seek to recover from Wellgen's Collateral the attorney's fees and expenses that were necessary to the preservation and disposition of Wellgen's Collateral and may have benefitted Wellgen.  Instead, the Trustee seeks to recover $704,830.29 (the "Trustee's Expenses"), which is the amount of all the attorney's fees and expenses of the Trustee's Firm from inception through December 31, 2017.

The Trustee's Expenses are broken into two (2) tranches.  The first tranche is in the aggregate amount of $661,983.29, which is comprised of $628,717.50 in attorney's fees and $33,265.79 in expenses.  The Trustee categorizes the $628,717.50 in attorney's fees as follows:

4

| Summary of Services | | |
|---|---|---|
| Description | Hours | Amount |
| Asset Analysis/Recovery[B120] | 595.10 | $381,638.00 |
| Asset Disposition [B130] | 1.0 | $750.00 |
| Bankruptcy Litigation [L430] | 56.50 | $47,293.00 |
| Case Administration [B110] | 151.40 | $81,825.00 |
| Claims Admin/Objections [B310] | 24.10 | $12,085.00 |
| Executory Contracts [B185] | 5.70 | $3,195.00 |
| Financial Filings [B110] | 4.40 | $1,927.50 |
| Financing [B230] | 16.60 | $14,220.00 |
| Litigation (Non-Bankruptcy) | 1.70 | $635.00 |
| Meeting of Creditors [B150] | 1.40 | $1,050.00 |
| Operations [B210] | 104.50 | $69,518.00 |
| Retention of Prof. [B160] | 9.10 | $4,425.00 |
| Ret. of Prof./Other | 0.60 | $517.50 |
| Stay Litigation [B140] | 14.40 | $9,638.50 |
| **Total** | 986.50 | $628,717.50 |

(Trustee's Motion, Ex. A, p. 1.)  The second tranche is in the amount of $42,847.00 in attorney's fees that are not categorized like the attorney's fees in the first tranche.

The Trustee makes no effort to identify or establish the amount of expenses that he claims were necessary for the preservation of Wellgen's Collateral or any benefit to Wellgen.

### III.    ARGUMENT

**A.    The Trustee's Recovery of a Surcharge Under 11 U.S.C. § 506(c) Requires the Filing of an Adversary Proceeding.**

While Wellgen recognizes that various courts have considered motions for the recovery of a surcharge under Section 506(c) without addressing whether an adversary proceeding is required, Wellgen submits that Rule 7001(1) of the Federal Rules of Bankruptcy Procedure requires that the Trustee file an adversary proceeding.  Rule

7001(1) mandates that proceedings "to recover money or property" are adversary proceedings. As the Bankruptcy Court in *In re Blaisure*, 150 B.R. 343 (Bankr. M.D. Pa. 1992), explained:

> … if we were to delve into the area of Section 506 of the Bankruptcy Code, we must first conclude that PFA is trying to "recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of such property ..." 11 U.S.C. § 506(c). ***If an attempt is made to recover money or property, the Rules of Part VII of the Federal Rules of Bankruptcy Procedure must be implemented***.

*(Id*. at 344) (*emphasis added*); *see also In re Schlotzky's Inc*., 2004 WL 3244254, ¶ 16 (W.D. Tex. 2004) ("Any effort under § 506(c) of the Bankruptcy Code to surcharge a secured creditor's collateral is 'a proceeding to recover money or property' within the meaning of Federal Rule of Bankruptcy Procedure 7001(1) and thus must be brought as an adversary proceeding"). Having failed to file an adversary proceeding, the Trustee's Motion must be denied. The Motion is insufficient to afford Wellgen the due process protections to which it is entitled.

### B.    The Trustee Does Not Allege that Wellgen Holds an Allowed Secured Claim as Required Under 11 U.S.C. § 506(c).

The Trustee's Motion refers to Wellgen's Collateral as the "putative" collateral and does not allege that Wellgen holds an allowed secured claim. The Trustee seeks to recover a surcharge from Wellgen's Collateral and, at the same time, preserve his ability to object to the allowance of Wellgen's claim at a later date. Section 506(c) permits recovery from property "securing an allowed secured claim." The Trustee cannot have it both ways. The Trustee cannot seek to recover from Wellgen's Collateral today and tomorrow object to the allowance of Wellgen's claim. Since the Trustee is unwilling to concede that Wellgen holds an allowed secured claim, the Trustee's Motion must be denied.

