1 | Debra I. Grassgreen (CA Bar No. 169978)
2 | Malhar S. Pagay (CA Bar No. 189289)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
3 | Los Angeles, California 90067
Telephone: 310/277-6910
4 | Facsimile: 310/201-0760
E-mail: dgrassgreen@pszjlaw.com
5 |         mpagay@pszjlaw.com

6 | Attorneys for Richard M. Pachulski,
Chapter 11 Trustee

7

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 | **LOS ANGELES DIVISION**

11 | In re:                                    Case No.: 2:17-bk-19548-NB

12 | LAYFIELD & BARRETT, APC,                  Chapter 11

13 |                          Debtor          **APPLICATION FOR AN ORDER**
**AUTHORIZING AND APPROVING THE**
14 |                                           **EMPLOYMENT OF KW PARK CITY**
**KELLER WILLIAMS REAL ESTATE TO**
15 |                                           **MARKET AND SELL REAL PROPERTY IN**
**PARK CITY, UTAH; DECLARATIONS OF**
16 |                                           **RICHARD M. PACHULSKI AND GREG**
**MINER IN SUPPORT THEREOF**
17

18 |                                            [No Hearing Required Unless Requested Pursuant
to Local Bankruptcy Rule 2014-1]

19

20 |         Richard M. Pachulski, the duly appointed as chapter 11 trustee (the "<u>Trustee</u>") in the above-

21 | captioned bankruptcy case (the "<u>Case</u>"), hereby applies to the Court (the "<u>Application</u>") for an order

22 | approving the employment of KW Park City Keller Williams Real Estate ("<u>KW</u>"), whose business

23 | office is located at 1750 Sun Peak Drive, Park City, Utah 84098, as real estate broker to market and

24 | sell certain real property of the bankruptcy estate (the "<u>Estate</u>") located in Park City, Utah.

25

26

27

28

*PACHULSKI STANG ZIEHL & JONES LLP*
*ATTORNEYS AT LAW*
*LOS ANGELES, CALIFORNIA*

DOCS_LA:315995.2 51414/001

# I.

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of this Case is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 327 and 328 of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

# II.

## BACKGROUND

### A.    Involuntary Petition and Appointment of Trustee

On August 3, 2017 (the "Petition Date"), petitioning creditors The Dominguez Firm, Inc. ("TDF"), a law firm that previously referred matters to Layfield & Barrett, APC (the "Debtor"), and Mario Lara, Nayazi Reyes and Maria A. Rios (collectively, the "Petitioning Creditors"), each a former client of the Debtor, filed an involuntary petition for relief under chapter 7 of the Bankruptcy Code against the Debtor [Docket No. 1].[1]  That same day, the Petitioning Creditors filed an *Emergency Motion for Appointment of an Interim Trustee Under 11 U.S.C. § 303(g) and Granting Emergency Relief* [Docket No. 3] (the "Trustee Motion").  In the Trustee Motion, the Petitioning Creditors asserted, among other allegations, that "[s]ettlement proceeds have not been distributed and may no longer exist, vendors and other creditors have not been paid and clients are effectively unrepresented in some 80 pending cases," and that, consequently, the appointment of a trustee is "essential to protect and preserve property of the . . . estate and to prevent concealment, waste, loss or conversion of the assets of the estate . . . ."  Trustee Motion at 1.

In response to the Trustee Motion, the Debtor filed a *Motion to Convert Case Under 11 U.S.C. §§ 706(a) or 1112(a)* on August 8, 2017 [Docket No. 19] (the "Conversion Motion"), seeking to convert the Case to one under chapter 11 of the Bankruptcy Code.  On August 11, 2017, the Court entered orders granting the Conversion Motion [Docket No. 25], and denying the Trustee Motion

---

[1] The Trustee respectfully requests that the Court take judicial notice of documents filed in the record of this Case, pursuant to Rule 201 of the Federal Rules of Evidence.

DOCS_LA:315995.2 51414/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

[Docket No. 24].  The Order for Relief in the Case also was entered effective August 11, 2017 [Docket No. 99].

On August 16, 2017, the Debtor, Petitioning Creditors, and the Debtor's pre-petition lender, Advocate Capital, Inc. ("Advocate"), entered into a *Stipulation for the Appointment of a Chapter 11 Trustee* [Docket No. 38] (the "Trustee Appointment Stipulation"), on the grounds that "the Parties believe that all creditors and the Debtor would be better served by the appointment of a chapter 11 trustee," which the Court approved by order on August 17, 2017 [Docket No. 42].  Trustee Appointment Stipulation ¶ D at 2.

On August 21, 2017, the United States Trustee (the "UST") filed its *Notice of Appointment of Chapter 11 Trustee*, appointing Richard M. Pachulski as chapter 11 trustee in the Case [Docket No. 51].  Also on August 21, 2017, the UST filed an *Application for Order Approving Appointment of Chapter 11 Trustee* [Docket No. 53], which application was granted by the Court's order entered the following day [Docket No. 56].

On August 28, 2017, the Trustee filed his *Acceptance of Appointment as Chapter 11 Trustee* [Docket No. 63].

**B.**     **Complaint for Avoidance and Recovery of Fraudulent Transfers and for Unjust Enrichment**

On February 22, 2018, the Trustee commenced an adversary proceeding (the "Layfield V Proceeding") in this Court against Layfield V, LLC ("Layfield V"), an entity of which the Debtor's principal, Philip Layfield ("Layfield"), is a member, as well as Layfield individually, in an effort to avoid and recover the transfer of real property assets located at 2720 Homestead Road, Suites 200, 210 & 220, Park City, Utah (collectively, the "Park City Office Properties"), from the Debtor to Layfield V.

On May 25, 2018, the Court entered *Judgment After Default* in the Layfield V Proceeding against Layfield V and Layfield, thereby avoiding the transfers of the Park City Office Properties from the Debtor to Layfield V, and transferring and revesting title of the properties to the estate.  The judgment was recorded in the Summit County, Utah, property records on June 4, 2018.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## III.

## RELIEF REQUESTED

The Park City Office Properties are part of Toll Creek Village 2, an office condominium project located in Park City, Utah.  Pursuant to section 363 of the Bankruptcy Code, the Trustee is authorized to sell or lease property of the Estate.  The Trustee believes that there is equity available in the Park City Office Properties that may be realized for the benefit of the Estate and its creditors and, therefore, it is in the best interest of the Estate to sell the Park City Office Properties.  As such, the Trustee believes that employing a real estate broker to market the Park City Office Properties will best accomplish this goal.

