Debra I. Grassgreen (CA Bar No. 169978)
Malhar S. Pagay (CA Bar No. 189289)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail: dgrassgreen@pszjlaw.com
         mpagay@pszjlaw.com

Attorneys for Richard M. Pachulski, Chapter 11 Trustee

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No. 2:17-bk-19548-NB |
| LAYFIELD & BARRETT, APC, | Chapter 11 |
| Debtor. | **MOTION FOR ORDER (1) AUTHORIZING SALE OF REAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 363(B) AND (F); (2) APPROVING BUYER AS GOOD-FAITH PURCHASER PURSUANT TO 11 U.S.C. § 363(M); AND (3) AUTHORIZING PAYMENT OF UNDISPUTED LIENS AND OTHER ORDINARY COSTS OF SALE; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF RICHARD M. PACHULSKI AND RANDAL RUPERT IN SUPPORT THEREOF** |
| | [2720 Homestead Road, Units 210, and 220, Park City, Utah 84098] |
| | Date:    April 2, 2019[1] |
| | Time:    2:00 p.m. |
| | Place:   United States Bankruptcy Court |
| | Edward R. Roybal Federal Building |
| | 255 E. Temple Street, Ctrm. 1545 |
| | Los Angeles, California 90012 |
| | Judge:  Honorable Neil W. Bason |

[1] Hearing date and time scheduled and order shortening time granted during hearing on related matter conducted on March 5, 2019.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**TO THE HONORABLE NEIL W. BASON, UNITED STATES BANKRUPTCY JUDGE;
THE OFFICE OF THE UNITED STATES TRUSTEE; AND OTHER PARTIES IN
INTEREST:**

Richard M. Pachulski, the chapter 11 trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Layfield & Barrett, APC (the "Debtor" or "L&B"), hereby moves (the "Motion") this Court for entry of an order (1) authorizing him to sell real property commonly known as Units 210 and 220 of Toll Creek Village 2 (Parcel Nos. TCVC-2-210 and TCVC-2-220), an office condominium located at 2720 Homestead Road, Park City, Utah 84098 (the "Property"), to Allegretti & Company (the "Buyer") free and clear of all liens, claims and encumbrances pursuant to sections 363(b) and (f) of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"); (2) approving the Buyer as a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code; and (3) authorizing the payment of undisputed liens and other ordinary costs of sale.  In support of the Motion, the Trustee submits the memorandum of points and authorities and the declarations of Richard M. Pachulski and Randal Rupert annexed hereto,[2] and respectfully represents as follows:

---

[2] A declaration of the authorized representative of the Buyer shall be submitted prior to the hearing regarding the Motion.

DOCS_LA:320257.1 51414/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

By this Motion, the Trustee is seeking authority to sell two office suites, Suites 210 and 220, located at Toll Creek Village 2, an office condominium complex located at 2720 Homestead Road, Park City, Utah 84098.  Through fraudulent transfer litigation, the Trustee recovered the Property, another suite at Toll Creek Village 2 (Suite 200, collectively, with the Property, the "Office Suites")) that was the subject of a prior sale authorized by the Court which closed on February 22, 2019, and a storage unit (the "Storage Unit"), all of which previously were transferred by Philip Layfield ("Layfield"), the Debtor's former principal, from the Debtor to an entity under his control.  After being marketed by the Trustee's broker over the past six months, the Trustee has accepted an offer to purchase Suites 210 and 220, subject to approval by this Court.

## II.

## STATEMENT OF FACTS

**A.    The Commencement of the Bankruptcy Case and Appointment of the Trustee**

On August 3, 2017, petitioning creditors The Dominguez Firm, a law firm that previously has referred matters to the Debtor, and Mario Lara, Nayazi Reyes and Maria A. Rios, each a former client of the Debtor (the "Petitioning Creditors"), filed an involuntary petition for relief under chapter 7 of the Bankruptcy Code against L&B, commencing the above-captioned bankruptcy case (the "Case").  That same day, the Petitioning Creditors filed an *Emergency Motion for Appointment of an Interim Trustee Under 11 U.S.C. § 303(g) and Granting Emergency Relief* [Docket No. 3][3] (the "Trustee Motion").  In the Trustee Motion, the Petitioning Creditors asserted, among other allegations, that "[s]ettlement proceeds have not been distributed and may no longer exist, vendors and other creditors have not been paid and clients are effectively unrepresented in some 80 pending cases," and that, consequently, the appointment of a trustee is "essential to protect and preserve

---

[3] Pursuant to Rule 201 of the Federal Rules of Evidence, the Trustee respectfully requests that the Court take judicial notice of all pleadings, orders and other matters of public record reflected in the Court's own docket.

DOCS_LA:320257.1 51414/002

property of the … estate and to prevent concealment, waste, loss or conversion of the assets of the estate …."  Trustee Motion at 1.

In response to the Trustee Motion, the Debtor filed a *Motion to Convert Case Under 11 U.S.C. §§ 706(a) or 1112(a)* on August 8, 2017 [Docket No. 19] (the "Conversion Motion"), seeking to convert the Case to one under chapter 11 of the Bankruptcy Code.  The Court entered orders granting the Conversion Motion [Docket No. 25], and denying the Trustee Motion [Docket No. 24].

On August 16, 2017, the Debtor, Petitioning Creditors, and secured creditor, Advocate Capital, Inc. ("Advocate Capital"), entered into a *Stipulation for the Appointment of a Chapter 11 Trustee* [Docket No. 38], which the Court approved by order on August 17, 2017 [Docket No. 42].

On August 21, 2017, the United States Trustee (the "UST") filed its *Notice of Appointment of Chapter 11 Trustee*, appointing Richard M. Pachulski as Chapter 11 Trustee in the Case [Docket No. 51].  Also on August 21, 2017, the UST filed an *Application for Order Approving Appointment of Chapter 11 Trustee* [Docket No. 53], which application was granted by the Court's order entered the following day [Docket No. 56].

On August 28, 2017, the Trustee filed his *Acceptance of Appointment as Chapter 11 Trustee* [Docket No. 63].

**B.    Wells Fargo Bank Motions for Relief from Stay**

On November 21, 2017, Wells Fargo Bank, National Association ("WFB"), filed motions for relief from the automatic stay with respect to the Office Suites, including the Property [Docket No. 143] ("WFB RFS Motion"), Suite 200 [Docket No. 144], as well as another property located in Arizona [Docket No. 142].  In the WFB RFS Motion, WFB asserted a total claim against the Property of $223,205.00, another encumbrance on the Property arising from condominium association fees in the amount of $2,170.00, and a fair market value of $300,000.00.  The hearing regarding the WFB RFS Motion has been continued from time to time and currently is set to be heard at the same date and time as the hearing regarding this Motion.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**C.    The Recovery and Revesting of the Property in the Estate**

On April 7, 2017, Layfield, in his stated capacity as President of L&B, executed quitclaim deeds transferring the title to the Office Suites (the "Transfers") to Layfield V, LLC ("Layfield V"), an entity owned by Layfield.

On or about February 22, 2018, in order to avoid the Transfers and recover the Office Suites for the benefit of the Estate, the Trustee filed a complaint in this Court for the avoidance of fraudulent transfers and unjust enrichment against Layfield and Layfield V (together, the "Defendants"), commencing an adversary proceeding bearing adversary number 2:18-ap-01050-NB (the "Adversary Proceeding").  The Defendants failed to respond to the Adversary Proceeding. The Chapter 11 Trustee then requested an entry of default against each of the Defendants [AD Docket Nos. 4 and 5].  On March 29, 2018, the Clerk of this Court entered defaults against both Defendants [AD Docket Nos. 6 and 7].  On May 1, 2018, Plaintiff filed a *Motion for Default Judgment Under LBR 7055-1* (the "Default Judgment Motion") against Layfield and Layfield V [AD Docket No. 12]. On May 25, 2018, this Court granted the Default Judgment Motion and entered a default judgment (the "Judgment") against both Defendants, and in favor of the Plaintiff [AD Docket No. 17] in the Adversary Proceeding, resulting in the avoidance of the Transfers and the re-vesting of the Property in L&B's bankruptcy estate.[4]

**D.    The Employment of the Broker and Marketing of the Property**

On July 30, 2018, the Trustee filed an *Application for an Order Authorizing and Approving the Employment of KW Park City Keller Williams Real Estate to Market and Sell Real Property in Park City, Utah* [Docket No. 310] (the "Utah Broker Employment Application"), pursuant to which the Trustee sought to employ KW Park City Keller Williams Real Estate ("KW") as brokers to market and sell the Property.  On August 21, 2018, this Court granted the Utah Broker Employment Application.

---

[4] After determining that the Storage Unit is separately parceled in the Summit County, Utah, property records (Parcel No. TCVC-A-2AM), the Trustee and the chapter 7 trustee of the Layfield bankruptcy estate entered into a stipulation [AD Docket Nos. 38, 39] agreeing that judgment should be entered in the Adversary Proceeding revesting title to the Storage Unit in the L&B Estate [AD Docket No. 40].

DOCS_LA:320257.1 51414/002

In order to market the Office Suites, KW listed them on the predominant listing platforms for the Park City, Utah, commercial market (Park City MLS; UtahRealEstate.com) as well as CoStar's national commercial listing service, provided tours of the premises, and, to date, has interacted substantively with approximately 18 prospective buyers and/or their agents regarding the potential sale of one or more of the Office Suites (and the Storage Unit).  KW also provided potential buyers and their representatives with a general term sheet that provides guidance to those parties as to sale terms that would be preferred by the Trustee and to assist them in understanding the bankruptcy sales process.

On February 5, 2019, the Court approved, and on February 22, 2019, the Trustee closed, a sale transaction relating to Suite 200.

**E.**    **The Buyer's Offer**

As a result of KW's marketing of the Property, on March 5, 2019, the Trustee and Buyer entered into a Purchase and Sale Agreement for Commercial Real Estate, as amended by addenda numbered 1 and 2 (the "PSA").  Among other terms, the PSA provides for the sale of the Property to the Buyer for a purchase price of $275,000.00 "subject to … higher and better bids through and including the hearing to approve the sale."  A true and correct copy of the PSA is attached hereto as **Exhibit "A"**.

Although the Trustee previously had received offers to acquire all of the Office Suites and the Storage Unit together, such offers:  (i) were insufficient in amount to provide material benefit to the Estate; (ii) expired or were withdrawn after one or more counteroffers were exchanged; (iii) were from potential buyers who included unacceptable contingencies in their offers or who presented a risk of closing a transaction in a timely manner; and/or (iv) were not acceptable for other reasons. Consequently, the Trustee also entertained separate offers for individual Office Suites, leading to the consummation of the sale of Suite 200 last month.

