**FILED**

JUL 2 4 2019

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Philip J. Layfield<br>8 The Green<br>Suite 6426<br>Dover, Delaware 19901<br>Telephone (302) 401-6804 | **FILED**<br><br>JUL 2 4 2019<br><br>CLERK U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY:                    Deputy Clerk |
| ☒ *Individual appearing without attorney*<br>☐ *Attorney for:* | |

## UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION ▼

| In re:<br><br>Layfield & Barrett, APC | CASE NO.: 2:17-bk-19548-NB<br><br>CHAPTER: 11 ▼ |
|---|---|
| | **NOTICE OF MOTION FOR:**<br>MOTION TO COMPEL CHAPTER 11 TRUSEE TO FILE INCOME TAX RETURNS, PAYROLL TAX RETURNS, ISSUE W-2S, PAY REQUIRED TAXES DUE, FILE APPROPRIATE CARRYBACK RETURNS AND DISCHARGE DUTIES REGARDING EMPLOYEE BENEFIT PLANS<br><br>*(Specify name of Motion)* |
| | DATE: 09/03/2019<br>TIME: 1:00 pm<br>COURTROOM: 1525<br>PLACE: 255 East Temple Street, Los Angeles, CA |
| Debtor(s). | |

1.  TO (*specify name*):  Honorable Neil Bason and Chapter 11 Trustee

2.  NOTICE IS HEREBY GIVEN that on the following date and time and in the indicated courtroom, Movant in the above-captioned matter will move this court for an Order granting the relief sought as set forth in the Motion and accompanying supporting documents served and filed herewith. Said Motion is based upon the grounds set forth in the attached Motion and accompanying documents.

3.  **Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                    Page 1                    **F 9013-1.1.HEARING.NOTICE**

4.  **Deadline for Opposition Papers:** This Motion is being heard on regular notice pursuant to LBR 9013-1. If you wish to oppose this Motion, you must file a written response with the court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than fourteen (14) days prior to the above hearing date.  If you fail to file a written response to this Motion within such time period, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

5.  **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:** The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according to the judge's self-calendaring procedures.

Date:  07/21/2019

_____
Printed name of law firm


_____
Signature


Philip Layfield Pro Se
Printed name of attorney

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                         Page 2                         **F 9013-1.1.HEARING.NOTICE**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

filed pursuant to special procedures established by Judge Bason

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION FOR** (*specify name of motion*)

_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| _____ | _____ | _____ |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

Philip J. Layfield
8 The Green
Suite 6426
Dover, Delaware 19901
Telephone: (302) 401-6804
phil@maximum.global

Creditor and Interested Party

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>                    v.<br><br>Layfield & Barrett, APC<br><br>          Debtor | Case No.: 2:17-bk-19548-NB<br><br>Chapter 11<br><br>Assigned to: Hon. Neil Bason<br><br>**MOTION TO COMPEL CHAPTER 11 TRUSTEE TO FILE INCOME TAX RETURNS, PAYROLL TAX RETURNS, ISSUE W-2S, PAY REQUIRED PAST DUE TAXES, FILE APPROPRIATE CARRYBACK RETURNS, AND DISCHARGE DUTIES REGARDING EMPLOYEE BENEFIT PLANS**<br><br>**HEARING DATE: SEPTEMBER 3, 2019**<br><br>**HEARING TIME: 1:00 PM**<br><br>**COURTROOM: 1525** |

**TO THE HONORABLE NEIL BASON, UNITED STATES BANKRUPTCY JUDGE;**

**RICHARD PACHULSKI, CHAPTER 11 TRUSTEE; AND THE OFFICE OF THE**

**UNITED STATES TRUSTEE:**

YOU ARE HEREBY NOTIFIED THAT on September 3, 2019, at 1:00 pm  or as soon

thereafter  as the matter can be heard, before the Honorable Neil  Bason, United States

Bankruptcy Judge, in Courtroom 1525, located at 255 East Temple Street, Los Angeles,

