Olivier Taillieu (SBN 206546)
Martin J. Kanarek (SBN 261982)
**THE DOMINGUEZ FIRM**
3250 Wilshire Blvd., Suite 2200
Los Angeles, CA 90010
(213) 388-7788 telephone
(213) 388-9540 facsimile
E-mail: otaillieu@dominguezfirm.com
          martin.kanarek@dominguezfirm.com

Attorneys for the DOMINGUEZ FIRM

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>LAYFIELD & BARRETT, APC,<br><br>          Debtor. | CASE NO.: 2:17-bk-19548-NB<br><br>Chapter 11<br><br>**THE DOMINGUEZ FIRM'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO ENFORCE TRANSITION PROTOCOL AND OMNIBUS PROCEDURES ORDERS AND TO COMPEL PAYMENT OF *QUANTUM MERUIT* CLAIMS AND REFERRAL FEES IN *VILLEGAS v. COUNTY OF SAN BERNARDINO***<br><br>Date:  November 10, 2020<br>Time:  1:00 p.m.<br>Place:  Courtroom 1545<br>          Edward R. Roybal Federal Building<br>          255 E. Temple Street<br>          Los Angeles, California 90012<br><br>Judge: Hon. Neil W. Bason |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................. 2

II.   THIS COURT HAS JURISDICTION TO GRANT RELIEF TO THE DOMINGUEZ
      FIRM ................................................................................ 3

III.  THE DOMINGUEZ FIRM HOLDS CLAIMS FOR QUANTUM MERUIT AND
      REFERRAL FEES ............................................................... 8

IV.   DESIMONE'S REFUSAL TO PROVIDE PAYMENT TO THE DOMINGUEZ FIRM
      VIOLATES STATE LAW AND PRIOR ORDERS OF THIS COURT ............. 11

V.    THE DOMINGUEZ FIRM HOLDS A VALID ATTORNEYS LIEN ............. 12

V.    CONCLUSION ..................................................................... 16

DECLARATION OF OLIVIER TAILLIEU ........................................... 17

## TABLE OF AUTHORITIES

1
2
3
**Cases**

4  *Arbaugh* v. *Y & H Corp.*, 546 U. S. 500, 514 (2006)........................................................ 3

5  *Barnes, Crosby, Fitzgerald & Zeman, LLP v. Ringler*, 212, Cal. App. 4th 172, 186 (2013) ...... 2, 10

6  *Davis v. Courington (In re Davis),* 177 B.R. 907, 913 n. 3 (9th Cir BAP 1995)............................ 7

7  *Eastport Associates*, 935 F.2d 1071, 1077 (9th Cir. 1991) ............................................. 4, 5

8  *Fietz v. Great Western Savings (In re Fietz)*, 852 F.2d 455, 457 (9th Cir. 1988)............................ 6

9  *Hance v. Super Store Industries*, 44 Cal.App.5th 676, 694 (2020)........................................ 14

10  *In the Matter of Fonte* (Review Dept. 1994) 2 Cal. State Bar Ct. Rptr. 752 ............................... 14

11  *In the Matter of Lazarus* (Review Dept. 1991) 1 Cal. State Bar Ct. Rptr. 387 ............................. 14

12  *In the Matter of Rodriguez* (Review Dept. 1993) 2 Cal. State Bar Ct. Rptr. 480 ......................... 14

13  *Levander* , 180 F.3d 1114, 1118 (9th Cir. 1999)................................................................. 3

14  *Menk*, 241 B.R. 896, 909 (9th Cir. BAP 1999) ......................................................... 4, 5, 6

15  *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 254 (2010)..................................... 3, 4

16  *Nelson v. George Wong Pension Trust (In re Nelson),* 391 B.R. 437, 444, n.9 (9th Cir. BAP 2008) 7

17  *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)...................................................... 6

18  *Stichting Pensioenfonds ABP v. Countrywide Financial Corp*, 447 B.R. 302, 308 (C.D.Cal. 2010)6

19  *Union Pacific R. Co.* v. *Locomotive Engineers and Trainmen Gen. Comm. of Adjustment, Central*

20     *Region*, 558 U. S. ___, ___ (2009) ................................................................... 3

21  *United States* v. *Cotton*, 535 U. S. 625, 630 (2002) ......................................................... 3

22  *Wood*, 825 F.2d 90, 96-97 (5th Cir 1987) .................................................................. 5

23  *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 162 (7th Cir.1994) ..................................... 4, 5

24  **Statutes**

25  28 U.S.C. § 157(b) .......................................................................................... 4

26  28 U.S.C. § 1334(b) ........................................................................................ 4

27
28

Cal. Bus. & Prof. Code § 6147 ............................................................................................ 9

Cal. Civ. Code § 1689 ................................................................................................... 2, 8

Rule of Professional Conduct 1.15(d)(1) ..................................................................... 13, 14

## I.    INTRODUCTION

In its opposition, the DeSimone firm ("DeSimone") fails to address much of the substance of the Dominguez Firm's arguments.  Rather, DeSimone primarily contends that this Court lack jurisdiction to administer the fee allocation arising out of one of the Debtor's cases—a jurisdiction that the Court has exercised countless times in this proceeding.