### C.    **The Trustee's Motion is Premature.**

The Trustee's Motion is premature because this Court has not yet approved the Trustee's fee application.  Absent this Court's approval of a fee application, the Trustee cannot establish that the Trustee is entitled to recover any of the Trustee's Expenses.  More importantly, the Trustee may recover sufficient assets from sources other than Wellgen's Collateral to pay administrative expenses.  The Trustee has filed a fraudulent transfer action, (*see Pachulski v. Layfield V, LLC*, Adv. Pro. No. 2:18-ap-01050-NB), and is pursuing recovery of $1,000,000 in potentially preferential transfers, (*see* Docket No. 256).

### D.    **The Trustee Has Failed to Carry His Burden of Proof Under 11 U.S.C. § 506(c).**

The Trustee seeks to recover from Wellgen's Collateral all the Trustee's Expenses regardless of whether those fees and expenses were necessary for the preservation of Wellgen's Collateral or resulted in any benefit to Wellgen.  Section 506(c) does not permit such a recovery.  Section 506(c) provides, in relevant part, as follows:

> (c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving and disposing of, such property to the extent of any benefit to the holder of such claim ....

To succeed on his Motion, the Trustee must satisfy an "onerous burden of proof":

> … the party seeking the surcharge must prove that its expenses were reasonable, necessary and provided a quantifiable benefit to the secured creditor.  *In re Cascade Hydraulics and Utility Service, Inc.*, 815 F.2d 546, 548 (9th Cir.1987).  ***This is not an easy standard to meet.  It is the party seeking the surcharge that has the burden of showing a "concrete" and "quantifiable" benefit***.  The § 506 recovery is limited to the amount of the benefit actually proven.  Because a party seeking a surcharge faces an onerous burden of proof, it is unlikely that creditors will use this provision when any other provision of the Code is available.  ***Furthermore, because the amount of a surcharge is limited to the amount of the benefit and must***

7

*be proven with specificity, the deserving party is easily ascertainable*.

*In re Debbie Reynolds Hotel Casino, Inc.*, 255 F.3d 1061, 1068 (9th Cir. 2001) (*emphasis added*); *see also In re Choo*, 273 B.R. 608, 611 (BAP 9th Cir. 2002).

The Trustee's recovery under Section 506 is limited to the amount by which Wellgen has benefitted from the Trustee's Expenses:

> "To satisfy the benefit test of section 506(c), [the Trustee] must establish in quantifiable terms that it expended funds directly to protect and preserve the collateral." The amount of the Banks' benefit limits [the Trustee's] recovery of expenses. "A debtor does not satisfy her burden of proof by suggesting hypothetical benefits."

*In re Compton Impressions, Ltd.*, 217 F.3d 1260, 1261 (9th Cir. 2000) (*quoting In re Cascade Hydraulics & Utility Serv., Inc.*, 815 F.2d 546, 548 (9th Cir.1987)).

Whether any of the Trustee's Expenses were reasonable and necessary and resulted in any benefit to Wellgen requires a comparison of the benefits obtained by Advocate and/or Wellgen and the expenses Advocate and/or Wellgen would have incurred in foreclosing and disposing of the Collateral:

> We measure the necessity and reasonableness of the Debtor's incurred expenses against the benefits obtained for the secured creditor and the amount that the secured creditor would have necessarily incurred through foreclosure and disposal of the property. The threshold inquiry is whether the services for which a surcharge is sought were necessary to the secured creditor, here [Wellgen].

*Compton Impressions*, 217 F.3d at 1260-1261; *see also In re Alliance Financial Capital, Inc.*, 2009 WL 2823261, *2 (Bankr. N.D. Cal. 2009) (necessity and reasonableness of trustee's expenses are measured against the benefits obtained for secured creditor and the amount the secured creditor would have necessarily incurred through foreclosure and disposal of the property).