Randal Rupert and Greg Miner are the co-agents at KW who will be responsible for marketing and selling the Park City Office Properties.  Copies of Mr. Rupert's and Mr. Miner's resumes are attached as **Exhibit "1"** to the Declaration of Greg Miner (the "Miner Declaration"), annexed hereto.  KW, shall list, advertise, show and sell the Park City Office Properties and perform, among other things, the following tasks:

(a)    analyze and prepare all documentation necessary to list and advertise the Park City Office Properties for sale as may be necessary and appropriate;

(b)    list the Park City Office Properties with the most propitious listing services for the relevant market; to inspect the Park City Office Properties as necessary to respond to purchaser's inquiries; and to solicit reasonable offers of purchasers;

(c)    convey all reasonable purchase offers to the Trustee and to Trustee's counsel, and subject to the Trustee's approval, to negotiate and confirm the acceptance of the best offer; and

(d)    cause to be prepared and submitted to escrow on behalf of the Estate any and all documents necessary to consummate the sale(s) of the Park City Office Properties.

The Trustee believes that the engagement of KW will be beneficial to the Estate because of its expertise in listing and selling real property and its experience in the Park City, Utah, market.  Subject to approval of this Court, the Trustee intends to enter into a listing agreement retaining KW as the listing agent on the terms set forth in that Exclusive Right to Sell Listing Agreement & Agency Disclosure (the "Listing Agreement") to list for sale, the Park City Office Properties.  A

DOCS_LA:315995.2 51414/001

copy of the Listing Agreement is attached as **Exhibit "2"** to the Miner Declaration.  The Listing

Agreement was negotiated by the parties in good faith and at arm's length, and the Trustee believes

the terms and conditions are fair and equitable.  Any sale shall be subject to Court approval pursuant

to section 363 of the Bankruptcy Code.

## IV.

## COMPENSATION

The Listing Agreement provides that KW shall be compensated for its services in the amount

equal to six percent (6%) of the gross sales price for the sale(s) of the Park City Office Properties.

KW acknowledges that its compensation will depend upon application to and approval by this Court

of the terms and conditions of the sale(s) after notice to creditors.

KW has also been advised of and has agreed to accept employment subject to the provisions

of sections 327(a) and 328(a) of the Bankruptcy Code.  KW understands that, notwithstanding the

approval of its employment by this Court in accordance with the terms hereof, the Court may allow a

compensation different from the compensation provided for herein if such terms agreed upon prove

to have been improvident in light of developments that could not have been anticipated at the time

this Application was approved.  As set forth in the Miner Declaration, neither KW nor any of its

agents have received a retainer from the Trustee or any other party for KW's services and has no

agreement to share any compensation to be paid in this Case with any other person except among

KW's members or agents, provided, however, that KW's commissions may be shared with a buyer's

broker, as is customary in the industry for sales of these types of properties.

## V.

## DISINTERESTEDNESS

As set forth in the Miner Declaration, the Trustee is informed and believes that KW is a

"disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, has no

interest adverse to the Estate, and does not have any connection with the Trustee, the Debtor, any

creditors of the Debtor, the Office of the United States Trustee or any person employed in the Office

of the United States Trustee or any bankruptcy judge in this district, or their respective attorneys or

5

1    accountants, except as set forth therein.  Based upon the Miner Declaration, the Trustee does not

2    believe that any actual or potential conflict exists.

3         KW may have been engaged by, or in the future may be engaged by, one or more creditors of

4    the Debtors or other parties in interest in the Case.  In addition, KW in the past may have provided,

5    and in the future may provide, services to the Trustee, in matters unrelated to this Case.  The Trustee

6    does not believe such relationships, as described above, constitute an actual or potential conflict.

7    The Trustee and/or KW will supplement this disclosure and advise the Court if they become aware

8    of any potential or actual conflicts.  The disclosures contained in the Miner Declaration are

9    incorporated herein by reference.

10                                          **VI.**

11                                        **NOTICE**

12         Pursuant to Local Bankruptcy Rule 2014-1(b)(4), a hearing is not required in connection with

13    the Application unless requested by the United States Trustee, a party in interest, or otherwise

14    ordered by the Court.  Pursuant to Local Bankruptcy Rule 2014-1(b)(3)(E), any response to the

15    Application and request for hearing must be in the form prescribed by Local Bankruptcy Rule 9013-

16    1(f)(1), and must be filed with the Court and served upon the Trustee, his counsel, and the United

17    States Trustee no later than fourteen (14) calendar days form the date of service of notice of the

18    filing of the Application.

19         Notice of the filing of this Application was provided to the Debtor, the Office of the United

20    States Trustee, and any party who filed and served a request for special notice as of the date of

21    service of this Application.

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:315995.2 51414/001

1    **WHEREFORE**, the Trustee respectfully requests that the Court enter an order approving the

2    employment of KW as the Trustee's real estate broker to market and sell the Park City Office

3    Properties under the terms and conditions in the Listing Agreement, and that the Court grant such

4    other and further relief as is just and proper.

5

6    Dated: July 30, 2018                           PACHULSKI STANG ZIEHL & JONES LLP

7

8                                                   By: /s/ *Malhar S. Pagay*
                                                        Malhar S. Pagay
9                                                       Attorneys for Richard M. Pachulski,
                                                        Chapter 11 Trustee
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

7

## DECLARATION OF RICHARD M. PACHULSKI

I, Richard M. Pachulski, declare as follows:

1.       I am the duly appointed chapter 11 trustee (the "Trustee") in the bankruptcy case ("Case") of Layfield & Barrett, APC ("L&B" or the "Debtor").  I also am an attorney duly admitted to practice before the courts of the State of California and this Court, among other jurisdictions.

2.       I submit this declaration in support of the *Application for an Order Authorizing and Approving the Employment of KW Park City Keller Williams Real Estate to Market and Sell Real Property in Park City, Utah* (the "Application").  Capitalized terms used but not defined herein shall have the same meanings as set forth in the Application.

3.       Unless otherwise indicated, all facts set forth in this Declaration are based on either (a) my personal knowledge (albeit my own or that gathered by others rendering services to the bankruptcy estate who report to me), (b) my review of relevant documents, or (c) my opinion based upon my experience and knowledge of the circumstances as described in the Application.  If I were called to testify thereto, I could and would competently do so.