**F.**    **The Trustee's Arrangements with Lienholders**

Two parties assert liens against the Property:  WFB and the office condominium owners' association, Toll Creek Village Owners Association ("TCVOA").  In considering the Buyer's offer to purchase the Property, the Trustee determined that satisfying the face amount of such asserted

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

liens, together with taxes, brokers' commissions and other customary costs of sale, likely would result in minimal or no net proceeds payable to the Estate.  Accordingly, at the hearing regarding the WFB RFS Motion conducted on March 5, 2019, counsel for the Trustee and WFB advised the Court that they had entered into an arrangement in respect of the proposed transaction with the Buyer, subject to facilitation by the Court, whereby WFB agreed to a discounted pay-off amount in exchange for the imposition of certain deadlines and conditions and the setting of a hearing regarding this Motion on shortened time.  Subsequent to the hearing and prior to the filing of this Motion, the Trustee entered into an agreement with TCVOA also to accept a discounted pay-off amount on account of its asserted lien.

As a result of these arrangements, the proposed sale of the Property to the Buyer has the consent of the parties asserting liens against the Property, creates a net benefit to the Estate and is in the best interests of the Estate and its creditors.

### III.

### <u>ARGUMENT</u>

**A.    <u>The Trustee May Sell Property of the Estate Pursuant to 11 U.S.C. § 363(b)</u>**

11 U.S.C. § 363(b) empowers a trustee to "use, sell or lease . . . other than in the ordinary course of business, property of the estate."  In considering a proposed transaction to use, sell, or lease, courts look at whether the transaction is in the best interests of the estate based on the facts and history of the case.  *In re America West Airlines,* 166 B.R. 908, 912 (Bankr. D. Ariz. 1994) (*citing In re Lionel Corp.,* 722 F.2d 1063, 1071 (2d Cir. 1983)).  This requires examination of the "business justification" for the proposed sale.  *In re 240 North Brand Partners, Ltd.,* 200 B.R. 653 (B.A.P. 9th Cir. 1996); *In re Wilde Horse Enterprises, Inc.,* 136 B.R. 830 (Bankr. C.D. Cal. 1991); *In re Ernst Home Center, Inc.,* 209 B.R. 974 (Bankr. W.D. Wash. 1997).

In approving any sale outside the ordinary course of business, there must be a sufficient business reason for the sale and it must be in the best interest of the estate.  Here, the proposed transaction has the legitimate business justification of satisfying claims against and providing value to the Estate.  Also, as set forth in the PSA, the sale is subject to overbids, permitting the Trustee to consider potentially higher and better offers up to the time of the hearing regarding the Motion,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

thereby further ensuring that the resulting sale of the Property will be at the highest and best price

and be in the best interest of the Estate.

**B.    The Trustee May Sell the Property Free and Clear of Liens, Claims and Interests**

The Trustee seeks authority to sell the Property free and clear of all liens and encumbrances

pursuant to section 363(f) of the Bankruptcy Code, which provides:

> The Trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if -
>
> (1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2)    such entity consents;
>
> (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)    such interest is in bona fide dispute; or
>
> (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  Because subsections (1) through (5) of Bankruptcy Code § 363(f) are written in

the disjunctive, authority to sell the Property free and clear of any and all interests therein should be

granted if any of the conditions are met with respect to each interest holder.

With respect to the proposed sale of the Property to the Buyer, all liens asserted against the

Property will attach to the net proceeds of the sale with the same validity, enforceability, and

priority, if any, as existed with respect to the assets sold as of the date of the commencement of this

chapter 11 Case and be paid through the proposed transaction.  The purchase price proposed by the

Buyer exceeds the aggregate amount of liens asserted against the Property.  Also, both lienholders

are consenting to and are accepting discounted pay-offs in connection with the proposed sale.

**C.    The Buyer Should Be Deemed a "Good Faith Purchaser" Pursuant to 11 U.S.C. § 363(m)**

Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does

> not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

A good faith buyer "is one who buys 'in good faith' and 'for value.'" *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992) (*citing In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986)). "[L]ack of good faith is [typically] shown by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *Id. (quoting Community Thrift & Loan v. Suchy (In re Suchy),* 786 F.2d 900, 902 (9th Cir. 1985)). Here, the Trustee has not been made aware of any connection between the Buyer or his broker, on the one hand, and the Trustee, his professionals, the Debtor or its insiders, on the other hand. Negotiations regarding the sale of the Property have taken place at arm's-length directly between KW and the broker for the Buyer. Moreover, the sale will be conducted in a commercially reasonable manner, subject to overbids, following appropriate notice. In connection with this Motion, the Trustee will submit a declaration of the Buyer's authorized representative disclosing connections, if any, between the Buyer and parties in interest. Based on such facts and circumstances, the Trustee believes that this Court can properly determine the Buyer as a "good faith purchaser" pursuant to 11 U.S.C. § 363(m).

## D.    **Adequate Notice of the Sale**

As discussed at the March 5 hearing regarding the WFB RFS Motion, the Trustee is providing notice of the sale to a limited number of parties designated by the Court: the Office of the United States Trustee, all parties receiving ECF and special notice in this Case, all parties asserting an interest in the Property, Layfield and the chapter 7 trustee appointed in Layfield's bankruptcy case, as well as to parties who previously have expressed an interest in purchasing the Property. Further, the proposed sale of the Property to the Buyer is subject to overbids, and the ability of other potentially interested parties to provide competing offers for the Property ensures that the proposed sale will not result in a lucrative "windfall" to the Buyer at the expense of creditors of the Estate. *See In re Onouli Kona Land Co.,* 846 F.2d 1170 (9th Cir. 1988).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**E.      The Court Should Waive the Stay Imposed by Bankruptcy Rule 6004(h)**

Pursuant to Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).

The Trustee's goal is to efficiently administer the Estate for the benefit of creditors.  An expedient conclusion to the sale process will inure to the benefit of the Estate and its creditors by limiting any continuing liabilities associated with the Property.  Waiver of Bankruptcy Rule 6004(h) will permit the sale transaction(s) described herein to take place as early as possible under the circumstances.

## IV.

## CONCLUSION

Based on the foregoing, the Trustee respectfully requests that this Court enter an order:

1.      Granting the Motion in its entirety;

2.      Approving the terms of the PSA;

3.      Authorizing, but not directing, the Trustee to sell the Property, together with any ancillary rights and related property, to the Buyer, or an overbidder, "as is," "where is," "with all faults," and without warranty or recourse, but free and clear of any and all liens, claims, and interests, pursuant to 11 U.S.C. §§ 363(b) and (f);

4.      Determining that the Buyer is a "good faith purchaser" pursuant to 11 U.S.C. § 363(m);

5.      Attaching to the net sales proceeds any unpaid portion of the liens on the Property sold in the same value, priority and scope as such liens existed as of the Petition Date;

6.      Reserving to the Trustee all rights to object to the validity, scope and priority of all disputed liens, claims and interests;

7.      Authorizing the Trustee to take any and all necessary actions to consummate the sale transactions described herein;

8.      Authorizing the Trustee to pay, through escrow, from the proceeds of the sale transactions described herein and without further order of the Court, any escrow fees, title insurance

9

premiums and other ordinary and typical closing costs and expenses payable by the Trustee pursuant

to the PSA or in accordance with local custom;

9.      Waiving any requirements for lodging periods of the order approving this Motion

imposed by any other applicable bankruptcy rules;

10.     Waiving the stay of the order approving this Motion imposed by Federal Rule of

Bankruptcy Procedure 6004(h) and any other applicable rules; and

11.     For such other and further relief as the Court may deem just and proper.


Dated:  March 19, 2019                    PACHULSKI STANG ZIEHL & JONES LLP


                                          By:   /s/ Malhar S. Pagay

                                          Attorneys for Richard M. Pachulski, Chapter 11
                                          Trustee

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## DECLARATION OF RICHARD M. PACHULSKI

I, Richard M. Pachulski, declare as follows:

1.      I am the duly appointed chapter 11 trustee (the "Trustee") in the bankruptcy case ("Case") of Layfield & Barrett, APC ("L&B" or the "Debtor").  I also am an attorney duly admitted to practice before the courts of the State of California and this Court, among other jurisdictions.

2.      I submit this declaration in support of the *Motion for Order (1) Authorizing Sale of Real Property Free and Clear of All Liens, Claims And Encumbrances Pursuant to 11 U.S.C. §§ 363(b) and (f); (2) Approving Buyer as Good-Faith Purchaser Pursuant to 11 U.S.C. § 363(m); and (3) Authorizing Payment of Undisputed Liens and Other Ordinary Costs of Sale* (the "Motion"). Capitalized terms used but not defined herein shall have the same meanings as set forth in the Motion.

3.      Unless otherwise indicated, all facts set forth in this Declaration are based on either (a) my personal knowledge (my own or that gathered by others rendering services to the bankruptcy estate who report to me), (b) my review of relevant documents, or (c) my opinion based upon my experience and knowledge of the circumstances as described in the Motion.  If I were called to testify thereto, I could and would competently do so.

4.      I understand that, in order to market the Office Suites, my broker, KW, listed them on the predominant listing platforms for the Park City, Utah, commercial market (Park City MLS; UtahRealEstate.com) as well as CoStar's national commercial listing service, provided tours of the premises, and, to date, has interacted substantively with approximately 18 prospective buyers and/or their agents regarding the potential sale of one or more of the Office Suites (and the Storage Unit). KW also provided potential buyers and their representatives with a general term sheet that provides guidance to those parties as to preferred sale terms and to assist them in understanding the bankruptcy sales process.

5.      On February 5, 2019, the Court approved, and on February 22, 2019, we closed, a sale transaction relating to Suite 200.

6.      As a result of KW's marketing of the Property, on March 5, 2019, the Buyer and I entered into a Purchase and Sale Agreement for Commercial Real Estate, as amended by addenda

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

numbered 1 and 2 (the "PSA").  Among other terms, the PSA provides for the sale of the Property to

the Buyer for a purchase price of $275,000.00 "subject to … higher and better bids through and

including the hearing to approve the sale."  A true and correct copy of the PSA is attached hereto as

**Exhibit "A"**.

7.     Although I previously had received offers to acquire all of the Office Suites and the

Storage Unit together, such offers:  (a) were insufficient in amount to provide material benefit to the

Estate; (b) expired or were withdrawn after one or more counteroffers were exchanged; (c) were

from potential buyers who included unacceptable contingencies in their offers or who presented a

risk of closing a transaction in a timely manner; and/or (d) were not acceptable for other reasons.

Consequently, I also entertained separate offers for individual Office Suites, leading to the

consummation of the sale of Suite 200 last month.

8.     To my knowledge, two parties assert liens against the Property:  WFB and the office

condominium owners' association, TCVOA.  In considering the Buyer's offer to purchase the

Property, I determined that satisfying the face amount of such asserted liens, together with taxes,

brokers' commissions and other customary costs of sale, likely would result in minimal or no net

proceeds payable to the Estate.  Accordingly, at the hearing regarding the WFB RFS Motion

conducted on March 5, 2019, my counsel and counsel for WFB advised the Court that we had

entered into an arrangement in respect of the proposed transaction with the Buyer, subject to

facilitation by the Court, whereby WFB agreed to a discounted pay-off amount in exchange for the

imposition of certain deadlines and conditions and the setting of a hearing regarding this Motion on

shortened time.  Subsequent to the hearing and prior to the filing of this Motion, I entered into an

agreement with TCVOA also to accept a discounted pay-off amount on account of its asserted lien.