1  California, Creditor, Philip Layfield will bring before the Court his motion entitled MOTION

2  TO COMPEL CHAPTER 11 TRUSTEE TO FILE INCOME TAX RETURNS, PAYROLL

3  TAX RETURNS, ISSUE W-2S, PAY REQUIRED PAST DUE TAXES, FILE

4  APPROPRIATE CARRYBACK RETURNS, AND DISCHARGE DUTIES REGARDING

5  EMPLOYEE BENEFIT PLANS  (the "Motion"),

6        YOU ARE ALSO HEREBY NOTIFIED that the Motion is based upon this Notice of

7  Motion and Motion, the attached Memorandum of Points and Authorities (with the declarations

8  and exhibits attached thereto), the records and files in the above-captioned chapter 11 case, and

9

10  such additional evidence and argument as may be presented at or before the hearing on the

11  Motion.

12        PLEASE TAKE FURTHER NOTICE that pursuant to Local Bankruptcy Rule 9013-

13  1(f), a formal response to the Motion must be filed with the Bankruptcy Court and served on

14  Moving Party at least fourteen (14) days before the hearing.  Pursuant to Local Bankruptcy

15  Rule 9013, failure to file and serve timely a response in accordance with the Local Bankruptcy

16

17  Rules may be deemed by the Bankruptcy Court to be consent to the granting of the relief

18  requested in the Motion.

19        Dated:  July 21, 2019        _____

20                                Philip J. Layfield, Pro Se

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  FACTUAL BACKGROUND

On August 3, 2017, petitioning creditors The Dominguez Firm ("TDF"), Mario Lara, Nayazi Reyes and Mario A. Rios (the "Petitioning Creditors"), filed an involuntary petition for relief under chapter 7 of the Bankruptcy Code against L&B with the assistance of former Layfield & Barrett Officers, Directors and its General Counsel.  That same day, the Petitioning Creditors filed and *Emergency Motion for Appointment of an Interim Trustee Under 11 U.S.C. § 303(g) and Granting Emergency Relief* [Docket No. 3] (the "Trustee Motion").

In response to the Trustee Motion, the Debtor/Layfield filed a *Motion to Convert Case Under 11 U.S.C. §§ 706(a) or 1112(a)* on August 8, 2017 [Docket No. 19] (the "*Conversion Motion*"), seeking to convert the Case to one under chapter 11 of the Bankruptcy Code.  After a hearing on the Motions, which Layfield participated and gave argument, the Court found that no cause existed to appoint a Trustee and granted Layfield's Conversion Motion [Docket No. 25], and denying the Trustee Motion [Docket No. 24].

Shortly after the conversion motion was granted, Layfield was informed by Jeffrey Smith that he could not longer act as counsel **to** the L&B estate due to a conflict of interest.  Initially, Layfield, through the assistance of his personal counsel identified Rudolf DiMassa ("DiMassa") of the law firm of Duane Morris to act as counsel for L&B.  DiMassa initially agreed to the representation, but after several phone calls with representatives of Advocate Capital, Advocate refused to cooperate with the use of what it claimed to be its cash collateral for the initial retainer.  Ultimately, after an exhaustive search, Stella Havkin ("Havkin") was selected as counsel for L&B.

Layfield diligently worked with Havkin to prepare the US Trustee 7-day package, which included comprehensive information regarding L&B's operations, including bank accounts, insurance policies, leases, properties and assets.  On August 21, 2017, the United States Trustee (the "UST") filed its *Notice of Appointment of Chapter 11 Trustee,* appointing Richard M. Pachulski as Chapter 11 Trustee in this Case [Docket No. 51].  Also, on August 21, 2017, The UST filed an *Application for Order Approving Appointment of Chapter 11 Trustee* [Docket No. 53],

1    which application was granted by the Court's order entered the following day [Docket No. 56].

2

3         On August 22, 2018, prior to Pachulski accepting his appointment, but in anticipation of his

4    acceptance as the Chapter 11 Trustee, Layfield sent a series of emails to Pachulski outlining the

5    immediate issues regarding the L&B estate that needed immediate attention.   Among those items

6    Layfield identified as needing immediate attention were the following:

7

8    1. L&B must take immediate operational control of Maximum Legal (California), LLP
     ("MLC") because Todd Wakefield and Joe Barrett filed a fraudulent bankruptcy
     petition with no corporate authority and all MLC cases belong to L&B now that MLC
9    and the Maximum Legal structure are all owned by L&B

10   2. L&B needs clear direction on cash collateral to pay key personnel and vendors

11   3. L&B must be allowed a marketing budget to continue acquiring cases to rebuild its
     docket
12

13   4. L&B must collect money it is owed and being wrongfully withheld by TDF and
     others
14

15   5. Case lists must be finalized and stop TDF and Barrett from poaching L&B clients

16   6. Must get all critical vendors and professionals employed

17   7 Must consolidate with the MLC bankruptcy

18   8. Must address the illegal file deletion by Todd Wakefield in the Park City office and
     secure office space with live employees
19

20   9. Must get 2016 corporate tax returns filed, must get June 30, 2017 payroll tax returns
     filed and funded and must make required 401k contributions.