Yet it claims that its right to the full fee is supported by a voided contract with the Debtor on the one hand and or that the Dominguez Firm should look to the amount recouped by the trustee for its percentage of the fee on the other hand.  Of course, these two propositions involve (1) a pure analysis under Bankruptcy law and (2) assets of the Debtor.  Hence, for the reasons stated in our opening brief, and expanded upon here, this Court is the proper forum for this dispute.

On the substance, DeSimone fails to provide a single case (or even argument) justifying why its client, who signed a 2-200 with the Dominguez Firm agreeing to pay 33% of the fee paid in the case, should be excused from this obligation.  Its two main arguments are that (1) the contract between the Villegas and the Dominguez Firm was "voided" and (2) that an alleged lack of privity between the Dominguez Firm and DeSimone is fatal to the Dominguez Firm.

It fails to explain, however, how a valid agreement between two parties can unilaterally be voided at the sole discretion of one of those parties.  The short answer is that it cannot: "A contract may be rescinded if **all the parties** thereto consent." Cal. Civ. Code § 1689. Also, the sole reason for the alleged lack of privity between DeSimone and the Dominguez Firm is DeSimone's "refus[al] to comply with the rules [of Professional Conduct's] disclosure and consent requirements [which] inequitably block[ed] the other attorney [the Dominguez Firm] from doing so. In such a case, the offending attorney is equitably estopped from wielding Rule 2–200 as a sword to obtain unjust enrichment." *Barnes, Crosby, Fitzgerald & Zeman, LLP v. Ringler*, 212 Cal. App. 4th 172, 186 (2013).

For those reasons, and the reasons laid out in our Opening Brief and this reply brief, the Dominguez Firm respectfully asks this Court to award its full referral fee/quantum meruit of $1,008,333 arising from the Villegas settlement.

## II. THIS COURT HAS JURISDICTION TO GRANT RELIEF TO THE DOMINGUEZ FIRM

Whether this Court has jurisdiction to resolve issues regarding payment of *quantum meruit* and referral fee claims arising from settlement of the *Villegas* case is an issue decided long ago pursuant to this Court's many payment and procedures orders.[1] See Dominguez Motion at 4–6.

In its Opposition, DeSimone offers three main arguments disputing this Court's authority to hear and resolve the Dominguez Motion. These arguments either ignore established law concerning a court's inherent authority to interpret its prior orders or are based on general statements from cases that do not apply Controlling Ninth Circuit case law. As such, DeSimone's jurisdictional arguments should be rejected.

First, while not disputing that this Court has inherent authority to interpret and enforce its own prior orders (See, *In re Levander* , 180 F.3d 1114, 1118 (9th Cir. 1999)), DeSimone asserts that the Dominguez Motion "does not arise from or relate to bankruptcy nor the Client Transition Protocol Order" or the Procedures Order. Opposition at 15. Yet, the fact that DeSimone believes the Dominguez Motion exceeds the scope of prior orders is merely a "merits" issue, not a jurisdictional one. A dispute as the scope of this Court's prior orders does not affect this Court's authority to hear and resolve that dispute. See *Morrison v. National Australia Bank Ltd*., 561 U.S. 247, 254 (2010) (What conduct §10(b) reaches is a merits question. "Subject-matter jurisdiction, by contrast, "refers to a tribunal's ' "power to hear a case." ' " *Union Pacific R. Co.* v. *Locomotive Engineers and Trainmen Gen. Comm. of Adjustment, Central Region*, 558 U. S. ___, ___ (2009) (slip op., at 12) (quoting *Arbaugh* v. *Y & H Corp.*, 546 U. S. 500, 514 (2006), in turn quoting *United States* v. *Cotton*, 535 U. S. 625, 630 (2002)). DeSimone's confusion of "merits" with "jurisdiction" should be rejected.

Second, DeSimone argues that the proposed settlement between the Trustee and DeSimone to resolve the Trustee's claims eliminates this Court's jurisdiction over the Dominguez

---

[1] All capitalized terms not defined herein have the same meaning as in the Dominguez Motion or in V. James DeSimone's Memorandum in Opposition to Dominguez Firm's Motion to Enforce Transition Protocol and Omnibus Procedures Orders and to Compel Payment of *Quantum Meruit* Claims and Referral Fees in *Villegas v. County of San Bernardino.*

1    Motion.  Opposition at 14.  DeSimone's error is that only Congress, not litigants or the actions of

2    the Trustee and DeSimone, can determine this Court's authority to decide the Dominguez Motion.

3    The proposed settlement is also a "merits" question that has no effect on whether this Court may

4    hear and determine the Dominguez Motion under authority conferred by 28 U.S.C. §§ 157(b) and

5    1334(b). *See*, *Morrison v. Australia Bank, Ltd*, 561 U.S. 247, 254 (2010) (the extraterritorial reach

6    of statute is "a merits question" in contrast to jurisdictional question which address a "tribunal's

7    power to hear a case.").  Thus, whatever the nature and scope of the proposed settlement, it has no

8    effect on this Court's authority.