The Trustee bears the burden of proving the amount of expense Advocate and/or Wellgen would have incurred in foreclosing and disposing of its Collateral. *Choo*, 273 B.R. at 613. Absent such proof from the Trustee, any alleged benefit to Advocate and/or Wellgen is purely "hypothetical." (*Id.*)

The Trustee's Motion categorizes only $382,388.00 of the Trustee's Expenses as being related to Asset Analysis/Recovery and Asset Disposition. (Trustee's Motion, Ex. A, p. 2). The remainder of the Trustee's Expenses fall into the categories of Case Administration, Claims Administration, Operations, Retention of Professionals, Financing, Executory Contracts, Meeting of Creditors and Litigation unrelated to Wellgen's Collateral. (*Id.*) Expenses such as Case Administration, Claims Administration, Operations, Retention of Professionals, Financing, Executory Contracts, Meeting of Creditors and Litigation are unrelated to Wellgen's Collateral. Thus, these expenses are the responsibility of the bankruptcy estate and cannot be recovered from Wellgen's Collateral.

Courts have long recognized that Trustee cannot use Section 506(c) to recover "administrative expenses normally the responsibility of the debtor's estate." *In re Cascade Hydraulics and Utility Service, Inc.* 815 F.2d 546, 548 (9th Cir. 1987). "Administrative expenses or the general costs of reorganization may not be generally charged against secured collateral." (*Id.*) Payment of administrative expenses from a secured creditor's collateral is permissible only where the expenses "were incurred primarily for the benefit of the secured creditor." (*Id.*)

$382,388.00 of the Trustee's Expenses fall into the categories of Asset Analysis/Recovery and Asset Disposition. These expenses were not incurred primarily for Advocate and/or Wellgen's benefit; instead, they were incurred primarily for the benefit of L&B's existing clients. Although the exact amount is unclear, much of the

9

$382,388.00 was incurred in connection with the Transition Protocol Motion and the implementation of the Transition Protocol.  As the Trustee represented to this Court in the Transition Protocol Motion, the expenses incurred by the Trustee in connection with the Transition Protocol were incurred primarily for the benefit of L&B's existing clients and not Advocate and/or Wellgen.

The Trustee bears the burden of proving the expenses that Advocate and/or Wellgen would have incurred in realizing on the Collateral. The Trustee has offered no such proof, and the Trustee cannot carry that burden.  Indeed, if Advocate had obtained relief from the automatic stay (rather than stipulating to the appointment of a Chapter 11 trustee), Advocate would have had no duty or ability, and would not have incurred the expense, to identify L&B's existing clients and transition those clients to new representation.  Instead, Wellgen would have used information that it had already received from L&B regarding its cases and publicly available information to identify L&B cases that offered a significant likelihood of a substantial recovery. Thereafter, pursuant to 9-607 of the Uniform Commercial Code, Wellgen would have asserted a lien on any recovery in those cases for any *quantum meruit* fee and expense reimbursements to which L&B might been entitled.  The Trustee's suggestion that Advocate would have endeavored to identify and transition all L&B's existing clients to new counsel and, therefore, would have incurred the same expenses as the Trustee is illogical.  Absent proof from the Trustee of the amount Advocate would have incurred in realizing on its Collateral, any alleged benefit to Wellgen is purely "hypothetical."  *Choo*, 273 B.R. at 613.

Even if the Trustee was able to establish that some portion of the $382,388.00 in Trustee's Expenses was reasonable and necessary for the preservation of the Collateral, which he has not, the Trustee's Motion does not identify any benefit to Advocate or

10

Wellgen. This makes sense as neither Advocate nor Wellgen has received any benefit from the Trustee's Expenses. The Trustee's recovery under Section 506 is limited to the amount by which Advocate and/or Wellgen has benefitted from the Trustee's Expenses. *Compton Impressions*, 217 F.3d at 1261. To date, neither Advocate nor Wellgen has received any benefit whatsoever. The Trustee has made no distribution to Advocate or Wellgen.

**E.      Neither Wellgen Nor Advocate Consented to the Surcharge of its Collateral.**

The Trustee argues that, although Advocate did not expressly consent to the surcharge of its Collateral, Advocate "impliedly consented" to the surcharge by entering into the stipulation for the appointment of the Trustee and cooperating with the Trustee in connection with the Transition Protocol and the Settlement Procedures.

Although Section 506(c) makes no reference to the implied consent of the secured creditor, the Trustee relies on cases holding that a surcharge may be imposed where the secured creditor "impliedly consents" to the expenses. This is a misapplication of 506(c) and controverts the "plain meaning" approach articulated by the Supreme Court. *United States v. Ron Pair Enterprises*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) ("The plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.")