4.       Pursuant to the Application, I am seeking to employ on behalf of the estate KW Park City Keller Williams Real Estate ("KW"), for the purpose of listing and selling the real property known as Units 200, 210 and 220 of Toll Creek Village 2, an office condominium project located at 2720 Homestead Road, Park City, Utah (the "Park City Office Properties").

5.       I believe that there is equity available in the Park City Office Properties for the benefit of the Estate and its creditors and therefore, it is in the best interest of the Estate to sell the Park City Office Properties.  As such, I believe that employing a real estate broker to market the Park City Office Properties will best accomplish this goal.

6.       In connection with the marketing and sale of the Park City Office Properties, if KW's employment is approved by the Court pursuant to the Application, I, on behalf of the Estate, intend to enter into an Exclusive Right to Sell Listing Agreement & Agency Disclosure (the "Listing Agreement") with KW in substantially the form attached hereto as **Exhibit "2"**.

7.       The Listing Agreement provides that KW shall be compensated for its services in an amount equal to six percent (6%) of the gross sales price for the sale(s) of the Park City Office

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  Properties. I am informed and believe that the commission is reasonable and represents the standard

2  commission rates used within the local real estate industry for sales of commercial real property.

3        8.     Based on the foregoing, I believe that the Listing Agreement, negotiated by the

4  parties in good faith and at arm's length, is fair and equitable and that the employment of KW under

5  the terms agreed upon as stated therein and herein is in the best interests of the Estate.

6        9.     Based on the Declaration of Greg Miner, annexed to the Application (the "Miner

7  Declaration"), I am informed and believe that KW is a "disinterested person" within the meaning of

8  section 101(14) of the Bankruptcy Code, has no interest adverse to the Estate, and does not have any

9  connection with me, the Debtor, any creditors of the Debtor, the Office of the United States Trustee

10  or any person employed in the Office of the United States Trustee or any bankruptcy judge in this

11  district, or their respective attorneys or accountants, except as set forth in the Miner Declaration.

12  Based upon the Miner Declaration, I do not believe that any actual or potential conflict exists..

13      I declare under penalty of perjury under the laws of the United States of America that the

14  foregoing is true and correct.

15      Executed this 30ᵗʰ day of July, 2018, at Los Angeles, California.

16

17                                     Richard M. Pachulski

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

9

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**DECLARATION OF GREG MINER**

I, Greg Miner, declare:

1.    I am employed as an agent for KW Park City Keller Williams Real Estate ("KW"), located at 1750 Sun Peak Drive, Park City, UT 84098, telephone number (435) 649-9882, and am one of the real estate agents at KW which the Trustee seeks to employ for the purpose of listing and selling the real property known as Units 200, 210 and 220 of Toll Creek Village 2, an office condominium project located at 2720 Homestead Road, Park City, Utah (the "Park City Office Properties").

2.    I submit this declaration in support of the *Application for an Order Authorizing and Approving the Employment of KW Park City Keller Williams Real Estate to Market and Sell Real Property in Park City, Utah* (the "Application").  Capitalized terms used but not defined herein shall have the same meanings as set forth in the Application.

3.    Unless otherwise indicated, all facts set forth in this Declaration are based on either (a) my personal knowledge (albeit my own or that gathered by others rendering services to KW who report to me), (b) my review of relevant documents, or (c) my opinion based upon my experience and knowledge of the circumstances as described in the Application.  If I were called to testify thereto, I could and would competently do so.

4.    I am a Utah licensed real estate agent and I am experienced in selling residential and commercial properties.  My resume, along with the resume of Randal Rupert who also is expected to work on this engagement, are attached hereto collectively as **Exhibit "1"**.

5.    I have been involved in real estate investment and management in the State of Utah since 1990.  Among other academic degrees, I received a J.D. degree from UCLA School of Law in 2003 and have worked as a realtor at KW's Utah Luxury Group in Park City, Utah, since 2009.

6.    KW, shall list, advertise, show and sell the Park City Office Properties and perform, among other things, the following tasks:

    a.    analyze and prepare all documentation necessary to list and advertise the Park City Office Properties for sale as may be necessary and appropriate;

    b.    list the Park City Office Properties with the most propitious listing services for

DOCS_LA:315995.2 51414/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the relevant market; to inspect the Park City Office Properties as necessary to respond to purchaser's inquiries; and to solicit reasonable offers of purchasers;

c.   convey all reasonable purchase offers to the Trustee and to Trustee's counsel, and subject to the Trustee's approval, to negotiate and confirm the acceptance of the best offer; and

d.   cause to be prepared and submitted to escrow on behalf of the Estate any and all documents necessary to consummate the sale(s) of the Park City Office Properties.

7.     The Listing Agreement  for the Subject Property, attached hereto as **Exhibit "2,"** provides that KW shall be compensated for its services in an amount equal to six percent (6%) of the gross sales price for the sale(s) of the Park City Office Properties.  Based on my experience, I am informed and believe that this commission amount is reasonable and submit that this rate of commission is consistent with the standard commission rates used within the real estate industry for sales of commercial real property such as the Park City Office Properties.  I understand that KW's compensation will depend upon application to and approval by this Court of the terms and conditions of the sale after notice to all creditors.  KW has not received any retainer to market and sell the Park City Office Properties and has no agreement to share any compensation to be paid in this Case with any other person except among KW's members or agents, provided, however, that KW's commissions may be shared with a buyer's broker, as is customary in the industry for sales of these types of properties..

8.     I understand and agree to accept KW's employment subject to the provisions of section 328(a) of the Bankruptcy Code.  I also understand that notwithstanding the approval of KW's employment by this Court in accordance with the terms herein, the Court may allow a compensation different from the compensation provided for according to the Application if such terms agreed-upon prove to have been improvident in light of developments that could not have been anticipated at the time the Application was approved.  KW has received no retainer from the Trustee for its services.