9.     As a result of these arrangements, the proposed sale of the Property to the Buyer has

the consent of the parties asserting liens against the Property, creates a net benefit to the Estate and is

in the best interests of the Estate and its creditors.

10.     I believe that the proposed transaction described in the Motion has the legitimate

business justification of satisfying claims against and providing value to the Estate.  Also, as set

forth in the PSA, the sale is subject to overbids, permitting me to consider potentially higher and

DOCS_LA:320257.1 51414/002

better offers up to the time of the hearing regarding the Motion, thereby further ensuring that the resulting sale of the Property will be at the highest and best price and be in the best interest of the Estate.

11.    I have not been made aware of any connection between the Buyer or his broker, on the one hand, and me, my professionals, the Debtor or its insiders, on the other hand.  Negotiations regarding the sale of the Property have taken place at arm's-length directly between my broker, KW, and the broker for the Buyer.  Moreover, the sale will be conducted in a commercially reasonable manner, subject to overbids, following appropriate notice.  Based on such facts and circumstances, I believe that this Court can properly determine the Buyer as a "good faith purchaser" pursuant to 11 U.S.C. § 363(m).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 19th day of March, 2019, at Los Angeles, California.

_____
Richard M. Pachulski

DOCS_LA:320257.1 51414/002

## DECLARATION OF RANDAL RUPERT

I, Randal Rupert, declare:

1.      I am employed as a Principal Broker for KW Park City Keller Williams Real Estate ("KW"), located at 1750 Sun Peak Drive, Park City, Utah 84098, and am one of the real estate agents at KW which the Trustee has employed for the purpose of listing and selling the real property known as Units 200, 210 and 220 of Toll Creek Village 2, an office condominium project located at 2720 Homestead Road, Park City, Utah 84098 (the "Office Suites").

2.      I submit this declaration in support of the *Motion for Order (1) Authorizing Sale of Real Property Free and Clear of All Liens, Claims And Encumbrances Pursuant to 11 U.S.C. §§ 363(b) and (f); (2) Approving Buyer as Good-Faith Purchaser Pursuant to 11 U.S.C. § 363(m); and (3) Authorizing Payment of Undisputed Liens and Other Ordinary Costs of Sale* (the "Motion"). Capitalized terms used but not defined herein shall have the same meanings as set forth in the Motion.

3.      Unless otherwise indicated, all facts set forth in this Declaration are based on either (a) my personal knowledge (my own or that gathered by others rendering services to KW who report to me), (b) my review of relevant documents, or (c) my opinion based upon my experience and knowledge of the circumstances as described in the Application.  If I were called to testify thereto, I could and would competently do so.

4.      I am a Utah licensed real estate Broker and I am experienced in selling residential and commercial properties.  I was first licensed as a Sales Agent in 2006.  I have been a Broker since 2009.

5.      I have been involved in real estate investment and management in the State of Utah since 2002 and have worked as the Principal Broker for KW Park City Keller Williams Real Estate in Park City, Utah, since 2017.

6.      In order to market the Office Suites, KW listed them on the predominant listing platforms for the Park City, Utah, commercial market (Park City MLS; UtahRealEstate.com) as well as CoStar's national commercial listing service, provided tours of the premises, and, to date, has interacted substantively with approximately 18 prospective buyers and/or their agents regarding the

14

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

potential sale of one or more of the Office Suites (and the Storage Unit).  We also provided potential

buyers and their representatives with a general term sheet that provides guidance to those parties as

to sale terms that would be preferred by the Trustee and to assist them in understanding the

bankruptcy sales process.

      7.     In the instant case, I am not aware of any connection between the Buyer or his

broker, on the one hand, and the Trustee, KW, his counsel, the Debtor or its insiders, on the other

hand.  Negotiations regarding the sale of the Property have taken place at arm's-length directly

between KW and the broker for the Buyer.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed this 18th day of March, 2019, at Park City, Utah.

Randal Rupert

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

15

# **EXHIBIT A**

# ADDENDUM/COUNTEROFFER NO. **TWO (2)** TO PURCHASE AGREEMENT

**ADDENDUM [ X ]    COUNTEROFFER [ ]** to that PURCHASE AND SALE AGREEMENT FOR COMMERCIAL REAL ESTATE (the "**PSA**") with a Reference Date of <u>February 22, 2019</u> including all other Addenda and Counteroffers thereto, between Buyer and Seller (as described in the Fundamental Terms) pertaining to the following Property:

This is an Addendum for the purchase of real property commonly known as 2720 Homestead Road, Park City, Utah 84098, Suites 210 (TCVC-2-210) and 220 (TCVC-2-220) (the "Property"), by **Allegretti & Company** (the "Buyer") from **Richard M. Pachulski, solely in his capacity as the Chapter 11 Trustee for the bankruptcy estate of Layfield & Barrett, APC** (Bankr. C.D. Cal. Case No. 2: 17-bk-19548-NB) (the "Seller").

To the extent the provisions of this Addendum modify, amend or conflict with, any provisions of any other offer, counteroffer, addenda or listing regarding the Property, the provisions of this Addendum shall control.

1.  The purchase price for the Property will be **$275,000**. The Earnest Money Deposit shall be $27,500 which will be deposited in escrow and applied toward the Purchase Price. A cashier's check or wire in that amount, together with an executed copy of this Addendum, shall be delivered to the Escrow Company identified below within three (3) business days of acceptance of this Addendum by the Buyer.

2.  The Buyer shall have a due diligence period until no later than **twenty (20) business days** after acceptance of this Addendum. After that period, any sale pursuant to this Addendum shall be without any further contingencies on the part of the Buyer.

3.  The Buyer, at his/her/its sole expense, shall have until 5:00 p.m., prevailing Property local time, twenty (20) business days after acceptance of this Addendum (the "Due Diligence Deadline"), to obtain all investigations, appraisals, and tests and complete all due diligence which the Buyer believes to be required for the purchase of the Property. The Buyer, at the end of that period, may advise the Seller in writing of his/her election to withdraw from this agreement and receive a full refund of the Earnest Money Deposit; otherwise, silence shall be deemed as acceptance. After the Due Diligence Deadline but prior to the Seller's filing of the motion to approve this Addendum described in the immediately following paragraph, should Buyer withdraw from or otherwise fail to consummate this agreement for any reason other than Seller's withdrawal from the agreement, Buyer shall be entitled to a refund of the Earnest Money Deposit less fifty percent (50%) of the amount of the Earnest Money Deposit, which amount shall become non-refundable and be forfeited to Seller. Thereafter, the provisions of paragraph 4, hereinbelow, shall apply.

4.  In the event the Buyer fails to perform under this Addendum by reason of the Buyer's default, Seller may retain the Earnest Money Deposit as liquidated damages.

_____(Buyer's initials).

To the extent the provisions of this Addendum/Counteroffer modify or conflict with any provisions of the PSA or any other prior Addenda or Counteroffer, the provisions of this Addendum/Counteroffer shall control.  All other provisions of the PSA and all other Addenda and Counteroffers not modified by this Addendum/Counteroffer shall remain in full force and effect; provided, however, that to the extent the provisions of any Addendum conflict with the provisions of any other Addendum, the Addendum most recently executed by all of the parties will control.

Buyer or Seller, as applicable, shall have until 5:00 P.M. Mountain Time on <u>March 5, 2019</u> to accept or reject, and deliver, this Addendum.

| | | |
|---|---|---|
| *Joseph A. Allegretti* | Joseph A Allegretti | 3/4/2019 |
| (Signature of Authorized Signer) | (Print Name of Authorized Signer) | (Date) |

Seller's Initials ____ Date 7/8/15        Buyer's Initials ____ Date 3/4/2019

Copyright © 2017, CCIM Utah. All rights reserved.  Permission is granted to use it, but not to change it.  If you have concerns about the veracity of the copy with which you are working, go to http://www.utahccimchapter.com/forms, where an original version of the form is available.

_____          _____          _____
(Signature of Authorized Signer)                (Print Name of Authorized Signer)          (Date)

---

### ACCEPT / REJECTION / COUNTER OFFER

**CHECK ONE**
[ ✔ ] **ACCEPTANCE**: [ ✔ ] Seller [ ] Buyer ACCEPTS the foregoing ADDENDUM.
[ ] **COUNTER OFFER**: [ ] Seller [ ] Buyer presents as a COUNTER OFFER the terms of attached Addendum
No. ____.
[ ] **REJECTION**: [ ] Seller [ ] Buyer REJECTS the foregoing ADDENDUM.

_____          _____          _____
(Signature of Authorized Signer)                (Print Name of Authorized Signer)          (Date)


_____          _____          _____
(Signature of Authorized Signer)                (Print Name of Authorized Signer)          (Date)


Seller's Initials _____ Date _____          Buyer's Initials _____ Date _____

Copyright © 2017, CCIM Utah. All rights reserved. Permission is granted to use it, but not to change it. If you have concerns about the veracity of the copy with which you are working, go to
http://www.utahccimchapter.com/forms, where an original version of the form is available.

Utah
CCIM Chapter

### ADDENDUM/COUNTEROFFER NO. ___ONE (1)___ TO PURCHASE AGREEMENT

ADDENDUM [_X_] COUNTEROFFER [ ] to that PURCHASE AND SALE AGREEMENT FOR COMMERCIAL REAL ESTATE (the "**PSA**") with a Reference Date of __February 22, 2019__, including all other Addenda and Counteroffers thereto, between Buyer and Seller (as described in the Fundamental Terms) pertaining to the following Property:

This is an Addendum for the purchase of real property commonly known as 2720 Homestead Road, Park City, Utah 84098, Suites 210 (TCVC-2-210) and 220 (TCVC-2-220) (the "Property"), by a buyer (the "Buyer") from **Richard M. Pachulski, solely in his capacity as the Chapter 11 Trustee for the bankruptcy estate of Layfield & Barrett, APC** (Bankr. C.D. Cal. Case No. 2:17-bk-19548-NB) (the "Seller").

To the extent the provisions of this Addendum modify, amend or conflict with, any provisions of any other offer, counteroffer, addenda or listing regarding the Property, the provisions of this Addendum shall control.

1. The Seller is **Richard M. Pachulski, solely in his capacity as the Chapter 11 Trustee for the bankruptcy estate of Layfield & Barrett, APC.** Notices to be given at:
   c/o Pachulski Stang Ziehl & Jones LLP
   10100 Santa Monica Blvd.
   13th Floor
   Los Angeles, CA 90067-4003
   ATTN: Malhar S. Pagay, Esq.