21
          On August 29, 2017, Debra Grassgreen ("Grassgreen") of Pachulski's firm informed
22
     Havkin that they would not agree to her retainer and that she must limit her employment to the time
23
     of the Trustee's appointment and relinquish her request for a retainer.   In that August 29, 2017
24
     email, Grassgreen made some interesting comments:   First, Grassgreen informed Havkin that
25
     despite Pachulski's refusal to consent to her employment, Grassgreen wanted Havkin to complete
26
     the 7-day package for NO compensation.   Secondly, Grassgreen confirms that Havkin provided
27
     Pachulski with all of the information to access the case management systems that resided both on
28

1    the servers located in Costa Rica and in the cloud.  Havkin then provided her work to date on the 7-

2    day package, which was prepared for no compensation.

3           When Pachulski decided to liquidate the firm and only pay himself, his professionals and

4    Advocate, Pachulski did not possess the requisite knowledge of debtor the take over with no

5    guidance.  On August 29, 2017, Pachulski made a decision not to reorganize L&B and to simply

6    liquidate in what can only be described as a "fire sale."   On September 5, 2017, Pachulski filed a

7    *Motion for Order Authorizing Trustee to Implement Client Transition Protocol* [Docket 74 and 75]

8    (the "CTP").  Basically, this motion authorized Pachulski to fire every single client without notice

9    or warning.  Ultimately, this CTP resulting in the L&B estate losing the right to recover money for

10   the work it had performed on the large number of contingent fee cases and complicated L&B's

11   ability to recover for monies previously advanced on cases.

12          Following the implementation of CTP, the raid on L&B cases accelerated by former

13   employees, referring attorneys and others in general.  Former partner Joseph Barrett took dozens of

14   high value cases to his new law firm and to date appears to have not paid any quantum meruit

15   claims.  Because of the Trustee's sole focus on painting Layfield in a false light both publicly and

16   privately through secret conversations with federal investigators, Pachulski has allowed many

17   parties to simply walk away with high value cases without regarding to the payment of referral fees

18   or liens.

19          At the time of the implementation of the CTP, MLC had a case portfolio that should have

20   generated over $8 million in fees.  At the time of the implementation of the CTP, L&B had

21   accounts receivable of approximately $2 million.  At the time of the implementation of the CTP,

22   L&B had liens against cases in Utah, Arizona and other locations from situations where former

23   L&B attorneys, Weinberger, Gosdis, Stuck, Barrett, Wakefield, and Bailey took L&B cases, settled

24   those cases and have failed to pay any compensation to L&B.  Had Pachulski exercised the skill

25   and care expected of him, L&B could have and should have recovered in excess of $10 million over

26   the past 12 months.

27          Shortly after realizing Pachulski's gross negligence in his proposed fire sale, Layfield

28   resigned as CEO of L&B.  Regardless of Layfield's resignation, Pachulski had an obligation to

1   address the urgent items raised by Layfield, including the filing of tax returns, the payment of

2   withholding taxes and the proper administration of L&B's 401k plan.  Even though minimal effort

3   and expense would have been required to bring L&B into full compliance with its tax obligations

4   and benefit administration, Pachulski has chosen to squander estate funds on frivolous adversary

5   actions and appears to be only interested in paying his law firm millions of dollars in fees rather

6   then properly discharge his obligations.  The U.S. Department of Justice has prepared the Chapter

7   11 Trustee Handbook (2004) (hereinafter "the handbook") to guide Chapter 11 Trustees.  Chapter

8   8, Section H of the Handbook addresses "Tax Considerations."