9         Third, DeSimone asserts that "Dominguez fails to demonstrate how this Court has

10   jurisdiction over this matter" and, in support, cites to *In re Eastport Associates*, 935 F.2d 1071,

11   1077 (9th Cir. 1991); *In re Menk*, 241 B.R. 896, 909 (9th Cir. BAP 1999); and *Zerand-Bernal*

12   *Group, Inc. v. Cox*, 23 F.3d 159, 162 (7th Cir.1994) for the proposition that 28 U.S.C. 1334(b) is

13   not applicable to a dispute concerning two nonparties to a bankruptcy proceeding. Opposition at

14   13.  These cases are factually and legally inapplicable.

15        To begin with, even a cursory review of the docket in this case shows that the Dominguez

16   Firm has been and continues to be an integral party.  For example, the Dominguez Firm was one

17   of the Petitioning Creditors filing an involuntary petition on August 3, 2017 which commenced

18   this case and commencing this case (Docket No. 1] and subsequently entered into a *Stipulation for*

19   *the Appointment of a Chapter 11 Trustee* [Docket No. 38], which the Court approved by order on

20   August 17, 2017 [Docket No. 42].

21        Soon after appointment of the Trustee on August 28, 2017, The Dominguez Firm worked

22   closely with the Trustee to create and seek approval of the Client Transition Protocol, which

23   sought, among other relief, authority to withdraw from various active and pre-litigation matters

24   and transitioning those matters to other counsel [Docket No. 74].  The Client Transition Protocol

25   was approved by  Order dated September 7, 2017 [Docket No. 83] and with significant assistance

26   from the Dominguez Firm, the Trustee sent out hundreds of letters to clients of the Debtor

27   informing them of the Case and the need to obtain subsequent counsel. See *Motion Of Chapter 11*

28

*Trustee For Order Authorizing And Approving Procedures For Resolving Estate Fee ad Cost Claims* [Docket No. 183] at 3, which was approved by Order entered January 16, 2018 [Docket No. 204]. And as described in the Dominguez Motion, multiple *quantum meruit* and fee referral claims asserted by The Dominguez Firm have been approved by this Court. Dominguez Motion, 4-6. The Dominguez Firm sought and obtained the appointment of the Trustee and it has provided critical assistance to the Trustee ever since.

Legally, all but one of the cases cited by DeSimone are inapplicable. *In re Eastport Associates* opinion reversed a district court order on the basis that the cause of action, a dispute over land use planning, was not a "core" proceeding. *Eastport Associates*, 935 F.2d at 1077. Adopting the description of "arising in" clarified in *In re Wood*, 825 F.2d 90, 96-97 (5th Cir 1987) the Ninth Circuit agreed that Bankruptcy jurisdiction exists in connection with "administrative" matters that arise only in Bankruptcy. *Id*. As in this case, the issue whether the alleged termination of the Debtor's engagement by the Villegas family violates the automatic stay is an issue only created by Bankruptcy law. Thus, the crucial issue of the effect of the alleged termination alone justifies involvement by this Court.

DeSimone's reliance on *Zerand-Bernal Group Inc. v. Cox* is equally misplaced because that case concerned the power of a bankruptcy court to enjoin proceedings in other courts based on a cause of action arising *four year after the completion of the bankruptcy case. Zerand-Bernal Group Inc*., 23 F.3d at 160-61. Nothing in *Zerand-Bernal Group* is remotely similar to the facts of this matter. *In re Menk*, 241 B.R. 896, 909 (9th Cir. BAP 1999) which concerned a "poorly-explored jurisdictional swamp" in which the BAP held that it lacked jurisdiction "because the appeal is moot and because the debtor lacks standing." *In re Menk*, 241 B.R. at 902. After a chapter 7 case was closed, two creditors moved to reopen the cases and asked the Bankruptcy court to fix a new deadline for filing a nondischargeability action. The creditors' motion was granted, and the debtor appealed. The BAP ruled that the appeal was moot because it could not grant effective relief and "Once administration of the bankruptcy case has ended, the relationship to the case becomes so attenuated that that § 1334(b) "related to" jurisdiction presumptively expires

unless the court specifically retains jurisdiction." *In re Menk*, 241 B.R. at 907.  Nothing in *Menk* addresses issues raised in the Dominguez Motion.  To the contrary, the Bankruptcy court granted the creditors' motion and held that their claims were non-dischargeable.

The only relevant case cited by DeSimone, *Fietz v. Great Western Savings (In re Fietz)*, 852 F.2d 455, 457 (9th Cir. 1988) _supports_ the conclusion that this Court has jurisdiction to interpret and resolve the Dominguez Motion.