The literal application of Section 506(c) does not "produce a result demonstrably at odds with the intentions of its drafters." *Id*. Indeed, just the opposite is true here. Section 506(c)'s legislative history evidences Congress' express intent to limit recovery under Section 506(c) to the reasonable and necessary costs of preserving the collateral and to limit the recovery "to the extent of any benefit" to the secured creditor. H.R. Rep. No. 595, 95th Cong., 1st Sess. 357 (1977); S. Rep. No. 989, 95th Cong. 2d Sess. 68 (1978).

Permitting the Trustee to recover expenses that were not necessary or reasonable and that did not benefit Advocate and/or Wellgen is demonstrably at odds with the unambiguous language of Section 506(c) and its legislative history.

The decisions allowing recovery from the secured creditor's collateral based on "implied consent" without regard to the necessity and reasonableness of the expense and benefit derived by the secured creditor are no different from those decisions that adopted the so-called Fobian rule as a limitation on the allowance of attorney's fees under 11 U.S.C. § 502(b)(1). Relying on the "plain meaning" approach, the Supreme Court, in *Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.*, 549 U.S. 443, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007), rejected the so-called Fobian rule holding that the absence of any "textual support" in Section 502(b)(1) "fatal for the Fobian rule." 549 U.S. at 452, 127 S.Ct. at 1206. Just like the so-called Fobian rule, the absence of any textual support in Section 506(c) is fatal to the "implied consent" rule.[1]

To the extent the "implied consent" rule remains viable, neither Advocate nor Wellgen "impliedly" consented to the Trustee's Expenses. After the Trustee was appointed, his counsel repeatedly contacted Advocate's counsel seeking Advocate's consent to payment of the Trustee's fees and expenses from Advocate's Collateral. As was set forth above, Advocate's counsel repeatedly declined to consent to the request absent a proposed budget of the expenses to be incurred and a description of the work to be performed. No such budget was ever provided to Advocate. The fact that Advocate

---

[1] *In re GTI Capital Holdings, L.L.C.*, 2007 WL 7532277, *14 (BAP 9th Cir. 2007), the 9th Cir. Bankruptcy Appellate Panel recognized that consent may no longer be a viable basis for the imposition of a surcharge under Section 506(c) in light of the Supreme Court's decision in *Hartford Underwriters Ins. Co. v. Union Planters Bank N.A.*, 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000). "As discussed earlier, *Hartford Underwriters* held that only a trustee or debtor-in-possession, and not an administrative claimant, has standing to pursue a surcharge. The Supreme Court in that case emphasized that the language of § 506(c) is plain and unambiguous. Since § 506(c) does not include reference to a "consent" standard …."

expressly declined to consent to payment of the Trustee's Expenses from its Collateral absent an agreed upon budget is fatal to the Trustee's argument that Advocate "impliedly consented."

Additionally, as is explained in the Trustee's Motion, the Trustee requested, and Advocate consented, to payment of the costs of mailing the bar date notice to creditors and the minimum requisite quarterly U.S. Trustee's fees from the Collateral. The Trustee knew that Advocate had not consented to payment of all the Trustee's Expenses. Otherwise, the Trustee would not have requested Advocate's consent to pay the mailing costs from its Collateral.

The Trustee mistakenly argues that Advocate's implied consent can be inferred from its entry into the stipulation for the appointment of a trustee, and the fact it did not seek relief from the automatic stay with respect to the Collateral. Neither Section 506(c) nor any other provision of the Bankruptcy Code suggests that where a secured creditor seeks the appointment of a Chapter 11 Trustee, the secured creditor's collateral is subject to surcharge for all the Chapter 11 trustee's expenses.  Had that been Congress' intent, it could have easily included such a provision in Section 506(c).  It did not.

The Trustee reliance on the decisions in *In re Bob Grissett Golf Shoppes, Inc.*, 50 B.R. 598 (Bankr. E.D. Va. 1985), and *In re Hotel Associates, Inc.*, 6 B.R. 1980 (E.D. Pa. 1980), is misplaced.  Neither *Bob Grissett* nor *Hotel Associates* holds that a secured creditor's support for the appointment of a Chapter 11 trustee constitutes grounds to recover all the Chapter 11 trustee's expenses from the secured creditor's collateral. Instead, in *Bob Grissett*, the Bankruptcy Court awarded the trustee only a $3,000.00 statutory commission under 11 U.S.C. § 326 for selling encumbered property and rejected the trustee's remaining claims because there was no benefit to the secured creditor. Similarly, in *Hotel Associates*, the Bankruptcy Court held that, despite the fact that the

13

creditor moved for the appointment of a Chapter 11 trustee and did not seek relief from the automatic stay, the trustee could still only recover those expenses that were necessary to the preservation of the secured creditor's collateral.