9.     KW is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code.  KW does not hold any pre-petition claim against the Debtor.  Neither I nor Randal Rupert, nor any

11

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

other member of KW, is associated or affiliated with the Trustee, the Debtor, its affiliates, its

creditors, the Office of the United States Trustee or any person employed in the Office of the United

States Trustee or any bankruptcy judge in the Central District of California, or any other party in

interest or their respective attorneys or accountants, or hold or represent any interest adverse to the

Estate, except as set forth herein.  On behalf of KW, I have reviewed a list of parties in interest

relating to the Park City Office Properties (the "Conflicts List") provided to KW by counsel for the

Trustee.  A copy of the Conflicts List is attached hereto as **Exhibit "3"**.  Based on my review of the

Conflicts List, I have determined the following potential connections between KW and certain

persons or entities on such list:

> a.  Todd D. Wakefield:  More than four years ago, Mr. Wakefield briefly rented an office in the same building that KW currently occupies.
>
> b.  Wells Fargo Bank:  KW's operating and trust accounts are held at a local Wells Fargo Bank branch.
>
> c.  Stephen Stuart/Stuart & Company:  I understand that (i) Mr. Stuart and/or Stuart & Company is the listing agent for office space in the Toll Creek office building where the Park City Office Properties are located, (ii) Mr. Stuart owns other units in the Toll Creek building and is on the Board of Directors of the Toll Creek Owners' Association; and (iii) Mr. Stuart has expressed an interest in acquiring the Park City Office Properties.  In the past, Mr. Rupert and others at KW may have engaged in discussions with Mr. Stuart in his capacity as listing agent for office space in the Toll Creek office building but KW has not engaged in any transactions and does not have any other relationship with him or his company.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

10.    I am familiar with the Bankruptcy Code, Bankruptcy Rules and Local Rules as they

pertain to the employment of brokers, and will comply with them.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed this 30th day of July, 2018, at Park City, Utah.

_____
Greg Miner

11

# EXHIBIT 1

Greg Miner

1750 Sun Peak Drive
Park City, UT 84098

435-668-7771
Greg@UtahLuxuryGroup.com



## PROFESSIONAL EXPERIENCE: BUSINESS

**Utah Luxury Group – KW Park City Keller Williams Real Estate**
**Realtor ® | Park City, UT | Since 2009**
Owner- top producing real estate development and transaction team.

**Attorney at Law**
**Juris Doctor (J.D.) | Since 2003**

**Real Estate Investment and Management |Utah |Since 1990**

## Education

**University of California, Los Angeles, School of Law |Los Angeles, CA |2000-2003**
Juris Doctor (J.D.)

**University of Wales |United Kingdom |Master of Philosophy |1993-1995**

**Utah State University |Logan, UT |Bachelor of Arts |1989-1993**
Graduated Summa Cum Laude

**University of California | Santa Cruz, CA | Sierra Institute| Spring Quarter 1993**
Wilderness Field Studies Program

**Oxford University | Oxford, England |1991-1992**
Junior Year Abroad



Greg Miner

1750 Sun Peak Drive
Park City, UT 84098

435-668-7771
Greg@UtahLuxuryGroup.com



UTAH LUXURY
· REAL ESTATE GROUP ·

Here is a partial list of transactions where I was employed by the Sellers on properties they had taken back either through foreclosure or in bankruptcy or a combination of both...

_____
THE PRESERVE
SELLER: FCOI Preserve LLC (a Fortress entity)
https://www.fortress.com/
19 lots for a total of over $9M in transactions
Link:  Click here to view the Listings

_____
7501 PROMONTORY RANCH ROAD
SELLER: Res-Ut One LLC (a Rialto Capital entity)
http://www.rialtocapital.com/
SFH sold for $1M
Link: Click here to view the Listings

_____
2482 MORNING STAR COURT--
SELLER: Quality Props Asset Mgmt Co (a Bank of America entity)
SFH sold for $1M
Link: Click here to view the Listings

_____
DEER VISTA--
SELLER: Point Center Financial
84 lots for $3.8M
Link: Click here to view the Listings

_____
CROSSINGS AT LAKE CREEK--
SELLER: Wells Fargo Bank NA
3 houses and 2 lots for $1M+
Link: Click here to view the Listings

_____

Information deemed reliable, but not guaranteed. Square footage is an estimate only.
If your property is currently listed with another broker, it is not our intention to solicit that listing.

kw    Keller Williams
Park City Real Estate

# RANDAL L. RUPERT

435-615-8200  / 801-910-0917
Randal@ActionRealtyNetwork.com

## SUMMARY

Proven executive level performer with a strong 30-year track record in real estate sales, consulting, operations, business development, client management, asset management and real estate investment.

Excellent leadership, relationship management and communication skills. Hands on management style with demonstrated organizational and management skills.  History of success in both large and small organizations.

## REAL ESTATE PROFESSIONAL EXPERIENCE

2017 - present
**KW Park City Keller Williams Real Estate**
*Principal Broker*
Responsible for legal oversight, licensing and compliance management of 175 licensed real estate sales agents.  Transactional oversight of over $700M of sales production and over $12M in gross commission income via hundreds of deals annually. Responsibilities include risk management, continuing education events, managing customer escalations, and engagement in Board of Realtors Broker events.

2006 - present
**Real Ventures, Inc**
*President*
Founded and led multi-faceted real estate services company.  Responsibilities include executive oversight, operations and financial management, property management and auxiliary services. Act as managing partner / member for several other single asset real estate-related firms.

2006 - 2017
**Action Realty Network – Park City**
*Owner / Broker*
Opened and managed the branch operations of a full service residential and commercial real estate brokerage.  Assumed full ownership and control of the brokerage in 2008.

1993 - present
**Real Estate Investor**
Owner of up to11 investment properties located in three states.  Functioned as property manager for seven personally owned properties. Acting Managing Partner since 2006 for commercial property in Park City.

## CORPORATE WORK SUMMARY

2012-2014    Corporate **Sr. Vice President level** positions focused on **client-relationships** and **professional services**

2000-2006    Corporate **Vice President level** positions focused on **client-relationships** and **revenue generation**

1993-2000    **Director level** positions focused on **client and operational functions** and **deliverables**

1987-1993    **Big 6** and **Fortune 100 consulting and staff** positions specializing in **analysis** for **strategy** and **operational improvement**

*  *Details provided on Exhibit A*

## LICENSES, ASSOCIATIONS & EDUCATION

| | |
|---|---|
| 2009 | State of Utah *Licensed Real Estate Broker* |
| 2006 | State of Utah *Licensed Real Estate Sales Agent* |
| | Realtor, Salt Lake Board of Realtors, Park City Board of Realtors (since 2006) |
| | **Georgia Institute of Technology** |
| 1989 | *Masters of Science* degree |
| 1987 | *Bachelor of Industrial Engineering* degree, **with honors** |

## SUMMARY OF REAL ESTATE ACTIVITY

- Primary market –  Park City extended area, secondary market Salt Lake City
- Commercial leasing
- Residential sales
- Residential leasing
- Residential land sales
- Commercial land sales
- Residential property management