2. The Buyer shall have a due diligence period until no later than **fifteen (15) days** after acceptance of this Addendum. After that period, any sale pursuant to this Addendum shall be without any further contingencies on the part of the Buyer.

3. The purchase price for the Property will be **$295,000.** The Earnest Money Deposit shall be $29,500 which will be deposited in escrow and applied toward the Purchase Price. A cashier's check or wire in that amount, together with an executed copy of this Addendum, shall be delivered to the Escrow Company identified below within three (3) business days of acceptance of this Addendum by the Buyer.

4. The escrow company with respect to the sale of the Property is:
   Summit Title and Escrow (the "Escrow Company")
   Shellie Wilkins, Escrow Officer
   Park City, Utah 84098
   Tel: (435) 658-4889
   Email: shellie@summitescrowandtitle.com

5. The Buyer, at his/her/its sole expense, shall have until 5:00 p.m., prevailing Property local time, fifteen (15) days after acceptance of this Addendum (the "Due Diligence Deadline"), to obtain all investigations, appraisals, and tests and complete all due diligence which the Buyer believes to be required for the purchase of the Property. The Buyer, at the end of that period, may advise the Seller in writing of his/her election to withdraw from this agreement and receive a full refund of the Earnest Money Deposit; otherwise, silence shall be deemed as acceptance. After the Due Diligence Deadline but prior to the Seller's filing of the motion to approve this Addendum described in the immediately following paragraph, should Buyer withdraw from or otherwise fail to consummate this agreement for any reason other than Seller's withdrawal from the agreement, Buyer shall be entitled to a refund of the Earnest Money Deposit less fifty percent (50%) of the amount of the Earnest Money Deposit, which amount shall become non-refundable and be forfeited to Seller. Thereafter, the provisions of paragraph 14, hereinbelow, shall apply.

6. Upon removal or waiver of the due diligence contingency as set forth in above paragraph, hereinabove, the Seller shall file a motion to approve this Addendum and the transactions described herein with the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"). The closing shall take place not more than ten (10) days after the entry of order granting such motion.

7. The Buyer acknowledges that he/she/it is familiar with the Property and that the Buyer has viewed the Property. The Seller and/or Seller's real estate broker have not inspected and will not inspect the Property or determine its condition, fitness or use for any particular purpose nor will provide any written disclosures, guarantees or warranties of any kind. Seller and Seller's agent are exempt from complying with requirements of any state laws, ordinances or regulations relating to disclosures upon transfer of real property. Seller makes no disclosures in connection with the Property.

Seller's Initials _____ Date _____ Buyer's Initials _____ Date _____

Copyright © 2017, CCIM Utah. All rights reserved. Permission is granted to use it, but not to change it. If you have concerns about the veracity of the copy with which you are working, go to http://www.utahccimchapter.com/forms, where an original version of the form is available.

8. Any sale of the Property shall be "as-is" and "where is" with no warranty or recourse whatsoever. If any state or local laws, ordinances or regulations require that the Property be brought into compliance therewith, the Buyer, at its sole expense, shall comply with and pay for these requirements.

9. Transfer of the Property shall be by Fiduciary Quitclaim Deed.

10. The Seller shall convey pursuant to an order of the Bankruptcy Court and the Buyer shall accept the marketable title to the Property that will be insured through Escrow Company, without material exception, including free and clear of all liens, subject only to the terms of the within contract of sale.

11. All allowable assessments and real property taxes shall be prorated through the closing date to the applicable accounts of the Seller and the Buyer. The sale shall be free and clear of any real property taxes enforceable against the Property through the date of close of the sale. Escrow fees shall be split between the Buyer and the Seller (50%-50%). The Seller shall pay the costs of a standard issue title insurance policy. All other costs are at Buyer's expense.

12. The sale is subject to notice to creditors, approval by the Bankruptcy Court, and higher and better bids through and including the hearing to approve the sale.

13. The Seller is represented by Randal Rupert and Greg Miner of KW Park City Keller Williams Real Estate ("KW"). A Buyer's broker will be paid up to 3% of the Purchase Price. Subject to Bankruptcy Court approval, the Seller will pay six (6%) percent of the Purchase Price as brokerage commission to KW and a Buyer's broker, provided, however, if the Buyer is unrepresented, the brokerage commission will be reduced from 6% to 3%. No commission shall be due and payable except from the cash proceeds of an actual sale of the Property to the Buyer.

14. **In the event the Buyer fails to perform under this Addendum by reason of the Buyer's default, Seller may retain the Earnest Money Deposit as liquidated damages.**
\_\_\_\_\_ (Buyer's initials).

15. Buyer and Seller shall sign escrow instructions in respect of the Property within ten (10) calendar days after acceptance of this Addendum. In the event that Buyer is unable to close escrow within ten (10) calendar days after entry of the Bankruptcy Court order approving the sale of the Property, the Buyer shall compensate the Seller $1,000 per day for an extension of such escrow closing deadline for up to ten (10) calendar days. Thereafter, the Seller shall have absolute discretion to either (a) terminate the sale and retain the Earnest Money Deposit as liquidated damages or (b) provide another extension.

16. The Bankruptcy Court shall have jurisdiction to interpret and enforce the terms of this agreement. This agreement shall be construed pursuant to the laws of the State of Utah and the U.S. Bankruptcy Code.

17. The Seller may decline, at his option, to consummate the sale of the Property for any reason, including without limitation: (a) the dismissal or closure of the bankruptcy case; (b) the conversion of the debtor's Chapter 11 case to Chapter 7; (c) the inability to obtain approval of the sale by the Bankruptcy Court; or (d) the inability to sell the Property free and clear of liens. The Seller reserves the right, in his sole discretion, to determine not to consummate, and to terminate, the sale of the Property by serving a notice of such termination on the Buyer, the Office of the United States Trustee, and parties who have requested special notice. No liability or obligations shall accrue to the estate or the Seller, either personally or in his capacity as trustee, as a result of any such termination. The Buyer's sole remedy, in the event that escrow fails to close as a result of Seller's inability or unwillingness to close escrow, shall be a refund of the Earnest Money Deposit.

---

To the extent the provisions of this Addendum/Counteroffer modify or conflict with any provisions of the PSA or any other prior Addenda or Counteroffer, the provisions of this Addendum/Counteroffer shall control. All other provisions of the PSA and all other Addenda and Counteroffers not modified by this Addendum/Counteroffer shall remain in full force and effect; provided, however, that to the extent the provisions of any Addendum conflict with the provisions of any other Addendum, the Addendum most recently executed by all of the parties will control.

Buyer or Seller, as applicable, shall have until 5:00 P.M. Mountain Time on _____ to accept or reject, and deliver, this Addendum.

_(Signature of Authorized Signer)_     _(Print Name of Authorized Signer)_     _(Date)_

Seller's Initials \_\_\_\_ Date \_\_\_\_\_     Buyer's Initials \_\_\_\_\_ Date \_\_\_\_\_

Copyright © 2017, CCIM Utah. All rights reserved. Permission is granted to use it, but not to change it. If you have concerns about the veracity of the copy with which you are working, go to http://www.utahccimchapter.com/forms, where an original version of the form is available.

_____    _____    _____
(Signature of Authorized Signer)           (Print Name of Authorized Signer)        (Date)

## ACCEPT / REJECTION / COUNTER OFFER

**CHECK ONE**
[ ] **ACCEPTANCE**:  [ ] Seller [ ] Buyer ACCEPTS the foregoing ADDENDUM.
[ X ] **COUNTER OFFER**: [ ] Seller [ X ] Buyer presents as a COUNTER OFFER the terms of attached Addendum No. TWO (2)
[ ] **REJECTION**:  [ ] Seller [ ] Buyer REJECTS the foregoing ADDENDUM.

_____    Joseph A Allegretti        3/4/2019
(Signature of Authorized Signer)           (Print Name of Authorized Signer)        (Date)


_____    _____    _____
(Signature of Authorized Signer)           (Print Name of Authorized Signer)        (Date)

Seller's Initials _____ Date _____    Buyer's Initials _____ Date _____

Copyright © 2017, CCIM Utah.  All rights reserved.  Permission is granted to use it, but not to change it.  If you have concerns about the veracity of the copy with which you are working, go to http://www.ccimutahchapter.com/forms, where an original version of the form is available.

# PURCHASE AND SALE AGREEMENT FOR COMMERCIAL REAL ESTATE

This is a legally binding contract. This form has been prepared by counsel for the Utah CCIM Chapter. Parties to this Purchase and Sale Agreement for Commercial Real Estate (the "PSA") may agree, in writing, to alter or delete provisions of this PSA. All such changes should be reflected in an Addendum. The body of this PSA should not be modified. Seek advice from your attorney and tax advisor before entering into a binding contract.

## OFFER TO PURCHASE COMMERCIAL OR MULTI-FAMILY PROPERTY

"REFERENCE DATE": _____ February 22, 2019 _____

"SELLER": ___ Layfield V LLC _____

With Notices to be given at: Street Address ___ 1000 N Green Valley Pkway #440 _____

City, State, Zip Code _____ Henderson, NV  89074 _____

Fax, Email _____

"BUYER": ____ Allegretti & Company _____

With Notices to be given at: Street Address ___ 20555 Devonshire St PMB 375 _____

City, State, Zip Code _____ Chatsworth, CA 91311 _____

Fax, Email _____ joeallegretti@sbcglobal.net _____

"PROPERTY": Name/General Description: To be described in escrow.

Address: __ 2720 Homestead Road Units 210 & 220 _____
City: ____ Park City _____ County: Summit _____ Utah, Zip: ____ 84098 __
County Tax Parcel #: ____ TCVC-2-210 & TCVC-2-220 _____
Source of legal description (check applicable box):
[ X ] TITLE COMMITMENT (See Section 8(a))
[ ] SURVEY (See Survey Addendum, if applicable)
The Property also includes certain rights and interests described in Section 2.

"DEED": [ X ] General Warranty Deed  [ ] Special Warranty Deed  [ ] Other _____

"TITLE POLICY": [ X ] Standard Coverage          [ ] Extended Coverage

"PURCHASE PRICE": TWO HUNDRED SEVENTY-FIVE THOUSAND DOLLARS ($275,000.00). This Purchase Price represents Buyer's "best and final" offer.

"EARNEST MONEY DEPOSIT": $____ TWENTY THOUSAND DOLLARS ($20,000.00)

in the form of: [ X ] Wire Transfer [ ] Buyer's Check to be deposited with [ ] Buyer's Brokerage [ ] Title Company/Escrow Agent [ ] Other_____. Buyer agrees to deliver the Earnest Money Deposit no later than five (5) Business Days after Acceptance (as defined in Section 23). The Brokerage or Other depository shall deposit the Earnest Money into the Real Estate Trust Account no later than five (5) Business Days from receipt.