9

10   **II.**    **PACHULSKI MUST FILE THE APPROPRIATE TAX RETURNS**

11       Based on a review of available materials, it appears that Pachulski has failed to file the

12   following returns:

13       **1.**     2016 Form 1120

14       **2.**     2017 Form 1120

15       **3.**     Carryback Returns for any losses experienced in 2016 or 2017 to years 2015

16             and 2014 with appropriate request for refunds;

17       **4.**     Form 1099-Div for 2016 and 2017

18       **5.**     Form 940 Annual FUTA Return for 2017;

19       **6.**     W-2, Wage and Tax Statement and W-3 Transmittal of Wage and Tax

20             Statements for 2017; and

21       **7.**     Form 941 Employer's Quarterly Federal Tax Return for Period Ending

22             6/30/2017;

23       Sections 346 and 728 of the Bankruptcy Code, as well as section 1398 and 1399 of the

24   Internal Revenue Code, 26 U.S.C. § 1 *et seq.,* set forth special tax provisions with which the trustee

25   should be familiar.  These sections generally provide that the trustee must prepare and file

26   appropriate income tax returns for any estate income earned during the administration of the estate

27   as well as those returns that became due during the administration of the estate.

28       Section 6012 of the Internal Revenue Code, title 26 U.S.C., sets for when a trustee for a

1   corporation must file a return.  Rather than comply with these obligations, Pachulski has chosen to

2   squander estate funds on frivolous adversary actions and appears to be only interested in paying his

3   law firm millions of dollars in fees rather then properly discharge his obligations.  The U.S.

4   Department of Justice has prepared the Chapter 11 Trustee Handbook (2004) (hereinafter "the

5   handbook") to guide Chapter 11 Trustees.  Chapter 8, Section H of the Handbook addresses "Tax

6   Considerations."  Apparently, nobody is paying attention.

7          To make matters worse, Jeff Bullock, the historical CPA for L&B was ready able and

8   willing to finalize the L&B corporate 2016 Form 1120 in September of 2017, but for some reason,

9   Pachulski failed to engage his services to complete these filings.  These filings would have allowed

10  the proper reporting of officer and director income, dividends, and other expense reimbursements

11  due to former officers, directors and employees.  Having requested a tax returns transcript in the

12  Fall of 2018 personally, it appears Pachulski has simply failed to file anything.

13         As if this complete failure to file such basic returns was not enough, Pachulski was made

14  aware of payroll tax obligations that needed to be deposited for the period ending 6/30/2017.

15  Pachulski has exposed the estate to significant penalties and caused hardship for all parties affected.

16  Again, Pachulski is quick to come to court for payment of his fees but refuses to follow appropriate

17  and well-established protocol for other, equally important matters.  The law is clear and undisputed

18  that Pachulski must file the appropriate tax returns timely and accurately.  See IRC Section

19  6012(b)(3).

20         Had Pachulski discharged his duties properly, he could have filed the L&B 2016 and 2017

21  L&B corporate tax returns, claimed refunds and had sufficient funds to pay the 6/30/17 payroll

22  taxes without touching any other estate assets.  For reasons that have become clear, Pachulski does

23  not want to comply with the tax obligations so that he may continue to pursue the false narrative

24  regarding $11 million being stolen by Layfield and stashed in secret foreign bank accounts.

25  Although the false narrative seems like something out of a John Grisham novel, it has no place in

26  this bankruptcy proceeding.

27

28

7

### III. THE L&B 401K PLAN APPEARS TO HAVE NO ADMINISTRATOR, NO FIDUCIARY, NO BOND AND HAS FAILED TO FILE FORM 5500 FOR AT LEAST 2 YEARS

Pachulski has failed to properly handle the 401k of L&B.  To date, Layfield still receives notices that compliance work must be completed and that tax returns must be filed.  Layfield has communicated these issues to Pachulski's firm and Pachulski has failed to properly administer the 401k plan and/or fund it with the required contributions.  Pachulski has also failed to secure any orders from this court to address his lack of compliance with his obligations under ERISA.  The trustee is authorized to operate the debtor's business and steps into the shoes of debtor's management.  11 U.S.C. § 1108.  Here, Pachulski must be ordered to comply with his obligations.

### IV. CONCLUSION

For the above-stated reasons, Pachulski should be compelled to comply with his statutory obligations and file the appropriate tax returns, obtain the necessary refunds and pay the past due withholding taxes along with immediately stepping into the shoes of the debtor for purposes of the 401k plan.

Dated: July 21, 2019

/s / Philip J. Layfield
Philip Layfield interested party and creditor