In *Fietz*, the Ninth Circuit adopted an expansive application of "related to" jurisdiction articulated in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984):

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy.* [citations omitted]. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*In re Fietz*, 852 F.2d at 457 ("We conclude that the Pacor definition best represents Congress's intent to reduce substantially the time-consuming and expensive litigation regarding a bankruptcy court's jurisdiction over a particular proceeding. . . . The *Pacor* definition promotes another congressionally-endorsed objective: the efficient and expeditious resolution of all matters connected to the bankruptcy estate."); see also *Stichting Pensioenfonds ABP v. Countrywide Financial Corp*, 447 B.R. 302, 308 (C.D.Cal. 2010) ("In *In re Fietz*, the Ninth Circuit made clear it was adopting an expansive view of relatedness; even a remote relationship confers "related to" jurisdiction.")

Applying the expansive view of relatedness adopted in *Fietz,* it is clear that this Court has ample jurisdiction to resolve the Dominguez Motion.

DeSimone seeks to frame the Dominguez Motion as a simple two-party dispute based entirely on California state law.  Yet, the Dominguez Motion arises from this Court's Client Transition Protocol Order and the Procedures Order and resolving the issues raised in the Dominguez Motion implicates a host of issues concerning assets of this estate and purely Bankruptcy issues.

1    For example, DeSimone's claim to all attorney's fees in the Villegas case rests on its

2    allegation that "the clients terminated the referred Attorney [the Debtor, Layfield & Barrett] for

3    good cause in August 2017 and voided the contract it signed with L&B and Dominguez."

4    [Opposition at 17].  Yet, as described more fully herein, the alleged termination described in the

5    Opposition is facially invalid under California law and, if invalid, DeSimone's post-petition

6    actions likely violate the automatic stay and the agreements with the Debtor and Dominguez may

7    be enforced pursuant to other provision of the Bankruptcy Code.  Such issues are well within this

8    Court's core jurisdiction.  *Nelson v. George Wong Pension Trust (In re Nelson),* 391 B.R. 437,

9    444, n.9 (9th Cir. BAP 2008) ("[W]here the adversary proceeding relates to the status or

10   enforcement of the automatic stay, or other strictly bankruptcy law questions, the basis for the

11   bankruptcy court's retention of jurisdiction is much stronger."); *Davis v. Courington (In re Davis),*

12   177 B.R. 907, 913 n. 3 (9th Cir BAP 1995) ("The bankruptcy court should exercise great care,

13   however, in abstaining from proceedings arising under Title 11, because of the court's expertise in

14   such matters.").[2]

15   Further, the effect of the Dominguez Motion on the estate is (inadvertently) made clear by

16   DeSimone which asserts that "Dominguez could be entitled to the 33% of the of the $50,000

17   quantum meruit agreed upon" by the Trustee and DeSimone.  This statement admits that resolving

18   the Dominguez Motion potentially affects the nature and amount of the Dominguez claim against

19   the estate and potentially, could increase the amount of the estate's entitlement to the *Villegas* fees.

20   Finally, issues of Bankruptcy law, prior orders of this Court, and state law are so

21   intertwined that it is simply not feasible to sever the state law claims from those arising from core

22   bankruptcy matters.  Should a state court determine that the alleged termination was invalid, then

23   application of bankruptcy law will be required to determine whether DeSimone violated the

24   automatic stay and whether additional assets may be recovered by this estate. While the Trustee

25   _____

26   2 Based on the time entries contained in Trustee's Second Interim Application for Compensation and Reimbursement
of Expenses for the Period of January 1, 2018 through June 30, 2020 [Docket No. 502, pages 470, 471, 482, 483, 493,
27   502, 532, and e541 of 548], it is clear that attorney's fees and costs resulting from the Villegas Settlement are property
of the estate. Why it took five months between June discussions between the Trustee and DeSimone and the filing of
the Trustee's Settlement Motion is an unresolved issue.

28

may not be willing to expend estate funds to resolve its claims against DeSimone, Dominguez is willing to litigate those issues to the benefit of both the estate and the Dominguez Firm.

### III.    THE DOMINGUEZ FIRM HOLDS CLAIMS FOR QUANTUM MERUIT AND REFERRAL FEES

DeSimone's opposition weaves few persuasive substantive arguments and instead spends a considerable amount of time discussing matters of little import.  For example, no one asserts that DeSimone failed to perform its duties well or that it spent significant sums in prosecuting the case.  Similarly, there is no dispute that the outcome of the case was beneficial to the Villegas family, or even outstanding.  Nor do we dispute that Layfield & Barrett, APC ("L&B") likely failed to keep its promises or that it sought to defraud its clients.  These facts are not in dispute, yet they take up a considerable amount of space in DeSimone's opposition brief.  But none of that is relevant to the issues at hand.

Glaringly, DeSimone completely fails to address one of our opening brief's central points—to wit, that the Villegas Family was a client retained by the Dominguez Firm through its efforts and at a great expense, and that by signing the engagement letter and the 2-200 with the Dominguez Firm, the Villegas Family agreed to pay 33% of the fees paid as a referral fee to the Dominguez Firm for having obtained the case and subsequently referring it; that DeSimone was aware of that fact; and as such that DeSimone had a fiduciary responsibility to respect that agreement subsequent to the filing of the lien.