The Trustee relies on *dicta* in *Bob Grissett* and *Hotel Associates* for the proposition that the secured creditor's consent may be implied where the secured creditor knew or had reason to that the debtor had no assets beyond the secured creditor's collateral and, rather than moving for relief from the automatic stay, moved for the appointment of a Chapter 11 trustee.  (Trustee's Motion at p. 10.)  However, the Trustee offers no evidence that, at the time Advocate entered into the stipulation for the appointment of a Chapter 11 trustee, it knew or should have known that L&B had no assets other than Advocate's Collateral or that Advocate knew or should have known there was no equity in its Collateral.  At the time, Advocate entered into the stipulation, Advocate had no knowledge of the value of its Collateral other than the information provided by Mr. Layfield showing that there was substantial equity in the Collateral.  (*See* Docket No. 18.) Advocate had no factual basis to allege there was no equity in the Collateral and no legal basis to seek relief from the automatic stay.

Bankruptcy courts that have squarely addressed the issue have rejected the Trustee's argument that a secured creditor's support for the appointment of a Chapter 11 trustee constitutes grounds to recover all the Chapter 11 trustee's expenses from the secured creditor's collateral.  In *CIT Corp. v. A & A Printing, Inc*., 70 B.R. 878 (Bankr. M.D. N.C. 1987), the Bankruptcy Court explained:

> The trustee relies chiefly on [the *Bob Grissett* decision] for the proposition that Section 506(c) permits allocating costs of administration to secured creditors to the extent of "rough justice."  That case discusses much of the case law treated here, and at one point acknowledges that
>
>> [t]he fact that the estate has no unencumbered assets from which to pay administrative expenses

14

> does not obligate a secured creditor to fund these expenses. The secured creditor, unless he consents, 'cannot be compelled to finance a chapter 11 proceeding except to the limited extent provided for in section 506(c).'

> (*Id*. at 604.)  Yet, two paragraphs later, the bankruptcy court turns 180 degrees and quotes a pre-Code case for the argument that "[w]here ... there are no unencumbered assets available to fund administrative expenses, the court should 'balance the misfortune of having some allowances go unpaid against the possible inequity of charging them all against mortgaged property.'"  The same pre-Code case is relied on earlier for the statement: "The courts have discretion to determine when and how much recovery shall be allowed from a secured party."

> Whatever latitude courts may have had to tax secured creditors under case law before enactment of the Bankruptcy Code is now dramatically circumscribed by Section 506(c).  ***Rather than permitting the balancing of vague hardships, that section sets forth objective criteria which must be met before secured parties are made to cough up funds***.  To the extent that the holding of *Bob Grissett Golf Shoppes* deviates from these criteria, the court disagrees with it here.

*(Id*. at 881-882) (*emphasis added*).

Further, the Bankruptcy Court in *In re Orfa Corp. of Philadelphia*, 149 B.R. 790

(Bankr. E.D. Pa. 1993), *rev'd on other grounds*, 170 B.R. 257 (E.D. Pa. 1994), explained:

> We cannot accept the Trustee's argument that, once [the secured creditor] supported his appointment, it was bound to compensate him for every service reasonably performed by him, irrespective of the benefit attained by [the secured creditor] as a result of these services, and irrespective of the obvious disapproval of those services by the [secured creditor].  If the Trustee could prove a benefit to [the secured creditor] in the macro-economic sense, as the result of his actions, then we believe that payment from [the secured creditor] for all services would be mandated.  However, if the Trustee is unable to shoulder this burden on this issue, as it appears is the case here, then the [the Trustee has] failed the "objective test."  An "implied consent," flowing from the mere act of supporting the Trustee's appointment, appears to be too weak a fulfillment of the "subjective test" in itself to allow the Trustee to prevail against [the secured creditor] under § 506(c).

*(Id.* at 799) (internal citations omitted).  Although the Bankruptcy Court's decision in *Orfa Corp.* was later reversed by the District Court, the District Court expressly approved this portion of the Bankruptcy Court's decision.  170 B.R. at 273 (Bankruptcy Court did not err in holding that support for appointment of trustee did not constitute implied consent to surcharge under Section 506(c)).