## Exhibit A – Detailed Corporate Work Summary

### *PROFESSIONAL EXPERIENCE*

| 11/13 – 11/14 | **Genesys** | *VP, Cloud Client Services* | **Salt Lake City, UT** |
|---|---|---|---|
| | Global leader in multi-channel customer experience and contact center solution leader | | **Daly, CA** |

➤ Integrated the acquired Echopass professional service, client engagement and customer support organizations into the Genesys Cloud organization.

| 7/12 - 11/13 | **Echopass** | *Chief Customer Officer, SVP* | **Salt Lake City, UT** |
|---|---|---|---|
| | Leader in hosted contact center solutions for enterprises | | |

➤ Re-joined organization to position for strategic acquisition.
➤ Responsibilities for oversight of all client relations, professional services, customer support, recurring revenue and client satisfaction.

| 2/06 - present | **Real Ventures, Inc** | *Founder / President* | **Salt Lake City, UT** |
|---|---|---|---|
| | Multi-faceted real estate services company | | |

➤ Responsibilities include executive oversight, operations and financial management, property management and auxiliary services.
➤ Act as managing partner for several other single-asset real estate-related firms.

| | **Action Realty Network** | *Owner / Broker* | **Park City, UT** |
|---|---|---|---|

➤ Established and currently manage a branch of an existing full service residential brokerage.
➤ Assumed financial control and responsibility for the full brokerage operations including residential and commercial real estate activities.

| 1/04 - 2/06 | **Workbrain** | *VP, Customer Success* | **Salt Lake City, UT** |
|---|---|---|---|
| | Technology leader in enterprise workforce management solutions | | **Toronto, ON / Atlanta, GA** |

➤ Created and deployed a progressive Customer Success program
➤ Designed a client touch-point and feedback system to initiate regular and systematic customer communications.
➤ Developed and launched of a customer loyalty program to ensure available references for prospective and existing clients.

| 4/00 - 1/04 | **Echopass** | *VP, Customer Relationship Management* | **Salt Lake City, UT** |
|---|---|---|---|
| | Technology start-up servicing the contact center market as a hosted service provider. | | |

➤ Developed, deployed and managed entire customer advocacy, helpdesk and client service functions
➤ Owned entire post-sales client relationship, including existing revenue stream, all contract renewals, up-sell opportunities and delivering client satisfaction & reference-ability.

| 7/97 - 3/00 | **Sykes Enterprises** | *VP Business Development, EME)* | **Amsterdam, NL** |
|---|---|---|---|
| | Top tier global contact center outsourcer. | | |

➤ Responsible for annual revenue budget of $220M and a staff of 30 sales professionals for the EMEA region.

*Director Strategic Accounts, EMEA)*

➤ Responsible for direct and indirect management of a large number of strategic client relationships, primarily Fortune 100 firms in technology and telecommunication sectors.
➤ Managed a $45M annual revenue stream within EMEA region by providing call center and e-commerce services.

### *Strategic Account Executive – Hewlett-Packard and Compaq*

➤ Responsible for full management of the Hewlett-Packard and Compaq client relationships including ensuring operational performance and defining strategic direction.
➤ Performance measured primarily on the retention and acquisition of revenue generated from call center services.
➤ Managed a revenue stream of $20M.  Grew primary account revenues by over 300% within 15 months.
➤ Achieved 153% of revenue objective and was top performer out of 40 professionals.

### *Director Commercial Services, Europe*

➤ Managed a 250-person pan-European multi-client, technical support call center through a high growth period.  Clients represented a large number of leading hardware and software companies.

| | | | |
|---|---|---|---|
| 4/95-7/97 | **CAPS Logistics** | *Managing Director* | **Amsterdam, NL** |

Dynamic, high growth software company with sophisticated logistics modeling products

➤ Opened and managed first international operation.
➤ Developed and implemented a business strategy for entry into the European market.  Included sales responsibilities of product and consulting services, directly to end-users and via third parties.
➤ Exceeded revenue targets and grew business from $100K to over $1M in less in 18 months.

| | | | |
|---|---|---|---|
| 2/93-3/95 | **Holiday Inn Worldwide Reservations** | *Operations Manager - Call Center, EMEA* | **Amsterdam, NL** |

Progressive, high profile pan-European reservation & call center

➤ Managed $7.1M start-up operation, with a staff of 90 employees engaged in reservations, customer service, and frequency marketing program support for EMEA region.
➤ Operation regularly recognized as one of the premier pan-European call centers, providing service 365 days per year in 13 languages to over 20 countries.

| | | | |
|---|---|---|---|
| 9/90-2/93 | **Deloitte & Touche Management Consulting** | *Consultant / Senior Consultant* | **Atlanta, GA** |

General management consulting

➤ Provided management consulting services to corporate clients in the manufacturing, retail and hospitality industries.  Representative engagements include:
   • *Organizational Restructuring*          • *Re-engineering of Logistics / Distribution Network*
   • *Manufacturing Strategy*               • *Customer Supply Chain Assessment*

| | | | |
|---|---|---|---|
| 4/86-9/90 | **AT&T Communications** | *National Transportation Logistics Analyst* | **Atlanta, GA** |
| | Materials management division | *Sr. Transportation Specialist* | |

➤ Developed and implemented national distribution and transportation strategies and programs throughout the USA distribution and returns network. Supported 15 major and 160 minor distribution and repair facilities with annual transportation budgets in excess of $60M.
➤ Managed transportation-related issues for a 14-state region. Implemented projects which reduced a $6.5M budget by 30% within 18 months.

# EXHIBIT 2

Utah Association
*of* REALTORS®
REALTOR



# EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT
# & AGENCY DISCLOSURE
### THIS IS A LEGALLY BINDING AGREEMENT READ CAREFULLY BEFORE SIGNING
### DESIGNATED AGENCY BROKERAGE

**THIS EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT & AGENCY DISCLOSURE** ("Listing Agreement") is entered into by and between ___KW Park City Keller Williams Real Estate___ (the "Company") and ___Richard M. Pachulski, solely in his capacity as the Chapter 11___ (the "Seller").
___Trustee of the bankruptcy estate of Layfield & Barrett, APC___

**1.     TERM OF LISTING.** The Seller hereby grants to the Company, including ___Randal Rupert and Greg Miner___ (the "Seller's Agent") as the authorized agent for the Company starting on the Effective Date as defined in Section 17 below, and ending at 5:00 P.M. (Mountain Time) on the _____ day of _____, 20_____ (the "Listing Period"), the exclusive right to sell, lease, or exchange real property owned by the Seller, described as:___2720 Homestead Road, Units #200, 210, and 220, Park City, UT 84098___ (the "Property"), at the listing price and terms stated on the attached property data form (the "Data Form"), or at such other price and terms to which the Seller may agree in writing.