"SELLER DISCLOSURE DEADLINE": Five (5) Business Days from the Effective Date  (Date)_____

"DUE DILIGENCE DEADLINE": Forty-Five (45) Business Days from the Effective Date.      (Date)_____

"SETTLEMENT DEADLINE": No later than May 28, 2019. If escrow has not closed by May 28, 2019, said escrow shall cancel and all deposited monies shall be returned to Buyer.      (Date)_____

"SELLER'S AGENT / BROKERAGE": Ron Kassan / Beitler Commercial Realty Services

"BUYER'S AGENT / BROKERAGE": Randal Rupert / Keller Williams Realty

"TITLE COMPANY/ESCROW AGENT": _____ Seller's Choice _____

"MEDIATION": Seller and Buyer [ ] DO [ ] DO NOT elect to mediate in accordance with the provisions of Section 15.
ADDITIONAL TERMS: There [ ] ARE [ X ] ARE NOT addenda to this PSA containing additional terms. If there are, the terms of the following (each, an "Addendum" or collectively, the "Addenda") are incorporated into this PSA by this reference:

Form Approved 7-12-17
Copyright © 2017, CCIM Utah. All rights reserved. Permission is granted to use it, but not to change it. If you have concerns about the veracity of the copy with which you are working, go to http://www.utahccimchapter.com/forms, where an original version of the form is available.

[  ] Seller Financing [   ] Financing Contingency [   ] ALTA Survey [   ] Assumption of Financing   [ **X** ] Other
Addendum

Copyright © 2017, CCIM Utah. All rights reserved. Permission is granted to use it, but not to change it.  If you have concerns about the veracity of the copy with which you are working, go to
http://www.utahccimchapter.com/forms, where an original version of the form is available.

## OFFER TO PURCHASE

1.      **OFFER TO PURCHASE.** Buyer offers to purchase the Property from Seller for the Purchase Price and otherwise upon the terms and subject to the conditions set forth in this PSA. Certain capitalized terms used in this PSA are defined in Section 27.

2.      **PROPERTY.** Unless excluded by another provision of this PSA or an Addendum or Counteroffer, the Property includes: (a) all non-trade fixtures presently attached to the Property; (b) all personal property owned by Seller and used primarily in connection with the Property; (c) Seller's right, if any, in any names or trademarks under which the Property is operated, but not including the generic name or trademarks of Seller; (d) all rights and easements appurtenant to the Property; and (e) all water rights and/or water shares, if any, that are the source for culinary or secondary water used in connection with the Property.

3.      **PAYMENT OF PURCHASE PRICE.** Unless the Loan Assumption Addendum or the Seller Financing Addendum is part of this PSA, the Purchase Price and all other sums shall be paid by federal funds wire transfer or other collected funds at the Closing.

4.      **SETTLEMENT AND CLOSING.** Settlement shall take place on the Settlement Deadline or on another date upon which the Parties agree in writing.

        **4.1      Settlement.** "**Settlement**" shall be deemed to have occurred only when all of the following have been fully completed: (a) Buyer and Seller have signed and delivered to the Escrow Agent all documents required by this PSA, by any lender, or by Applicable Law; (b) any monies required to be paid by Buyer under this PSA (except for the proceeds of any new loan) have been delivered by Buyer to the Escrow Agent; and (c) any monies required to be paid by Seller under this PSA have been delivered by Seller to the Escrow Agent. Seller and Buyer shall each pay one-half (1/2) of the fee charged by the Escrow Agent for its services in the Settlement and Closing. Taxes and assessments for the current year, collected rents, association dues, utilities and charges accrued under contracts relating to the Property and assumed by Buyer, operating expenses relating to the Property and interest on any assumed obligations shall be prorated as of 11:59 p.m. on the day prior to Settlement unless otherwise agreed to in a settlement statement or other writing executed by the Parties. Tenant deposits (including, but not limited to, security deposits and prepaid rents) shall be paid or credited by Seller to Buyer at Settlement.

        **4.2      Closing.** "**Closing**" means consummation of the transaction contemplated by this PSA and shall be deemed to have occurred only when: (a) Settlement has occurred; (b) the proceeds of any new loan have been delivered by the lender to the Escrow Agent; and (c) the applicable Closing documents have been recorded in the Official Records of the County Recorder of the County in which the Property is located. If a lender is funding a portion of the Purchase Price, loan proceeds must be delivered to Escrow Agent not later than the end of the fifth (5th) Business Day following completion of Settlement or Buyer shall be in default.

5.      **POSSESSION.** Seller shall deliver physical possession of the Property to Buyer at Closing or at such other date and time as is specified in an Addendum.

6.      **CONFIRMATION OF BROKERAGE FEES AND AGENCY DISCLOSURE.** Buyer and Seller each acknowledge prior receipt of written agency disclosure provided by their respective Agents that has disclosed the agency relationships that are confirmed in the Fundamental Terms. Buyer and Seller further acknowledge that brokerage fees due as a result of this transaction are being paid based upon the terms of a separate written agreement. If an Agent or Brokerage represents both Seller and Buyer, then he, she or it shall constitute a Limited Agent as defined in applicable regulations of the Utah Division of Real Estate.

7.      **DEED AND TITLE INSURANCE.**

        **7.1      Deed.** Seller will convey title to Buyer at Closing by statutory form of Deed specified in the Fundamental Terms. Buyer agrees to accept title to the Property subject to: (a) the Permitted Exceptions (defined below); (b) any lease or property management agreement timely disclosed to Buyer pursuant to Section 8 below and not objected to by Buyer prior to the Due Diligence Deadline; and (c) any title exception arising by, through or under Buyer.

        **7.2      Title Policy.** At Settlement, Seller agrees to pay for the Title Policy specified in the Fundamental Terms, in the amount of the Purchase Price insuring title to the Property to Buyer subject only to the Permitted Exceptions (the "**Title Policy**"). Buyer, at its sole option, cost and expense, may elect to obtain additional coverage or additional specific endorsements.

Copyright © 2017, CCIM Utah. All rights reserved. Permission is granted to use it, but not to change it. If you have concerns about the veracity of the copy with which you are working, go to
http://www.utahccimchapter.com/forms, where an original version of the form is available.

**8.     SELLER DISCLOSURES.** No later than the Seller Disclosure Deadline, Seller shall provide to Buyer the following, to the extent they are within the possession or control of Seller, and at Seller's sole cost and expense (the "**Seller Disclosures**"):

(a)     a title commitment (the "**Title Commitment**") from a title company selected by Seller (the "**Title Company**"), together with a copy of each instrument, agreement or document listed as an exception to title in such Title Commitment;

(b)     a Seller property condition disclosure for the Property signed and dated by Seller;

(c)     a true and correct copy of all management agreements and contracts affecting the Property;

(d)     all copies in Seller's possession of studies and/or reports which have previously been performed in connection with or for the Property, including without limitation, environmental reports, soils studies, seismic studies, physical inspection reports, site plans and surveys, and identification of such studies of which Seller is aware but that are not in Seller's possession;

(e)     all copies of written notices relating to a violation of Applicable Law including, without limitation, Environmental Law and laws relating to land use, zoning or compliance with building codes;

(f)     evidence of any water rights and/or water shares used in connection with the Property;

(g)     all other documents described as Seller's Disclosures in any Addenda or Counteroffers to this PSA;

(h)     a true and correct copy of all leases and rental agreements now in effect with regard to the Property (the "**Leases**"), together with a current rent roll (the "**Rent Roll**"), each certified as correct and complete by Seller; and

(i)     operating statements of the Property for its last three full fiscal years of operation plus the current fiscal year through the last day of the month prior to the Effective Date, certified as correct and complete by the Seller or by an independent certified public accountant (the "**Operating Statements**").

(j)     To the Knowledge of Seller, there are no material defects or deficiencies in the design, construction, fabrication, manufacture or installation of the improvements to the Property or any part thereof or any system, element or component thereof, and all systems elements and components of the Property (including all machinery, fixtures and equipment, the roof, foundation and structural elements, and the elevator, mechanical, electrical and life safety systems) are in good working order and repair and sound operating condition in all material respects except for normal wear and tear.

**9.     BUYER'S DUE DILIGENCE AND RIGHT TO CANCEL.** No later than the Due Diligence Deadline, Buyer, at its sole cost and expense, shall: (a) conduct such Due Diligence as it deems necessary and appropriate; and (b) determine if the results of its Due Diligence are acceptable. The Due Diligence Deadline is subject to extension as set forth in any Addendum attached hereto. If, prior to Closing, the Title Company issues a supplemental or amended title report showing additional title exceptions (the "**Amended Title Commitment**"), Due Diligence Deadline shall be extended five (5) Business Days from the date of Buyer's receipt of such Amended Title Commitment.

**9.1     Title and Survey Matters.** In conducting its due diligence prior to the Due Diligence Deadline, Buyer may review the Title Commitment, Survey and all other Seller Disclosures as referenced in Section 8. Seller agrees to cooperate with Buyer in connection with Buyer's Due Diligence investigation by providing additional information or documentation reasonably requested by Buyer.

(a)     **Removal of Monetary Liens.** Notwithstanding anything in this PSA to the contrary, unless specifically set forth in an Addendum or Counteroffer, Seller covenants and agrees that all Monetary Liens shall be removed by Seller at Closing or insured against by the Title Insurer at Seller's sole cost and expense, regardless of whether Buyer has objected to such Monetary Lien(s). This provision will survive Closing.

(b)     **Permitted Exceptions.** Those matters reflected in the Title Commitment to which Buyer does not object or agrees to waive following objection; provided however that Permitted Exceptions does not include (i) delinquent taxes or assessments, or (ii) deeds of trust, mortgages, judgment liens, mechanics' liens, materialmen's liens, and other liens or monetary encumbrances placed on or against the Property.

**9.2     Inspection.** In conducting its Due Diligence prior to the Due Diligence Deadline, and at any time thereafter until Settlement, Buyer may, upon reasonable notice and at reasonable times, conduct inspections, appraisals and/or tests on the Property. Buyer shall enter to conduct such inspections and tests on the Property only during reasonable hours and with reasonable prior notice to Seller. Seller shall have the right to accompany Buyer and any of its agents on the Property at all times. All inspections and tests shall be conducted in a manner that does not unreasonably disrupt the activities and business of Seller and its tenants, and Buyer shall indemnify, hold harmless and defend Seller, its tenants and their employees, invitees and guests from and against any and all liabilities, claims, actions or damages (including reasonable attorneys' fees and court costs) which arise from, are caused by, or are in any manner connected with Buyer's Due Diligence and caused by or arising from the actions of

Form Approved 7-12-17
Copyright © 2017, CCIM Utah. All rights reserved. Permission is granted to use it, but not to change it. If you have concerns about the veracity of the copy with which you are working, go to http://www.utahrealestate.chapter.com/forms, where an original version of the form is available.

Buyer, including, without limitation, claims for payment for inspection services, claims for mechanic's liens, claims for physical damage to the Property and claims arising from personal injury.