In several parts of its brief, DeSimone claims that the agreements (engagement letter and 2-200) between the Villegas Family and the Dominguez Firm were "voided" or "cancelled," thereby cancelling all potential liens.  But DeSimone provides no legal rationale for those claims. Of course, none exists.  No subsequent contract omitting the Dominguez Firm from the signature line can undo their agreement with the Villegas—a concept codified in Cal. Civ. Code § 1689: "A contract may be rescinded if **all the parties** thereto consent." *Id*. (emphasis added). Similarly, there are no grounds to void the engagement letter between the Villegas Family and the Dominguez Firm, and none were asserted.  See Cal. Bus. & Prof. Code § 6147.

1    The notion that the agreement between the Villegas Family and the Dominguez Firm can

2    simply be ignored because of the bankruptcy of L&B, L&B's subsequent addition of the

3    DeSimone firm as a joint venturer, or L&B's firing has no basis in the law. Not surprisingly,

4    DeSimone has failed to cite a single case to support this extraordinary position. The combination

5    of the engagement letter and the 2-200 agreement signed by the Villegas Family indisputably

6    entitles the Dominguez Firm to 33% of the fee paid in the case, or $1,008,333.

7    DeSimone does argue, however, that the Dominguez Firm's entitlement to fees "could

8    only have been based on L&B achieving a recovery for the Villegas Family which never

9    occurred."  This is incorrect on multiple fronts, the most obvious of which is that the 2-200 (the

10    contract between the Villegas Family and the Dominguez Firm) does not actually state that.  The

11    2-200 states that "L&B shall receive 67% of the total fees **paid**; and The Dominguez Firm shall

12    receive the remaining 33% of the fees **paid**." Taillieu Decl. ¶¶4-6, Ex. 1-3 (emphasis added).

13    Although L&B ultimately found itself in bankruptcy, and as such had to forfeit its fee, the

14    Dominguez Firm complied with all of its obligations under the 2-200—to source the case and

15    refer it—and as such its fee vested upon the referral.  As discussed in our Opening Brief, by the

16    time the 2-200 was signed, the Dominguez Firm had performed all of its functions and thus its

17    interest was vested.  That L&B later chose to associate with (and ultimately transfer to) another

18    law firm, does not change the nature of the agreement signed by the Villegas, an agreement that

19    DeSimone is duty-bound to respect.[3] Moreover, as demonstrated by the Trustees' ability to

20    receive fees from the settlement, L&B did in fact assist in recovering funds for the Villegas

21    Family.

22    Finally, taking DeSimone's argument to its logical end, any attorney could simply avoid

23    paying a referral fee by "transferring" any matter referred to her by engaging another attorney

24

25    3 The elements for tortious interference with a contract in California are: (1) That there was a contract between the
Dominguez Firm and the Villegas Family, (2) that DeSimone knew of the contract; (3) that DeSimone's conduct

26    prevented performance or made performance more expensive or difficult; (4) that DeSimone intended to disrupt the
performance of this contract or knew that disruption of performance was certain or substantially certain to occur, (5)

27    that the Dominguez Firm was harmed; and (6) that DeSimone's conduct was a substantial factor in
causing the Dominguez Firm's harm. CACI 2201.  Based on the admissions in this brief alone, all of these elements

28    are met.

and then withdrawing—thereby "voiding" the referring attorney's portion of the fee. This would effectively terminate the effectiveness of any referral agreement. Arguably, this could be done among a group of independent attorneys working under the same roof but for different entities. It is much easier to transfer a case to another attorney if one does not have to comply with any prior agreements signed by the client. Thankfully, the law does not allow that.

Also ignored in DeSimone's opposition brief is an explanation (or justification) for its failure to obtain a signed 2-200 when it entered into a joint venture with L&B.[4] This failure, in and of itself, is a violation of the rules of professional conduct—one from which he cannot benefit. *Barnes, Crosby, Fitzgerald & Zeman, LLP v. Ringler* was very clear in its holding that one cannot use the failure to sign a 2-200 as both a shield and a sword. 212 Cal. App. 4th 172, 186 (2013). DeSimone's attempt to distinguish the Barnes case on its facts is not persuasive, as the principle expressed in that case and the ultimate holding of the opinion fits this case to a tee:

> Indeed, *Chambers, Margolin,* and *Mark* hold that an attorney who willfully or negligently violates rules 2–200 and 3.769 will be denied judicial enforcement of a fee-sharing agreement. These cases serve the important public policy objectives of (1) motivating attorneys to comply with the rules' disclosure and consent requirements, and (2) protecting clients from excessive fees and unfavorable litigation tactics. But those objectives are circumvented when one attorney refuses to comply with the rules' disclosure and consent requirements and inequitably blocks the other attorney from doing so. In such a case, the offending attorney is equitably estopped from wielding rule 2–200 as a sword to obtain unjust enrichment.