The Bankruptcy Court in *Orfa Corp.* distinguished the decisions in *Bob Grissett* and *Hotel Associates*:

> The Trustee also argues that claims similar to those made by him here, i.e., that a secured creditor who sought appointment of a trustee must foot the bill for all of the trustee's administrative expenses, were successful in the two most analogous cases, *Bob Grissett, supra*; and *Hotel Associates, supra*.  However, the Trustee in *Bob Grissett* succeeded only in establishing his right to recover a $3,000 statutory commission for selling encumbered property.  The *Hotel Associates* court awarded nothing to the Trustee, pending his proof that he actually did preserve the encumbered property.

149 B.R. at 800.

Finally, the Bankruptcy Court in *In re H&R Properties*, 1991 WL 242160 (Bankr. N.D. Ill. 1991), explained:

> Where the secured creditor expressly or by its actions consents to the services and payment for those services out of the collateral, it cannot avoid making such payment on the grounds that it received no actual benefit.  Such consent will not be easily implied in the absence of express consent.  In this case, clearly there has been no express consent.  ***The City argues, however, that the Bank consented to and caused the operating expenses when it sought the appointment of a trustee, and failed to move for dismissal, conversion or a modification of the automatic stay to allow foreclosure.  The Court rejects these arguments as a matter of law.***  It is well-settled that creditor cooperation in the reorganization effort, including post-petition financing, is not the same as a consent to finance the costs of the reorganization case, and that failure to move for a modification of the automatic stay or for adequate protection does not constitute consent to § 506(c) charges.

16

1991 WL 242160, *4 (*emphasis added*).

The Trustee also mistakenly argues that Advocate consented to the payment of the Trustee's Expenses by cooperating with the Trustee in connection with Transition Protocol and the Settlement Procedures.  Courts have uniformly held that secured creditors will not be found to have impliedly consented to the surcharge of its collateral because it acquiesces in the liquidation of its collateral or does not seek relief from the automatic stay:

> The payment of administrative expenses from the proceeds of secured collateral is allowed when those expenses are incurred ***primarily*** for the benefit of the secured creditor or when the secured creditor caused or consented to the expense.  Consent may be found to have been impliedly given if the creditor "has caused the additional expense." On the other hand, it is improper to imply consent to the recovery of expenses under Section 506(c) from (i) the mere acquiescence by a secured creditor with respect to an attempt to reorganize under Chapter 11 or with the respect to the liquidation of its collateral in a case, (ii) the creditor's mere failure to object to a proposed liquidation, or (iii) the creditor's mere failure to move to lift the automatic stay or take similar action.

*In re Cass*, 2015 WL 2194796, *15 (C.D. Cal. 2015) (*quoting Cascade Hydraulics & Utility Service*, 815 F.2d at 548) (internal citations omitted); see also *Compton Impressions*, 217 F.3d at 1261–1262.  Advocate's acquiescence and cooperation with the Trustee does not constitute implied consent.  (*Id.*)

It should further be noted that the Trustee should not be permitted to recover expenses that could have been avoided by abandoning the Collateral.  *In re Chicago Lutheran Hosp. Ass'n*, 89 B.R. 719, 726–27 (Bankr.N.D.Ill.1988) (*citing In re Trim–X, Inc.*, 695 F.2d 296, 301 (7th Cir.1982)).  The Trustee's arguments ignore that the Trustee, not Advocate, had superior access to information regarding the Collateral and its value. The Trustee could have abandoned the Collateral at any time, but the Trustee chose not

1    to do so even though Advocate had repeatedly told the Trustee it would not consent to

2    payment of the Trustee's expenses from the Collateral absent an agreed upon budget.

3    **IV.    CONCLUSION**

4    For the reasons stated above, Wellgen respectfully requests that this Court deny

5    the Trustee's Motion in its entirety and grant such further relief as it deems just and proper.