**2.     BROKERAGE FEE.** If, during the Listing Period, the Company, the Seller's Agent, the Seller, another real estate agent, or anyone else locates a party who is ready, willing and able to buy, lease or exchange (collectively "acquire") the Property, or any part thereof, at the listing price and terms stated on the Data Form, or any other price and terms to which the Seller may agree in writing, the Seller agrees to pay to the Company a brokerage fee in the amount of $ _____ or ___6___% of such acquisition price (the "Brokerage Fee"). The Brokerage Fee, unless otherwise agreed in writing by the Seller and the Company, shall be due and payable from the Seller's proceeds on: (a) If a purchase, the date of recording of the closing documents for the acquisition of the Property; (b) If a lease, the effective date of the lease; and (c) if an option, the date the option agreement is signed. If within the Listing Period, or any extension of the Listing Period, the Property is withdrawn from sale, transferred, conveyed, leased, rented, or made unmarketable by a voluntary act of Seller, without the written consent of the Company; or if the sale is prevented by default of the Seller, the Brokerage Fee shall be immediately due and payable to the Company. The Company is authorized to share the Brokerage Fee with another brokerage participating in any transaction arising out of this Listing Agreement.

**3.     PROTECTION PERIOD.** If within ___3___ months after the termination or expiration of this Listing Agreement, the Property is acquired by any party to whom the Property was offered or shown by the Company, the Seller's Agent, the Seller, or another real estate agent during the Listing Period, or any extension of the Listing Period, the Seller agrees to pay to the Company the Brokerage Fee stated in Section 2, unless the Seller is obligated to pay a brokerage fee on such acquisition to another brokerage based on another valid listing agreement entered into after the expiration or termination date of this Listing Agreement.

**4.     SELLER WARRANTIES/DISCLOSURES.** The Seller warrants to the Company that the individuals or entity listed above as the "Seller" represents all of the record owners of the Property. The Seller warrants that Seller has marketable title and an established right to sell, lease or exchange the Property. The Seller agrees to execute the necessary documents of conveyance. The Seller agrees to furnish buyer with good and marketable title, and to pay at Settlement, for a policy of title insurance in accordance with the terms of any real estate purchase contract entered into between buyer and Seller. The Seller agrees to fully inform the Seller's Agent regarding the Seller's knowledge of the condition of the Property. Upon signing of this Listing Agreement, the Seller agrees to personally complete and sign a Seller's Property Condition Disclosure form. The Seller agrees to indemnify and hold harmless the Seller's Agent and the Company against any claims that may arise from: (a) The Seller providing incorrect or inaccurate information regarding the Property; (b)The Seller failing to disclose material information regarding the Property, including, but not limited to, the condition of all appliances; the condition of heating, plumbing, and electrical fixtures and equipment; sewer problems; moisture or other problems in the roof or foundation; the availability and location of utilities; and the location of property lines; and (c) Any injuries resulting from any unsafe conditions within the Property.

**This form is authorized for use by Greg Miner, a member of the Park City Board of Realtors.**

InstanetFORMS

**5.    AGENCY RELATIONSHIPS**.

**5.1    Duties of a Seller's Agent.** By signing this Listing Agreement, the Seller designates the Seller's Agent and the Principal/Branch Broker for the Company (the "Broker"), as agents for the Seller to locate a buyer for the Property. The Seller authorizes the Seller's Agent or the Broker to appoint another agent in the Company to also represent the Seller in the event the Seller's Agent or the Broker will be unavailable to service the Seller. As agents for the Seller, they have fiduciary duties to the Seller that include loyalty, obedience, full disclosure, confidentiality, reasonable care, and any other duties required by law.

**5.2    Duties of a Limited Agent.** The Seller understands that the Seller's Agent and the Broker may now, or in the future, be agents for a buyer who may wish to negotiate a purchase of the Property. Then the Seller's Agent and the Broker would be acting as Limited Agents - representing both the Seller and buyer at the same time. A Limited Agent has fiduciary duties to both the Seller and the buyer as required by law. However, some of those duties are "limited" because the agent cannot provide to both parties undivided loyalty, confidentiality and disclosure. For this reason, the Limited Agent is bound by a further duty of neutrality. Being neutral, the Limited Agent may not disclose to either party information likely to weaken the bargaining position of the other – for example, the highest price the buyer will offer, or the lowest price the Seller will accept. However, the Limited Agent will be required to disclose information given to the agent in confidence by the other party if failure to disclose such information would be a material misrepresentation regarding the Property or regarding the ability of the parties to fulfill their obligations. The Seller is advised that neither the Seller nor the buyer is required to accept a limited agency situation in the Company, and each party is entitled to be represented by its own agent. In the event a limited agency situation arises, the Seller's Agent and the Broker, as applicable, may only act as Limited Agents based upon a separate Limited Agency Consent Agreement signed by the Seller and buyer.

**6.    PROFESSIONAL ADVICE.** The Company and the Seller's Agent are trained in the marketing of real estate. Neither the Company nor its agents are trained or licensed to provide the Seller or any prospective buyer with legal or tax advice, or with technical advice regarding the physical condition of the Property. Seller is advised not to rely on the Company, or any agents of the Company, for a determination regarding the physical or legal condition of the Property. If the Seller desires advice regarding:  (a) past or present compliance with zoning and building code requirements; (b) legal or tax matters; (c) the physical condition of the Property; (d) this Listing Agreement; or (e) any transaction for the acquisition of the Property, the Seller's Agent and the Company strongly recommend that the Seller obtain such independent advice. If the Seller fails to do so, the Seller is acting contrary to the advice of the Company.  Any recommendations for third-party services made by the Company or the Seller's Agent do not guarantee the Seller's satisfaction in the use of those third-party services and should not be seen as a warranty of any kind as to the level of service that will be provided by the third parties.  The Seller is advised that it is up to the Seller in the Seller's sole discretion to choose third-party services that meet the needs of the Seller and not to rely on any recommendations given by the Company or the Seller's Agent.