**9.3    Buyer's Right to Cancel or Resolve Objections.**

**(a)    Right to Cancel or Object.** If Buyer, in Buyer's sole discretion, determines that the results of the Buyer's Due Diligence are not acceptable, then, not later than the Due Diligence Deadline, Buyer shall either: (a) cancel this PSA by providing written notice to Seller, in which event the Earnest Money Deposit shall be released to Buyer; or (b) provide to Seller one or more written notices setting forth Buyer's objections in reasonable detail (the "**Objections**").

**(b)    Failure to Respond.** If Buyer does not timely take either of the actions described in Section 9.3, then the results of the Buyer's Due Diligence shall be deemed approved by Buyer, all Objections which Buyer could have asserted shall be deemed waived by Buyer and, unless another condition or contingency set forth in an Addendum or Counteroffer remains unsatisfied, the Earnest Money Deposit shall become nonrefundable except in the event of Seller's default.

**(c)    Response by Seller.** If Buyer timely provides Objections to Seller, Buyer and Seller shall have five (5) Business Days after Seller's receipt of the Objections (the "**Response Period**") in which to agree in writing upon the manner of resolving the Objections. Seller may, but shall not be required to, resolve the Objections. If Buyer and Seller have not agreed in writing upon the manner of resolving the Objections prior to the expiration of the Response Period, Buyer may cancel this PSA by delivering written notice to Seller not later than five (5) Business Days after the end of the Response Period (the "**Termination Date**"); whereupon the Earnest Money Deposit shall be released to Buyer and neither Party shall have any further rights, obligations or liabilities under this PSA except as expressly set forth herein. If this PSA is not canceled by Buyer under this Section, the Objections shall be deemed waived by Buyer and the Earnest Money Deposit shall become nonrefundable except upon Seller's default. If the Response Period extends past the Settlement Deadline, the Settlement Deadline shall be extended to the date that is five (5) Business Days following the extended Termination Date. If the Termination Date extends past the Settlement Deadline, the Settlement Deadline shall be extended to the date that is five (5) Business Days following such Termination Date.

**9.4    Estoppel Certificates.** For a Commercial Property involving commercial leases, Seller shall deliver to Buyer, not less than five (5) Business Days prior to the Closing Date, in form reasonably required by Buyer or its secured lender, or in the form required by the applicable Leases, executed estoppel agreements from all tenants of the Property except as set forth in an Addendum attached hereto. If Seller cannot cause the required tenants to execute estoppel agreements in a form reasonably acceptable to Buyer and to Buyer's lender at least five (5) Business Days prior to the Settlement Date, Buyer may, at its sole discretion, extend the Settlement Deadline for up to thirty (30) Business Days to allow Seller additional time to obtain the required estoppel certificates. If Seller does not obtain the required estoppel agreements, Buyer may terminate the PSA by written notice to Seller, in which event the Earnest Money Deposit shall be returned to Buyer, and no Party shall have any further rights, obligations, or liabilities under the PSA except as expressly set forth in the PSA. If Buyer does not timely terminate the PSA, then Buyer shall be deemed to have waived the provisions of this Section.

**10.    SELLER REPRESENTATIONS AND WARRANTIES.** Seller represents and warrants that the following statements are true and complete as of the Effective Date and shall be true and complete as of the Settlement and Closing. The following representations and warranties shall survive the date of Closing for one (1) year, and shall terminate and be null and void if or to the extent a legal action has not been filed in a court of competent jurisdiction prior to the expiration of such one (1) year period:

**(a)**    there is no action, suit, administrative proceeding or other proceeding pending in any court or before any arbitrator of any kind or before or by any governmental body or, to Seller's knowledge, threatened against Seller and/or the Property which may adversely affect the transaction contemplated by this PSA;

**(b)**    all work which has been or will be performed in, on or about the Property, or materials furnished to the Property which might in any circumstances give rise to a mechanic's or materialman's lien (other than relating to work performed by Buyer), will be paid and all necessary waivers of rights to a mechanic's or materialman's lien for such work will be obtained;

**(c)**    Seller has not received any written notice or citation indicating that the Property is in material violation of Applicable Law;

**(d)**    to Seller's knowledge, the consummation of the transactions contemplated by this PSA and the compliance by Seller with the terms of this PSA do not and will not conflict with or result in a material breach of any of the terms or provisions of any agreement, arrangement, undertaking, accord, document, or instrument to which Seller is a party or by which Seller or the Property is bound; and

**(e)**    seller is not a "foreign person" as that term is defined in Code Section 1445 and shall deposit with Escrow Agent at or prior to Settlement, an affidavit in such form as may be required by the U.S. Internal Revenue

Copyright © 2017, CCIM Utah. All rights reserved. Permission is granted to use it, but not to change it. If you have concerns about the veracity of the copy with which you are working, go to http://www.utahccimchapter.com/forms, where an original version of the form is available.

Service, setting forth Seller's full name, address and taxpayer identification number and stating under penalty of perjury that Seller is not a "**foreign person**" as so defined.

**(f)**    except as set forth in writing, upon delivery and to Seller's knowledge, all copies Seller provides to Buyer under Section 8 above are true and correct copies of the originals or copies within Seller's possession.

**(g)**    to the Knowledge of Seller, the Property is in compliance with all Applicable Law.

**(h)**    to the Knowledge of Seller and except as disclosed by environmental reports provided to Buyer, no Hazardous Material is present in, on or under the Property or any nearby real property which could migrate to the Property. Seller has not used the Property or any part thereof, and to its Knowledge no other Person has used the Property or any part thereof, for the production, processing, manufacture, generation, treatment, handling, storage, transportation or disposal of Hazardous Material while the Property has been owned by Seller;

**(i)**    except as disclosed by Seller in writing: (i) the Leases and all information shown in the Rent Roll will be and is accurate and complete; (ii) the Leases are in full force and effect and all rent is accruing without offset or deduction; (iii) there are no Persons leasing or, to the Knowledge of Seller, occupying the Property except the tenants described in the Rent Roll; (iv) the Leases have not been amended or modified except as stated in the Rent Roll; (v) no monthly rent has been paid more than one (1) month in advance and no security deposit or prepaid rent has been paid except as stated in the Rent Roll; (vi) no tenant is entitled to interest on any security deposit; (vii) the tenants have accepted possession of their respective premises and all improvements and construction required to be performed by the landlord under the Leases have been completed; (viii) no event has occurred and no condition now exists which, with or without notice or the passage of time, or both, would constitute a material breach or a default by the landlord or, to the Knowledge of Seller, by any tenant; (ix) no money is owed or will become owing to any tenant for improvements or otherwise under the Leases; and (x) there are no leasing commissions or other commissions, fees or compensation presently owed or which will become due and payable under any of the Leases or which could become due and payable in the future upon the exercise of any right or option contained in any of the Leases; and

**(j)**    the Operating Statements delivered to Buyer are correct and complete in all material respects and accurately show and fairly present all income and expenses of the Property for the periods indicated in all material respects, subject to customary and consistent year-end adjustments.

**11.    NO OTHER REPRESENTATIONS AND WARRANTIES.** Except as expressly set forth in this PSA or in an Addendum or Counteroffer: (a) Buyer is purchasing the Property, and the Property shall be conveyed and transferred to Buyer, "**AS IS, WHERE IS, AND WITH ALL FAULTS**" and specifically and expressly without any warranties, representations or guarantees, either express or implied, of any kind, nature or type whatsoever from or on behalf of Seller; and (b) Seller has not, does not and will not, with respect to the Property, make any warranties or representations, express or implied, or arising by operation of law, including, but in no way limited to, any warranty of condition or merchantability, or with respect to the value, profitability, developability or marketability of the Property.

**12.    CHANGES PENDING CLOSING.** Between the Effective Date and the date of Closing, and except as and to the extent otherwise permitted by an Addendum hereto, Seller shall:

(i) comply with all Applicable Law;

(ii) continue and maintain all current casualty and liability insurance policies on the Property;

(iii) manage, operate, maintain and repair the Property in the ordinary course of business in accordance with sound property management practice and in good repair and working order and condition; and,

(iv) keep in force property insurance covering all buildings, structures, improvements, machinery, fixtures and equipment included in the Property insuring against all risks of physical loss or damage, subject to standard exclusions, in an amount equal to the actual replacement cost (without deduction for depreciation) of such buildings, structures, improvements, machinery, fixtures and equipment.

During such period Seller shall not:

(i) create or suffer to be created any further Monetary Lien against the Property;

(ii) make any substantial alterations or improvements to the Property; or,

(iii) except for the usage and storage of normal and customary amounts of Hazardous Material found in cleaning and maintenance supplies stored and used in compliance with Environmental Law, shall not use, produce, process, manufacture, generate, treat, handle, store, release or dispose of any Hazardous Material in, on or under the Property.

**12.1    Leasing Matters.**    Between the effective Date and the date of Closing, and except as and to the extent otherwise permitted by an addendum hereto.  Seller shall provide Buyer with copies of any and all proposed Leases, Lease renewals, Lease modifications and Lease amendments which Seller proposes to execute.  Buyer shall have no approval rights with respect to proposed Leases, Lease renewals, Lease modifications and Lease amendments until after the Due Diligence Deadline.  From and after the Due Diligence Deadline, Seller will not enter into any new Lease relating to the Property, or any renewal, modification or amendment of any currently

Copyright © 2017, CCIM Utah.  All rights reserved.  Permission is granted to use it, but not to change it.  If you have concerns about the veracity of the copy with which you are working, go to http://www.utahccimchapter.com/forms, where an original version of the form is available.

existing Leases, without first obtaining Buyer's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed. Unless the Parties otherwise agree in writing; any brokerage commission payable with respect to a new Lease, a Lease modification and/or Lease amendment executed after the Due Diligence Deadline shall be paid by Buyer; and all tenant improvements required under any Lease (and/or Lease modification and/or amendments) executed after the Due Diligence Deadline shall be completed at Buyer's sole cost and expense.

13. **AUTHORITY OF SIGNERS.** If Buyer or Seller is a legal entity rather than an individual, each Person executing and delivering this PSA or any Addendum or Counteroffer for it unconditionally and irrevocably warrants his or her authority to do so and to bind Buyer or Seller. Each of Seller and Buyer further warrant that the execution and delivery of this PSA by it has been duly and validly authorized, and all requisite actions have been taken to make this PSA valid, binding and enforceable upon it.

14. **COMPLETE CONTRACT.** This PSA together with any attached Addendum and Counteroffer, exhibit, and Seller Disclosures, constitutes the entire agreement between the Parties regarding the purchase and sale of the Property and supersedes and replaces any and all prior negotiations, representations, warranties, understandings or contracts between the Parties. This PSA cannot be changed except by written agreement of the Parties. Subject to the limitations on assignment expressly set forth in any Addendum or Counteroffer, this PSA shall inure to the benefit of and be binding on the Parties hereto and their respective heirs, legal representatives, successors and assigns.