*Barnes, Crosby, Fitzgerald & Zeman, LLP v. Ringler*, 212 Cal. App. 4th 172, 186 (2013)

What is clear from the undisputed facts in this case, is that the only impediment to the Dominguez Firm's ability to have a signed 2-200 with Mr. DeSimone's signature was Mr. DeSimone's wrongful and "inequitable" conduct, who entered the case without notice and failed to obtain a fee sharing agreement signed by his client.

In its opposition, it claims that it sought to do so "verbally" with L&B only but that these efforts were rebuffed. And for this we must take Mr. DeSimone's word—DeSimone fails to attach a single email between it and L&B making such request. Yet a lack of signature on the

---

[4] DeSimone admits in its Opposition Brief that it was aware of the "referral fee to Dominguez" and that no "fee share agreement between L&B and [DeSimone] … was executed." Opp. Brief p.7

part of L&B is not the issue—rather, a lack of signature from the Villegas Family acknowledging the arrangement is what the rule contemplates.  Nothing prevented DeSimone from drafting a proper 2-200, emailing it to L&B and the Dominguez Firm, having the Villegas, the Dominguez Firm and the DeSimone firm sign it. The failure of L&B to sign such 2-200 would have only impacted L&B as all the other parties would have complied with the rule. Instead, DeSimone undertook a representation, agreeing to share the fees without ever obtaining the required client signature.

IV.    **DESIMONE'S REFUSAL TO PROVIDE PAYMENT TO THE DOMINGUEZ FIRM VIOLATES STATE LAW AND PRIOR ORDERS OF THIS COURT**

The pattern of conduct by the DeSimone firm's undisputed actions leads one to reasonably believe that they intended on deceiving the Dominguez Firm from the get go, and quite possibly L&B as well—*first* by not having a 2-200 prepared, communicated and ultimately signed by the Villegas Family; *second*, by not notifying the Dominguez Firm that L&B had been terminated and that they, solely, were now representing the Villegas Family; *third*, by failing to notify the Dominguez Firm that it had been allegedly "terminated" by way of the new DeSimone engagement letter; *fourth*, by failing to notify the Dominguez Firm that the matter had settled and ignoring the lien it filed; and *fifth*, by entering into an indemnification agreement with the Defense firm in the Villegas matter in violation of the Rules of Professional conduct.[5]

DeSimone argues that the Dominguez Firm "should have known" that DeSimone had undertaken representation of the Villegas Family because of "public records."  The Dominguez Firm had referred over 86 cases to L&B and has hundreds of cases referred to firms throughout Southern California. Having no active involvement in these cases, imputing knowledge of day-to-day activities in any single matter is simply not warranted. Rather, the Dominguez Firm

---

5 It is worthy to note that DeSimone does not challenge this last point.  The Dominguez Firm, on information and belief, contends that such an indemnification agreement exists and that it was entered into to avoid having to put the Dominguez Firm's name on the check.  DeSimone does not dispute this and has yet to disclose the underlying settlement agreement to either the Dominguez Firm or the Trustee.

reasonably relies on other attorneys' compliance with 2-200 (and the law surrounding treatment of attorney liens) should another attorney associate in a case and agree to share fees. Thus, while the Dominguez concedes that "[i]t knew that many of Layfield (sic) cases had co-counsel", (Opp. Brief fn.4); *that knowledge universally stems from these other attorneys' compliance with the Rules of Professional Conduct by securing properly executed 2-200s—something DeSimone explicitly did not do*.

DeSimone also seems to suggest that the Dominguez Firm's "failure" to communicate with it after DeSimone sent its cease and desist letter in August 2017 somehow diminishes the Dominguez Firm's claims to its referral fee—intimating that if the Dominguez Firm somehow believed it was owed money, it would have engaged in some correspondence asserting its rights under the referral agreement.[6] This suggestion is rebuked by both law and fact. Factually, the Dominguez Firm did communicate back in the clearest form possible: By filing a lien and serving it on all parties. By way of this lien, the Dominguez Firm was making, as a matter of law, a claim on the recovery in the case. That DeSimone would now argue that the Dominguez Firm somehow sat on its hands and should therefore be seen as having committed some form of waiver is simply absurd.

## V.    THE DOMINGUEZ FIRM HOLDS A VALID ATTORNEYS LIEN

There is no doubt that the Dominguez Firm had a properly filed lien in Superior Court that DeSimone was aware of—a point DeSimone does not dispute. In its brief, DeSimone further claims that he had no knowledge that the Dominguez Firm had performed work on the case. This assertion strains credulity. The DeSimone firm must have known that the Dominguez Firm actually performed work on the case because its name was on the claims rejection letters from the county—claim rejections the DeSimone firm would have had to review to ensure that (1) the lawsuit was filed timely and (2) that the administrative remedy requirement had been met. Taillieu Decl. ¶7, Ex. 4. To now claim that DeSimone did not know the Dominguez Firm had

---

6 In its brief, DeSimone argues "Dominguez never responded to this [August 2017] letter and never tried to assert a referral fee with [DeSimone]." Opp. Brief at 10:22-23.