6

7    Dated: March 26, 2018

8

9    LOBEL WEILAND GOLDEN FRIEDMAN LLP

10    By:  /S/ JEFFREY GOLDEN
          Jeffrey I. Golden
11          Attorneys for Wellgen Standard, LLC

12

13    BRADLEY ARANT BOULT CUMMINGS LLP

14    By:  /S/ROGER G. JONES
          Roger G. Jones
15          Attorneys for Wellgen Standard, LLC

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**650 Town Center Drive, Suite 950, Costa Mesa, California 92626**

A true and correct copy of the foregoing document entitled (*specify*):  **OBJECTION TO TRUSTEE'S MOTION TO SURCHARGE CREDITOR'S COLLATERAL; DECLARATION OF ROGER G. JONES IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

1.    **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On (*date*) **March 26, 2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

2.    **SERVED BY UNITED STATES MAIL**:
On (*date*) **March 26, 2018**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows.  Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

3.    **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served)**:**  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **March 26, 2018**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

The Honorable Neil Bason, 255 E. Temple Street, Los Angeles, CA  90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 26, 2018 | Kelly Adele | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**VIA U.S. MAIL**
Layfield & Barrett, APC
Fka Layfield & Wallace, APC
Fka The Layfield Law Firm, APC
Attn: Philip Layfield, Officer of Record
2720 Homestead Rd., Suite 210
Park City, UT 84098

Layfield & Barrett, APC
Fka Layfield & Wallace, APC
Fka The Layfield Law Firm, APC
Attn: Any Officer Other Than Philip Layfield
2720 Homestead Rd., Ste. 210
Park City, UT 84098

Patricia Salcedo
The Dominguez Firm
3250 Wilshire Blvd #2200
Los Angeles, CA 90010

Diana B. Sherman
Law Offices of Diane B. Sherman
1801 Century Park East, Ste 1200
Los Angeles, CA 90067

Timothy M. Smith, Esq.
Trachtman & Trachtman, LLP
23046 Avenida De La Carlota, Suite 300
Laguna Hills, CA 92653

**Electronic Mail Notice List**
Jason Balitzer    jbalitzer@sulmeyerlaw.com,
jbalitzer@ecf.inforuptcy.com;dwalker@ecf.inforuptcy.com;kmccamey@sulmeyerlaw.com
Moises S Bardavid    mbardavid@hotmail.com
Daniel I Barness    daniel@barnesslaw.com
James W Bates    jbates@jbateslaw.com
Martin J Brill    mjb@lnbrb.com
Baruch C Cohen    bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
Jennifer Witherell Crastz    jcrastz@hemar-rousso.com, DBrotman@hrhlaw.com
Beth Gaschen    bgaschen@wgllp.com, kadele@wgllp.com;vrosales@lwgfllp.com;cyoshonis@lwgfllp.com
Jeffrey I Golden    jgolden@wgllp.com, kadele@wgllp.com;vrosales@lwgfllp.com
James KT Hunter    jhunter@pszjlaw.com
Steven J Kahn    skahn@pszyjw.com
Joseph M Kar    jkar@mindspring.com
Richard W Labowe    richardwlabowe@gmail.com, llhlaw1631@aol.com
Dare Law    dare.law@usdoj.gov, Kenneth.g.lau@usdoj.gov,Alvin.mar@usdoj.gov,ron.maroko@usdoj.gov
David W. Meadows    david@davidwmeadowslaw.com
Rana Nader    rnader@naderlawgroup.com, monique@naderlawgroup.com
Joel A Osman    osman@parkermillsllp.com, sanders@parkermillsllp.com
Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com
Brian A Paino    bpaino@mcglinchey.com, crico@mcglinchey.com;selizondo@mcglinchey.com
Michael F Perlis    mperlis@lockelord.com,
merickson@lockelord.com,jhagey@lockelord.com,RRJohnson@lockelord.com,bmungaray@lockelord.com
Michael F Perlis    ,
merickson@lockelord.com,jhagey@lockelord.com,RRJohnson@lockelord.com,bmungaray@lockelord.com
Hamid R Rafatjoo    hrafatjoo@raineslaw.com, bclark@raineslaw.com;cwilliams@raineslaw.com
Faye C Rasch    frasch@wgllp.com, kadele@wgllp.com;tziemann@wgllp.com
Daniel H Reiss    dhr@lnbyb.com, dhr@ecf.inforuptcy.com

Damion Robinson     dr@agzlaw.com
Lindsey L Smith     lls@lnbyb.com, lls@ecf.inforuptcy.com
Daniel A Solitro     dsolitro@lockelord.com, ataylor2@lockelord.com
United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov
Alan J Watson     alan.watson@hklaw.com, rosanna.perez@hklaw.com