**7.    DISPUTE RESOLUTION.** The parties agree that any dispute, arising prior to or after a closing, related to this Listing Agreement shall first be submitted to mediation through a mediation provider mutually agreed upon by the Seller and the Company. Each party agrees to bear its own costs of mediation. If mediation fails, any other remedies available at law shall apply.

**8.    ATTORNEY FEES/GOVERNING LAW.** Except as provided in Section 7, in case of the employment of an attorney in any matter arising out of this Listing Agreement, the prevailing party shall be entitled to receive from the other party all costs and attorney fees, whether the matter is resolved through court action or otherwise. If, through no fault of the Company, any litigation arises out of the Seller's employment of the Company under this Listing Agreement (whether before or after a closing), the Seller agrees to indemnify the Company and the Seller's Agent from all costs and attorney fees incurred by the Company and/or the Seller's Agent in pursuing and/or defending such action. This Listing Agreement shall be governed and construed in accordance with the laws of the State of Utah.

**9.    ADVERTISING/SELLER AUTHORIZATIONS.**  Seller authorizes the Company and the Seller's Agent to advertise the Property for sale through any printed and/or electronic media deemed necessary and appropriate by the Seller's Agent and the Company, including, but not limited to, each Multiple Listing Service (MLS) in which the Company participates. Seller agrees that any advertising the Seller intends to conduct, including print and/or electronic media, shall first be approved in writing by the Seller's Agent. Seller further agrees that the Seller's Agent and the Company are authorized to:

This form is authorized for use by Greg Miner, a member of the Park City Board of Realtors.

(a) Disclose to the MLS after Closing, the final terms and sales price for the Property consistent with the requirements of the MLS;

(b) Disclose to the MLS the square footage of the Property as obtained from (check applicable box):
[✗] County Records [  ] Appraisal [  ] Building Plans [  ] Other (explain)_____

(c) Obtain financial information from any lender or other party holding a lien or interest on the Property;

(d) Have keys to the Property, if applicable;

(e) Have an MLS or local board of Realtors® approved/endorsed security key-box installed on the Property. If Seller authorizes the Broker, or Seller's Agent, to install a non-MLS or local board of Realtors® approved/endorsed security key-box on the Property, Seller acknowledges that it may not provide the same level of security as the MLS or local board of Realtors® approved/endorsed security key-box;

(f) Hold Open-Houses at the Property;

(g) Place for sale, sold, or other similar signs ("Signs") on the Property (i.e., the only Signs on the Property shall be that of the Company);

(h) Order a Preliminary Title Report on the Property;

(i) Order a Home Warranty Plan, if applicable;

(j) Communicate with Seller for the purpose of soliciting real estate related goods and services during and after the term of this Listing Agreement; and

(k) Place the Earnest Money Deposit into an interest-bearing trust account with interest paid to the Utah Association of Realtors® Housing Opportunity Fund (UARHOF) to assist in creating affordable housing throughout the state.

**10.     PERSONAL PROPERTY.** Seller acknowledges that the Company has discussed with Seller the safeguarding of personal property and valuables located within the Property. Seller acknowledges that the Company is not an insurer against the loss of or damage to personal property. Seller agrees to hold the Company harmless from any loss or damage that might result from any authorizations given in Section 9.

**11.     ATTACHMENT.** The Data Form is incorporated into this Listing Agreement by this reference. In addition to the Data Form, there **[   ] ARE [✗] ARE NOT** additional terms contained in an Addendum attached to this Listing Agreement. If an Addendum is attached, the terms of that Addendum are incorporated into this Listing Agreement by this reference.

**12.     FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA").** The sale or other disposition of a U.S. real property interest by a foreign person is subject to income tax withholding under FIRPTA. A "foreign person" may include a *non-resident alien individual, foreign corporation, foreign partnership, foreign trust and foreign estate.* Seller warrants and represents to the Company and to the Seller's Agent, that Seller **[   ] IS [✗] IS NOT** a foreign person as defined in Section 1445 of the Internal Revenue Code and its associated regulations. If Seller is not a foreign person, Seller agrees, upon request, to deliver a certification to Buyer at closing, stating that Seller is not a foreign person. This certification shall be in the form then required by FIRPTA. If FIRPTA applies to you as the Seller, you are advised that the Buyer, or other qualified substitute may be legally required to withhold 10% of the total purchase price for the Property at closing and remit that amount to the IRS. If Seller is a foreign person as defined above, and Seller does not have a US Taxpayer Identification Number, Seller agrees to prepare to apply for a US Taxpayer Identification Number.

**13.     EQUAL HOUSING OPPORTUNITY.** The Seller and the Company shall comply with Federal, State, and local fair housing laws.

**14.     ELECTRONIC TRANSMISSION & COUNTERPARTS.** Electronic transmission (including email and fax) of a signed copy of this Listing Agreement and any addenda, and the retransmission of any signed electronic transmission, shall be the same as delivery of an original. This Listing Agreement and any addenda may be executed in counterparts.

**15.     DUE-ON-SALE.** Certain types of transactions may trigger what is commonly referred to as a "due-on-sale" clause. A "due-on-sale" clause typically states that the Seller's lender or mortgagee may call the loan due and payable in full if the Seller participates in certain types of transactions. These types of transactions may include, but are not limited to, transactions where: (a) the sale of the property does not result in the underlying debt being paid in full; (b) the parties enter into a seller-financed transaction; (c) a lease option agreement is entered into; or (d) any other unauthorized transfer of title to the Property has occurred without the lender's consent. The Seller understands that if any underlying encumbrances or mortgages on the Property contain a "due-on-sale clause," and the "due-on-sale" clause is triggered, the lender may call the entire unpaid balance of the loan immediately due.

This form is authorized for use by Greg Miner, a member of the Park City Board of Realtors.

InstanetFORMS

**16.    ENTIRE AGREEMENT.** This Listing Agreement, including the Seller's Property Condition Disclosure form and the Data Form, contain the entire agreement between the parties relating to the subject matter of this Listing Agreement. This Listing Agreement may not be modified or amended except in writing signed by the parties hereto.

**17.    EFFECTIVE DATE.** This Listing Agreement is entered into and is effective as of the date: (a) The Seller and the authorized Seller's Agent or Broker have signed this Listing Agreement; and (b) The authorized Seller's Agent or Broker has received a mutually signed copy of this Listing Agreement (the "Effective Date").