15. **MEDIATION.** If the Parties have elected to mediate by checking the appropriate box in the Fundamental Terms, any dispute relating to this PSA that arises prior to or after Closing shall first be submitted to mediation. Mediation is a process in which the Parties meet with an impartial Person who helps to resolve the dispute informally and confidentially. Mediators cannot impose binding decisions. The Parties to the dispute must agree in writing before any settlement is binding. The Parties will jointly appoint an acceptable mediator and will share equally in the cost of such mediation. The mediation, unless otherwise agreed, shall terminate in the event the entire dispute is not resolved thirty (30) days from the date written notice requesting mediation is sent by one Party to all other Parties. If mediation fails, the other procedures, rights and remedies available to the Parties under this PSA shall apply. Nothing in this Section shall prohibit any Party from seeking emergency equitable relief pending mediation including, without limitation, an injunction.

16. **DEFAULT.** In the event of a default by Buyer, Seller shall be entitled, as Seller's sole and exclusive remedy, to terminate this PSA by written notice to Buyer, in which event the Earnest Money Deposit shall be paid to Seller as liquidated damages. In the event of a default by Seller, Buyer shall be entitled, at its option: (a) to terminate this PSA by written notice to Seller, in which event the Earnest Money Deposit shall be returned to Buyer and Buyer shall be entitled to and agrees to accept from Seller, a sum equal to the Earnest Money Deposit as liquidated damages; (b) to enforce Seller's obligations under this PSA by a suit for specific performance; or (c) accept a return of the Earnest Money Deposit, or Deposits, if applicable, and pursue any other remedies available at law. Upon termination of this PSA by either Party, no Party shall have any further rights, obligations, or liabilities hereunder except as expressly set forth in this PSA. The Parties acknowledge and agree that the actual damages upon default are uncertain in amount and difficult to ascertain, and that the amount of liquidated damages specified in this Section was reasonably determined.

17. **ATTORNEYS' FEES AND COSTS.** In the event of litigation or binding arbitration arising out of this PSA, the prevailing Party shall be entitled to costs and reasonable attorneys' fees. Attorneys' fees shall not be awarded for participation in mediation under Section 15.

18. **NOTICES.** All notices required under this PSA must be: (a) in writing; (b) signed by the Party giving notice; and (c) received by the other Party, the other Party's Agent or the other Party's Brokerage no later than the applicable date referenced in this PSA. Notices may be hand delivered, faxed, emailed, delivered by certified mail, return receipt requested or by a national overnight courier service such as, but not limited to, Federal Express. If a notice is sent by electronic transmission, the burden of proving receipt will be on the sender.

19. **ABROGATION.** Except for the provisions of Sections 5, 7, 9.2, 14 and 15 and any other provisions of this PSA which expressly survive the termination of this PSA, the provisions of this PSA shall not be enforceable after Closing.

20. **RISK OF LOSS; EMINENT DOMAIN.** All risk of loss to the Property, including physical damage or destruction to the Property or its improvements due to any cause except ordinary wear and tear and loss caused by a taking in eminent domain, shall be borne by Seller until Closing. In the event of any destruction exceeding five percent (5%) of the Purchase Price or any taking or commencement of a taking by any governmental agency of a

DS
Jan

Copyright © 2017, CCIM Utah. All rights reserved. Permission is granted to use it, but not to change it. If you have concerns about the veracity of the copy with which you are working, go to http://www.utahccimchapter.com/forms, where an original version of the form is available.

DocuSign Envelope ID: 263EE2A6-E354-4021-BA91-DC84194C9

material portion of the Property, Buyer may, at Buyer's sole discretion, terminate this PSA by written notice to Seller within ten (10) days of notice of the commencement of taking or event of destruction, in which event all the Earnest Money Deposit, together with any interest accrued thereon, shall be promptly refunded to Buyer. If Buyer does not terminate this PSA, the insurance or condemnation proceeds, or right to collect the same, shall be paid or assigned to Buyer at Closing.

**21.    TIME IS OF THE ESSENCE.** Time is of the essence regarding the dates set forth in this PSA, and any extension of the time for performance of any obligation or satisfaction of any condition must be agreed to in writing by all Parties. Unless otherwise explicitly stated in this PSA: performance under this PSA which references a date shall absolutely be required by 5:00 P.M. Mountain Time on the stated date. Business Days shall be counted (beginning on the day following the event which triggers the timing requirement (i.e., delivery of a specified notice, etc.). If the date for performance falls, or the deadline expires on a day which is not a Business Day, performance shall be required or the deadline shall expire on the next Business Day thereafter. Performance dates and times referenced herein shall not be binding upon title companies, lenders, appraisers and other Persons which are not Parties, except as otherwise agreed to in writing by such Persons.

**22.    ELECTRONIC TRANSMISSION AND COUNTERPARTS.** Facsimile (fax) or Email transmissions of a signed copy of this PSA, any Addenda and Counteroffers thereto, and the retransmission of any signed fax or Email shall be the same as delivery of an original, subject to confirmation of receipt by the other party hereto. This PSA and any Addenda and Counteroffers thereto may be executed in counterparts.

**23.    ACCEPTANCE.** "Acceptance" occurs when Seller or Buyer, responding to an offer or counteroffer of the other: (a) signs the offer or counteroffer where noted to indicate acceptance; and (b) delivers to the other Party or to the other Party's Agent or Brokerage written acceptance of the offer or counteroffer by hand delivery, fax, email, delivery by certified mail, return receipt requested or by a national overnight courier service such as, but not limited to, Federal Express. The burden of proving delivery will be on the sender.

**24.    DEADLINES.** Buyer and Seller agree that Seller Disclosure Deadline, the Due Diligence Deadline and Settlement Deadline are as set forth in the Fundamental Terms, as modified by any Addendum hereto.

**25.    TAX DEFERRED EXCHANGE.** Each Party shall cooperate with the other Party in effecting a tax deferred exchange under the I.R.S. Code; provided however, that the other Party's cooperation shall be conditioned on the following: (a) the exchange will be at no additional liability and cost to the other Party; (b) the exchange will not delay Settlement or Closing; and (c) the other Party shall not be required to acquire title to any proposed exchange properties to accommodate an exchange. Except in cases of Default by a non-exchanging party, the exchanging Party hereby indemnifies and agrees to defend and hold the other Party harmless from and against any and all claims, demands, costs and expenses which the other Party may sustain or incur resulting from the attempt by the exchanging Party to consummate the sale or acquisition of the Property as a tax deferred exchange.

**26.    JOINT PREPARATION.** The provisions of this PSA have been negotiated by all Parties hereto and should therefore not be interpreted or construed in favor of or with prejudice against any particular Party, but in accordance with the general tenor of the language used.

**27.    DEFINITIONS.** Certain capitalized terms previously used in this PSA are defined above. In addition to those capitalized terms, the following capitalized terms shall have the following meanings:

"**Agent**" means Buyer's Agent or Seller's Agent, as applicable.

"**Applicable Law**" shall mean and include any and all laws, rules, regulations or ordinances of any governmental authority having jurisdiction over a specified matter, as the same may be in effect from time to time, including, without limitation, any Environmental Law.

"**Brokerage**" means Buyer's Brokerage or Seller's Brokerage, as applicable.

"**Business Day**" shall mean any day other than a Saturday, Sunday, or legal holiday on which national banks in Utah are authorized by federal law to close.

"**Code**" shall mean the Internal Revenue Code of 1986, as amended, and the regulations issued thereunder.

Copyright © 2017, CCIM Utah. All rights reserved. Permission is granted to use it, but not to change it. If you have concerns about the veracity of the copy with which you are working, go to http://www.utahccimchapter.com/forms, where an original version of the form is available.

**"Counteroffer"** means a Counteroffer signed by the Party making the Counteroffer to this PSA, and which Counteroffer will be attached to this PSA as an addendum.

**"Deed"** means the form of Deed checked in the appropriate box on page 1 of this PSA in the Fundamental Terms.

**"Due Diligence"** means such investigations of and tests on or regarding the Property as Buyer deems necessary and appropriate.

**"Effective Date"** means the date both Seller and Buyer have executed this PSA and accepted Counteroffers and Addenda, as applicable.

**"Environmental Law"** shall mean any federal, state, or local law, statute, ordinance, rule, or regulation pertaining to health, industrial hygiene, or the environmental conditions on or under the Property, or relating to releases, discharges, emissions, or disposals from the Property to air, water, soil, or groundwater, or relating to the withdrawal or use of groundwater, or relating to the use, handling, or disposal of polychlorinated biphenyls, asbestos, or urea formaldehyde, or relating to the treatment, disposal, storage, or management of Hazardous Materials or relating to the transportation, storage, disposal, or management, including, without limitation, the Comprehensive Environmental Response Compensation, and Liability Act of 1980, as amended, and the Resource Conservation and Recovery Act of 1976, as amended, and all rules, and regulations, published pursuant thereto or promulgated thereunder.

**"Fundamental Terms"** means the Fundamental Terms of Offer to Purchase set forth on page 1 of this PSA as modified by an accepted Counteroffer or Addendum.

**"Hazardous Material"** shall mean and include, without limitation: (a) those substances included within the definitions of **"hazardous substances"** and **"hazardous waste"** in any Environmental Law; and (b) any material, waste, or substance which is or contains asbestos, polychlorinated biphenyls, petroleum and its derivative by-products, and other explosive or radioactive materials.

**"Knowledge"** means the actual knowledge of a Party and imposes a duty to investigate the applicable files and records but without a duty of further inquiry. The knowledge of a specific person may be set forth in an Addendum, if desired.

**"Lease"** shall have the meaning set forth in Section 8(h).

**"Monetary Liens"** means each of the following to the extent arising by, through or under Seller: judgment liens, mortgages, deeds of trust, mechanic's liens, pre-construction liens, liens that secure the payment of money or credit, and liens or charges for delinquent taxes.

**"Operating Statements"** shall have the meaning set forth in Section 8(i).

**"Parties"** means Seller and Buyer.

**"Party"** means Seller or Buyer.

**"Permitted Exception"** has the meaning set forth in Section 9.1(b).

**"Person"** means any natural individual human, any legal entity, a trust or the trustees of a trust acting in such capacity.

**"Reference Date"** means the date set forth in the Fundamental Terms on which the offer was prepared.

**"Title Commitment"** means a commitment issued by the Title Insurer for the Title Policy insuring the Owner's title in the Property in the full amount of the Purchase Price.

**"Title Policy"** means a standard 2019 ALTA Owner's Policy of Title Insurance issued by the Title Insurer.

**OFFER AND TIME FOR ACCEPTANCE.** Buyer offers to purchase the Property on the above terms and conditions. If Seller does not accept and deliver an acceptance of this Offer by 5:00 P.M. Mountain Time on <u>Friday,</u>



Copyright © 2017, CCIM Utah. All rights reserved. Permission is granted to use it, but not to change it. If you have concerns about the veracity of the copy with which you are working, go to http://www.utahccimchapter.com/forms, where an original version of the form is available.