DOMINGUEZ FIRM'S REPLY IN SUPPORT OF ITS MOTION TO ENFORCE CLIENT TRANSITION PROTOCOL

1  actually performed work on the case is simply not believable.[7] In any event, the lien filed by the

2  Dominguez Firm certainly placed DeSimone on notice the Dominguez Firm had a claim—the

3  nature of which could have been determined by placing a single phone call.

4      Additionally, DeSimone completely fails to address the fact that the Dominguez Firm,

5  when it became aware of the DeSimone representation, properly filed its lien in Superior Court

6  to protect its interests—a lien which was completely ignored by DeSimone.[8]  In its opposition

7  brief, DeSimone's claim that it "assumed" that the Dominguez Firm would find its own lien

8  invalid again strains credulity.  For one, the Dominguez Firm never filed anything in court (or

9  anywhere) indicating a withdrawal of its notice of lien.  Second, by the time the Dominguez Firm

10  had filed its lien, it had already started bankruptcy proceedings against L&B and thus would not

11  have assumed that the prior actions of L&B (which were now exposed in bankruptcy) would

12  have caused the Dominguez Firm to believe that those actions somehow invalidated its lien.

13      Subject to the notice of lien filed on September 26, 2017 (Taillieu Decl. ¶8, Ex. 5.),

14  DeSimone was required to notify all potential lien holders, including The Dominguez Firm, of

15  receipt of entrusted funds from the settlement of the *Villegas* case.  Rule of Professional Conduct

16  1.15(d)(1), which provides:

17

18      (d) A lawyer shall:

19      (1) promptly notify a client or other person of the receipt of funds, securities, or other
        property in which the lawyer knows or reasonably should know the client or other person
        has an interest;

20      Mr. DeSimone did not notify The Dominguez Firm of the receipt of entrusted funds.

21

22  Accordingly, he violated Rule of Professional Conduct 1.15(d)(1). The Dominguez Firm only

---

23  7 DeSimone admits that "[g]iven that the statute of limitations for the case was fast approaching after Layfield
24  initially reached DeSimone about the case, DeSimone focused on the interests of the clients." Opp. Brief p.7.  The
   only way for DeSimone to know that "the statute … was fast approaching" would have been to look at the return date
25  on the claim rejections, which clearly identify the Dominguez Firm on the addressee. Taillieu Decl. ¶7, Ex. 4.

26  8 DeSimone faults the Dominguez Firm for contacting the Villegas Family, its own client "[a] month after the
   substitution of Attorney Form was filed in Court." Opp. Brief at 18:20-21.  The Dominguez Firm was never served
27  with this substitution of counsel and was never made aware of the DeSimone representation until the August 2017
   cease and desist letter.  This accusation thus has no merit but even if true, could not form the basis for DeSimone's
28  argument that the Dominguez Firm is not entitled to its fee.

became aware of the receipt of the funds when DeSimone was negotiating the trustee's quantum

meruit claims and disclosed to the Trustee an email exchange between it and the L&B firm,

proving that DeSimone knew about the referral agreement he was now trying to evade. That

email was ultimately forwarded to the Dominguez Firm by the Trustee and is attached as Exhibit

6 to the Taillieu Declaration filed concurrently with this Reply Brief.

Additionally, DeSimone was required to maintain the entirety of the disputed funds from

the *Villegas* settlement check in his client trust account under Rule of Professional Conduct

1.15(a).  Rule 1.15(a) provides:

> (a) All funds received or held by a lawyer or law firm for the benefit of a client, or other
> person to whom the lawyer owes a contractual, statutory, or other legal duty, including
> advances for fees, costs and expenses, shall be deposited in one or more identifiable bank
> accounts labeled "Trust Account" or words of similar import, maintained in the State of
> California . . .

The Dominguez Firm has a claim under the referral agreement to $1,008,333 of the

*Villegas* settlement proceeds.  Mr. DeSimone has the same fiduciary duties to The Dominguez

Firm as he has to his clients or any others who have claims to the settlement proceeds.  An

attorney cannot unilaterally determine how to apply entrusted funds which are disputed.  *In the*

*Matter of Lazarus* (Review Dept. 1991) 1 Cal. State Bar Ct. Rptr. 387; *In the Matter of*

*Rodriguez* (Review Dept. 1993) 2 Cal. State Bar Ct. Rptr. 480; *In the Matter of Fonte* (Review

Dept. 1994) 2 Cal. State Bar Ct. Rptr. 752.  Yet, no part of the DeSimone brief addresses this

flagrant breach of fiduciary duty.