**THE UNDERSIGNED** hereby agree to the terms of this Listing Agreement.


_____    _____    _____
(Seller's Signature)    (Address/Phone)    (Date)


_____    _____    _____
(Seller's Signature)    (Address/Phone)    (Date)


ACCEPTED by the Company

by: _____    _____
     (Signature of Authorized Seller's Agent or Broker)    (Date)
     **Randal Rupert**


by: _____    _____
     (Signature of Authorized Seller's Agent or Broker)    (Date)
     **Greg Miner**


This form is COPYRIGHTED by the UTAH ASSOCIATION OF REALTORS® for use solely by its members. Any unauthorized use, modification, copying or distribution without written consent is prohibited. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION. IF YOU DESIRE SPECIFIC LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

COPYRIGHT© UTAH ASSOCIATION OF REALTORS® - 1995 – REVISED 4.30.15 – ALL RIGHTS RESERVED        UAR FORM 8

This form is authorized for use by Greg Miner, a member of the Park City Board of Realtors.

# EXHIBIT 3

Richard M. Pachulski (Chapter 11 Trustee)

Layfield & Barrett, APC
f/k/a Layfield & Wallace, APC
f/k/a The Layfield Law Firm, APC

Maximum Legal, LLC
Maximum Legal Holdings, LLC
Maximum Legal (California). LLP
Maximum Legal (Arizona) LLC
Maximum Legal (Utah), LLC
Maximum Legal (Florida), PLLC
Maximum Legal Florida, LLP
Maximum Legal Staffing, LLC
Maximum Legal Services, LLC
Philip J. Layfield a/k/a Philip S. Pesin
Christine Layfield
Layfield V, LLC
Joseph M. Barrett
The Barrett Law Firm, APC
Todd D. Wakefield
Terry Bailey
Shyam Bandepalli
Jeffery Pannebaker
Stella Havkin
Havkin & Shrago
Jeffrey B. Smith
Curd, Galindo & Smith L.L.P.
Jones Waldo Holbrook & McDonough, PC

Maximum Legal Holdings BVI
Maximum Holdings I Cyprus
Maximum Legal Costa Rica
Maximum Legal Finance BVI
Maximum IT Services BVI
L&B Buy-In Services BVI
Triallawyers.com India Pvt
Maximum Legal India Pvt
Hamilton Newstead LLC Montana

Stephen D. Stuart
Stuart & Company
Toll Creek Owners Association, Inc.
Jacob A. Watterson
Olson & Hoggan, P.C.
Jennifer Crastz

Hemar, Rousso & Heald, LLP
Wells Fargo Bank
Steven R. Skirvin
Hirschi Baer & Clayton, PLLC

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California 90067**

A true and correct copy of the foregoing document entitled (*specify*): ***APPLICATION FOR AN ORDER AUTHORIZING AND APPROVING THE EMPLOYMENT OF KW PARK CITY KELLER WILLIAMS REAL ESTATE TO MARKET AND SELL REAL PROPERTY IN PARK CITY, UTAH; DECLARATIONS OF RICHARD M. PACHULSKI AND GREG MINER IN SUPPORT THEREOF*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **July 29, 2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **July 29, 2018**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **July 29, 2018**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY**
Honorable Neil W. Bason
U.S. Bankruptcy Court
255 E. Temple Street, Room 940
Los Angeles, CA  90012
Attn: Mail Room Clerk-Judges  Copies

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 29, 2018 | Myra Kulick | /s/ Myra Kulick |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:308358.5 51414/002

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

**Mailing Information for Case 2:17-bk-19548-NB**

- *Jason Balitzer     jbalitzer @sulmeyerlaw.com,*
  *jbalitzer@ecf.inforuptcy.com;dwalker@ecf.inforuptcy.com;kmccamey@sulmeyerlaw.com*
- *Moises S Bardavid    mbardavid@hotmail.com*
- *Daniel I Barness     daniel@barnesslaw.com*
- *James W Bates     jbates@jbateslaw.com*
- *Martin J Brill     mjb@lnbrb.com*
- *Baruch C Cohen     bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com*
- *Jennifer Witherell Crastz    jcrastz@hemar-rousso.com, DBrotman@hrhlaw.com*
- *Beth Gaschen     bgaschen@wgllp.com,*
  *kadele@wgllp.com;vrosales@wgllp.com;cbmeeker@gmail.com;cyoshonis@wgllp.com*
- *Jeffrey I Golden     jgolden@wgllp.com, kadele@wgllp.com;vrosales@lwgfllp.com;cbmeeker@gmail.com*
- *James KT Hunter     jhunter@pszjlaw.com*
- *Steven J Kahn     skahn@pszyjw.com*
- *Joseph M Kar     jkar@mindspring.com*
- *Richard W Labowe     richardwlabowe@gmail.com, llhlaw1631@aol.com*
- *Dare Law     dare.law@usdoj.gov*
- *David W. Meadows     david@davidwmeadowslaw.com*
- *Rana Nader     rnader@naderlawgroup.com, monique@naderlawgroup.com*
- *Joel A Osman     osman@parkermillsllp.com, sanders@parkermillsllp.com*
- *Malhar S Pagay     mpagay@pszjlaw.com, mpagay@pszjlaw.com*
- *Brian A Paino     bpaino@mcglinchey.com, crico@mcglinchey.com;selizondo@mcglinchey.com*
- *Michael F Perlis     mperlis@lockelord.com,*
  *merickson@lockelord.com,jhagey@lockelord.com,RRJohnson@lockelord.com,bmungaray@lockelord.com*
- *Michael F Perlis     ,*
  *merickson@lockelord.com,jhagey@lockelord.com,RRJohnson@lockelord.com,bmungaray@lockelord.com*
- *Hamid R Rafatjoo     hrafatjoo@raineslaw.com, bclark@raineslaw.com;cwilliams@raineslaw.com*
- *Faye C Rasch     frasch@wgllp.com, kadele@wgllp.com;tziemann@wgllp.com*
- *Daniel H Reiss     dhr@lnbyb.com, dhr@ecf.inforuptcy.com*
- *Damion Robinson     dr@agzlaw.com*
- *Lindsey L Smith     lls@lnbyb.com, lls@ecf.inforuptcy.com*
- *Daniel A Solitro     dsolitro@lockelord.com, ataylor2@lockelord.com*
- *United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov*
- *Alan J Watson     alan.watson@hklaw.com, rosanna.perez@hklaw.com*

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**