March 1, 2019 this Offer shall lapse, and the Buyer's Brokerage or Escrow Agent, as applicable, shall return the Earnest Money Deposit to Buyer.

If Buyer is an individual or individuals:

| | | 2/22/2019 |
|---|---|---|
| (Signature of Buyer) | Joseph Allegretti | (Date) |
| | (Print Name of Buyer) | |
| | | |
| (Signature of Buyer) | (Print Name of Buyer) | (Date) |

If Buyer is an entity:

Allegretti & Company
(Print Name of Entity)                                   (Date)

A California corporation
(State of Formation and Type of Entity)

By: _____
(Signature of Authorized Signer)

Name: __Joseph Allegretti_____
(Print Name of Authorized Signer)

Its: __COO_____
(Print Position of Signer)

Copyright © 2017, CCIM Utah. All rights reserved. Permission is granted to use it, but not to change it. If you have concerns about the veracity of the copy with which you are working, go to http://www.utahccimchapter.com/forms, where an original version of the form is available.

## ACCEPTANCE/COUNTEROFFER/REJECTION

**CHECK ONE:**

[ ]  **ACCEPTANCE OF OFFER TO PURCHASE:** Seller accepts the foregoing offer on the terms and conditions specified above.

[✗]  **COUNTEROFFER:** Seller presents for Buyer's acceptance the terms of Buyer's offer subject to the exceptions or modifications as specified in the attached Addendum No. _1_.

[ ]  **REJECTION**

If Seller is an individual or individuals:

_____            Richard M. Pachulski            2/26/19
(Signature of Seller)                            (Print Name of Seller)                   (Date)

_____            _____       _____
(Signature of Seller)                            (Print Name of Seller)                   (Date)

If Seller is an entity:

_____            _____
(Print Name of Entity)                           (Date)

_____
(State of Formation and Type of Entity)

By:_____
          (Signature of Authorized Signer)

Name:__Richard M. Pachulski_____
          (Print Name of Authorized Signer)

Its:_____
          (Print Position of Signer)

Form Approved 7-12-17
Copyright © 2017, CCIM Utah. All rights reserved. Permission is granted to use it, but not to change it. If you have concerns about the veracity of the copy with which you are working, go to http://www.utahccimchapter.com/forms, where an original version of the form is available.

DocuSign Envelope ID: 268EF0A6-B954-4D4B-A91E-09C34194C9

**EARNEST MONEY RECEIPT**
**(to be used if requested by Buyer or Seller)**

The Buyer's Brokerage or Escrow Agent, as applicable, acknowledges receipt of the Earnest Money Deposit in the amount of $_____.

_____
(Date)

_____
(Print Name of Brokerage or Title Company)

By:_____
    (Signature above acknowledges receipt of Earnest Money Deposit)

Name:_____
      (Print Name of Signer)

Its:_____
     (Print Position of Signer)

Seller's Initials _____ Date _____        Buyer's Initials _____ Date _____

Form Approved 7-12-17

Copyright © 2017, CCIM Utah. All rights reserved. Permission is granted to use it, but not to change it. If you have concerns about the veracity of the copy with which you are working, go to http://www.utahccimchapter.com/forms, where an original version of the form is available.

DocuSign Envelope ID: 2305EC0A6-1-05A48-8-243A91D0x84t-94C9

**CCIM** CCIM Chapter

## DOCUMENT RECEIPT

State law requires Brokerage or Agent to furnish Buyer and Seller with copies of this PSA bearing all signatures. This document should be made part of the closing documents and signed prior to Settlement. (Fill in applicable Section below.)

A.  I acknowledge receipt of a final copy of the foregoing PSA bearing all signatures:

_____       _____       _____
(Signature of Buyer's Authorized Signer)       (Print Name of Authorized Signer)       (Date)


_____       _____       _____
(Signature of Seller's Authorized Signer)       (Print Name of Authorized Signer)       (Date)

B.  I personally caused a final copy of the foregoing PSA bearing all signatures to be **[  ] faxed [  ] Emailed  [  ]**
**mailed**
**[  ] hand delivered** on _____ (Date), postage prepaid, to the **[   ] Seller  [  ] Buyer.**

Sent/Delivered by (specify):_____


_____       _____       _____
(Signature)       (Print Name of Signer)       (Date)

Seller's Initials _____ Date _____          Buyer's Initials _____ Date _____

Form Approved 7-12-17
Copyright © 2017, CCIM Utah. All rights reserved. Permission is granted to use it, but not to change it. If you have concerns about the veracity of the copy with which you are working, go to http://www.utahccimchapter.com/forms, where an original version of the form is available.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California 90067**

A true and correct copy of the foregoing document entitled (*specify*):  **MOTION FOR ORDER (1) AUTHORIZING SALE OF REAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 363(B) AND (F); (2) APPROVING BUYER AS GOOD-FAITH PURCHASER PURSUANT TO 11 U.S.C. § 363(M); AND (3) AUTHORIZING PAYMENT OF UNDISPUTED LIENS AND OTHER ORDINARY COSTS OF SALE; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF RICHARD M. PACHULSKI AND RANDAL RUPERT IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **March 19, 2019**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **March 19, 2019**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **___, 2019**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 19, 2019  Sophia L. Lee | /s/ Sophia L. Lee |
|---|---|
| *Date*          *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:320279.1

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:
**Mailing Information for Case 2:17-19548**

- Wesley H Avery    wes@averytrustee.com, lucy@averytrustee.com;alexandria@averytrustee.com
- Jason Balitzer    jbalitzer@sulmeyerlaw.com,
jbalitzer@ecf.inforuptcy.com;dwalker@ecf.inforuptcy.com;kmccamey@sulmeyerlaw.com
- Moises S Bardavid    mbardavid@hotmail.com
- Daniel I Barness    daniel@barnesslaw.com
- James W Bates    jbates@jbateslaw.com
- Darwin Bingham    cat@scalleyreading.net
- Martin J Brill    mjb@lnbrb.com
- William S Brody    wbrody@buchalter.com, dbodkin@buchalter.com;IFS_filing@buchalter.com
- Glenn R Bronson    grb@princeyeates.com, carolp@princeyeates.com
- Baruch C Cohen    bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- Jennifer Witherell Crastz    jcrastz@hrhlaw.com
- Beth Gaschen    bgaschen@wgllp.com,
kadele@wgllp.com;vrosales@wgllp.com;cbmeeker@gmail.com;cyoshonis@wgllp.com
- Jeffrey I Golden    jgolden@wgllp.com,
kadele@wgllp.com;vrosales@lwgfllp.com;cbmeeker@gmail.com
- M. Jonathan Hayes    jhayes@rhmfirm.com,
roksana@rhmfirm.com;rosario@rhmfirm.com;janita@rhmfirm.com;susie@rhmfirm.com;max@rhmfir
m.com;priscilla@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com
- Kimberly D Howatt    khowatt@gordonrees.com, sdurazo@grsm.com
- James KT Hunter    jhunter@pszjlaw.com
- Steven J Kahn    skahn@pszyjw.com
- Joseph M Kar    jkar@mindspring.com
- Richard W Labowe    richardwlabowe@gmail.com, llhlaw1631@aol.com
- Dare Law    dare.law@usdoj.gov
- David W. Meadows    david@davidwmeadowslaw.com
- Jessica Mickelsen Simon    jmsimon@hrhlaw.com
- Dennette A Mulvaney    dmulvaney@leechtishman.com, lmoya@leechtishman.com
- Rana Nader    rnader@naderlawgroup.com, monique@naderlawgroup.com
- Joel A Osman    osman@parkermillsllp.com, sanders@parkermillsllp.com
- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Brian A Paino    bpaino@mcglinchey.com, crico@mcglinchey.com;selizondo@mcglinchey.com
- Michael F Perlis    mperlis@lockelord.com,
merickson@lockelord.com,jhagey@lockelord.com,RRJohnson@lockelord.com,bmungaray@lockelord.
com
- Michael F Perlis    , merickson@lockelord.com
jhagey@lockelord.com,RRJohnson@lockelord.com,bmungaray@lockelord.com
- Hamid R Rafatjoo    hrafatjoo@raineslaw.com, bclark@raineslaw.com;cwilliams@raineslaw.com
- Faye C Rasch    frasch@wgllp.com, kadele@wgllp.com;tziemann@wgllp.com
- Daniel H Reiss    dhr@lnbyb.com, dhr@ecf.inforuptcy.com
- Damion Robinson    dr@agzlaw.com
- Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com
- Daniel A Solitro    dsolitro@lockelord.com, ataylor2@lockelord.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Gary R Wallace    garyrwallace@ymail.com
- Alan J Watson    alan.watson@hklaw.com, rosanna.perez@hklaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**Service List by U.S. First Class Mail**
**Mailing Information for Case 2:17-19548**

Layfield & Barrett, APC
Fka Layfield & Wallace, APC
Fka The Layfield Law Firm, APC
Attn:  Philip Layfield, Officer of Record
2720 Homestead Rd., Suite 210
Park City, UT 84098

Layfield & Barrett, APC
Fka Layfield & Wallace, APC
Fka The Layfield Law Firm, APC
Attn:  Any Officer Other Than Philip Layfield
2720 Homestead Rd., Ste. 210
Park City, UT 84098

Layfield & Barrett, APC
Fka Layfield & Wallace, APC
Fka The Layfield Law Firm, APC
Attn:  Philip Layfield, Officer of Record
Register No. 71408-050
MDC Los Angeles/Metropolitan Detention Ctr
P.O. Box 1500
Los Angeles, CA  90053

Philip J. Layfield
 102 Moore's Cro # 7
Millsboro, Delaware 19966

Philip J. Layfield
1875 K St. NW
Washington, DC 20006

Philip J. Layfield
c/o Zenith Legal Services, LLC
1875 Connecticut Ave. NW, 10th Floor
Washington, DC 20009

Philip J. Layfield
8 The Green, Suite 6426
Dover, Delaware  19901

Philip J. Layfield
c/o Anthony M. Solis
APLC 23679 Calabasas Road, Suite 412
Calabasas, California 91302-1502

Philip J. Layfield
c/o Law Office of Steven Brody 350 S.
Figueroa Street, Suite 975
Los Angeles, California 90071

**SPECIAL NOTICE**

Roger G Jones
1600 Division St Ste 700
Nashville, TN 37203

Patricia Salcedo
The Dominguez Firm
3250 Wilshire Blvd #2200
Los Angeles, CA 90010

Timothy M Smith
McKinley Smith APC
3445 American River Dr., Ste A
Sacramento, CA 95864

Lance S Strumpf
Law Office of Lance S. Strumpf
5136 Woodley Ave.
Encino, CA 91436

Toll Creek Owners Association Inc
c/o Jacob Watterson
130 South Main Ste 200
Logan UT 84323-0525

Diane B Sherman
Law Offices of Diane B Sherman
1801 Century Park East Ste 1200
Los Angeles, CA 90067

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:320279.1

**F 9013-3.1.PROOF.SERVICE**