DeSimone also fails to address *Hance v. Super Store Industries*, 44 Cal.App.5th 676, 694

(2020), implicitly surrendering the argument made in the Opening Brief that a referral fee is a

proper award in a quantum meruit analysis.  In the *Hance* case, the court upheld the use of a

referral fee as a proper way to quantify quantum meruit.  As we discussed in our Opening Brief,

this is particularly appropriate here considering the significant, multi-year investments the

Dominguez Firm makes to secure high-value personal injury and civil rights cases. In fact,

although DeSimone argues against the Dominguez Firm's *right* to a referral fee, it does not

dispute the amount it seeks.

1    Lastly, DeSimone condescendingly argues that, "[i]ndeed, Dominguez should be thankful

2    that DeSimone prevented Layfield from executing his criminal conduct against the vulnerable

3    Villegas Family." Opp. Brief at 19. Let us remind Mr. DeSimone that when the Dominguez Firm

4    found out about L&B's actions, it sought to protect an entire class of Plaintiffs at a significant

5    cost to it—both in time and money.  Interestingly, however, DeSimone only sought to protect

6    itself and made sure to secure its own interests by positioning itself to keep the totality of the fee

7    in the Villegas case.  Every act taken by DeSimone upon entering the case was done with that

8    goal in mind.  There is no other way to explain the complete lack of transparency in its actions.

9    DeSimone did not file a complaint with the State Bar.  DeSimone did not start any

10   proceedings to alert other firms or other plaintiffs of L&B's actions.  DeSimone never contacted

11   the Dominguez Firm, the referring attorney, to discuss the problems it was having with L&B—

12   even though it knew that the Dominguez Firm was the referring firm.  Rather it just quietly had

13   the Villegas Family terminate L&B and then sign a new engagement letter (allegedly terminating

14   the Dominguez Firm without ever giving it notice) in an attempt to get around the Dominguez

15   Firm's pre-existing agreement with the Villegas.  The breadth of DeSimone's inequitable

16   conduct has no end.

17   In contrast, when the Dominguez Firm found out about L&B's actions, it initiated this

18   proceeding at a great financial cost (to date hundreds of thousands of dollars were spent by the

19   Dominguez Firm to protect the interests of ALL clients who were defrauded by L&B—not just

20   its own. The Dominguez Firm has worked hand-in-hand with the Trustee to resolve dozens of

21   cases at a great benefit to the estate, which was ultimately able to make the defrauded clients of

22   L&B whole or partially whole.

23   ///

24   ///

25   ///

26   ///

27   ///

28

1

## V.    CONCLUSION

2        For the reasons stated in the Opening Brief and this Reply Brief, the Dominguez Firm

3   believes that this Court has jurisdiction to hear this matter.  Further, based on the facts and the

4   law, the Dominguez Firm respectfully requests that this Court enter an order awarding the

5   Dominguez Firm its share of the settlement in the amount of $1,008,333.

6

7   Dated: November 3, 2020                          **THE DOMINGUEZ FIRM**

8                                          By:   */s/Olivier Taillieu*

9                                                Olvier Taillieu, Esq.
                                                 Attorneys for the Dominguez Firm.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF OLIVIER TAILLIEU

I, Olivier Taillieu, declare and state as follows:

1.    I am a partner at The Dominguez Firm, LLP and am authorized to make the statements set forth in this Declaration.

2.    I make this declaration in support of *The Dominguez Firm's Reply Memorandum In Support Of Its Motion To Enforce Transition Protocol And Omnibus Procedures Orders And To Compel Payment Of Quantum Meruit Claims And Referral Fees In Villegas v. County of San Bernardino* (the "**Reply**").[9]

3.    All matters set forth in this Declaration are based on my personal knowledge and my review of relevant documents, including, without limitation, information supplied to me by the Debtor and by others. If called upon to testify, I could and would testify competently to the facts set forth herein. The Exhibits referred to below are documents arising in the normal course of business of The Dominguez Firm and are retained by the Dominguez Firm as business records.

4.    Attached as **Exhibit 1** to this Declaration is the California Rule 2-200 Agreement between The Dominguez Firm, Layfield & Barrett and Jose Villegas.

5.    Attached as **Exhibit 2** to this Declaration is the California Rule 2-200 Agreement between The Dominguez Firm, Layfield & Barrett and Maria Villegas.

6.    Attached as **Exhibit 3** to this Declaration is the California Rule 2-200 Agreement between The Dominguez Firm, Layfield & Barrett and Jose Villegas, as guardian for Aldo Villegas.

7.    Attached as **Exhibit 4** to this Declaration is the claims rejection letter from the county addressed to the Dominguez Firm.

8.    Attached as **Exhibit 5** to this Declaration is an attorney's lien (the "**Dominguez Lien**") filed by The Dominguez Firm on September 26, 2017 in San Bernardino Superior Court, Case No. CIVDS1606504, in connection with the Villegas Case.

---

[9] Capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Reply.

9.      Attached as Exhibit 6 to this Declaration is an email forwarded to the Dominguez Firm by the Trustee between Philip Layfield and DeSimone dated April 6, 2016.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 3rd day of November, 2020.


                                                    */s/Olivier Taillieu*
                                                    Olivier Taillieu

18