Malhar S. Pagay (CA Bar No. 189289)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067-4003
Telephone: 310-277-6910
Facsimile: 310-201-0760
Email: mpagay@pszjlaw.com

Attorneys for Richard M. Pachulski, Chapter 7
Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:17-BK-19548-NB |
| LAYFIELD & BARRETT, APC,, | Chapter 7 |
| Debtors. | **CHAPTER 7 TRUSTEE'S OPPOSITION TO ALLEGRETTI & COMPANY'S MOTION FOR RELIEF OF ORDER APPROVING TRUSTEE'S SALE OF REAL PROPERTY ENTERED APRIL 5, 2019 [DOC 428]** |

[Ref. Docket Nos. 419, 428, 660, 661]

Date: March 5, 2024
Time: 11:00 a.m.
Place: United States Bankruptcy Court
Edward R. Roybal Federal Building
255 E. Temple Street
Courtroom 1545
Los Angeles, CA 90012
(or via Zoomgov per posted procedures)
Judge: Honorable Neil W. Bason

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT .................................................................................................1

II.    BACKGROUND ....................................................................................................................3

    A.    The Commencement of the Case and Conversion to Chapter 11 ............................3

    B.    The Estate's Financial Condition .............................................................................4

    C.    Reimbursement of Defrauded L&B Clients ............................................................5

    D.    The Reconversion to Chapter 7 ...............................................................................6

    E.    The Unit 200 Sale ....................................................................................................6

    F.    The Sales of Units 210 and 220 to Allegretti .........................................................8

    G.    Procedural Status of the Case ..................................................................................8

III.    ARGUMENT .......................................................................................................................8

    A.    Reconsideration Under Rule 60(b)(6) Is an Extraordinary Remedy to Be
        Used Only Sparingly ................................................................................................8

    B.    The Motion Is Untimely and Seeks an "End Run" Around the One-Year
        Deadline for Rectifying Mistakes or Inadvertence ...............................................10

    C.    Allegretti Has Not Shown "Extraordinary Circumstances" Warranting
        Reconsideration of this Court's Nearly Five-Year-Old Order ..............................11

    D.    The Parking Stalls Were Not "Inadvertently Omitted" From this Court's
        Order Authorizing the Units 210 and 220 Sale .....................................................11

IV.    CONCLUSION ..................................................................................................................13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1     Richard M. Pachulski, the duly appointed and acting chapter 7 trustee (the "Trustee") of

2   the bankruptcy estate (the "Estate") of Layfield & Barrett, APC ("L&B" or the "Debtor"), hereby

3   opposes ("Opposition") *Allegretti & Company's Motion for Relief of Order Approving Trustee's*

4   *Sale of Real Property Entered April 5, 2019 [Doc. 428]* [Docket No. 660] (the "Motion"), filed by

5   Allegretti & Company ("Allegretti"), and states as follows:

6                                         **I.**

7                         **PRELIMINARY STATEMENT**

8     On January 15, 2019, the Trustee filed a motion for authorization to sell the Estate's

9   interests in Unit 200 of Toll Creek Village 2 ("Unit 200"), an office condominium located at 2720

10  Homestead Road, Park City, Utah 84098 (the "Park City Property"), "together with any ancillary

11  rights and related property, including, without limitation, parking spaces" to buyer Sterling

12  Holdings LLC, or its assigns.[1]  The Real Estate Purchase Contract, attached as Exhibit A to the

13  Trustee's declaration filed in support of the Unit 200 Sale Motion, confirms that "4 parking stalls

14  within the underground parking structure" are "also included in this sale."[2]  On February 7, 2019,

15  the Court entered its order granting the Unit 200 Sale Motion [Docket No. 407] (the "Unit 200

16  Sale Order"),[3] which authorized the sale of Unit 200 and describes the property sold as "including,

17  without limitation, Underground Parking Stalls."[4]

18

19

---

20  [1] *Motion for Order (1) Authorizing Sale of Real Property Free and Clear of All Liens, Claims and Encumbrances Pursuant to 11 U.S.C.§§ 363(b) and (f); (2) Approving Overbid Procedures; (3) Approving Buyer, Successful Bidder and Backup Bidder as Good-Faith Purchaser Pursuant to 11 U.S.C. § 363(m); and (4) Authorizing Payment of*

21  *Undisputed Liens* [Docket No. 391] (the "Unit 200 Sale Motion") ¶ 3 at 11.  A true and correct copy of the Unit 200 Sale Motion is attached as **Exhibit "A"** to the Request for Judicial Notice, filed concurrently herewith (the "RFJN").

22

23  [2] Unit 200 Sale Motion, Ex. A (§ 1.2).

24  [3] The Unit 200 Sale Order is attached as Exhibit 1 to the Motion.

25  [4] Unit 200 Sale Order ¶ 6 at 5.  On February 20, 2019, the Court entered its *Order Pursuant to Fed. R. Civ. P. 60(a) Correcting Errors in Order Granting Motion (1) Authorizing Sale of Real Property Free and Clear of All Liens, Caims and Encumbrances Pursuant to 11 U.S.C. §§ 363(b) and (f); (2) Approving Buyer, Successful Bidder and Backup Bidder as Good-Faith Purchaser Pursuant to 11 U.S.C. § 363(m);*

26  *and (4) Authorizing Payment of Undisputed Liens and Other Ordinary Costs of Sale* [Docket No. 414] (the "Unit 200 Sale Correction Order"), modifying the Unit 200 Sale Order by correcting the parking stall numbers identified in the

27  Unit 200 Sale Order and noting the correct chapter under which the case was then pending.  A true and correct copy of

28  the Unit 200 Sale Correction Order is attached as **Exhibit "B"** to the RFJN.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Approximately one month later, on March 19, 2019, the Trustee filed a motion [Docket

2    No. 419][5] to approve the sale of two other units at the Park City Property—Units 210 and 220

3    ("Units 210 and 220")—to Allegretti, the buyer seeking reconsideration through the instant

4    Motion.  In stark contrast to the transactional documents governing the sale of Unit 200, the Unit

5    200 Sale Motion and the Unit 200 Sale Order, neither the March 5, 2019, Purchase and Sale

6    Agreement for Commercial Real Estate between the Trustee and Allegretti (attached as Exhibit A

7    to the Units 210 and 220 Sale Motion, the "Units 210 and 220 Purchase and Sale Agreement"),

8    nor the Units 210 and 220 Sale Motion, nor the order granting the Unit 210 and 220 Sale Motion,

9    entered on April 5, 2019 [Docket No. 428] (the "Units 210 and 220 Sale Order"),[6] makes any

10    mention of parking spaces or stalls.

11    Now, nearly five years after the Court entered its order authorizing the sale of Units 210

12    and 220 to Allegretti, Allegretti asks the Court to reconsider its Units 210 and 220 Sale Order and

13    rewrite the sale transaction regarding Units 210 and 220 to include parking spaces – estate assets

14    that were never the subject of the purchase.

15    The Motion is brought pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure,

16    made applicable in this case ("Case") pursuant to Federal Rule of Bankruptcy Procedure 9024.

17    Although, Rule 60(b)(6) allows for reconsideration for "any other reason that justifies relief,"

18    "inadvertence" and "mistake" are among the enumerated grounds for reconsideration under Rule

19    60(b)(1), and reconsideration on such grounds is subject to a deadline of "no more than a year

20    after the entry of the judgment or order."  Fed. R. Civ. P. 60(b)(6), (c)(1).  Although Allegretti

21    tries to recast its request for reconsideration – which falls squarely within the grounds listed in

22    Rule 60(b)(1) -- under Rule 60(b)(6), the Motion is within the ambit of Rule 60(b)(1) and, as such,

23    the deadline to seek such relief passed four years ago.

24

25    [5] See *Motion for Order (1) Authorizing Sale of Real Property Free and Clear of All Liens, Claims and Encumbrances Pursuant to 11 U.S.C. §§ 363(b) and (f); (2) Approving Buyer as Good-Faith Purchaser Pursuant to 11 U.S.C.*

26    *§§ 363(m); and (3) Authorizing Payment of Undisputed Liens and Other Ordinary Costs of Sale* [Docket No. 419], filed on March 19, 2019 (the "Units 210 and 220 Sale Motion").  A true and correct copy of the Units 210 and 220

27    Sale Motion is attached as **Exhibit "C"** to the RFJN.

28    [6] The Units 210 and 220 Sale Order is attached as Exhibit 3 to the Motion.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    A motion under Rule 60(b)(6) requires Allegretti to demonstrate "extraordinary

2  circumstances" to warrant reconsideration, as the Motion concedes.[7]   Allegretti falls far short of

3  this high threshold and merely asserts that the parking spaces "were inadvertently omitted" or

4  mistakenly not included from the Units 210 and 220 Sale Order.[8]    The Units 210 and 220

5  transactional agreements, pleadings, and order—and the contrast of those documents with those

6  pertaining to the Unit 200 sale transaction, which are replete with multiple references to parking

7  stalls—as well as the absence of any inquiries, disputes, or other issues in the past five years of

8  Allegretti's ownership and occupancy of the purchased units, belie otherwise.  The Motion is

9  devoid of any explanation regarding what prevented Allegretti from addressing the exclusion of

10  the parking stalls from the (i) Units 210 and 220 Purchase and Sale Agreement, (ii) Units 210 and

11  220 Sale Motion, or (iii) Units 210 and 220 Sale Order, in the half-decade that has passed since

12  the Units 210 and 220 Sale Order was entered.

13    Thus, the Motion is untimely, improper, and its claim of "inadvertently omitted" assets

14  fails to come close to the extraordinary circumstances standard that must be met in order to

15  warrant reconsideration.  The Motion must be denied.

16                                   **II.**

17                           **BACKGROUND**

18  **A.    The Commencement of the Case and Conversion to Chapter 11**

19    On August 3, 2017, petitioning creditors The Dominguez Firm, a law firm that previously

20  had referred matters to L&B, and Mario Lara, Nayazi Reyes and Maria A. Rios, each a former

21  client of L&B (collectively, the "Petitioning Creditors"), filed an involuntary petition for relief

22  under chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Code") against L&B.

23  That same day, the Petitioning Creditors filed an *Emergency Motion for Appointment of an Interim*

24  *Trustee Under 11 U.S.C. § 303(g) and Granting Emergency Relief* [Docket No. 3] (the "Trustee

25  Motion").  In the Trustee Motion, the Petitioning Creditors asserted, among other allegations, that

26

27  _____
[7] *See* Motion at 6.

28  [8] Motion at 2.

1   "[s]ettlement proceeds have not been distributed and may no longer exist, vendors and other

2   creditors have not been paid and clients are effectively unrepresented in some 80 pending cases,"

3   and that, consequently, the appointment of a trustee is "essential to protect and preserve property

4   of the . . .  estate and to prevent concealment, waste, loss or conversion of the assets of the estate. .

5   . ."  Trustee Motion at 1.

6         In response to the Trustee Motion, the Debtor filed a *Motion to Convert Case Under 11*

7   *U.S.C. §§ 706(a) or 1112(a)* on August 8, 2017 [Docket No. 19] (the "Conversion Motion"),

8   seeking to convert the Case to one under chapter 11 of the Bankruptcy Code.  The Court entered

9   orders granting the Conversion Motion [Docket No. 25] and denying the Trustee Motion [Docket

10  No. 24].

11        On August 16, 2017, the Debtor, Petitioning Creditors, and secured creditor, Advocate

12  Capital, Inc. ("Advocate"), entered into a *Stipulation for the Appointment of a Chapter 11 Trustee*

13  [Docket No. 38], which the Court approved by order on August 17, 2017 [Docket No. 42].

14        On August 21, 2017, the United States Trustee ("UST") filed its *Notice of Appointment of*

15  *Chapter 11 Trustee*, appointing Richard M. Pachulski as Chapter 11 Trustee in the Case [Docket

16  No. 51].  Also on August 21, 2017, the UST filed an *Application for Order Approving*

17  *Appointment of Chapter 11 Trustee* [Docket No. 53], which application was granted by the

18  Court's order entered the following day [Docket No. 56].

19        On August 28, 2017, the Trustee filed his *Acceptance of Appointment as Chapter 11*

20  *Trustee* [Docket No. 63].

21  **B.**     **The Estate's Financial Condition**

22        On February 27, 2018, the Trustee filed a *Motion for Order Approving Surcharge of*

23  *Secured Creditors Collateral* [Docket No. 239] (the "Surcharge Motion"), seeking to surcharge

24  the proceeds of the collateral of Wellgen Standard, LLC ("Wellgen"), successor in interest and

25  parent company to Advocate.  On May 3, 2018, the Court granted in part and denied in part the

26  Surcharge Motion on the terms set forth in the *Stipulation re: Trustee's Motion for Order*

27  *Approving Surcharge of Secured Creditor's Collateral* [Docket No. 281] (the "Surcharge

28  Stipulation").  Through the Surcharge Stipulation, the parties came to a broad and comprehensive

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  settlement regarding the Surcharge Motion, as well as surcharge rights that may be implicated

2  during the remainder of the Case, to provide for the division of funds recovered by the Trustee

3  between Wellgen, on account of its secured claim, and the Estate.

4         As a result of the entry of the order approving the Surcharge Stipulation [Docket No. 295],

5  the Estate and Wellgen split recoveries based on the terms of the Surcharge Stipulation, resulting

6  in a paydown of secured debt to date in the approximate amount of $1.4 million and the partial

7  payment of chapter 11 administrative expenses.

8  **C.    Reimbursement of Defrauded L&B Clients**

9         On February 23, 2018, the United States Attorney filed a complaint for mail fraud against

10  Layfield in the United States District Court for the Central District of California.  Layfield's

11  criminal trial resulted in his conviction on all counts. [C.D. Cal. No. 2:18-cr-00124 (hereinafter

12  "C.D. Cal."), Docket No. 314].  On March 8, 2022, the District Court issued its Judgment and

13  Probation/Commitment Order, sentencing Layfield to be imprisoned for twelve years.  [C.D. Cal.

14  Docket No. 368].  Layfield has appealed his conviction and sentencing.  [C.D. Cal. Docket No.

15  369].

16         On April 22, 2022, the United States submitted its Government's Position in Support of

17  Restitution [C.D. Cal. Docket No. 439] ("US Sentencing Memo"), pursuant to which it requested

18  that Layfield be ordered to pay restitution in the aggregate amount of $10,715,428.43, including

19  $3,427,496.45 to the California State Bar Client Security Fund from payments allegedly made to

20  Layfield's—and, presumably, L&B's—defrauded former clients, the identities of whom were not

21  disclosed in public filings with the District Court.  US Sentencing Memo at 13.

22         One reason, among others, that the Trustee maintained the Case under chapter 11 was to

23  have the ability to potentially utilize the "convenience class" provisions of Bankruptcy Code

24  section 1122(b) to provide enhanced distributions to former L&B clients who were defrauded

25  from receiving relatively modest settlements.  The Trustee believed that, in some cases, depending

26  on the individual's personal economic circumstances, these potential distributions would have a

27  meaningful impact on their financial condition.

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   Based on the redacted information provided by the State Bar of California in Layfield's

2   criminal sentencing—that the organization utilized its Client Security Fund to reimburse former

3   Layfield clients as a result of his fraud—this concern was mitigated.

4   **D.**    **The Reconversion to Chapter 7**

5   Due to the amount of cash on hand and the amounts of current and anticipated chapter 11

6   administrative expenses, the Trustee determined that it was not practicable to formulate and

7   prosecute confirmation of a chapter 11 plan.[9]  Consequently, the Trustee and the United States

8   Trustee entered into a *Stipulation to Re-Convert Case From Chapter 11 to Chapter 7 of the United*

9   *States Bankruptcy Code* [Docket No. 609] (the "Reconversion Stipulation"), to re-convert the Case

10  back to chapter 7.  On December 9, 2022, the Court entered its order approving the Reconversion

11  Stipulation and reconverting the Case to chapter 7.

12  Because the Debtor has no officers or directors, no one appeared on behalf of the Debtor at

13  the Bankruptcy Code section 341(a) meeting of creditors on February 9, 2023.  Consequently, no

14  testimony was provided at such meeting, which was concluded.

15  **E.**    **The Unit 200 Sale**

16  On January 7, 2019, the Trustee and the buyer of Unit 200 at the Park City Property

17  entered into that certain Real Estate Purchase Contract (attached as Exhibit "A" to the Unit 200

18  Sale Motion, the "Unit 200 Purchase and Sale Agreement"), which describes in section 1.2.

19  among the assets sold, "4 parking stalls within the underground parking structure."

20  On January 15, 2019, the Trustee filed the Unit 200 Sale Motion, which states:  "the

21  Trustee respectfully requests that this Court enter an order: . . . Authorizing the Trustee to sell Unit

22  200 together with any ancillary rights and related property, including, without limitation, *parking*

23  *spaces*, to the Buyer . . . ."  Unit 200 Sale Motion at 11 (emphasis added).

24  The inclusion of parking stalls among the assets to be sold is also made clear in the Unit

25  200 Sale Order, entered by the Court on February 7, 2019:

26  "Unit 200, TOLL CREEK VILLAGE 2, a Utah Condominium
    Project, together with its appurtenant undivided ownership interest

27

─────────────────────────

28  [9] As of November 4, 2022, the Estate held $14,997.57.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

in and to the Common Areas and Facilities, *including, without limitation, Underground Parking Stalls numbered 1, 2, 3 and 35,* as established and described in the Record of Survey Map recorded February 27, 2008, as Entry No. 838524, and in the Declaration of Covenants, Conditions and Restrictions of Toll Creek Village Office Condominiums, recorded September 2, 2005, as Entry No. 749496 in Book 1730 at page 1816, the Amendment to Declaration of Covenants, Conditions and Restrictions of Toll Creek Village Office Condominiums recorded February 27, 2008, as Entry No. 838525 in Book 1916 at page 1360, and Third Amendment to Declaration of Covenants, Conditions and Restrictions of Toll Creek Village Office Condominiums recorded September 19, 2013, as Entry No. 979487 in Book 2207 at page 1236, and the Notice of Assignment of Limited Common Area, recorded October 19, 2015, as Entry No. 01030716 in Book 2320 at page 0647, records of Summit County, Utah. (TCVC-2-200)"

Unit 200 Sale Order at 2 (emphasis added).

Paragraph 6 of the Unit 200 Sale Order also states:   "Pursuant to section 363(f) of the Bankruptcy Code, the Trustee is authorized to sell the Property, together with any ancillary rights and related property, including, without limitation, appurtenant **Underground Parking Stalls numbered 1, 2, 3 and 35**, …."  Unit 200 Sale Order at 5 (Emphasis added).

In connection with and in order to facilitate and implement the Unit 200 Sale Order, six days after the entry of the Unit 200 Sale Order (February 13, 2019), counsel to the Trustee wrote to Darwin Bingham, counsel to Toll Creek Village Owners Association (the "Bingham Letter"), regarding the allocation of parking stalls associated with each of the suites to ensure that the owners' association would have notice of the recent purchase by the Unit 200 buyer of the Estate's interest in specific parking stalls.[10]   The letter allocates stalls 1, 2, 3 and 35 to Unit 200, per the Court's order and was deemed important to the parties since the "Notice of Assignment of Limited Common Area," recorded by the Condominium Owners' Association on October 19, 2015 and attached to the Motion as Exhibit 5 (the "LCA Notice"), allocated parking spaces by *owner, not by unit*.

---

[10] The Bingham Letter is attached to the Motion as Exhibit 6.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    However, after being advised that the identification of the parking stall numbers in the Unit

2    200 Sale Order was erroneous, Trustee's counsel submitted and, on February 20, 2019, the Court

3    entered its Unit 200 Sale Correction Order, which, among other relief, provided that "[t]he

4    incorrect Underground Parking Stall numbers reflected in the Property description in the Sale

5    Order shall be and are deemed corrected to reflect the parking space numbers" in a revised

6    property description, which corrected the parking stall numbers to spaces 35, 39, 40 and 41.  Unit

7    200 Sale Correction Order at 3.

8    **F.    The Sales of Units 210 and 220 to Allegretti**

9    On March 19, 2019, the Trustee filed the Units 210 and 220 Sale Motion seeking

10   authorization to sell Units 210 and 220 to Allegretti.  In contrast to the pleadings, order, and

11   transactional documents relating to the Unit 200 sale, neither the (i) Units 210 and 220 Purchase

12   and Sale Agreement, (ii) Units 210 and 220 Sale Motion, nor (iii) Units 210 and 220 Sale Order,

13   makes any mention of parking stalls.

14   **G.    Procedural Status of the Case**

15   As set forth in the *Chapter 7 Trustee's Fourth Status Report* [Docket No. 665] filed by the

16   Trustee on February 6, 2024, the Trustee has prepared a draft *Trustee's Final Report* in the Case,

17   and has secured the services of an accountant to prepare the Estate's final tax returns and obtain

18   tax clearance so that the final report may be submitted.  It is estimated that the final returns will be

19   completed and the tax clearance letter submitted to taxing authorities within the next week, and

20   that tax clearance should be obtained prior to May 1, 2024.

**III.**

**ARGUMENT**

**A.    Reconsideration Under Rule 60(b)(6) Is an Extraordinary Remedy to Be Used Only Sparingly**

"'[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the [bankruptcy] court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)).  Federal Rule of Civil

2    Procedure 60(b), as incorporated by Federal Rule of Bankruptcy Procedure 9024, provides that a

3    court may relieve a party from a final order for the following reasons: (1) mistake, inadvertence,

4    surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence,

5    could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud

6    (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing

7    party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is

8    based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no

9    longer equitable; or (6) any other reason that justifies relief.  Fed. R. Civ. P. 60(b); *see* Fed. R.

10   Bankr. P. 9024.

11          The Motion is brought under the "catch-all" provision of Rule 60(b)(6), which permits

12   reconsideration based on "any . . . reason that justifies relief" separate from and instead of the

13   more specific circumstances set out in clauses (1) through (5).  *See Gonzalez v. Crosby*, 545 U.S.

14   524, 528 n.2, 529 (2005); *Liljeberg v. Health Serv. Acq. Corp.*, 486 U.S. 847, 863 n.11 (1988)

15   (motions under "clause (6) and clauses (1) through (5) are mutually exclusive").  However, a

16   motion under Rule 60(b)(6) is a truly extraordinary remedy.  *See, e.g., Hesling v. CSX Transp.,

17   Inc.*, 396 F.3d 632 (5th Cir. 2005) ("[R]elief under [Fed. R. Civ. P. 60(b)(6)] is granted 'only if

18   extraordinary circumstances are present.'"); *Williams v. New Orleans Pub. Serv.*, 728 F.2d 730,

19   736 (5th Cir. 1984) (60(b)(6) relief should not be granted because an order or judgment is simply

20   erroneous or will cause some hardship).  Indeed, the Supreme Court imposes a strict standard for

21   Rule 60(b)(6) motions filed more than one year after the entry of a judgment, requiring a moving

22   party to demonstrate both (i) an erroneous judgment and (ii) extraordinary circumstances to obtain

23   relief.  *See Klapprott v. United States*, 335 U.S. 601 (1949); *Ackermann v. United States*, 340 U.S.

24   193 (1950).  The U.S. Supreme Court has held that the reconsideration "catchall" contained in

25   Rule 60(b)(6) "is available only when Rules 60(b)(1) through (b)(5) are inapplicable."  *Kemp v.

26   United States*, 142 S. Ct. 1856, 1858 (2022).

27          In the Ninth Circuit, relief under Rule 60(b)(6) is to be "'used sparingly as an equitable

28   remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances

1   prevented a party from taking timely action to prevent or correct an erroneous

2   judgment.'" *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1103 (9th Cir. 2006) (quoting

3   *United States v. Alpine Land & Reservoir Co.,* 984 F.2d 1047, 1049 (9th Cir. 1993)).  *See Kona*

4   *Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2020) (reconsideration is an "extraordinary

5   remedy, to be used sparingly in the interests of finality and conservation of judicial resources")

6   (quoting *Moore's Federal Practice); see also Pioneer Inv. Servs. v. Brunswick Assocs.*, 507 U.S.

7   380, 393 (1993)(moving party must show it was affected by "extraordinary circumstances" and

8   was "faultless in the delay"); *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1173 (9th Cir.

9   2017) ("Rule 60(b) relief should be granted 'sparingly' to avoid 'manifest injustice' and 'only

10  where extraordinary circumstances prevented a party from taking timely action to prevent or

11  correct an erroneous judgment'" (quoting *Alpine Land,* 984 F.2d at 1049); *Shalit v. Coppe*, 182

12  F.3d 1124, 1132 (9th Cir. 1999) ("reconsideration is appropriate only in very limited

13  circumstances").

**B.    The Motion Is Untimely and Seeks an "End Run" Around the One-Year Deadline for
        Rectifying Mistakes or Inadvertence**

16      In addition, a motion under Rule 60(b), including one under Rule 60(b)(6), "must be made

17  within a reasonable time," Fed. R. Civ. P. 60(c)(1), a standard that "depends upon the facts of each

18  case, taking into consideration the interest in finality, the reason for delay, the practical ability of

19  the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Ashford v.*

20  *Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981).  However, with respect to motions to reconsider

21  orders on the grounds set forth in Rules 60(b)(1), (2) or (3)—i.e., relief from an order on the

22  grounds of mistake, inadvertence, surprise, excusable neglect, newly discovered evidence or

23  fraud—the motion must be made "no more than a year after the entry of the . . . order . . . ."  Fed.

24  R. Civ. P. 60(c)(1).

25      The Motion, filed pursuant to Rule 60(b)(6) nearly five years after the entry of the order it

26  asks the Court to reconsider, is an attempt to end run around the applicable deadline for the

27  reconsideration it seeks.  *See* 11 Charles Alan Wright et al., *Federal Practice and Procedure* §

28  2864 at 502 (3d ed. 2012) ("For the most part, cases brought under clause (6) are attempts to avoid

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  either the one-year limit in other clauses of Rule 60(b) or time re-strictions for other types of post-

2  trial review imposed in other rules."); *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (noting

3  "particular concern" that "parties may attempt to use Rule 60(b)(6) to circumvent the one-year

4  time limitation in other subsections of Rule 60(b)"). The Motion can and should be denied on this

5  basis alone.

6  **C.    Allegretti Has Not Shown "Extraordinary Circumstances" Warranting
   Reconsideration of this Court's Nearly Five-Year-Old Order**

7

8       Allegretti's sole basis for requesting reconsideration is that the parking spaces "were

9  inadvertently omitted" from the Units 210 and 220 Sale Order. Motion at 2. The Motion contains

10  no discussion of any extraordinary circumstances that prevented Allegretti from discovering the

11  allegedly "inadvertent" omission in the five years since the sale transaction closed. Similarly, the

12  Motion is devoid of any explanation regarding what prevented Allegretti from addressing the

13  exclusion of the parking stalls from the (i) Units 210 and 220 Purchase and Sale Agreement, (ii)

14  Units 210 and 220 Sale Motion, or (iii) Units 210 and 220 Sale Order, in the half-decade that has

15  passed since the Units 210 and 220 Sale Order was entered while Allegretti enjoyed ownership

16  and occupancy of the property. In sum, no circumstances—let alone "extraordinary" ones—are

17  presented in the Motion to warrant relief under Rule 60(b)(6).

18  **D.    The Parking Stalls Were Not "Inadvertently Omitted" From this Court's Order
   Authorizing the Units 210 and 220 Sale**

19

20       Even if Allegretti met the very high standard necessary to warrant the Court's

21  reconsideration, Allegretti cannot demonstrate that certain parking stalls "should have been

22  included, but were inadvertently omitted" from the Units 210 and 220 Sale Order. Motion at 5.

23  The party making the Rule 60(b) motion bears the burden of proof. *See Rufo v. Inmates of Suffolk*

24  *Cnty. Jail*, 502 U.S. 367, 383 (1992).

25       The Motion relies entirely upon the bizarre reasoning that because parking stalls were

26  negotiated as part of the *Unit 200* sale transaction and *included explicitly* in the (i) Unit 200 Sale

27  Motion, (ii) Unit 200 Purchase and Sale Agreement, (iii) Unit 200 Sale Order, and (iv) Unit 200

28  Sale Correction Order, *the absence of any mention of parking stalls* in the (i) Units 210 and 220

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Sale Motion, (ii) Units 210 and 220 Purchase and Sale Agreement,[11] or (iii) the Units 210 and 220 Sale Order, is somehow a clear indication that they were inadvertently omitted from the Units 210 and 220 transaction.  It strains credulity that in nearly five years, neither party to the Units 210 and 220 sale transaction would note that parking stalls were "inadvertently omitted" from documents critical to the transaction—especially the operative order and the description of the property being transferred from the Estate—if such assets were intended to be included in the sale.

Instead, as is evident from the differences between the two sales transactions (Unit 200 vs. Units 210 and 220), in contrast to the purchaser of Unit 200, Allegretti neither identified nor otherwise included in its offer nor otherwise documented the purchase and sale of any parking stalls and, as such, neither the Units 210 and 220 Sale Motion, Units 210 and 220 Sale Order nor the Units 210 and 220 Purchase and Sale Agreement includes any parking stalls.

Additionally, the LCA Notice, on which Allegretti relies, does nothing to assign rights to a specific parking stall to *any unit* at the Park City Property, let alone Units 210 and 220.  The LCA Notice merely assigns rights to parking stalls to property *owners* and makes no mention whatsoever of specific units.  Accordingly, the LCA Notice provides no evidence of any association between Units 210 and 220 purchased by Allegretti and any specific parking stalls.

Also, the Motion offers a perplexing set of assertions regarding the parking stalls Allegretti now claims should have been included in the Units 210 and 220 sale transaction.  For example, Allegretti asserts that Units 210 and 220 "were to include 3 of the 7 parking spaces associated with the [units] and the Office Condo purchased by Sterling,"  Motion at 3, but offers no explanation how the Trustee could have sold to Allegretti parking spaces that already would have been "associated with . . . the Office Condo purchased by Sterling," a separate buyer of a separate unit (Unit 200) as well as parking stalls identified in the Unit 200 Purchase and Sale Agreement, Unit 200 Sale Motion, Unit 200 Sale Order and Unit 200 Sale Correction Order.  Also, the Motion alleges Allegretti's astonishment that "[t]he [Units 210 and 220 Sale] Motion surprisingly did not

---

[11] The Units 210 and 220 Purchase and Sale Agreement contains an integration clause which provides, in part, that such agreement "constitutes the entire agreement between the Parties regarding the purchase and sale of the Property and supersedes and replaces any and all prior negotiations, representations, warranties, understandings or contracts between the Parties." Units 210 and 220 Purchase and Sale Agreement ¶ 14 at PDF 29 of 38.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  include a legal description of the Properties [i.e., Units 210 and 220]," but provides no explanation

2  what Allegretti did in connection with this discovery in connection with the Units 210 and 220

3  Sale Motion, filed in March 2019.  Motion at 3.  Allegretti claims that its lessee, Algren Building,

4  informed Allegretti that it "could not utilize the Parking Spaces" in September 2023 but gives no

5  information regarding whether Algren or any prior tenant had experienced any difficulties utilizing

6  parking stalls prior to that time in the nearly five years since Allegretti purchased Units 210 and

7  220.

8         Finally, there is no discussion in the Motion regarding the legal effect of the Bingham

9  Letter, sent between counsel, regarding the creation of any appurtenant rights under Utah real

10  property law to specific parking stalls.  The letter, sent after the Unit 200 transaction to provide

11  notice to the Condominium Owners' Association that a new Unit 200 owner would be accessing

12  certain spaces that it purchased, does not purport to convey any property rights.

13         In sum, Allegretti is unable to demonstrate that any parking stalls were included as part of

14  the Units 210 and 220 sale transaction.

## IV.

## CONCLUSION

17         The administration of this Case is almost at an end:  As set forth in his most recent status

18  report to the Court, the Trustee anticipates filing his final report as soon as tax clearance is

19  received, which is anticipated to be prior to May 1, 2024.  Upon closure of the Case, all assets not

20  administered during the Case will be abandoned.  Accordingly, in the absence of a transaction

21  involving any remaining assets that brings material value to the Estate prior to the closure of the

22  Case, the disposition of such assets—including any parking stalls—likely is not of any

23  significance to the Estate.  Nevertheless, relief is not warranted from a nearly five-year-old order

24  of this Court approving a transaction that neither included nor contemplated the inclusion of the

25  parking stall assets referenced in the Motion.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

For the foregoing reasons, the Court should deny the Motion and grant the Trustee such other and further relief as may be appropriate under the circumstances.

Dated:  February 20, 2024        PACHULSKI STANG ZIEHL & JONES LLP

By:  */s/ Malhar S. Pagay*
                        Malhar S. Pagay
              Attorneys for
              Richard M. Pachulski, Chapter 7 Trustee

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT A

1  Debra I. Grassgreen (CA Bar No. 169978)
   Malhar S. Pagay (CA Bar No. 189289)
2  PACHULSKI STANG ZIEHL & JONES LLP
   10100 Santa Monica Blvd., 13th Floor
3  Los Angeles, California 90067
   Telephone: 310/277-6910
4  Facsimile:  310/201-0760
   E-mail: dgrassgreen@pszjlaw.com
5          mpagay@pszjlaw.com

6  Attorneys for Richard M. Pachulski, Chapter 11 Trustee

7

8                UNITED STATES BANKRUPTCY COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10                  LOS ANGELES DIVISION

11 | In re:                          | Case No. 2:17-bk-19548-NB
   |                                 |
12 | LAYFIELD & BARRETT, APC,        | Chapter 11
   |                                 |
13 |                      Debtor.    | **MOTION FOR ORDER (1) AUTHORIZING
   |                                 | SALE OF REAL PROPERTY FREE AND
14 |                                 | CLEAR OF ALL LIENS, CLAIMS AND
   |                                 | ENCUMBRANCES PURSUANT TO 11 U.S.C.
15 |                                 | §§ 363(b) AND (f); (2) APPROVING
   |                                 | OVERBID PROCEDURES; (3) APPROVING
16 |                                 | BUYER, SUCCESSFUL BIDDER AND
   |                                 | BACKUP BIDDER AS GOOD-FAITH
17 |                                 | PURCHASER PURSUANT TO 11 U.S.C.
   |                                 | § 363(m); AND (4) AUTHORIZING
18 |                                 | PAYMENT OF UNDISPUTED LIENS AND
   |                                 | OTHER ORDINARY COSTS OF SALE;
19 |                                 | MEMORANDUM OF POINTS AND
   |                                 | AUTHORITIES AND DECLARATIONS OF
20 |                                 | RICHARD M. PACHULSKI AND RANDAL
   |                                 | RUPERT IN SUPPORT THEREOF**

21                                   [2720 Homestead Road, Unit 200, Park City, Utah
22                                   84098]

23
                                     Date:     February 5, 2019
24                                   Time:     2:00 p.m.
                                     Place:    United States Bankruptcy Court
25                                             Edward R. Roybal Federal Building
                                               255 E. Temple Street, Ctrm. 1545
26                                             Los Angeles, California 90012
                                     Judge:    Honorable Neil W. Bason
27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ...................................................................................2

II.   STATEMENT OF FACTS ......................................................................2

    A.    The Commencement of the Bankruptcy Case and Appointment of the
        Trustee.................................................................................................2

    B.    Wells Fargo Bank Motions for Relief from Stay.......................................3

    C.    The Recovery and Revesting of the Property in the Estate .........................3

    D.    The Employment of the Broker and Marketing of the Property ....................4

    E.    The Buyer's Offer ..................................................................................5

III.  ARGUMENT .........................................................................................5

    A.    The Trustee May Sell Property of the Estate Pursuant to 11 U.S.C.
        § 363(b) ...............................................................................................5

    B.    The Trustee May Sell the Property Free and Clear of Liens, Claims
        and Interests ........................................................................................6

    C.    The Buyer Should Be Deemed a "Good Faith Purchaser" Pursuant to
        11 U.S.C. § 363(m) ...............................................................................7

    D.    Adequate Notice of the Sale ....................................................................7

IV.   PROPOSED OVERBID PROCEDURES ...................................................8

    A.    Overbid Procedures................................................................................8

    B.    The Bankruptcy Court Has the Authority to Implement the Proposed
        Overbid Procedures ..............................................................................10

    C.    The Court Should Waive the Stay Imposed by Rule 6004(h) of the
        Federal Rules of Bankruptcy Procedure .................................................10

V.    CONCLUSION.....................................................................................11

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:317968.4 51414/001

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*Community Thrift & Loan v. Suchy (In re Suchy),*
786 F.2d 900 (9th Cir. 1985) ............................................................................................... 7

*Ewell v. Diebert (In re Ewell),*
958 F.2d 276 (9th Cir. 1992) ............................................................................................... 7

*In re 240 North Brand Partners, Ltd.,*
200 B.R. 653 (B.A.P. 9th Cir. 1996) .................................................................................. 6

*In re Abbotts Dairies of Pennsylvania, Inc.,*
788 F.2d 143 (3d Cir. 1986) ................................................................................................ 7

*In re America West Airlines,*
166 B.R. 908 (Bankr. D. Ariz. 1994) ................................................................................. 5

*In re Crown Corporation,*
679 F.2d 774 (9th Cir. 1982) ............................................................................................. 10

*In re Ernst Home Center, Inc.,*
209 B.R. 974 (Bankr. W.D. Wash. 1997) .......................................................................... 6

*In re Lionel Corp.,*
722 F.2d 1063 (2d Cir. 1983) .............................................................................................. 5

*In re Onouli Kona Land Co.,*
846 F.2d 1170 (9th Cir. 1988) ............................................................................................ 8

*In re Wilde Horse Enterprises, Inc.,*
136 B.R. 830 (Bankr. C.D. Cal. 1991) ............................................................................... 6

## STATUTES

## STATUTES

11 U.S.C. § 105(a) ................................................................................................................ 10

11 U.S.C. § 363(b) ....................................................................................................... 5, 10, 11

11 U.S.C. § 363(f) ................................................................................................................... 6

11 U.S.C. § 363(m) ........................................................................................................... 7, 11

## RULES

Fed. R. Bankr. P. 6004(h) .............................................................................................. 10, 11

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**TO THE HONORABLE NEIL W. BASON, UNITED STATES BANKRUPTCY JUDGE;
THE OFFICE OF THE UNITED STATES TRUSTEE; AND OTHER PARTIES IN
INTEREST:**

Richard M. Pachulski, the chapter 11 trustee (the "<u>Trustee</u>") of the bankruptcy estate (the
"<u>Estate</u>") of Layfield & Barrett, APC (the "<u>Debtor</u>" or "<u>L&B</u>"), hereby moves (the "<u>Motion</u>") this
Court for entry of an order (1) authorizing him to sell real property commonly known as Unit 200 of
Toll Creek Village 2 (Parcel No. TCVC-2-200), an office condominium located at 2720 Homestead
Road, Park City, Utah 84098 (the "<u>Property</u>"), to Sterling Holdings LLC or its assigns (the "<u>Buyer</u>")
free and clear of all liens, claims and encumbrances pursuant to sections 363(b) and (f) of the
Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "<u>Bankruptcy Code</u>"); (2) approving overbid
procedures; (3) approving the Buyer or a successful overbidder and a backup bidder as good faith
purchasers pursuant to section 363(m) of the Bankruptcy Code; and (4) authorizing the payment of
undisputed liens and other ordinary costs of sale. In support of the Motion, the Trustee submits the
memorandum of points and authorities and the declarations of Richard M. Pachulski and Randal
Rupert annexed hereto, and respectfully represents as follows:

DOCS_LA:317968.4 51414/001

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

By this Motion, the Trustee is seeking authority to sell one of three office suites (the "Office Suites") located at Toll Creek Village 2, an office condominium complex located at 2720 Homestead Road, Park City, Utah 84098.  Through fraudulent transfer litigation commenced in this Court, the Trustee recovered the Office Suites (and a storage unit ("Storage Unit")) that previously were transferred by Philip Layfield ("Layfield"), the Debtor's former principal, from the Debtor to an entity under his control.  After being marketed by the Trustee's broker over the past four months, the Trustee has accepted an offer to purchase Suite 200, subject to approval by this Court.

## II.

## STATEMENT OF FACTS

### A.     The Commencement of the Bankruptcy Case and Appointment of the Trustee

On August 3, 2017, petitioning creditors The Dominguez Firm, a law firm that previously has referred matters to the Debtor, and Mario Lara, Nayazi Reyes and Maria A. Rios, each a former client of the Debtor (the "Petitioning Creditors"), filed an involuntary petition for relief under chapter 7 of the Bankruptcy Code against L&B, commencing the above-captioned bankruptcy case (the "Case").  That same day, the Petitioning Creditors filed an *Emergency Motion for Appointment of an Interim Trustee Under 11 U.S.C. § 303(g) and Granting Emergency Relief* [Docket No. 3][1] (the "Trustee Motion").  In the Trustee Motion, the Petitioning Creditors asserted, among other allegations, that "[s]ettlement proceeds have not been distributed and may no longer exist, vendors and other creditors have not been paid and clients are effectively unrepresented in some 80 pending cases," and that, consequently, the appointment of a trustee is "essential to protect and preserve property of the … estate and to prevent concealment, waste, loss or conversion of the assets of the estate …."  Trustee Motion at 1.

---

[1] Pursuant to Rule 201 of the Federal Rules of Evidence, the Trustee respectfully requests that the Court take judicial notice of all pleadings, orders and other matters of public record reflected in the Court's own docket.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:317968.4 51414/001

In response to the Trustee Motion, the Debtor filed a *Motion to Convert Case Under 11 U.S.C. §§ 706(a) or 1112(a)* on August 8, 2017 [Docket No. 19] (the "Conversion Motion"), seeking to convert the Case to one under chapter 11 of the Bankruptcy Code. The Court entered orders granting the Conversion Motion [Docket No. 25], and denying the Trustee Motion [Docket No. 24].

On August 16, 2017, the Debtor, Petitioning Creditors, and secured creditor, Advocate Capital, Inc. ("Advocate Capital"), entered into a *Stipulation for the Appointment of a Chapter 11 Trustee* [Docket No. 38], which the Court approved by order on August 17, 2017 [Docket No. 42].

On August 21, 2017, the United States Trustee (the "UST") filed its *Notice of Appointment of Chapter 11 Trustee*, appointing Richard M. Pachulski as Chapter 11 Trustee in the Case [Docket No. 51]. Also on August 21, 2017, the UST filed an *Application for Order Approving Appointment of Chapter 11 Trustee* [Docket No. 53], which application was granted by the Court's order entered the following day [Docket No. 56].

On August 28, 2017, the Trustee filed his *Acceptance of Appointment as Chapter 11 Trustee* [Docket No. 63].

**B.    Wells Fargo Bank Motions for Relief from Stay**

On November 21, 2017, Wells Fargo Bank, National Association ("WFB"), filed motions for relief from the automatic stay with respect to the Office Suites [Docket No. 143], including the Property [Docket No. 144] ("WFB RFS Motion"), as well as another property located in Arizona [Docket No. 142]. In the WFB RFS Motion, WFB asserted a total claim against the Property of $287,632.02, another encumbrance on the Property arising from condominium association fees in the amount of $2,116.00, and a fair market value of $385,000.00. The hearing regarding the WFB RFS Motion has been continued from time to time and currently is set to be heard on February 5, 2019, at 2:00 p.m., the same date and time as the hearing regarding this Motion.

**C.    The Recovery and Revesting of the Property in the Estate**

On April 7, 2017, Layfield, in his stated capacity as President of L&B, executed quitclaim deeds transferring the title to the Office Suites (the "Transfers") to Layfield V, LLC ("Layfield V"), an entity owned by Layfield.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:317968.4 51414/001

6

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

On or about February 22, 2018, in order to avoid the Transfers and recover the Office Suites for the benefit of the Estate, the Trustee filed a complaint in this Court for the avoidance of fraudulent transfers and unjust enrichment against Layfield and Layfield V (together, the "Defendants"), commencing an adversary proceeding bearing adversary number 2:18-ap-01050-NB (the "Adversary Proceeding").  The Defendants failed to respond to the Adversary Proceeding. The Chapter 11 Trustee then requested an entry of default against each of the Defendants [AD Docket Nos. 4 and 5].  On March 29, 2018, the Clerk of this Court entered defaults against both Defendants [AD Docket Nos. 6 and 7].  On May 1, 2018, Plaintiff filed a *Motion for Default Judgment Under LBR 7055-1* (the "Default Judgment Motion") against Layfield and Layfield V [AD Docket No. 12]. On May 25, 2018, this Court granted the Default Judgment Motion and entered a default judgment (the "Judgment") against both Defendants, and in favor of the Plaintiff [AD Docket No. 17] in the Adversary Proceeding, resulting in the avoidance of the Transfers and the re-vesting of the Property in L&B's bankruptcy estate.[2]

**D.    The Employment of the Broker and Marketing of the Property**

On July 30, 2018, the Trustee filed an *Application for an Order Authorizing and Approving the Employment of KW Park City Keller Williams Real Estate to Market and Sell Real Property in Park City, Utah* [Docket No. 310] (the "Utah Broker Employment Application"), pursuant to which the Trustee sought to employ KW Park City Keller Williams Real Estate ("KW") as brokers to market and sell the Property.  On August 21, 2018, this Court granted the Utah Broker Employment Application.

In order to market the Office Suites, KW listed them on the predominant listing platforms for the Park City, Utah, commercial market (Park City MLS; UtahRealEstate.com) as well as CoStar's national commercial listing service, provided tours of the premises, and, to date, has interacted substantively with approximately a dozen prospective buyers and/or their agents regarding the

---

[2] After determining that the Storage Unit is separately parceled in the Summit County, Utah, property records (Parcel No. TCVC-A-2AM), the Trustee and the chapter 7 trustee of the Layfield bankruptcy estate entered into a stipulation [AD Docket Nos. 38, 39] agreeing that judgment should be entered in the Adversary Proceeding revesting title to the Storage Unit in the L&B Estate [AD Docket No. 40].

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

potential sale of one or more of the Office Suites (and the Storage Unit).  KW also provided

potential buyers and their representatives with a general term sheet that provides guidance to those

parties as to sale terms that would be preferred by the Trustee and to assist them in understanding the

bankruptcy sales process.

**E.**    **The Buyer's Offer**

As a result of KW's marketing of the Property, on January 7, 2019, the Trustee and Buyer

entered into a Real Estate Purchase Contract, as amended by addenda numbered 1 and 2 (the

"Contract").  Among other terms, the Contract provides for the sale of the Property to the Buyer for

a purchase price of $399,000.00 "subject to … higher and better bids through and including the

hearing to approve the sale."  A true and correct copy of the Contract is attached hereto as **Exhibit

"A"**.

Although the Trustee also had received offers to acquire all of the Office Suites and the

Storage Unit together, such offers:  (i) were insufficient in amount to provide material benefit to the

Estate; (ii) expired or were withdrawn after one or more counteroffers were exchanged; (iii) were

from potential buyers who included unacceptable contingencies in their offers or who presented a

risk of closing a transaction in a timely manner; and/or (iv) were not acceptable for other reasons.

Accordingly, the proposed sale of the Property to the Buyer is in the best interests of the Estate and

its creditors.

**III.**

**ARGUMENT**

**A.**    **The Trustee May Sell Property of the Estate Pursuant to 11 U.S.C. § 363(b)**

11 U.S.C. § 363(b) empowers a trustee to "use, sell or lease . . . other than in the ordinary

course of business, property of the estate."  In considering a proposed transaction to use, sell, or

lease, courts look at whether the transaction is in the best interests of the estate based on the facts

and history of the case. *In re America West Airlines,* 166 B.R. 908, 912 (Bankr. D. Ariz. 1994)

(*citing In re Lionel Corp.,* 722 F.2d 1063, 1071 (2d Cir. 1983)).  This requires examination of the

"business justification" for the proposed sale. *In re 240 North Brand Partners, Ltd.,* 200 B.R. 653

DOCS_LA:317968.4 51414/001

(B.A.P. 9th Cir. 1996); *In re Wilde Horse Enterprises, Inc.,* 136 B.R. 830 (Bankr. C.D. Cal. 1991); *In re Ernst Home Center, Inc.,* 209 B.R. 974 (Bankr. W.D. Wash. 1997).

In approving any sale outside the ordinary course of business, there must be a sufficient business reason for the sale and it must be in the best interest of the estate.  Here, the proposed transaction has the legitimate business justification of satisfying claims against and providing value to the Estate and is in its best interest.

**B.    The Trustee May Sell the Property Free and Clear of Liens, Claims and Interests**

The Trustee seeks authority to sell the Property free and clear of all liens and encumbrances pursuant to 11 U.S.C. § which provides:

> The Trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if -
>
> (1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2)    such entity consents;
>
> (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)    such interest is in bona fide dispute; or
>
> (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Because subsections (1) through (5) of Bankruptcy Code § 363(f) are written in the disjunctive, authority to sell the Property free and clear of any and all interests therein should be granted if any of the conditions are met with respect to each interest holder.

With respect to the proposed sale of the Property to the Buyer, all liens asserted against the Property will attach to the net proceeds of the sale with the same validity, enforceability, and priority, if any, as existed with respect to the assets sold as of the date of the commencement of this chapter 11 Case and be paid through the proposed transaction, subject to the Trustee's ability to dispute all or a portion of such liens as the Trustee receives further information prior to or at the time of approval of the sale.  Based on information previously filed with the Court by WFB, the purchase

DOCS_LA:317968.4 51414/001

9

price proposed by the Buyer exceeds the aggregate amount of liens asserted against the Property as of the date of the WFB RFS Motion.[3]

**C.    The Buyer Should Be Deemed a "Good Faith Purchaser" Pursuant to 11 U.S.C. § 363(m)**

11 U.S.C. § 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

A good faith buyer "is one who buys 'in good faith' and 'for value.'"  *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992) (*citing In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986)). "[L]ack of good faith is [typically] shown by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'"  *Id. (quoting Community Thrift & Loan v. Suchy (In re Suchy),* 786 F.2d 900, 902 (9th Cir. 1985)).  Here, the Trustee has not been made aware of any connection between the Buyer or his broker, on the one hand, and the Trustee, his professionals, the Debtor or its insiders, on the other hand.  Negotiations regarding the sale of the Property have taken place at arm's-length directly between KW and the broker for the Buyer.  Moreover, the sale will be conducted in a commercially reasonable manner, subject to overbids, following appropriate notice.  Based on such facts and circumstances, the Trustee believes that this Court can properly determine the Buyer as a "good faith purchaser" pursuant to 11 U.S.C. § 363(m).

**D.    Adequate Notice of the Sale**

The Trustee is providing notice of the sale to the Office of the United States Trustee, all creditors, all other parties receiving ECF and special notice in this Case and to parties who previously have expressed an interest in purchasing the Office Suites and Storage Unit.  Further, the proposed sale of the Property to the Buyer is subject to overbid, and the ability of other potentially

---

[3] On January 2, 2019, the Trustee requested from WFB and WFB's counsel agreed to provide updated payoff information with respect to each of the Office Suites.  As of the filing of this Motion, the Trustee hasn't yet received such information.

DOCS_LA:317968.4 51414/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

interested parties to provide competing offers for the Property ensures that the proposed sale will not result in a lucrative "windfall" to the Buyer at the expense of creditors of the Estate. *See In re Onouli Kona Land Co.,* 846 F.2d 1170 (9th Cir. 1988).

**IV.**

**PROPOSED OVERBID PROCEDURES**

**A.    Overbid Procedures**

As noted above, the Contract specifies that the proposed sale to the Buyer is subject to overbids up to the hearing regarding approval of the sale.  To the extent that the Trustee receives additional bids for the Property (which may or may not include bids for the other Office Suites and the Storage Unit), the Trustee proposes the following procedures (the "Overbid Procedures") to allow for overbids prior to the Court's approval of the sale of the Property to ensure that the Property is sold for the best possible price:

1.    Qualified bidders ("Qualified Bidder") shall:

a.    Bid a cash offer for the Property in the minimum amount of $420,000;

b.    Set forth in writing the terms and conditions of the offer (the "Overbid") on a form approved by the Utah Real Estate Commission and the Office of the Utah Attorney General (available from KW) that are substantially similar to the terms set forth in the Contract.  To the extent the Qualified Bidder also is making an offer on any of the other Office Suites or Storage Unit, the Overbid must allocate a purchase price for each property;

c.    Be financially qualified, in the Trustee's judgment, to close the sale as set forth in the Overbid;

d.    Submit an Overbid that does not contain any contingencies to closing the sale, including, but not limited to due diligence, financing, or repair contingencies;

e.    Submit a cash deposit for the Property in the minimum amount of $42,000, or, if such Overbid includes Office Suites other than the Property or the Storage Unit, a cash deposit in the amount of ten percent (10%) of the aggregate

DOCS_LA:317968.4 51414/001

amount of such Overbid (the "Initial Overbid Deposit") payable to Richard M. Pachulski, Chapter 11 Trustee for the Bankruptcy Estate of Layfield & Barrett, APC, in the form of a cashier's check, which Initial Overbid Deposit shall be non-refundable if the bid is deemed to be the Successful Bid (as such term is defined below). The Initial Overbid Deposit, written Overbid, and evidence of financial qualification must be delivered to KW before the hearing regarding the Motion currently set for February 5, 2019, at 2:00 p.m.

2.    At the hearing regarding the Motion, only the Buyer (who is deemed to be a Qualified Bidder) and any other party who is determined to be a Qualified Bidder shall be entitled to bid. The Trustee, in consultation with his professionals, in his sole and absolute discretion, shall (a) determine whether a bidder is a Qualified Bidder; and (b) select the initial bid from which competitive bidding by Qualified Bidders will begin (which initial bid may be an Overbid for Office Suites in addition to the Property and/or for the Storage Unit).

3.    Any subsequent overbid for the Property shall be at least $5,000 higher than the prior bid. To the extent Qualified Bidders submit Overbids that include other Office Suites or the Storage Unit, overbid increments shall be as determined by the Trustee or his representatives present at the hearing regarding the Motion, subject to approval by the Court.

4.    At the hearing on the Motion and upon conclusion of the bidding process, the Trustee shall decide, subject to Court approval, which of the bids is the best bid, and such bid shall be deemed to be the "Successful Bid." To the extent the Successful Bid is other than the bid set forth in the Contract, the Qualified Bidder who is accepted by the Trustee as the successful bidder (the "Successful Bidder") must (a) within 48 hours of conclusion of the bidding process, pay a non-refundable supplemental deposit (the "Supplemental Deposit") to the Trustee so that the sum of the Successful Bidder's (x) Initial Overbid Deposit and (y) Supplemental Deposit shall be equal to twenty percent (20%) of the amount of the Successful Bid; and (b) pay all amounts reflected in the Successful Bid in cash at the closing of the sale. At the hearing on the Motion, and upon conclusion of the bidding process, the Trustee also may acknowledge a back-up bidder (the "Back-Up

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Bidder") which shall be the bidder with the next best bid.  Should the Successful Bidder fail to close escrow, the Trustee may sell to the Back-Up Bidder without further Court order.

**B.    The Bankruptcy Court Has the Authority to Implement the Proposed Overbid Procedures**

Implementation of bidding procedures is an action outside of the ordinary course of business.  Section 363(b)(1) of the Bankruptcy Code provides that a trustee "after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  Further, under 11 U.S.C. § 105(a), "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  Thus, pursuant to Bankruptcy Code sections 363(b)(1) and 105(a), this Court may authorize the implementation of overbidding procedures.

The bankruptcy court may issue orders determining the terms and conditions for overbids with respect to a sale of estate assets, including specifying the minimum consideration required for an overbid, the particular contractual terms required to be offered by overbidders, and requiring and setting the amount of potential overbidders' deposits.  *In re Crown Corporation*, 679 F.2d 774 (9th Cir. 1982).

The Overbid Procedures will ensure that the Property will generate the greatest possible value to the Estate, whether through the transaction described in the Contract or through an Overbid for the Property and/or the other Office Suites and Storage Unit.  They also place appropriate checks upon overbidders to ensure that only qualified bids are considered.

**C.    The Court Should Waive the Stay Imposed by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure**

Pursuant to Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).

The Trustee's goal is to efficiently administer the Estate for the benefit of creditors.  An expedient conclusion to the sale process will inure to the benefit of the Estate and its creditors by limiting any continuing liabilities associated with the Property.  Waiver of Bankruptcy Rule 6004(h)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

will permit the sale transaction(s) described herein to take place as early as possible under the circumstances.

## V.

## CONCLUSION

Based on the foregoing, the Trustee respectfully requests that this Court enter an order:

1.    Granting the Motion in its entirety;

2.    Approving the terms of the Contract;

3.    Authorizing the Trustee to sell the Property, together with any ancillary rights and related property, including, without limitation, parking spaces, to the Buyer, or, in the case of Overbids, to sell the Property and/or the other Office Suites and Storage Unit to a Successful Bidder, or the Back-Up Bidder, "as is," "where is," "with all faults," and without warranty or recourse, but free and clear of any and all liens, claims, and interests, pursuant to 11 U.S.C. §§ 363(b) and (f);

4.    Determining that the Buyer, the Successful Bidder, and the Back-Up Bidder are "good faith purchasers" pursuant to 11 U.S.C. § 363(m);

5.    Attaching to the net sales proceeds any unpaid portion of the liens on the property sold in the same value, priority and scope as such liens existed as of the petition date, subject to any and all of the Trustee's rights to object to, dispute, or subordinate any such lien;

6.    Reserving to the Trustee all rights to object to the validity, scope and priority of all disputed liens, claims and interests;

7.    Approving the Overbid Procedures;

8.    Authorizing the Trustee to take any and all necessary actions to consummate the sale transactions described herein;

9.    Authorizing the Trustee to pay, through escrow, from the proceeds of the sale transactions described herein and without further order of the Court, any escrow fees, title insurance premiums and other ordinary and typical closing costs and expenses payable by the Trustee pursuant to the Contract or in accordance with local custom;

10.    Waiving any requirements for lodging periods of the order approving this Motion imposed by any other applicable bankruptcy rules;

DOCS_LA:317968.4 51414/001

11.    Waiving the stay of the order approving this Motion imposed by Federal Rule of

Bankruptcy Procedure 6004(h) and any other applicable rules; and

12.    For such other and further relief as the Court may deem just and proper.

Dated:  January 15, 2019                    PACHULSKI STANG ZIEHL & JONES LLP


                                            By:    /s/ Malhar S. Pagay

                                            Attorneys for Richard M. Pachulski, Chapter 11
                                            Trustee

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## DECLARATION OF RICHARD M. PACHULSKI

I, Richard M. Pachulski, declare as follows:

1.    I am the duly appointed chapter 11 trustee (the "Trustee") in the bankruptcy case ("Case") of Layfield & Barrett, APC ("L&B" or the "Debtor").  I also am an attorney duly admitted to practice before the courts of the State of California and this Court, among other jurisdictions.

2.    I submit this declaration in support of the *Motion for Order (1) Authorizing Sale of Real Property Free and Clear of All Liens, Claims And Encumbrances Pursuant to 11 U.S.C. §§ 363(b) and (f); (2) Approving Overbid Procedures; (3) Approving Buyer, Successful Bidder and Backup Bidder as Good-Faith Purchaser Pursuant to 11 U.S.C. § 363(m)****Error! Bookmark not defined.** and (4) Authorizing Payment of Undisputed Liens and Other Ordinary Costs of Sale* (the "Motion").  Capitalized terms used but not defined herein shall have the same meanings as set forth in the Motion.

3.    Unless otherwise indicated, all facts set forth in this Declaration are based on either (a) my personal knowledge (my own or that gathered by others rendering services to the bankruptcy estate who report to me), (b) my review of relevant documents, or (c) my opinion based upon my experience and knowledge of the circumstances as described in the Motion.  If I were called to testify thereto, I could and would competently do so.

4.    I understand that, in order to market the Office Suites, my broker, KW, listed them on the predominant listing platforms for the Park City, Utah, commercial market (Park City MLS; UtahRealEstate.com) as well as CoStar's national commercial listing service, provided tours of the premises, and, to date, has interacted substantively with approximately a dozen prospective buyers and/or their agents regarding the potential sale of one or more of the Office Suites (and the Storage Unit).  KW also provided potential buyers and their representatives with a general term sheet that provides guidance to those parties as to preferred sale terms and to assist them in understanding the bankruptcy sales process.

5.    As a result of KW's marketing of the Property, on January 7, 2019, the Buyer and I, on behalf of the Estate, entered into a Real Estate Purchase Contract, as amended by addenda numbered 1 and 2 (the "Contract").  Among other terms, the Contract provides for the sale of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Property to the Buyer for a purchase price of $399,000.00 "subject to … higher and better bids through and including the hearing to approve the sale."  A true and correct copy of the Contract is attached hereto as **Exhibit "A"**.

6.      Although I also had received offers to acquire all of the Office Suites and the Storage Unit together, such offers:  (a) were insufficient in amount to provide material benefit to the Estate; (b) expired or were withdrawn after one or more counteroffers were exchanged; (c) were from potential buyers who included unacceptable contingencies in their offers or who presented a risk of closing a transaction in a timely manner; and/or (d) were not acceptable for other reasons. Accordingly, I believe that the proposed sale of the Property to the Buyer is in the best interests of the Estate and its creditors.

7.      With respect to the proposed sale of the Property to the Buyer, all liens asserted against the Property will attach to the net proceeds of the sale with the same validity, enforceability, and priority, if any, as existed with respect to the assets sold as of the date of the commencement of this chapter 11 Case and be paid through the proposed transaction, subject to my ability to dispute all or a portion of such liens as I receive further information prior to or at the time of approval of the sale.  Based on information previously filed with the Court by WFB, the purchase price proposed by the Buyer exceeds the aggregate amount of liens asserted against the Property as of the date of the WFB RFS Motion.

8.      I believe that the proposed transaction described in the Motion has the legitimate business justification of satisfying claims against and providing value to the Estate and is in its best interest.

9.      I believe that the Overbid Procedures will ensure that the Property will generate the greatest possible value to the Estate, whether through the transaction described in the Contract or through an Overbid for the Property and/or the other Office Suites and Storage Unit.  They also place appropriate checks upon overbidders to ensure that only qualified bids are considered.

10.      I have not been made aware of any connection between the Buyer or his broker, on the one hand, and me, my professionals, the Debtor or its insiders, on the other hand.  Negotiations regarding the sale of the Property have taken place at arm's-length directly between my broker, KW,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:317968.4 51414/001

17

1  manner, subject to overbids, following appropriate notice.  Based on such facts and circumstances, I

2  believe that this Court can properly determine the Buyer as a "good faith purchaser" pursuant to 11

3  U.S.C. § 363(m).

4

5       I declare under penalty of perjury under the laws of the United States of America that the

6  foregoing is true and correct.

7       Executed this 15th day of January, 2019, at Los Angeles, California.

8

9                                Richard M. Pachulski

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## DECLARATION OF RANDAL RUPERT

I, Randal Rupert, declare:

1.    I am employed as a Principal Broker for KW Park City Keller Williams Real Estate ("KW"), located at 1750 Sun Peak Drive, Park City, Utah 84098, and am one of the real estate agents at KW which the Trustee has employed for the purpose of listing and selling the real property known as Units 200, 210 and 220 of Toll Creek Village 2, an office condominium project located at 2720 Homestead Road, Park City, Utah 84098 (the "Office Suites").

2.    I submit this declaration in support of the *Motion for Order (1) Authorizing Sale of Real Property Free and Clear of All Liens, Claims And Encumbrances Pursuant to 11 U.S.C. §§ 363(b) and (f); (2) Approving Overbid Procedures; (3) Approving Buyer, Successful Bidder and Backup Bidder as Good-Faith Purchaser Pursuant to 11 U.S.C. § 363(m)**Error! Bookmark not defined.** and (4) Authorizing Payment of Undisputed Liens and Other Ordinary Costs of Sale* (the "Motion").  Capitalized terms used but not defined herein shall have the same meanings as set forth in the Motion.

3.    Unless otherwise indicated, all facts set forth in this Declaration are based on either (a) my personal knowledge (my own or that gathered by others rendering services to KW who report to me), (b) my review of relevant documents, or (c) my opinion based upon my experience and knowledge of the circumstances as described in the Application.  If I were called to testify thereto, I could and would competently do so.

4.    I am a Utah licensed real estate Broker and I am experienced in selling residential and commercial properties.  I was first licensed as a Sales Agent in 2006.  I have been a Broker since 2009.

5.    I have been involved in real estate investment and management in the State of Utah since 2002 and have worked as the Principal Broker for KW Park City Keller Williams Real Estate in Park City, Utah, since 2017.

6.    In order to market the Office Suites, KW listed them on the predominant listing platforms for the Park City, Utah, commercial market (Park City MLS; UtahRealEstate.com) as well as CoStar's national commercial listing service, provided tours of the premises, and, to date, has

1    the potential sale of one or more of the Office Suites (and the Storage Unit). We also provided

2    potential buyers and their representatives with a general term sheet that provides guidance to those

3    parties as to sale terms that would be preferred by the Trustee and to assist them in understanding the

4    bankruptcy sales process.

5         7.      In the instant case, I am not aware of any connection between the Buyer or his

6    broker, on the one hand, and the Trustee, KW, his counsel, the Debtor or its insiders, on the other

7    hand. Negotiations regarding the sale of the Property have taken place at arm's-length directly

8    between KW and the broker for the Buyer.

9         I declare under penalty of perjury under the laws of the United States of America that the

10    foregoing is true and correct.

11         Executed this 15th day of January, 2019, at Park City, Utah.

Randal Rupert

DOCS_LA:317968.2 51414/001

20

# EXHIBIT A




# ADDENDUM NO. Two (2)
## TO
# REAL ESTATE PURCHASE CONTRACT

THIS IS AN [ ] ADDENDUM [X] COUNTEROFFER to that REAL ESTATE PURCHASE CONTRACT (the "REPC") with an Offer Reference Date of <u>4th day of January, 2019</u> including all prior addenda and counteroffers, between <u>Sterling Holdings LLC or assigns</u> as Buyer, and <u>Richard M. Pachulski, solely in his capacity as the Chapter 11 Trustee for the bankruptcy estate of Layfield & Barrett, APC</u> as Seller, regarding the Property located at <u>2720 Homestead Road, Suite 200, Park City, UT 80988</u>.
The following terms are hereby incorporated as part of the REPC:
<u>1) Seller shall be recognized as Richard M. Pachulski, solely in his capacity as the Chapter 11 Trustee for the bankruptcy estate of Layfield & Barrett, APC.</u>
<u>2) The Purchase Price shall be $399,000.</u>
<u>3) The Due Diligence Deadline shall be 10 calendar days after Acceptance.</u>

BUYER AND SELLER AGREE THAT THE CONTRACT DEADLINES REFERENCED IN SECTION 24 OF THE REPC (CHECK APPLICABLE BOX): [ ] REMAIN UNCHANGED [X] ARE CHANGED AS <u>FOLLOWS:Due Diligence Deadline  as shown above.</u>

To the extent the terms of this ADDENDUM modify or conflict with any provisions of the REPC, including all prior addenda and counteroffers, these terms shall control. All other terms of the REPC, including all prior addenda and counteroffers, not modified by this ADDENDUM shall remain the same. [ ] Seller [X] Buyer shall have until <u>5   :00</u>  [ ] AM [X] PM Mountain Time on <u>January 07, 2019</u> (Date), to accept the terms of this ADDENDUM in accordance with the provisions of Section 23 of the REPC. Unless so accepted, the offer as set forth in this ADDENDUM shall lapse.

[ ] Buyer [ ] Seller Signature _____ (Date) _____ (Time)[ ] Buyer [ ] Seller Signature _____ (Date) _____ (Time)

## ACCEPTANCE/COUNTEROFFER/REJECTION
CHECK ONE:
[X] ACCEPTANCE: [ ] Seller [X] Buyer hereby accepts the terms of this ADDENDUM.
[ ] COUNTEROFFER: [ ] Seller [ ] Buyer presents as a counteroffer the terms of attached ADDENDUM NO. ____.

_____ 1/7/19   1:20pm
(Signature)            (Date)       (Time)            (Signature)            (Date)       (Time)

[ ] REJECTION: [ ] Seller [ ] Buyer rejects the foregoing ADDENDUM.

_____            _____
(Signature)            (Date)       (Time)            (Signature)            (Date)       (Time)

THIS FORM APPROVED BY THE UTAH REAL ESTATE COMMISSION AND THE OFFICE OF THE UTAH ATTORNEY GENERAL, EFFECTIVE AUGUST 5, 2003. IT REPLACES AND SUPERSEDES ALL PREVIOUSLY APPROVED VERSIONS OF THIS FORM.





# ADDENDUM NO. <u>One</u>
# TO
# REAL ESTATE PURCHASE CONTRACT

**THIS IS AN [✓] ADDENDUM [ ] COUNTEROFFER** to that REAL ESTATE PURCHASE CONTRACT (the "REPC") with an Offer Reference Date of <u>12/31/2018</u> _____, including all prior addenda and counteroffers, between <u>Sterling Holdings LLC or assigns</u> as Buyer, and <u>Richard M. Pachulski, Chapter 11 Trustee</u> as Seller, regarding the Property located at <u>2720 Homestead Road, Park City, Utah 84098, Suite 200 (TCVC-2-200)</u>. The following terms are hereby incorporated as part of the REPC:

This is an Addendum for the purchase of real property commonly known as 2720 Homestead Road, Park City, Utah 84098, Suite 200 (TCVC-2-200) (the "Property"), by a buyer (the "Buyer") from Richard M. Pachulski, solely in his capacity as the Chapter 11 Trustee for the bankruptcy estate of Layfield & Barrett, APC (Bankr. C.D. Cal. Case No. 2:17-bk-19548-NB) (the "Seller").

To the extent the provisions of this Addendum modify, amend or conflict with, any provisions of any other offer, counteroffer, addenda or listing regarding the Property, the provisions of this Addendum shall control.

1. The Buyer shall have a due diligence period until no later than twenty-one (21) days after acceptance of this Addendum. After that period, any sale pursuant to this Addendum shall be without any further contingencies on the part of the Buyer.
2. The initial deposit shall be ten percent (10%) of the Purchase Price, which will be deposited in escrow and applied toward the Purchase Price. A check in that amount, together with an executed copy of this Addendum, shall be delivered to the Escrow Company identified below within two (2) business days of acceptance of this Addendum by the Buyer.
3. The escrow company with respect to the sale of the Property is:

Summit Title and Escrow (the "Escrow Company")
Shellie Wilkins, Escrow Officer
Park City, Utah 84098
Tel: (435) 658-4889
Email: shellie@summitescrowandtitle.com

4. The Buyer, at his/her/its sole expense, shall have until 5:00 p.m., prevailing Property local time, twenty-one (21) days after acceptance of this Addendum (the "Due Diligence Deadline"), to obtain all investigations, appraisals, and tests and complete all due diligence which the Buyer believes to be required for the purchase of the Property. The Buyer, at the end of that period, may advise the Seller in writing of his/her election to withdraw from this agreement and receive a full refund of the Earnest Money Deposit; otherwise, silence shall be deemed as acceptance. After the Due Diligence Deadline, should Buyer withdraw from or otherwise fail to consummate this agreement for any reason other than Seller's withdrawal from the agreement, Buyer shall be entitled to a refund of the Earnest Money Deposit less fifty percent (50%) of the amount of the Earnest Money Deposit, which amount shall become non-refundable and be forfeited to Seller.
5. Upon removal or waiver of the due diligence contingency as set forth in paragraph 4, hereinabove, the Seller shall file a motion to approve this Addendum and the transactions described herein with the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"). The closing shall take place not more than fifteen (15) days after the entry of order granting such motion.
6. The Seller acknowledges that he/she/it is familiar with the Property and that the Buyer has viewed the Property. The Seller and/or Seller's real estate broker have not and will not inspect the Property or determine its condition, fitness or use for any particular purpose nor will provide any written disclosures, guarantees or warranties of any kind. Seller and Seller's agent are exempt from complying with requirements of any state laws, ordinances or regulations relating to disclosures upon transfer of real property. Seller makes no disclosures in connection with the Property.
7. Any sale of the Property shall be "as-is" and "where is" with no warranty or recourse whatsoever. If any state or local laws, ordinances or regulations require that the Property be brought into compliance therewith, the Buyer, at its sole expense, shall comply with and pay for these requirements.
8. Transfer of the Property shall be by Fiduciary Quitclaim Deed.
9. The Seller shall convey pursuant to an order of the Bankruptcy Court and the Buyer shall accept the marketable title to the Property that will be insured through Escrow Company, without material exception, including free and clear of all liens, subject only to the terms of the within contract of sale.
10. All allowable assessments and real property taxes shall be prorated through the closing date to the applicable accounts of the Seller and the Buyer. The sale shall be free and clear of any real property taxes enforceable

Page 1 of 2 pages    Seller's Initials <u>LWP</u>  Date <u>1/4/19</u>    Buyer's Initials <u>SHL</u>  Date _____
                                                                                                12/31/18




## ADDENDUM NO. One

### TO
### REAL ESTATE PURCHASE CONTRACT
### (Continued)

against the Property through the date of close of the sale.  Escrow fees shall be split between the Buyer and the Seller (50%-50%).  The Seller shall pay the costs of a standard issue title insurance policy.  All other costs are at Buyer's expense.

11. The sale is subject to notice to creditors, approval by the Bankruptcy Court (as defined below), and higher and better bids through and including the hearing to approve the sale.

12. The Seller is represented by Randal Rupert and Greg Miner of KW Park City Keller Williams Real Estate ("KW").  A Buyer's broker will be paid up to 3% of the Purchase Price.  Subject to Bankruptcy Court approval, the Seller will pay six (6%) percent of the Purchase Price as brokerage commission to KW and a Buyer's broker, provided, however, if the Buyer is unrepresented, the brokerage commission will be reduced from 6% to 3%.  No commission shall be due and payable except from the cash proceeds of an actual sale of the Property to the Buyer.

13. In the event the Buyer fails to perform under this Addendum by reason of the Buyer's default, Seller may retain the Earnest Money Deposit as liquidated damages.
_____ (Buyer's initials).

14. Buyer and Seller shall sign escrow instructions in respect of the Property within ten (10) calendar days after acceptance of this Addendum. In the event that Buyer is unable to close escrow within fifteen (15) calendar days after entry of the Bankruptcy Court order approving the sale of the Property, the Buyer shall compensate the Seller $1000 per day for an extension of such escrow closing deadline for up to ten (10) calendar days. Thereafter, the Seller shall have absolute discretion to either (a) terminate the sale and retain the Earnest Money Deposit as liquidated damages or (b) provide another extension.

15. The Bankruptcy Court shall have jurisdiction to interpret and enforce the terms of this agreement.  This agreement shall be construed pursuant to the laws of the State of Utah and the U.S. Bankruptcy Code.

16. The Seller may decline, at his option, to consummate the sale of the Property for any reason, including without limitation: (a) the dismissal or closure of the bankruptcy case; (b) the conversion of the debtor's Chapter 11 case to Chapter 7; (c) the inability to obtain approval of the sale by the Bankruptcy Court; or (d) the inability to sell the Property free and clear of liens. The Seller reserves the right, in his sole discretion, to determine not to consummate, and to terminate, the sale of the Property by serving a notice of such termination on the Buyer, the Office of the United States Trustee, and parties who have requested special notice.  No liability or obligations shall accrue to the estate or the Seller, either personally or in his capacity as trustee, as a result of any such termination. The Buyer's sole remedy, in the event that escrow fails to close as a result of Seller's inability or unwillingness to close escrow, shall be a refund

*Sterling Holdings LLC or Assigns*    dotloop verified
                                      12/31/18 1:26 PM MST
                                      YUM9-KX6P-19OW-7Q1Y

☑ [ ] Buyer [ ] Seller Signature    (Date)    (Time)          [ ] Buyer [ ] Seller Signature    (Date)    (Time)

### ACCEPTANCE/COUNTEROFFER/REJECTION

CHECK ONE:

[ ] **ACCEPTANCE:** [ ] Seller [ ] Buyer hereby accepts the terms of this ADDENDUM.

[ ] **COUNTEROFFER:** [ ] Seller [ ] Buyer presents as a counteroffer the terms of attached ADDENDUM NO. _2_

_____     1/4/19    1:46pm
(Signature)          (Date)    (Time)    (Signature)    (Date)    (Time)

*Fn Nunn B. Pnuvsi, Cv.11 Tvstm*

[ ] **REJECTION:** [ ] Seller [ ] Buyer rejects the foregoing ADDENDUM.

_____
(Signature)          (Date)    (Time)    (Signature)    (Date)    (Time)

THIS FORM APPROVED BY THE UTAH REAL ESTATE COMMISSION AND THE OFFICE OF THE UTAH ATTORNEY GENERAL, EFFECTIVE AUGUST 5, 2003.  IT REPLACES AND SUPERSEDES ALL PREVIOUSLY APPROVED VERSIONS OF THIS FORM. TWO-PAGE VERSION OF THIS FORM PRINTED WITH PERMISSION OF UTAH REAL ESTATE COMMISSION EFFECTIVE 5.18.05

Page 2 of 2 pages    Seller's Initials _RM_  Date _1/4/19_    Buyer's Initials _SHL_  Date_____
                                                                              12/31/18
                                                                              1:26 PM MST
                                                                              dotloop verified

This form is authorized for use by Anthony Martino, a member of the Park City Board of Realtors.    InstanetFORMS

# REAL ESTATE PURCHASE CONTRACT

This is a legally binding Real Estate Purchase Contract ("REPC"). Utah law requires real estate licensees to use this form. Buyer and Seller, however, may agree to alter or delete its provisions or to use a different form. If you desire legal or tax advice, consult your attorney or tax advisor.

## EARNEST MONEY DEPOSIT

On this 31 day of December , 20 18 ("Offer Reference Date") Sterling Holdings LLC or assigns ("Buyer") offers to purchase from Richard M. Pachulski ("Seller") the Property described below and agrees to deliver no later than four (4) calendar days after Acceptance (as defined in Section 23), an Earnest Money Deposit in the amount of $ 38,880.80 in the form of Check . After Acceptance of the REPC by Buyer and Seller, and receipt of the Earnest Money by the Brokerage, the Brokerage shall have four (4) calendar days in which to deposit the Earnest Money into the Brokerage Real Estate Trust Account.

## OFFER TO PURCHASE

**1. PROPERTY:** 2720 Homestead Road Suite #200

City of Park City , County of Summit , State of Utah, Zip 84098 Tax ID No. TCVC-2-200 (the "Property"). Any reference below to the term "Property" shall include the Property described above, together with the Included Items and water rights/water shares, if any, referenced in Sections 1.1, 1.2 and 1.4.

    **1.1 Included Items.** Unless excluded herein, this sale includes the following items if presently owned and in place on the Property: plumbing, heating, air conditioning fixtures and equipment; solar panels; ovens, ranges and hoods; cook tops; dishwashers; ceiling fans; water heaters; water softeners; light fixtures and bulbs; bathroom fixtures and bathroom mirrors; all window coverings including curtains, draperies, rods, window blinds and shutters; window and door screens; storm doors and windows; awnings; satellite dishes; all installed TV mounting brackets; all wall and ceiling mounted speakers; affixed carpets; automatic garage door openers and accompanying transmitters; security system; fencing and any landscaping.

    **1.2 Other Included Items.** The following items that are presently owned and in place on the Property have been left for the convenience of the parties and are also included in this sale **(check applicable box):** ☐ washers ☐ dryers ☐ refrigerators ☐ microwave ovens ☑ other **(specify)** 4 parking stalls within the underground parking structure.

The above checked items shall be conveyed to Buyer under separate bill of sale with warranties as to title. In addition to any boxes checked in this Section 1.2 above, there [☐] **ARE** [☑] **ARE NOT** additional items of personal property Buyer intends to acquire from Seller at Closing by separate written agreement.

    **1.3 Excluded Items.** The following items are excluded from this sale: N/A

    **1.4 Water Service.** The Purchase Price for the Property shall include all water rights/water shares, if any, that are the legal source for Seller's current culinary water service and irrigation water service, if any, to the Property. The water rights/water shares will be conveyed or otherwise transferred to Buyer at Closing by applicable deed or legal instruments. The following water rights/water shares, if applicable, are specifically excluded from this sale: N/A

**2. PURCHASE PRICE.**

    **2.1 Payment of Purchase Price.** The Purchase Price for the Property is $ 388,808.00 . Except as provided in this Section, the Purchase Price shall be paid as provided in Sections 2.1(a) through 2.1(e) below. Any amounts shown in Sections 2.1(c) and 2.1(e) may be adjusted as deemed necessary by Buyer and the Lender (the "Lender").

| | | |
|---|---|---|
| $38,880.80 | (a) | **Earnest Money Deposit.** Under certain conditions described in the REPC, this deposit may become totally non-refundable. |
| $0.00 | (b) | **Additional Earnest Money Deposit** (see Section 8.4 if applicable) |
| $0.00 | (c) | **New Loan.** Buyer may apply for mortgage loan financing (the "Loan") on terms acceptable to Buyer: If an FHA/VA loan applies, see attached FHA/VA Loan Addendum. |
| $0.00 | (d) | **Seller Financing** (see attached Seller Financing Addendum) |
| $349,927.20 | (e) | **Balance of Purchase Price in Cash at Settlement** |
| $388,808.00 | | **PURCHASE PRICE. Total of lines (a) through (e)** |

    **2.2 Sale of Buyer's Property.** Buyer's ability to purchase the Property, to obtain the Loan referenced in Section 2.1(c) above, and/or any portion of the cash referenced in Section 2.1(e) above ☐ **IS** ☑ **IS NOT** conditioned upon the sale of real estate owned by Buyer. If checked in the affirmative, the terms of the attached subject to sale of Buyer's property addendum apply.

**3. SETTLEMENT AND CLOSING.**

    **3.1 Settlement.** Settlement shall take place no later than the Settlement Deadline referenced in Section 24(d), or as otherwise mutually agreed by Buyer and Seller in writing. "Settlement" shall occur only when all of the following have been completed: (a) Buyer and Seller have signed

Page 1 of 6 pages    Buyer's Initials SHL 12/31/18 3:27 PM MST dotloop verified    Date 12/31/18    Seller's Initials RMP    Date 1/4/19

and delivered to each other or to the escrow/closing office all documents required by the REPC, by the Lender, by the title insurance and escrow/closing offices, by written escrow instructions (including any split closing instructions, if applicable), or by applicable law; (b) any monies required to be paid by Buyer or Seller under these documents (except for the proceeds of any Loan) have been delivered by Buyer or Seller to the other party, or to the escrow/closing office, in the form of cash, wire transfer, cashier's check, or other form acceptable to the escrow/closing office.

**3.2 Closing.** For purposes of the REPC, "Closing" means that: (a) Settlement has been completed; (b) the proceeds of any new Loan have been delivered by the Lender to Seller or to the escrow/closing office; and (c) the applicable Closing documents have been recorded in the office of the county recorder ("Recording"). The actions described in 3.2 (b) and (c) shall be completed no later than four calendar days after Settlement.

**3.3 Possession.** Except as provided in Section 6.1(a) and (b), Seller shall deliver physical possession of the Property to Buyer as follows: [✓] Upon Recording; [ ]____Hours after Recording; [ ]____Calendar Days after Recording. Any contracted rental of the Property prior to or after Closing, between Buyer and Seller, shall be by separate written agreement. Seller and Buyer shall each be responsible for any insurance coverage each party deems necessary for the Property including any personal property and belongings. The provisions of this Section 3.3 shall survive Closing.

## 4.  PRORATIONS / ASSESSMENTS / OTHER PAYMENT OBLIGATIONS.

**4.1 Prorations.** All prorations, including, but not limited to, homeowner's association dues, property taxes for the current year, rents, and interest on assumed obligations, if any, shall be made as of the Settlement Deadline referenced in Section 24(d), unless otherwise agreed to in writing by the parties. Such writing could include the settlement statement. The provisions of this Section 4.1 shall survive Closing.

**4.2 Special Assessments.** Any assessments for capital improvements as approved by the homeowner's association ("HOA") (pursuant to HOA governing documents) or as assessed by a municipality or special improvement district, prior to the Settlement Deadline shall be paid for by: [✓] Seller [ ] Buyer [ ] Split Equally Between Buyer and Seller [ ] Other (explain) _____.
The provisions of this Section 4.2 shall survive Closing.

**4.3 Fees/Costs/Payment Obligations.**

**(a) Escrow Fees.** Unless otherwise agreed to in writing, Seller and Buyer shall each pay their respective fees charged by the escrow/closing office for its services in the settlement/closing process. The provisions of this Section 4.3(a) shall survive Closing.

**(b) Rental Deposits/Prepaid Rents.** Rental deposits (including, but not limited to, security deposits, cleaning deposits and prepaid rents) for long term lease or rental agreements, as defined in Section 6.1(a), and short-term rental bookings, as defined in Section 6.1(b), not expiring prior to Closing, shall be paid or credited by Seller to Buyer at Settlement. The provisions of this Section 4.3(b) shall survive Closing.

**(c) HOA/Other Entity Fees Due Upon Change of Ownership.** Some HOA's, special improvement districts and/or other specially planned areas, under their governing documents charge a fee that is due to such entity as a result of the transfer of title to the Property from Seller to Buyer. Such fees are sometimes referred to as transfer fees, community enhancement fees, HOA reinvestment fees, etc. (collectively referred to in this section as "change of ownership fees"). Regardless of how the change of ownership fee is titled in the applicable governing documents, if a change of ownership fee is due upon the transfer of title to the Property from Seller to Buyer, that change of ownership fee shall, at Settlement, be paid for by: [✓] Seller [ ] Buyer [ ] Split Equally Between Buyer and Seller [ ] Other (explain) _____.
The provisions of this Section 4.3(c) shall survive Closing.

**(d) Utility Services.** Buyer agrees to be responsible for all utilities and other services provided to the Property after the Settlement Deadline. The provisions of this Section 4.3(d) shall survive Closing.

**(e) Sales Proceeds Withholding.** The escrow/closing office is authorized and directed to withhold from Seller's proceeds at Closing, sufficient funds to pay off on Seller's behalf all mortgages, trust deeds, judgments, mechanic's liens, tax liens and warrants. The provisions of this Section 4.3(e) shall survive Closing.

## 5.  CONFIRMATION OF AGENCY DISCLOSURE.
Buyer and Seller acknowledge prior written receipt of agency disclosure provided by their respective agent that has disclosed the agency relationships confirmed below. At the signing of the REPC:

Seller's Agent(s)_____Randal Rupert_____, represent(s) [✓] Seller [ ] both Buyer and Seller as Limited Agent(s);

Seller's Agent(s) Utah Real Estate License Number(s):_____6077202-PB00_____.

Seller's Brokerage___Keller Williams Real Estate Park City___, represents [✓] Seller [ ] both Buyer and Seller as Limited Agent;

Seller's Brokerage Utah Real Estate License Number:_____5992651-CN00_____.

Buyer's Agent(s)_____Anthony Martino_____, represent(s) [✓] Buyer [ ] both Buyer and Seller as Limited Agent(s);

Buyer's Agent(s) Utah Real Estate License Number(s):_____10224686-SA00_____.

Buyer's Brokerage___Coldwell Banker Brokerage Newpark___, represents [✓] Buyer [ ] both Buyer and Seller as a Limited Agent.

Buyer's Brokerage Utah Real Estate License Number:_____10116880-BO00_____.

## 6.  TITLE & TITLE INSURANCE.

**6.1 Title to Property.** Seller represents that Seller has fee title to the Property and will convey marketable title to the Property to Buyer at Closing by general warranty deed. Buyer does agree to accept title to the Property subject to the contents of the Commitment for Title Insurance (the "Commitment") provided by Seller under Section 7, and as reviewed and approved by Buyer under Section 8.

**(a) Long-Term Lease or Rental Agreements.** Buyer agrees to accept title to the Property subject to any long-term tenant lease or rental agreements (meaning for periods of thirty (30) or more consecutive days) affecting the Property not expiring prior to Closing. Buyer also agrees to accept title to the Property subject to any existing rental and property management agreements affecting the Property not expiring prior to Closing.

Page 2 of 6 pages    Buyer's Initials____*SHL*____ [ ]    Date 12/31/18    Seller's Initials____*RWP*____ [ ]    Date 1/4/19

*12/31/18*
*3:27 PM MST*
*dotloop verified*

26

The provisions of this Section 6.1(a) shall survive Closing.

**(b)  Short-Term Rental Bookings.** Buyer agrees to accept title to the Property subject to any short-term rental bookings (meaning for periods of less than thirty (30) consecutive days) affecting the Property not expiring prior to Closing. The provisions of this Section 6.1(b) shall survive Closing.

**6.2  Title Insurance.** At Settlement, Seller agrees to pay for and cause to be issued in favor of Buyer, through the title insurance agency that issued the Commitment (the "Issuing Agent"), the most current version of the *ALTA Homeowner's Policy of Title Insurance* (the "*Homeowner's Policy*"). If the *Homeowner's Policy* is not available through the Issuing Agent, Buyer and Seller further agree as follows: (a) Seller agrees to pay for the *Homeowner's Policy* if available through any other title insurance agency selected by Buyer; (b) if the *Homeowner's Policy* is not available either through the Issuing Agent or any other title insurance agency, then Seller agrees to pay for, and Buyer agrees to accept, the most current available version of an *ALTA Owner's Policy of Title Insurance* ("*Owner's Policy*") available through the Issuing Agent.

**7.  SELLER DISCLOSURES.** No later than the Seller Disclosure Deadline referenced in Section 24(a), Seller shall provide to Buyer the following documents in hard copy or electronic format which are collectively referred to as the "Seller Disclosures":

(a)  a written Seller property condition disclosure for the Property, completed, signed and dated by Seller as provided in Section 10.3;
(b)  a *Lead-Based Paint Disclosure & Acknowledgement* for the Property, completed, signed and dated by Seller (only if the Property was built prior to 1978);
(c)  a Commitment for Title Insurance as referenced in Section 6.1;
(d)  a copy of any restrictive covenants (CC&R's), rules and regulations affecting the Property;
(e)  a copy of the most recent minutes, budget and financial statement for the homeowners' association, if any;
(f)  a copy of any long-term tenant lease or rental agreements affecting the Property not expiring prior to Closing;
(g)  a copy of any short-term booking schedule (as of the Seller Disclosure Deadline) for guest use of the Property after Closing;
(h)  a copy of any existing property management agreements affecting the Property;
(i)  evidence of any water rights and/or water shares referenced in Section 1.4;
(j)  written notice of any claims and/or conditions known to Seller relating to environmental problems and building or zoning code violations;
(k)  In general, the sale or other disposition of a U.S. real property interest by a foreign person is subject to income tax withholding under the *Foreign Investment in Real Property Tax Act of 1980* (FIRPTA). A "foreign person" includes a non-resident alien individual, foreign corporation, partnership, trust or estate. If FIRPTA applies to Seller, Seller is advised that Buyer or other qualified substitute may be legally required to withhold this tax at Closing. In order to avoid closing delays, if Seller is a foreign person under FIRPTA, Seller shall advise Buyer in writing; and
(l)  Other (specify) N/A

**8.  BUYER'S CONDITIONS OF PURCHASE.**

**8.1  DUE DILIGENCE CONDITION.** Buyer's obligation to purchase the Property: ☑ IS ☐ IS NOT conditioned upon Buyer's Due Diligence as defined in this Section 8.1(a) below. This condition is referred to as the "Due Diligence Condition." If checked in the affirmative, Sections 8.1(a) through 8.1(c) apply; otherwise they do not.

**(a) Due Diligence Items.** Buyer's Due Diligence shall consist of Buyer's review and approval of the contents of the Seller Disclosures referenced in Section 7, and any other tests, evaluations and verifications of the Property deemed necessary or appropriate by Buyer, such as: the physical condition of the Property; the existence of any hazardous substances, environmental issues or geologic conditions; the square footage or acreage of the land and/or improvements; the condition of the roof, walls, and foundation; the condition of the plumbing, electrical, mechanical, heating and air conditioning systems and fixtures; the condition of all appliances; the costs and availability of homeowners' insurance and flood insurance, if applicable; water source, availability and quality; the location of property lines; regulatory use restrictions or violations; fees for services such as HOA dues, municipal services, and utility costs; convicted sex offenders residing in proximity to the Property; and any other matters deemed material to Buyer in making a decision to purchase the Property. Unless otherwise provided in the REPC, all of Buyer's Due Diligence shall be paid for by Buyer and shall be conducted by individuals or entities of Buyer's choice. Seller agrees to cooperate with Buyer's Due Diligence. Buyer agrees to pay for any damage to the Property resulting from any such inspections or tests during the Due Diligence.

**(b)  Buyer's Right to Cancel or Resolve Objections.** If Buyer determines, in Buyer's sole discretion, that the results of the Due Diligence are unacceptable, Buyer may either: (i) no later than the Due Diligence Deadline referenced in Section 24(b), cancel the REPC by providing written notice to Seller, whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller; or (ii) no later than the Due Diligence Deadline referenced in Section 24(b), resolve in writing with Seller any objections Buyer has arising from Buyer's Due Diligence.

**(c)  Failure to Cancel or Resolve Objections.** If Buyer fails to cancel the REPC or fails to resolve in writing with Seller any objections Buyer has arising from Buyer's Due Diligence, as provided in Section 8.1(b), Buyer shall be deemed to have waived the Due Diligence Condition, and except as provided in Sections 8.2(a) and 8.3(b)(i), the Earnest Money Deposit shall become non-refundable.

**8.2  APPRAISAL CONDITION.** Buyer's obligation to purchase the Property: ☐ IS ☑ IS NOT conditioned upon the Property appraising for not less than the Purchase Price. This condition is referred to as the "Appraisal Condition." If checked in the affirmative, Sections 8.2(a) and 8.2(b) apply; otherwise they do not.

**(a) Buyer's Right to Cancel.** If after completion of an appraisal by a licensed appraiser, Buyer receives written notice from the Lender or the appraiser that the Property has appraised for less than the Purchase Price (a "Notice of Appraised Value"), Buyer may cancel the REPC by providing written notice to Seller (with a copy of the Notice of Appraised Value) no later than the Financing & Appraisal Deadline referenced in Section 24(c); whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller.

**(b) Failure to Cancel.** If the REPC is not cancelled as provided in this section 8.2, Buyer shall be deemed to have waived the Appraisal

Page 3 of 6 pages    Buyer's Initials _SML_ 12/31/18 3:27 PM MST dotloop verified    Date 12/31/18    Seller's Initials _RW_    Date 1/4/19

27

Condition, and except as provided in Sections 8.1(b) and 8.3(b)(i), the Earnest Money Deposit shall become non-refundable.

**8.3    FINANCING CONDITION. (Check Applicable Box)**

(a) [☑] **No Financing Required.** Buyer's obligation to purchase the Property **IS NOT** conditioned upon Buyer obtaining financing. If checked, Section 8.3(b) below does NOT apply.

(b) [ ] **Financing Required.** Buyer's obligation to purchase the Property **IS** conditioned upon Buyer obtaining the Loan referenced in Section 2.1(c). This Condition is referred to as the "Financing Condition." If checked, Sections 8.3(b)(i), (ii) and (iii) apply; otherwise they do not. If the REPC is not cancelled by Buyer as provided in Sections 8.1(b) or 8.2(a), then Buyer agrees to work diligently and in good faith to obtain the Loan.

(i)  **Buyer's Right to Cancel Before the Financing & Appraisal Deadline.** If Buyer, in Buyer's sole discretion, is not satisfied with the terms and conditions of the Loan, Buyer may, after the Due Diligence Deadline referenced in Section 24(b), if applicable, cancel the REPC by providing written notice to Seller no later than the Financing & Appraisal Deadline referenced in Section 24(c); whereupon $_____ of Buyer's Earnest Money Deposit shall be released to Seller without the requirement of further written authorization from Buyer, and the remainder of Buyer's Earnest Money Deposit shall be released to Buyer without further written authorization from Seller.

(ii)  **Buyer's Right to Cancel After the Financing & Appraisal Deadline.** If after expiration of the Financing & Appraisal Deadline referenced in Section 24(c), Buyer fails to obtain the Loan, meaning that the proceeds of the Loan have not been delivered by the Lender to the escrow/closing office as required under Section 3.2, then Buyer shall not be obligated to purchase the Property and Buyer or Seller may cancel the REPC by providing written notice to the other party.

(iii)  **Earnest Money Deposit(s) Released to Seller.** If the REPC is cancelled as provided in Section 8.3(b)(ii), Buyer agrees that all of Buyer's Earnest Money Deposit, or Deposits, if applicable (see Section 8.4 below), shall be released to Seller without the requirement of further written authorization from Buyer. Seller agrees to accept, as Seller's exclusive remedy, the Earnest Money Deposit, or Deposits, if applicable, as liquidated damages. Buyer and Seller agree that liquidated damages would be difficult and impractical to calculate, and the Earnest Money Deposit, or Deposits, if applicable, is a fair and reasonable estimate of Seller's damages in the event Buyer fails to obtain the Loan.

**8.4    ADDITIONAL EARNEST MONEY DEPOSIT.** If the REPC has not been previously canceled by Buyer as provided in Sections 8.1, 8.2 or 8.3, as applicable, then no later than the Due Diligence Deadline, or the Financing & Appraisal Deadline, whichever is later, Buyer: [ ] **WILL** [☑] **WILL NOT** deliver to the Buyer's Brokerage, an Additional Earnest Money Deposit in the amount of $N/A_____. The Earnest Money Deposit and the Additional Earnest Money Deposit, if applicable, are sometimes referred to herein as the "Deposits". The Earnest Money Deposit, or Deposits, if applicable, shall be credited toward the Purchase Price at Closing.

**9. ADDENDA.** There [☑] **ARE** [ ] **ARE NOT** addenda to the REPC containing additional terms. If there are, the terms of the following addenda are incorporated into the REPC by this reference: [☑] **Addendum No.** One_____ [ ] **Seller Financing Addendum** [ ] **FHA/VA Loan Addendum** [ ] **Other (specify)** _____

**10. HOME WARRANTY PLAN / AS-IS CONDITION OF PROPERTY.**

**10.1    Home Warranty Plan.** A one-year Home Warranty Plan [ ] **WILL** [☑] **WILL NOT** be included in this transaction. If included, the Home Warranty Plan shall be ordered by [ ] **Buyer** [ ] **Seller** and shall be issued by a company selected by [ ] **Buyer** [ ] **Seller**. The cost of the Home Warranty Plan shall not exceed $_____ and shall be paid for at Settlement by [ ] **Buyer** [ ] **Seller**.

**10.2    Condition of Property/Buyer Acknowledgements.** Buyer acknowledges and agrees that in reference to the physical condition of the Property: (a) Buyer is purchasing the Property in its "As-Is" condition without expressed or implied warranties of any kind; (b) Buyer shall have, during Buyer's Due Diligence as referenced in Section 8.1, an opportunity to completely inspect and evaluate the condition of the Property; and (c) if based on the Buyer's Due Diligence, Buyer elects to proceed with the purchase of the Property, Buyer is relying wholly on Buyer's own judgment and that of any contractors or inspectors engaged by Buyer to review, evaluate and inspect the Property. The provisions of Section 10.2 shall survive Closing.

**10.3 Condition of Property/Seller Acknowledgements**. Seller acknowledges and agrees that in reference to the physical condition of the Property, Seller agrees to: (a) disclose in writing to Buyer any defects in the Property known to Seller that materially affect the value of the Property that cannot be discovered by a reasonable inspection by an ordinary prudent Buyer; (b) carefully review, complete, and provide to Buyer a written Seller property condition disclosure as stated in Section 7(a); (c) deliver the Property to Buyer in substantially the same general condition as it was on the date of Acceptance, as defined in Section 23, ordinary wear and tear excepted; (d) deliver the Property to Buyer in broom-clean condition and free of debris and personal belongings; and (e) repair any Seller or tenant moving-related damage to the Property at Seller's expense. The provisions of Section 10.3 shall survive Closing.

**11. FINAL PRE-SETTLEMENT WALK-THROUGH INSPECTION.** No earlier than seven (7) calendar days prior to Settlement, and upon reasonable notice and at a reasonable time, Buyer may conduct a final pre-Settlement walk-through inspection of the Property to determine only that the Property is "as represented," meaning that the items referenced in Sections 1.1, 1.2 and 8.1(b)(ii) ("the items") are respectively present, repaired or corrected as agreed. The failure to conduct a walk-through inspection or to claim that an item is not as represented shall not constitute a waiver by Buyer of the right to receive, on the date of possession, the items as represented.

**12. CHANGES DURING TRANSACTION.** Seller agrees that except as provided in Section 12.5 below, from the date of Acceptance until the date of Closing the following additional items apply:

**12.1    Alterations/Improvements to the Property.** No substantial alterations or improvements shall be made or undertaken without prior written consent of Buyer.

**12.2    Financial Encumbrances/Changes to Legal Title.** No further financial encumbrances to the Property shall be made, and no changes in

Page 4 of 6 pages    Buyer's Initials _SHL_  Date 12/31/18    Seller's Initials _RvP_  Date 11/4/19

28

the legal title to the Property shall be made without the prior written consent of Buyer.

    **12.3 Property Management Agreements.** No changes to any existing property management agreements shall be made and no new property management agreements may be entered into without the prior written consent of Buyer.

    **12.4 Long-Term Lease or Rental Agreements.** No changes to any existing tenant lease or rental agreements shall be made and no new long-term lease or rental agreements, as defined in Section 6.1(a), may be entered into without the prior written consent of Buyer.

    **12.5 Short-Term Rental Bookings.** If the Property is made available for short-term rental bookings as defined in Section 6.1(b), Seller **MAY NOT** after the Seller Disclosure Deadline continue to accept short-term rental bookings for guest use of the property without the prior written consent of Buyer.

**13. AUTHORITY OF SIGNERS.** If Buyer or Seller is a corporation, partnership, trust, estate, limited liability company or other entity, the person signing the REPC on its behalf warrants his or her authority to do so and to bind Buyer and Seller.

**14. COMPLETE CONTRACT.** The REPC together with its addenda, any attached exhibits, and Seller Disclosures (collectively referred to as the "REPC"), constitutes the entire contract between the parties and supersedes and replaces any and all prior negotiations, representations, warranties, understandings or contracts between the parties whether verbal or otherwise. The REPC cannot be changed except by written agreement of the parties.

**15. MEDIATION.** Any dispute relating to the REPC arising prior to or after Closing: ☑ **SHALL** ☐ **MAY AT THE OPTION OF THE PARTIES** first be submitted to mediation. Mediation is a process in which the parties meet with an impartial person who helps to resolve the dispute informally and confidentially. Mediators cannot impose binding decisions. The parties to the dispute must agree before any settlement is binding. The parties will jointly appoint an acceptable mediator and share equally in the cost of such mediation. If mediation fails, the other procedures and remedies available under the REPC shall apply. Nothing in this Section 15 prohibits any party from seeking emergency legal or equitable relief, pending mediation. The provisions of this Section 15 shall survive Closing.

**16. DEFAULT.**

    **16.1 Buyer Default.** If Buyer defaults, Seller may elect one of the following remedies: (a) cancel the REPC and retain the Earnest Money Deposit, or Deposits, if applicable, as liquidated damages; (b) maintain the Earnest Money Deposit, or Deposits if applicable, in trust and sue Buyer to specifically enforce the REPC; or (c) return the Earnest Money Deposit, or Deposits, if applicable, to Buyer and pursue any other remedies available at law.

    **16.2 Seller Default.** If Seller defaults, Buyer may elect one of the following remedies: (a) cancel the REPC, and in addition to the return of the Earnest Money Deposit, or Deposits, if applicable, Buyer may elect to accept from Seller, as liquidated damages, a sum equal to the Earnest Money Deposit, or Deposits, if applicable; or (b) maintain the Earnest Money Deposit, or Deposits, if applicable, in trust and sue Seller to specifically enforce the REPC; or (c) accept a return of the Earnest Money Deposit, or Deposits, if applicable, and pursue any other remedies available at law. If Buyer elects to accept liquidated damages, Seller agrees to pay the liquidated damages to Buyer upon demand.

**17. ATTORNEY FEES AND COSTS/GOVERNING LAW.** In the event of litigation or binding arbitration arising out of the transaction contemplated by the REPC, the prevailing party shall be entitled to costs and reasonable attorney fees. However, attorney fees shall not be awarded for participation in mediation under Section 15. This contract shall be governed by and construed in accordance with the laws of the State of Utah. The provisions of this Section 17 shall survive Closing.

**18. NOTICES.** Except as provided in Section 23, all notices required under the REPC must be: (a) in writing; (b) signed by the Buyer or Seller giving notice; and (c) received by the Buyer or the Seller, or their respective agent, or by the brokerage firm representing the Buyer or Seller, no later than the applicable date referenced in the REPC.

**19. NO ASSIGNMENT.** The REPC and the rights and obligations of Buyer hereunder, are personal to Buyer. The REPC may not be assigned by Buyer without the prior written consent of Seller. Provided, however, the transfer of Buyer's interest in the REPC to any business entity in which Buyer holds a legal interest, including, but not limited to, a family partnership, family trust, limited liability company, partnership, or corporation (collectively referred to as a "Permissible Transfer"), shall not be treated as an assignment by Buyer that requires Seller's prior written consent. Furthermore, the inclusion of "and/or assigns" or similar language on the line identifying Buyer on the first page of the REPC shall constitute Seller's written consent only to a Permissible Transfer.

**20. INSURANCE & RISK OF LOSS.**

    **20.1 Insurance Coverage.** As of Closing, Buyer shall be responsible to obtain casualty and liability insurance coverage on the Property in amounts acceptable to Buyer and Buyer's Lender, if applicable.

    **20.2 Risk of Loss.** If prior to Closing, any part of the Property is damaged or destroyed by fire, vandalism, flood, earthquake, or act of God, the risk of such loss or damage shall be borne by Seller; provided however, that if the cost of repairing such loss or damage would exceed ten percent (10%) of the Purchase Price referenced in Section 2, either Seller or Buyer may elect to cancel the REPC by providing written notice to the other party, in which instance the Earnest Money Deposit, or Deposits, if applicable, shall be returned to Buyer.

**21. TIME IS OF THE ESSENCE.** Time is of the essence regarding the dates set forth in the REPC. Extensions must be agreed to in writing by all parties. Unless otherwise explicitly stated in the REPC: (a) performance under each Section of the REPC which references a date shall absolutely be required by 5:00 PM Mountain Time on the stated date; and (b) the term "days" and "calendar days" shall mean calendar days and shall be counted beginning on the day following the event which triggers the timing requirement (e.g. Acceptance). Performance dates and times referenced herein shall not be binding upon title companies, lenders, appraisers and others not parties to the REPC, except as otherwise agreed to in writing by such non-party.

Page 5 of 6 pages    Buyer's Initials _SHL_ [12/31/18 3:27 PM MST dotloop verified]      Date 12/31/18      Seller's Initials _RrD_      Date 1/4/19

**22. ELECTRONIC TRANSMISSION AND COUNTERPARTS.** The REPC may be executed in counterparts. Signatures on any of the Documents, whether executed physically or by use of electronic signatures, shall be deemed original signatures and shall have the same legal effect as original signatures.

**23. ACCEPTANCE.** "Acceptance" occurs **only** when **all** of the following have occurred: (a) Seller or Buyer has signed the offer or counteroffer where noted to indicate acceptance; and (b) Seller or Buyer or their agent has communicated to the other party or to the other party's agent that the offer or counteroffer has been signed as required.

**24. CONTRACT DEADLINES.** Buyer and Seller agree that the following deadlines shall apply to the REPC:

(a)  Seller Disclosure Deadline          *N/A* _____ (Date)

(b)  Due Diligence Deadline              *21 calendar days after acceptance* _____ (Date)

(c)  Financing & Appraisal Deadline      *N/A* _____ (Date)

(d)  Settlement Deadline                 *15 calendar days after court approval* (Date)

**25. OFFER AND TIME FOR ACCEPTANCE.** Buyer offers to purchase the Property on the above terms and conditions. If Seller does not accept this offer by: 5:00 [ ] AM [✓] PM Mountain Time on *01/04/2019* _____ (Date), this offer shall lapse; and the Brokerage shall return any Earnest Money Deposit to Buyer.

| *Sterling Holdings LLC or Assigns* | dotloop verified 12/31/18 3:27 PM MST ZYVP-PFOA-PAB0-ZQNF | | |
|---|---|---|---|
| (Buyer's Signature) | (Date) | (Buyer's Signature) | (Date) |

### ACCEPTANCE/COUNTEROFFER/REJECTION

CHECK ONE:

[ ] **ACCEPTANCE OF OFFER TO PURCHASE:** Seller Accepts the foregoing offer on the terms and conditions specified above.

[✓] **COUNTEROFFER:** Seller presents for Buyer's Acceptance the terms of Buyer's offer subject to the exceptions or modifications as specified in the attached ADDENDUM NO. *2* .

[ ] **REJECTION:** Seller rejects the foregoing offer.

| _____ | *1/4/19* | *1:44PM* | | |
|---|---|---|---|---|
| (Seller's Signature) | (Date) | (Time) | (Seller's Signature) | (Date)    (Time) |

*For Norman Prince*
*Ch. 11 Trustee*


**THIS FORM APPROVED BY THE UTAH REAL ESTATE COMMISSION AND THE OFFICE OF THE UTAH ATTORNEY GENERAL,
EFFECTIVE SEPTEMBER 1, 2017.  AS OF JANUARY 1, 2018, IT WILL REPLACE AND SUPERSEDE THE PREVIOUSLY APPROVED VERSION OF THIS FORM.**

Page 6 of 6 pages   Buyer's Initials _*SHL*_ [12/31/18 3:27 PM MST dotloop verified]   Date 12/31/18   Seller's Initials _*ENP*_   Date *1/4/19*

# fPROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California 90067**

A true and correct copy of the foregoing document entitled (*specify*):  ***MOTION FOR ORDER (1) AUTHORIZING SALE OF REAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 363(b) AND (f); (2) APPROVING OVERBID PROCEDURES; (3) APPROVING BUYER, SUCCESSFUL BIDDER AND BACKUP BIDDER AS GOOD-FAITH PURCHASER PURSUANT TO 11 U.S.C. § 363(m); AND (4) AUTHORIZING PAYMENT OF UNDISPUTED LIENS AND OTHER ORDINARY COSTS OF SALE; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF RICHARD M. PACHULSKI AND RANDAL RUPERT IN SUPPORT THEREOF*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **January 15, 2019**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **January 15, 2019**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| | |
|---|---|
| Layfield & Barrett, APC<br>Fka Layfield & Wallace, APC<br>Fka The Layfield Law Firm, APC<br>**Attn:  Philip Layfield, Officer of Record**<br>2720 Homestead Rd., Suite 210<br>Park City, UT 84098 | Layfield & Barrett, APC<br>Fka Layfield & Wallace, APC<br>Fka The Layfield Law Firm, APC<br>**Attn:  Any Officer Other Than Philip Layfield**<br>2720 Homestead Rd., Ste. 210<br>Park City, UT 84098 |

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **January 15, 2019**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY**
Honorable Neil W. Bason
U.S. Bankruptcy Court
255 E. Temple Street, Room 940
Los Angeles, CA  90012
Attn: Mail Room Clerk-Judges  Copies

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 15, 2019 | Myra Kulick | /s/ Myra Kulick |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:308358.7 51414/002

**F 9013-3.1.PROOF.SERVICE**
31

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:
   Mailing Information for Case 2:17-bk-19548-NB

- *Wesley H Avery*    wes@averytrustee.com, lucy@averytrustee.com;alexandria@averytrustee.com
- *Jason Balitzer*    jbalitzer@sulmeyerlaw.com,
  jbalitzer@ecf.inforuptcy.com;dwalker@ecf.inforuptcy.com;kmccamey@sulmeyerlaw.com
- *Moises S Bardavid*    mbardavid@hotmail.com
- *Daniel I Barness*    daniel@barnesslaw.com
- *James W Bates*    jbates@jbateslaw.com
- *Darwin Bingham*    cat@scalleyreading.net
- *Martin J Brill*    mjb@lnbrb.com
- *William S Brody*    wbrody@buchalter.com, dbodkin@buchalter.com;IFS_filing@buchalter.com
- *Glenn R Bronson*    grb@princeyeates.com, carolp@princeyeates.com
- *Baruch C Cohen*    bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- *Jennifer Witherell Crastz*    jcrastz@hrhlaw.com
- *Beth Gaschen*    bgaschen@wgllp.com,
  kadele@wgllp.com;vrosales@wgllp.com;cbmeeker@gmail.com;cyoshonis@wgllp.com
- *Jeffrey I Golden*    jgolden@wgllp.com, kadele@wgllp.com;vrosales@lwgfllp.com;cbmeeker@gmail.com
- *M. Jonathan Hayes*    jhayes@rhmfirm.com,
  roksana@rhmfirm.com;rosario@rhmfirm.com;janita@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com
- *Kimberly D Howatt*    khowatt@gordonrees.com, sdurazo@grsm.com
- *James KT Hunter*    jhunter@pszjlaw.com
- *Steven J Kahn*    skahn@pszyjw.com
- *Joseph M Kar*    jkar@mindspring.com
- *Richard W Labowe*    richardwlabowe@gmail.com, llhlaw1631@aol.com
- *Dare Law*    dare.law@usdoj.gov
- *David W. Meadows*    david@davidwmeadowslaw.com
- *Jessica Mickelsen Simon*    jmsimon@hrhlaw.com
- *Dennette A Mulvaney*    dmulvaney@leechtishman.com, lmoya@leechtishman.com
- *Rana Nader*    rnader@naderlawgroup.com, monique@naderlawgroup.com
- *Joel A Osman*    osman@parkermillsllp.com, sanders@parkermillsllp.com
- *Malhar S Pagay*    mpagay@pszjlaw.com, mpagay@pszjlaw.com
- *Brian A Paino*    bpaino@mcglinchey.com, crico@mcglinchey.com;selizondo@mcglinchey.com
- *Michael F Perlis*    mperlis@lockelord.com,
  merickson@lockelord.com,jhagey@lockelord.com,RRJohnson@lockelord.com,bmungaray@lockelord.com
- *Michael F Perlis*    ,
  merickson@lockelord.com,jhagey@lockelord.com,RRJohnson@lockelord.com,bmungaray@lockelord.com
- *Hamid R Rafatjoo*    hrafatjoo@raineslaw.com, bclark@raineslaw.com;cwilliams@raineslaw.com
- *Faye C Rasch*    frasch@wgllp.com, kadele@wgllp.com;tziemann@wgllp.com
- *Daniel H Reiss*    dhr@lnbyb.com, dhr@ecf.inforuptcy.com
- *Damion Robinson*    dr@agzlaw.com
- *Lindsey L Smith*    lls@lnbyb.com, lls@ecf.inforuptcy.com
- *Daniel A Solitro*    dsolitro@lockelord.com, ataylor2@lockelord.com
- *United States Trustee (LA)*    ustpregion16.la.ecf@usdoj.gov
- *Gary R Wallace*    garyrwallace@ymail.com
- *Alan J Watson*    alan.watson@hklaw.com, rosanna.perez@hklaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012
DOCS_LA:308358.7 51414/002

**F 9013-3.1.PROOF.SERVICE**
32

**2. SERVED BY UNITED STATES MAIL**:

Patricia Salcedo
The Dominguez Firm
3250 Wilshire Blvd #2200
Los Angeles, CA 90010

Diane B Sherman
Law Offices of Diane B Sherman
1801 Century Park East Ste 1200
Los Angeles, CA 90067

Attorneys for Wellgen Standard LLC
Roger G Jones
Austin L. McMullen
Bradley Arant Boult Cummings LLP
1600 Division St Ste 700
Nashville, TN 37203

Philip J. Layfield
1875 K Street NW
Washington, DC 20006

Philip J. Layfield
c/o Zenith Legal Services, LLC
1875 Connecticut Ave. NW, 10th Floor
Washington, DC 20009

Philip J. Layfield
c/o Maximum Legal Holdings, LLC
8 The Green, Suite 6426
Dover, Delaware  19901

Lance S Strumpf
Law Office of Lance S. Strumpf
5136 Woodley Ave.
Encino, CA 91436

Toll Creek Owners Association Inc
c/o Jacob Watterson
130 South Main Ste 200
PO Box 525
Logan UT 84323-0525

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**
DOCS_LA:308358.7 51414/002                                                                                      33

# EXHIBIT B

Debra I. Grassgreen (CA Bar No. 169978)
Malhar S. Pagay (CA Bar No. 189289)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
Telephone: 310/277-6910
Facsimile:  310/201-0760
E-mail: dgrassgreen@pszjlaw.com
        mpagay@pszjlaw.com

Attorneys for Richard M. Pachulski, Chapter 11 Trustee

FILED & ENTERED

FEB 20 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY sumlin    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:17-bk-19548-NB |
| LAYFIELD & BARRETT, APC, | Chapter 11 |
| Debtor. | **ORDER PURSUANT TO FED. R. CIV. P. 60(A) CORRECTING ERRORS IN ORDER GRANTING MOTION (1) AUTHORIZING SALE OF REAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 363(B) AND (F); (2) APPROVING OVERBID PROCEDURES; (3) APPROVING BUYER, SUCCESSFUL BIDDER AND BACKUP BIDDER AS GOOD-FAITH PURCHASER PURSUANT TO 11 U.S.C. § 363(M); AND (4) AUTHORIZING PAYMENT OF UNDISPUTED LIENS AND OTHER ORDINARY COSTS OF SALE** |
| | [2720 Homestead Road, Unit 200, Park City, Utah 84098] |

DOCS_LA:319482.1 51414/001

The Court, having entered its *Order Granting Motion for Order (1) Authorizing Sale of Real Property Free and Clear of All Liens, Claims and Encumbrances Pursuant to 11 U.S.C. § § 363(b) and (f); (2) Approving Overbid Procedures; (3) Approving Buyer, Successful Bidder and Backup Bidder as Good Faith Purchaser Pursuant to 11 U.S.C. § 363(m); and (4) Authorizing Payment of Undisputed Liens and Other Ordinary Costs of Sale* [Docket. No. 407] (the "Sale Order"),[1] and having been advised through submission of this order that certain clerical mistakes have resulted in the need to correct errors reflected in the caption of, and the description of the Property set forth in, the Sale Order pursuant to Rule 60(a) of the Federal Rules of Civil Procedure, made applicable in this Case pursuant to Bankruptcy Rule 9024; and good cause appearing therefor

IT IS HEREBY ORDERED that:

1.      The caption of the Sale Order shall be and is deemed corrected to reflect the correct chapter of the Case:  "Chapter 11"; and

//

---

[1] Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Sale Order.

2

2.    The incorrect Underground Parking Stall numbers reflected in the Property

description in the Sale Order shall be and are deemed corrected to reflect the parking space numbers

in the following:

> Unit 200, TOLL CREEK VILLAGE 2, a Utah Condominium Project, together
> with its appurtenant undivided ownership interest in and to the Common Areas
> and Facilities, including, without limitation, Underground Parking Stalls
> numbered 35, 39, 40 and 41, as established and described in the Record of Survey
> Map recorded February 27, 2008, as Entry No. 838524, and in the Declaration of
> Covenants, Conditions and Restrictions of Toll Creek Village Office
> Condominiums, recorded September 2, 2005, as Entry No. 749496 in Book 1730
> at page 1816, the Amendment to Declaration of Covenants, Conditions and
> Restrictions of Toll Creek Village Office Condominiums recorded February 27,
> 2008, as Entry No. 838525 in Book 1916 at page 1360, and Third Amendment to
> Declaration of Covenants, Conditions and Restrictions of Toll Creek Village
> Office Condominiums recorded September 19, 2013, as Entry No. 979487 in
> Book 2207 at page 1236, and the Notice of Assignment of Limited Common
> Area, recorded October 19, 2015, as Entry No. 01030716 in Book 2320 at page
> 0647, records of Summit County, Utah.  (TCVC-2-200)

# # #

Date: February 20, 2019

Neil W. Bason
United States Bankruptcy Judge

3

# EXHIBIT C

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Debra I. Grassgreen (CA Bar No. 169978)
Malhar S. Pagay (CA Bar No. 189289)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail: dgrassgreen@pszjlaw.com
       mpagay@pszjlaw.com

Attorneys for Richard M. Pachulski, Chapter 11 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>LAYFIELD & BARRETT, APC,<br><br>               Debtor. | Case No. 2:17-bk-19548-NB<br><br>Chapter 11<br><br>**MOTION FOR ORDER (1) AUTHORIZING SALE OF REAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 363(B) AND (F); (2) APPROVING BUYER AS GOOD-FAITH PURCHASER PURSUANT TO 11 U.S.C. § 363(M); AND (3) AUTHORIZING PAYMENT OF UNDISPUTED LIENS AND OTHER ORDINARY COSTS OF SALE; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF RICHARD M. PACHULSKI AND RANDAL RUPERT IN SUPPORT THEREOF**<br><br>[2720 Homestead Road, Units 210, and 220, Park City, Utah 84098]<br><br>Date:     April 2, 2019[1]<br>Time:    2:00 p.m.<br>Place:   United States Bankruptcy Court<br>           Edward R. Roybal Federal Building<br>           255 E. Temple Street, Ctrm. 1545<br>           Los Angeles, California 90012<br>Judge:  Honorable Neil W. Bason |

[1] Hearing date and time scheduled and order shortening time granted during hearing on related matter conducted on March 5, 2019.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**TO THE HONORABLE NEIL W. BASON, UNITED STATES BANKRUPTCY JUDGE;**
**THE OFFICE OF THE UNITED STATES TRUSTEE; AND OTHER PARTIES IN**
**INTEREST:**

     Richard M. Pachulski, the chapter 11 trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Layfield & Barrett, APC (the "Debtor" or "L&B"), hereby moves (the "Motion") this Court for entry of an order (1) authorizing him to sell real property commonly known as Units 210 and 220 of Toll Creek Village 2 (Parcel Nos. TCVC-2-210 and TCVC-2-220), an office condominium located at 2720 Homestead Road, Park City, Utah 84098 (the "Property"), to Allegretti & Company (the "Buyer") free and clear of all liens, claims and encumbrances pursuant to sections 363(b) and (f) of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"); (2) approving the Buyer as a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code; and (3) authorizing the payment of undisputed liens and other ordinary costs of sale.  In support of the Motion, the Trustee submits the memorandum of points and authorities and the declarations of Richard M. Pachulski and Randal Rupert annexed hereto,[2] and respectfully represents as follows:

---

[2] A declaration of the authorized representative of the Buyer shall be submitted prior to the hearing regarding the Motion.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

By this Motion, the Trustee is seeking authority to sell two office suites, Suites 210 and 220, located at Toll Creek Village 2, an office condominium complex located at 2720 Homestead Road, Park City, Utah 84098.  Through fraudulent transfer litigation, the Trustee recovered the Property, another suite at Toll Creek Village 2 (Suite 200, collectively, with the Property, the "<u>Office Suites</u>")) that was the subject of a prior sale authorized by the Court which closed on February 22, 2019, and a storage unit (the "<u>Storage Unit</u>"), all of which previously were transferred by Philip Layfield ("<u>Layfield</u>"), the Debtor's former principal, from the Debtor to an entity under his control.  After being marketed by the Trustee's broker over the past six months, the Trustee has accepted an offer to purchase Suites 210 and 220, subject to approval by this Court.

## II.

## STATEMENT OF FACTS

### A.    The Commencement of the Bankruptcy Case and Appointment of the Trustee

On August 3, 2017, petitioning creditors The Dominguez Firm, a law firm that previously has referred matters to the Debtor, and Mario Lara, Nayazi Reyes and Maria A. Rios, each a former client of the Debtor (the "<u>Petitioning Creditors</u>"), filed an involuntary petition for relief under chapter 7 of the Bankruptcy Code against L&B, commencing the above-captioned bankruptcy case (the "<u>Case</u>").  That same day, the Petitioning Creditors filed an *Emergency Motion for Appointment of an Interim Trustee Under 11 U.S.C. § 303(g) and Granting Emergency Relief* [Docket No. 3][3] (the "<u>Trustee Motion</u>").  In the Trustee Motion, the Petitioning Creditors asserted, among other allegations, that "[s]ettlement proceeds have not been distributed and may no longer exist, vendors and other creditors have not been paid and clients are effectively unrepresented in some 80 pending cases," and that, consequently, the appointment of a trustee is "essential to protect and preserve

---

[3] Pursuant to Rule 201 of the Federal Rules of Evidence, the Trustee respectfully requests that the Court take judicial notice of all pleadings, orders and other matters of public record reflected in the Court's own docket.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

property of the … estate and to prevent concealment, waste, loss or conversion of the assets of the estate …."  Trustee Motion at 1.

In response to the Trustee Motion, the Debtor filed a *Motion to Convert Case Under 11 U.S.C. §§ 706(a) or 1112(a)* on August 8, 2017 [Docket No. 19] (the "Conversion Motion"), seeking to convert the Case to one under chapter 11 of the Bankruptcy Code.  The Court entered orders granting the Conversion Motion [Docket No. 25], and denying the Trustee Motion [Docket No. 24].

On August 16, 2017, the Debtor, Petitioning Creditors, and secured creditor, Advocate Capital, Inc. ("Advocate Capital"), entered into a *Stipulation for the Appointment of a Chapter 11 Trustee* [Docket No. 38], which the Court approved by order on August 17, 2017 [Docket No. 42].

On August 21, 2017, the United States Trustee (the "UST") filed its *Notice of Appointment of Chapter 11 Trustee*, appointing Richard M. Pachulski as Chapter 11 Trustee in the Case [Docket No. 51].  Also on August 21, 2017, the UST filed an *Application for Order Approving Appointment of Chapter 11 Trustee* [Docket No. 53], which application was granted by the Court's order entered the following day [Docket No. 56].

On August 28, 2017, the Trustee filed his *Acceptance of Appointment as Chapter 11 Trustee* [Docket No. 63].

**B.    Wells Fargo Bank Motions for Relief from Stay**

On November 21, 2017, Wells Fargo Bank, National Association ("WFB"), filed motions for relief from the automatic stay with respect to the Office Suites, including the Property [Docket No. 143] ("WFB RFS Motion"), Suite 200 [Docket No. 144], as well as another property located in Arizona [Docket No. 142].  In the WFB RFS Motion, WFB asserted a total claim against the Property of $223,205.00, another encumbrance on the Property arising from condominium association fees in the amount of $2,170.00, and a fair market value of $300,000.00.  The hearing regarding the WFB RFS Motion has been continued from time to time and currently is set to be heard at the same date and time as the hearing regarding this Motion.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

3

DOCS_LA:320257.1 51414/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**C.     The Recovery and Revesting of the Property in the Estate**

On April 7, 2017, Layfield, in his stated capacity as President of L&B, executed quitclaim deeds transferring the title to the Office Suites (the "Transfers") to Layfield V, LLC ("Layfield V"), an entity owned by Layfield.

On or about February 22, 2018, in order to avoid the Transfers and recover the Office Suites for the benefit of the Estate, the Trustee filed a complaint in this Court for the avoidance of fraudulent transfers and unjust enrichment against Layfield and Layfield V (together, the "Defendants"), commencing an adversary proceeding bearing adversary number 2:18-ap-01050-NB (the "Adversary Proceeding").  The Defendants failed to respond to the Adversary Proceeding. The Chapter 11 Trustee then requested an entry of default against each of the Defendants [AD Docket Nos. 4 and 5].  On March 29, 2018, the Clerk of this Court entered defaults against both Defendants [AD Docket Nos. 6 and 7].  On May 1, 2018, Plaintiff filed a *Motion for Default Judgment Under LBR 7055-1* (the "Default Judgment Motion") against Layfield and Layfield V [AD Docket No. 12]. On May 25, 2018, this Court granted the Default Judgment Motion and entered a default judgment (the "Judgment") against both Defendants, and in favor of the Plaintiff [AD Docket No. 17] in the Adversary Proceeding, resulting in the avoidance of the Transfers and the re-vesting of the Property in L&B's bankruptcy estate.[4]

**D.     The Employment of the Broker and Marketing of the Property**

On July 30, 2018, the Trustee filed an *Application for an Order Authorizing and Approving the Employment of KW Park City Keller Williams Real Estate to Market and Sell Real Property in Park City, Utah* [Docket No. 310] (the "Utah Broker Employment Application"), pursuant to which the Trustee sought to employ KW Park City Keller Williams Real Estate ("KW") as brokers to market and sell the Property.  On August 21, 2018, this Court granted the Utah Broker Employment Application.

---

[4] After determining that the Storage Unit is separately parceled in the Summit County, Utah, property records (Parcel No. TCVC-A-2AM), the Trustee and the chapter 7 trustee of the Layfield bankruptcy estate entered into a stipulation [AD Docket Nos. 38, 39] agreeing that judgment should be entered in the Adversary Proceeding revesting title to the Storage Unit in the L&B Estate [AD Docket No. 40].

In order to market the Office Suites, KW listed them on the predominant listing platforms for the Park City, Utah, commercial market (Park City MLS; UtahRealEstate.com) as well as CoStar's national commercial listing service, provided tours of the premises, and, to date, has interacted substantively with approximately 18 prospective buyers and/or their agents regarding the potential sale of one or more of the Office Suites (and the Storage Unit).  KW also provided potential buyers and their representatives with a general term sheet that provides guidance to those parties as to sale terms that would be preferred by the Trustee and to assist them in understanding the bankruptcy sales process.

On February 5, 2019, the Court approved, and on February 22, 2019, the Trustee closed, a sale transaction relating to Suite 200.

### E.    The Buyer's Offer

As a result of KW's marketing of the Property, on March 5, 2019, the Trustee and Buyer entered into a Purchase and Sale Agreement for Commercial Real Estate, as amended by addenda numbered 1 and 2 (the "PSA").  Among other terms, the PSA provides for the sale of the Property to the Buyer for a purchase price of $275,000.00 "subject to … higher and better bids through and including the hearing to approve the sale."  A true and correct copy of the PSA is attached hereto as **Exhibit "A"**.

Although the Trustee previously had received offers to acquire all of the Office Suites and the Storage Unit together, such offers:  (i) were insufficient in amount to provide material benefit to the Estate; (ii) expired or were withdrawn after one or more counteroffers were exchanged; (iii) were from potential buyers who included unacceptable contingencies in their offers or who presented a risk of closing a transaction in a timely manner; and/or (iv) were not acceptable for other reasons.  Consequently, the Trustee also entertained separate offers for individual Office Suites, leading to the consummation of the sale of Suite 200 last month.

### F.    The Trustee's Arrangements with Lienholders

Two parties assert liens against the Property:  WFB and the office condominium owners' association, Toll Creek Village Owners Association ("TCVOA").  In considering the Buyer's offer to purchase the Property, the Trustee determined that satisfying the face amount of such asserted

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

liens, together with taxes, brokers' commissions and other customary costs of sale, likely would result in minimal or no net proceeds payable to the Estate.  Accordingly, at the hearing regarding the WFB RFS Motion conducted on March 5, 2019, counsel for the Trustee and WFB advised the Court that they had entered into an arrangement in respect of the proposed transaction with the Buyer, subject to facilitation by the Court, whereby WFB agreed to a discounted pay-off amount in exchange for the imposition of certain deadlines and conditions and the setting of a hearing regarding this Motion on shortened time.  Subsequent to the hearing and prior to the filing of this Motion, the Trustee entered into an agreement with TCVOA also to accept a discounted pay-off amount on account of its asserted lien.

As a result of these arrangements, the proposed sale of the Property to the Buyer has the consent of the parties asserting liens against the Property, creates a net benefit to the Estate and is in the best interests of the Estate and its creditors.

### III.

### ARGUMENT

**A.    The Trustee May Sell Property of the Estate Pursuant to 11 U.S.C. § 363(b)**

11 U.S.C. § 363(b) empowers a trustee to "use, sell or lease . . . other than in the ordinary course of business, property of the estate."  In considering a proposed transaction to use, sell, or lease, courts look at whether the transaction is in the best interests of the estate based on the facts and history of the case.  *In re America West Airlines,* 166 B.R. 908, 912 (Bankr. D. Ariz. 1994) (*citing In re Lionel Corp.,* 722 F.2d 1063, 1071 (2d Cir. 1983)).  This requires examination of the "business justification" for the proposed sale.  *In re 240 North Brand Partners, Ltd.,* 200 B.R. 653 (B.A.P. 9th Cir. 1996); *In re Wilde Horse Enterprises, Inc.,* 136 B.R. 830 (Bankr. C.D. Cal. 1991); *In re Ernst Home Center, Inc.,* 209 B.R. 974 (Bankr. W.D. Wash. 1997).

In approving any sale outside the ordinary course of business, there must be a sufficient business reason for the sale and it must be in the best interest of the estate.  Here, the proposed transaction has the legitimate business justification of satisfying claims against and providing value to the Estate.  Also, as set forth in the PSA, the sale is subject to overbids, permitting the Trustee to consider potentially higher and better offers up to the time of the hearing regarding the Motion,

6

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

thereby further ensuring that the resulting sale of the Property will be at the highest and best price

and be in the best interest of the Estate.

**B.**     **The Trustee May Sell the Property Free and Clear of Liens, Claims and Interests**

The Trustee seeks authority to sell the Property free and clear of all liens and encumbrances

pursuant to section 363(f) of the Bankruptcy Code, which provides:

> The Trustee may sell property under subsection (b) or (c) of this
> section free and clear of any interest in such property of an entity other
> than the estate, only if -
>
> (1)     applicable nonbankruptcy law permits sale of such property
> free and clear of such interest;
>
> (2)     such entity consents;
>
> (3)     such interest is a lien and the price at which such property is to
> be sold is greater than the aggregate value of all liens on such
> property;
>
> (4)     such interest is in bona fide dispute; or
>
> (5)     such entity could be compelled, in a legal or equitable
> proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  Because subsections (1) through (5) of Bankruptcy Code § 363(f) are written in

the disjunctive, authority to sell the Property free and clear of any and all interests therein should be

granted if any of the conditions are met with respect to each interest holder.

With respect to the proposed sale of the Property to the Buyer, all liens asserted against the

Property will attach to the net proceeds of the sale with the same validity, enforceability, and

priority, if any, as existed with respect to the assets sold as of the date of the commencement of this

chapter 11 Case and be paid through the proposed transaction.  The purchase price proposed by the

Buyer exceeds the aggregate amount of liens asserted against the Property.  Also, both lienholders

are consenting to and are accepting discounted pay-offs in connection with the proposed sale.

**C.**     **The Buyer Should Be Deemed a "Good Faith Purchaser" Pursuant to 11 U.S.C.
§ 363(m)**

Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of property does

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:320257.1 51414/002

not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

A good faith buyer "is one who buys 'in good faith' and 'for value.'" *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992) (*citing In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986)). "[L]ack of good faith is [typically] shown by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *Id. (quoting Community Thrift & Loan v. Suchy (In re Suchy),* 786 F.2d 900, 902 (9th Cir. 1985)).  Here, the Trustee has not been made aware of any connection between the Buyer or his broker, on the one hand, and the Trustee, his professionals, the Debtor or its insiders, on the other hand.  Negotiations regarding the sale of the Property have taken place at arm's-length directly between KW and the broker for the Buyer.  Moreover, the sale will be conducted in a commercially reasonable manner, subject to overbids, following appropriate notice.  In connection with this Motion, the Trustee will submit a declaration of the Buyer's authorized representative disclosing connections, if any, between the Buyer and parties in interest.  Based on such facts and circumstances, the Trustee believes that this Court can properly determine the Buyer as a "good faith purchaser" pursuant to 11 U.S.C. § 363(m).

**D.    <u>Adequate Notice of the Sale</u>**

As discussed at the March 5 hearing regarding the WFB RFS Motion, the Trustee is providing notice of the sale to a limited number of parties designated by the Court:  the Office of the United States Trustee, all parties receiving ECF and special notice in this Case, all parties asserting an interest in the Property, Layfield and the chapter 7 trustee appointed in Layfield's bankruptcy case, as well as to parties who previously have expressed an interest in purchasing the Property.  Further, the proposed sale of the Property to the Buyer is subject to overbids, and the ability of other potentially interested parties to provide competing offers for the Property ensures that the proposed sale will not result in a lucrative "windfall" to the Buyer at the expense of creditors of the Estate. *See In re Onouli Kona Land Co.,* 846 F.2d 1170 (9th Cir. 1988).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

8

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**E.      The Court Should Waive the Stay Imposed by Bankruptcy Rule 6004(h)**

Pursuant to Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).

The Trustee's goal is to efficiently administer the Estate for the benefit of creditors.  An expedient conclusion to the sale process will inure to the benefit of the Estate and its creditors by limiting any continuing liabilities associated with the Property.  Waiver of Bankruptcy Rule 6004(h) will permit the sale transaction(s) described herein to take place as early as possible under the circumstances.

## IV.

## CONCLUSION

Based on the foregoing, the Trustee respectfully requests that this Court enter an order:

1.      Granting the Motion in its entirety;

2.      Approving the terms of the PSA;

3.      Authorizing, but not directing, the Trustee to sell the Property, together with any ancillary rights and related property, to the Buyer, or an overbidder, "as is," "where is," "with all faults," and without warranty or recourse, but free and clear of any and all liens, claims, and interests, pursuant to 11 U.S.C. §§ 363(b) and (f);

4.      Determining that the Buyer is a "good faith purchaser" pursuant to 11 U.S.C. § 363(m);

5.      Attaching to the net sales proceeds any unpaid portion of the liens on the Property sold in the same value, priority and scope as such liens existed as of the Petition Date;

6.      Reserving to the Trustee all rights to object to the validity, scope and priority of all disputed liens, claims and interests;

7.      Authorizing the Trustee to take any and all necessary actions to consummate the sale transactions described herein;

8.      Authorizing the Trustee to pay, through escrow, from the proceeds of the sale transactions described herein and without further order of the Court, any escrow fees, title insurance

9

premiums and other ordinary and typical closing costs and expenses payable by the Trustee pursuant

to the PSA or in accordance with local custom;

9.      Waiving any requirements for lodging periods of the order approving this Motion

imposed by any other applicable bankruptcy rules;

10.     Waiving the stay of the order approving this Motion imposed by Federal Rule of

Bankruptcy Procedure 6004(h) and any other applicable rules; and

11.     For such other and further relief as the Court may deem just and proper.


Dated:  March 19, 2019                    PACHULSKI STANG ZIEHL & JONES LLP


                                          By:    */s/ Malhar S. Pagay*

                                          Attorneys for Richard M. Pachulski, Chapter 11
                                          Trustee

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## <u>DECLARATION OF RICHARD M. PACHULSKI</u>

I, Richard M. Pachulski, declare as follows:

1.      I am the duly appointed chapter 11 trustee (the "<u>Trustee</u>") in the bankruptcy case ("<u>Case</u>") of Layfield & Barrett, APC ("<u>L&B</u>" or the "<u>Debtor</u>").  I also am an attorney duly admitted to practice before the courts of the State of California and this Court, among other jurisdictions.

2.      I submit this declaration in support of the *Motion for Order (1) Authorizing Sale of Real Property Free and Clear of All Liens, Claims And Encumbrances Pursuant to 11 U.S.C. §§ 363(b) and (f); (2) Approving Buyer as Good-Faith Purchaser Pursuant to 11 U.S.C. § 363(m); and (3) Authorizing Payment of Undisputed Liens and Other Ordinary Costs of Sale* (the "<u>Motion</u>"). Capitalized terms used but not defined herein shall have the same meanings as set forth in the Motion.

3.      Unless otherwise indicated, all facts set forth in this Declaration are based on either (a) my personal knowledge (my own or that gathered by others rendering services to the bankruptcy estate who report to me), (b) my review of relevant documents, or (c) my opinion based upon my experience and knowledge of the circumstances as described in the Motion.  If I were called to testify thereto, I could and would competently do so.

4.      I understand that, in order to market the Office Suites, my broker, KW, listed them on the predominant listing platforms for the Park City, Utah, commercial market (Park City MLS; UtahRealEstate.com) as well as CoStar's national commercial listing service, provided tours of the premises, and, to date, has interacted substantively with approximately 18 prospective buyers and/or their agents regarding the potential sale of one or more of the Office Suites (and the Storage Unit). KW also provided potential buyers and their representatives with a general term sheet that provides guidance to those parties as to preferred sale terms and to assist them in understanding the bankruptcy sales process.

5.      On February 5, 2019, the Court approved, and on February 22, 2019, we closed, a sale transaction relating to Suite 200.

6.      As a result of KW's marketing of the Property, on March 5, 2019, the Buyer and I entered into a Purchase and Sale Agreement for Commercial Real Estate, as amended by addenda

numbered 1 and 2 (the "<u>PSA</u>").  Among other terms, the PSA provides for the sale of the Property to

the Buyer for a purchase price of $275,000.00 "subject to … higher and better bids through and

including the hearing to approve the sale."  A true and correct copy of the PSA is attached hereto as

**Exhibit "A"**.

7.    Although I previously had received offers to acquire all of the Office Suites and the

Storage Unit together, such offers:  (a) were insufficient in amount to provide material benefit to the

Estate; (b) expired or were withdrawn after one or more counteroffers were exchanged; (c) were

from potential buyers who included unacceptable contingencies in their offers or who presented a

risk of closing a transaction in a timely manner; and/or (d) were not acceptable for other reasons.

Consequently, I also entertained separate offers for individual Office Suites, leading to the

consummation of the sale of Suite 200 last month.

8.    To my knowledge, two parties assert liens against the Property:  WFB and the office

condominium owners' association, TCVOA.  In considering the Buyer's offer to purchase the

Property, I determined that satisfying the face amount of such asserted liens, together with taxes,

brokers' commissions and other customary costs of sale, likely would result in minimal or no net

proceeds payable to the Estate.  Accordingly, at the hearing regarding the WFB RFS Motion

conducted on March 5, 2019, my counsel and counsel for WFB advised the Court that we had

entered into an arrangement in respect of the proposed transaction with the Buyer, subject to

facilitation by the Court, whereby WFB agreed to a discounted pay-off amount in exchange for the

imposition of certain deadlines and conditions and the setting of a hearing regarding this Motion on

shortened time.  Subsequent to the hearing and prior to the filing of this Motion, I entered into an

agreement with TCVOA also to accept a discounted pay-off amount on account of its asserted lien.

9.    As a result of these arrangements, the proposed sale of the Property to the Buyer has

the consent of the parties asserting liens against the Property, creates a net benefit to the Estate and is

in the best interests of the Estate and its creditors.

10.    I believe that the proposed transaction described in the Motion has the legitimate

business justification of satisfying claims against and providing value to the Estate.  Also, as set

forth in the PSA, the sale is subject to overbids, permitting me to consider potentially higher and

DOCS_LA:320257.1 51414/002

better offers up to the time of the hearing regarding the Motion, thereby further ensuring that the resulting sale of the Property will be at the highest and best price and be in the best interest of the Estate.

11.    I have not been made aware of any connection between the Buyer or his broker, on the one hand, and me, my professionals, the Debtor or its insiders, on the other hand.  Negotiations regarding the sale of the Property have taken place at arm's-length directly between my broker, KW, and the broker for the Buyer.  Moreover, the sale will be conducted in a commercially reasonable manner, subject to overbids, following appropriate notice.  Based on such facts and circumstances, I believe that this Court can properly determine the Buyer as a "good faith purchaser" pursuant to 11 U.S.C. § 363(m).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 19th day of March, 2019, at Los Angeles, California.

Richard M. Pachulski

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## DECLARATION OF RANDAL RUPERT

I, Randal Rupert, declare:

1.     I am employed as a Principal Broker for KW Park City Keller Williams Real Estate ("<u>KW</u>"), located at 1750 Sun Peak Drive, Park City, Utah 84098, and am one of the real estate agents at KW which the Trustee has employed for the purpose of listing and selling the real property known as Units 200, 210 and 220 of Toll Creek Village 2, an office condominium project located at 2720 Homestead Road, Park City, Utah 84098 (the "<u>Office Suites</u>").

2.     I submit this declaration in support of the *Motion for Order (1) Authorizing Sale of Real Property Free and Clear of All Liens, Claims And Encumbrances Pursuant to 11 U.S.C. §§ 363(b) and (f); (2) Approving Buyer as Good-Faith Purchaser Pursuant to 11 U.S.C. § 363(m); and (3) Authorizing Payment of Undisputed Liens and Other Ordinary Costs of Sale* (the "<u>Motion</u>"). Capitalized terms used but not defined herein shall have the same meanings as set forth in the Motion.

3.     Unless otherwise indicated, all facts set forth in this Declaration are based on either (a) my personal knowledge (my own or that gathered by others rendering services to KW who report to me), (b) my review of relevant documents, or (c) my opinion based upon my experience and knowledge of the circumstances as described in the Application.  If I were called to testify thereto, I could and would competently do so.

4.     I am a Utah licensed real estate Broker and I am experienced in selling residential and commercial properties.  I was first licensed as a Sales Agent in 2006.  I have been a Broker since 2009.

5.     I have been involved in real estate investment and management in the State of Utah since 2002 and have worked as the Principal Broker for KW Park City Keller Williams Real Estate in Park City, Utah, since 2017.

6.     In order to market the Office Suites, KW listed them on the predominant listing platforms for the Park City, Utah, commercial market (Park City MLS; UtahRealEstate.com) as well as CoStar's national commercial listing service, provided tours of the premises, and, to date, has interacted substantively with approximately 18 prospective buyers and/or their agents regarding the

14

potential sale of one or more of the Office Suites (and the Storage Unit).  We also provided potential

buyers and their representatives with a general term sheet that provides guidance to those parties as

to sale terms that would be preferred by the Trustee and to assist them in understanding the

bankruptcy sales process.

7.      In the instant case, I am not aware of any connection between the Buyer or his

broker, on the one hand, and the Trustee, KW, his counsel, the Debtor or its insiders, on the other

hand.  Negotiations regarding the sale of the Property have taken place at arm's-length directly

between KW and the broker for the Buyer.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed this 18th day of March, 2019, at Park City, Utah.

Randal Rupert

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

15

# EXHIBIT A

**ADDENDUM/COUNTEROFFER NO. TWO (2) TO PURCHASE AGREEMENT**

**ADDENDUM [ X ]    COUNTEROFFER [ ]** to that PURCHASE AND SALE AGREEMENT FOR COMMERCIAL REAL ESTATE (the "**PSA**") with a Reference Date of <u>February 22, 2019</u> including all other Addenda and Counteroffers thereto, between Buyer and Seller (as described in the Fundamental Terms) pertaining to the following Property:

This is an Addendum for the purchase of real property commonly known as 2720 Homestead Road, Park City, Utah 84098, Suites 210 (TCVC-2-210) and 220 (TCVC-2-220) (the "Property"), by **Allegretti & Company** (the "Buyer") from **Richard M. Pachulski, solely in his capacity as the Chapter 11 Trustee for the bankruptcy estate of Layfield & Barrett, APC** (Bankr. C.D. Cal. Case No. 2: 17-bk-19548-NB) (the "Seller").

To the extent the provisions of this Addendum modify, amend or conflict with, any provisions of any other offer, counteroffer, addenda or listing regarding the Property, the provisions of this Addendum shall control.

1.  The purchase price for the Property will be **$275,000**. The Earnest Money Deposit shall be $27,500 which will be deposited in escrow and applied toward the Purchase Price. A cashier's check or wire in that amount, together with an executed copy of this Addendum, shall be delivered to the Escrow Company identified below within three (3) business days of acceptance of this Addendum by the Buyer.

2.  The Buyer shall have a due diligence period until no later than **twenty (20) business days** after acceptance of this Addendum. After that period, any sale pursuant to this Addendum shall be without any further contingencies on the part of the Buyer.

3.  The Buyer, at his/her/its sole expense, shall have until 5:00 p.m., prevailing Property local time, twenty (20) business days after acceptance of this Addendum (the "Due Diligence Deadline"), to obtain all investigations, appraisals, and tests and complete all due diligence which the Buyer believes to be required for the purchase of the Property. The Buyer, at the end of that period, may advise the Seller in writing of his/her election to withdraw from this agreement and receive a full refund of the Earnest Money Deposit; otherwise, silence shall be deemed as acceptance. After the Due Diligence Deadline but prior to the Seller's filing of the motion to approve this Addendum described in the immediately following paragraph, should Buyer withdraw from or otherwise fail to consummate this agreement for any reason other than Seller's withdrawal from the agreement, Buyer shall be entitled to a refund of the Earnest Money Deposit less fifty percent (50%) of the amount of the Earnest Money Deposit, which amount shall become non-refundable and be forfeited to Seller. Thereafter, the provisions of paragraph 4, hereinbelow, shall apply.

4.  In the event the Buyer fails to perform under this Addendum by reason of the Buyer's default, Seller may retain the Earnest Money Deposit as liquidated damages.

_____ (Buyer's initials).

To the extent the provisions of this Addendum/Counteroffer modify or conflict with any provisions of the PSA or any other prior Addenda or Counteroffer, the provisions of this Addendum/Counteroffer shall control. All other provisions of the PSA and all other Addenda and Counteroffers not modified by this Addendum/Counteroffer shall remain in full force and effect; provided, however, that to the extent the provisions of any Addendum conflict with the provisions of any other Addendum, the Addendum most recently executed by all of the parties will control.

Buyer or Seller, as applicable, shall have until 5:00 P.M. Mountain Time on <u>March 5, 2019</u> to accept or reject, and deliver, this Addendum.

_____    Joseph A Allegretti    3/4/2019
(Signature of Authorized Signer)    (Print Name of Authorized Signer)    (Date)

_____    Momma Mem for EvP
Seller's Initials ___ Date 7/8/15    Buyer's Initials ___ Date 3/4/2019

Form Approved 7-12-17    Page 1 of 1
Copyright © 2017, CCIM Utah. All rights reserved. Permission is granted to use it, but not to change it. If you have concerns about the veracity of the copy with which you are working, go to http://www.utahccimchapter.com/forms, where an original version of the form is available.

(Signature of Authorized Signer)                (Print Name of Authorized Signer)            (Date)

## ACCEPT / REJECTION / COUNTER OFFER

<u>CHECK ONE</u>
[ ] **ACCEPTANCE**: [ ] Seller [ ] Buyer ACCEPTS the foregoing ADDENDUM.
[ ] **COUNTER OFFER**: [ ] Seller [ ] Buyer presents as a COUNTER OFFER the terms of attached Addendum
No. ___.
[ ] **REJECTION**: [ ] Seller [ ] Buyer REJECTS the foregoing ADDENDUM.

_____        _____        _____
(Signature of Authorized Signer)                (Print Name of Authorized Signer)            (Date)


_____        _____        _____
(Signature of Authorized Signer)                (Print Name of Authorized Signer)            (Date)


                        Seller's Initials _____ Date _____            Buyer's Initials _____ Date _____

Copyright © 2017, CCIM Utah.  All rights reserved.  Permission is granted to use it, but not to change it.  If you have concerns about the veracity of the copy with which you are working, go to
http://www.utahccimchapter.com/forms, where an original version of the form is available.

ADDENDUM/COUNTEROFFER NO. __ONE (1)__ TO PURCHASE AGREEMENT

ADDENDUM [_X_] COUNTEROFFER [   ] to that PURCHASE AND SALE AGREEMENT FOR COMMERCIAL REAL ESTATE (the "**PSA**") with a Reference Date of __February 22, 2019__, including all other Addenda and Counteroffers thereto, between Buyer and Seller (as described in the Fundamental Terms) pertaining to the following Property:

This is an Addendum for the purchase of real property commonly known as 2720 Homestead Road, Park City, Utah 84098, Suites 210 (TCVC-2-210) and 220 (TCVC-2-220) (the "Property"), by a buyer (the "Buyer") from **Richard M. Pachulski, solely in his capacity as the Chapter 11 Trustee for the bankruptcy estate of Layfield & Barrett, APC** (Bankr. C.D. Cal. Case No. 2:17-bk-19548-NB) (the "Seller").

To the extent the provisions of this Addendum modify, amend or conflict with, any provisions of any other offer, counteroffer, addenda or listing regarding the Property, the provisions of this Addendum shall control.

1.  The Seller is **Richard M. Pachulski, solely in his capacity as the Chapter 11 Trustee for the bankruptcy estate of Layfield & Barrett, APC.** Notices to be given at:
    c/o Pachulski Stang Ziehl & Jones LLP
    10100 Santa Monica Blvd.
    13th Floor
    Los Angeles, CA 90067-4003
    ATTN: Malhar S. Pagay, Esq.

2.  The Buyer shall have a due diligence period until no later than **fifteen (15) days** after acceptance of this Addendum. After that period, any sale pursuant to this Addendum shall be without any further contingencies on the part of the Buyer.

3.  The purchase price for the Property will be **$295,000.** The Earnest Money Deposit shall be $29,500 which will be deposited in escrow and applied toward the Purchase Price. A cashier's check or wire in that amount, together with an executed copy of this Addendum, shall be delivered to the Escrow Company identified below within three (3) business days of acceptance of this Addendum by the Buyer.

4.  The escrow company with respect to the sale of the Property is:
    Summit Title and Escrow (the "Escrow Company")
    Shellie Wilkins, Escrow Officer
    Park City, Utah 84098
    Tel: (435) 658-4889
    Email: shellie@summitescrowandtitle.com

5.  The Buyer, at his/her/its sole expense, shall have until 5:00 p.m., prevailing Property local time, fifteen (15) days after acceptance of this Addendum (the "Due Diligence Deadline"), to obtain all investigations, appraisals, and tests and complete all due diligence which the Buyer believes to be required for the purchase of the Property. The Buyer, at the end of that period, may advise the Seller in writing of his/her election to withdraw from this agreement and receive a full refund of the Earnest Money Deposit; otherwise, silence shall be deemed as acceptance. After the Due Diligence Deadline but prior to the Seller's filing of the motion to approve this Addendum described in the immediately following paragraph, should Buyer withdraw from or otherwise fail to consummate this agreement for any reason other than Seller's withdrawal from the agreement, Buyer shall be entitled to a refund of the Earnest Money Deposit less fifty percent (50%) of the amount of the Earnest Money Deposit, which amount shall become non-refundable and be forfeited to Seller. Thereafter, the provisions of paragraph 14, hereinbelow, shall apply.

6.  Upon removal or waiver of the due diligence contingency as set forth in above paragraph, hereinabove, the Seller shall file a motion to approve this Addendum and the transactions described herein with the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"). The closing shall take place not more than ten (10) days after the entry of order granting such motion.

7.  The Buyer acknowledges that he/she/it is familiar with the Property and that the Buyer has viewed the Property. The Seller and/or Seller's real estate broker have not inspected and will not inspect the Property or determine its condition, fitness or use for any particular purpose nor will provide any written disclosures, guarantees or warranties of any kind. Seller and Seller's agent are exempt from complying with requirements of any state laws, ordinances or regulations relating to disclosures upon transfer of real property. Seller makes no disclosures in connection with the Property.

Seller's Initials _RP_ Date _2/8/19_     Buyer's Initials _____ Date _____

Copyright © 2017, CCIM Utah. All rights reserved. Permission is granted to use it, but not to change it. If you have concerns about the veracity of the copy with which you are working, go to http://www.utahccimchapter.com/forms, where an original version of the form is available.

8. Any sale of the Property shall be "as-is" and "where is" with no warranty or recourse whatsoever. If any state or local laws, ordinances or regulations require that the Property be brought into compliance therewith, the Buyer, at its sole expense, shall comply with and pay for these requirements.

9. Transfer of the Property shall be by Fiduciary Quitclaim Deed.

10. The Seller shall convey pursuant to an order of the Bankruptcy Court and the Buyer shall accept the marketable title to the Property that will be insured through Escrow Company, without material exception, including free and clear of all liens, subject only to the terms of the within contract of sale.

11. All allowable assessments and real property taxes shall be prorated through the closing date to the applicable accounts of the Seller and the Buyer. The sale shall be free and clear of any real property taxes enforceable against the Property through the date of close of the sale. Escrow fees shall be split between the Buyer and the Seller (50%-50%). The Seller shall pay the costs of a standard issue title insurance policy. All other costs are at Buyer's expense.

12. The sale is subject to notice to creditors, approval by the Bankruptcy Court, and higher and better bids through and including the hearing to approve the sale.

13. The Seller is represented by Randal Rupert and Greg Miner of KW Park City Keller Williams Real Estate ("KW"). A Buyer's broker will be paid up to 3% of the Purchase Price. Subject to Bankruptcy Court approval, the Seller will pay six (6%) percent of the Purchase Price as brokerage commission to KW and a Buyer's broker, provided, however, if the Buyer is unrepresented, the brokerage commission will be reduced from 6% to 3%. No commission shall be due and payable except from the cash proceeds of an actual sale of the Property to the Buyer.

14. **In the event the Buyer fails to perform under this Addendum by reason of the Buyer's default, Seller may retain the Earnest Money Deposit as liquidated damages.** _____ (Buyer's initials).

15. Buyer and Seller shall sign escrow instructions in respect of the Property within ten (10) calendar days after acceptance of this Addendum. In the event that Buyer is unable to close escrow within ten (10) calendar days after entry of the Bankruptcy Court order approving the sale of the Property, the Buyer shall compensate the Seller $1,000 per day for an extension of such escrow closing deadline for up to ten (10) calendar days. Thereafter, the Seller shall have absolute discretion to either (a) terminate the sale and retain the Earnest Money Deposit as liquidated damages or (b) provide another extension.

16. The Bankruptcy Court shall have jurisdiction to interpret and enforce the terms of this agreement. This agreement shall be construed pursuant to the laws of the State of Utah and the U.S. Bankruptcy Code.

17. The Seller may decline, at his option, to consummate the sale of the Property for any reason, including without limitation: (a) the dismissal or closure of the bankruptcy case; (b) the conversion of the debtor's Chapter 11 case to Chapter 7; (c) the inability to obtain approval of the sale by the Bankruptcy Court; or (d) the inability to sell the Property free and clear of liens. The Seller reserves the right, in his sole discretion, to determine not to consummate, and to terminate, the sale of the Property by serving a notice of such termination on the Buyer, the Office of the United States Trustee, and parties who have requested special notice. No liability or obligations shall accrue to the estate or the Seller, either personally or in his capacity as trustee, as a result of any such termination. The Buyer's sole remedy, in the event that escrow fails to close as a result of Seller's inability or unwillingness to close escrow, shall be a refund of the Earnest Money Deposit.

---

To the extent the provisions of this Addendum/Counteroffer modify or conflict with any provisions of the PSA or any other prior Addenda or Counteroffer, the provisions of this Addendum/Counteroffer shall control. All other provisions of the PSA and all other Addenda and Counteroffers not modified by this Addendum/Counteroffer shall remain in full force and effect; provided, however, that to the extent the provisions of any Addendum conflict with the provisions of any other Addendum, the Addendum most recently executed by all of the parties will control.

Buyer or Seller, as applicable, shall have until 5:00 P.M. Mountain Time on _____ to accept or reject, and deliver, this Addendum.

(Signature of Authorized Signer)          (Print Name of Authorized Signer)          (Date)

Seller's Initials _____ Date _____          Buyer's Initials _____ Date _____

Copyright © 2017, CCIM Utah. All rights reserved. Permission is granted to use it, but not to change it. If you have concerns about the veracity of the copy with which you are working, go to http://www.utahrealestate.com/chapter.com/forms, where an original version of the form is available.

_____       _____     _____
(Signature of Authorized Signer)           (Print Name of Authorized Signer)      (Date)

## ACCEPT / REJECTION / COUNTER OFFER

**CHECK ONE**
[ ] **ACCEPTANCE**: [ ] Seller [ ] Buyer ACCEPTS the foregoing ADDENDUM.
[ X ] **COUNTER OFFER**: [ ] Seller [ X ] Buyer presents as a COUNTER OFFER the terms of attached Addendum No. TWO (2)
[ ] **REJECTION**: [ ] Seller [ ] Buyer REJECTS the foregoing ADDENDUM.

_Joseph A. Allegretti_           Joseph A Allegretti        3/4/2019
(Signature of Authorized Signer)           (Print Name of Authorized Signer)      (Date)


_____       _____     _____
(Signature of Authorized Signer)           (Print Name of Authorized Signer)      (Date)

Seller's Initials _____ Date _____           Buyer's Initials _____ Date _____

Copyright © 2017, CCIM Utah. All rights reserved. Permission is granted to use it, but not to change it. If you have concerns about the veracity of the copy with which you are working, go to http://www.ccimutahchapter.com/forms, where an original version of the form is available.

# PURCHASE AND SALE AGREEMENT FOR COMMERCIAL REAL ESTATE

> This is a legally binding contract. This form has been prepared by counsel for the Utah CCIM Chapter. Parties to this Purchase and Sale Agreement for Commercial Real Estate (the "PSA") may agree, in writing, to alter or delete provisions of this PSA. All such changes should be reflected in an Addendum. The body of this PSA should not be modified. Seek advice from your attorney and tax advisor before entering into a binding contract.

## OFFER TO PURCHASE COMMERCIAL OR MULTI-FAMILY PROPERTY

**"REFERENCE DATE":**  February 22, 2019

**"SELLER":**  Layfield V LLC

With Notices to be given at: Street Address  1000 N Green Valley Pkway #440

City, State, Zip Code  Henderson, NV  89074

Fax, Email

**"BUYER":**  Allegretti & Company

With Notices to be given at: Street Address  20555 Devonshire St PMB 375

City, State, Zip Code  Chatsworth, CA 91311

Fax, Email  joeallegretti@sbcglobal.net

**"PROPERTY":** Name/General Description: To be described in escrow.

Address:  2720 Homestead Road Units 210 & 220

City:  Park City  County: Summit  Utah, Zip:  84098

County Tax Parcel #:  TCVC-2-210 & TCVC-2-220

Source of legal description (check applicable box):
[ X ] TITLE COMMITMENT (See Section 8(a))
[  ] SURVEY (See Survey Addendum, if applicable)
The Property also includes certain rights and interests described in Section 2.

**"DEED":**   [ X ] General Warranty Deed  [  ] Special Warranty Deed  [  ] Other

**"TITLE POLICY":**   [ X ] Standard Coverage       [  ] Extended Coverage

**"PURCHASE PRICE":**  TWO HUNDRED SEVENTY-FIVE THOUSAND DOLLARS ($275,000.00). This Purchase Price represents Buyer's "best and final" offer.

**"EARNEST MONEY DEPOSIT":** $  TWENTY THOUSAND DOLLARS ($20,000.00)

in the form of: [ X ] Wire Transfer [  ] Buyer's Check to be deposited with [  ] Buyer's Brokerage [  ] Title Company/Escrow Agent [  ] Other_____. Buyer agrees to deliver the Earnest Money Deposit no later than five (5) Business Days after Acceptance (as defined in Section 23). The Brokerage or Other depository shall deposit the Earnest Money into the Real Estate Trust Account no later than five (5) Business Days from receipt.

**"SELLER DISCLOSURE DEADLINE":** Five (5) Business Days from the Effective Date  (Date)_____

**"DUE DILIGENCE DEADLINE":** Forty-Five (45) Business Days from the Effective Date.      (Date)_____

**"SETTLEMENT DEADLINE":**  No later than May 28, 2019. If escrow has not closed by May 28, 2019, said escrow shall cancel and all deposited monies shall be returned to Buyer.      (Date)_____

**"SELLER'S AGENT / BROKERAGE":**  Ron Kassan / Beitler Commercial Realty Services

**"BUYER'S AGENT / BROKERAGE":**  Randal Rupert / Keller Williams Realty

**"TITLE COMPANY/ESCROW AGENT":**  Seller's Choice

**"MEDIATION":** Seller and Buyer [  ] DO [  ] DO NOT elect to mediate in accordance with the provisions of Section 15.

**ADDITIONAL TERMS:** There [  ] ARE [ X ] ARE NOT addenda to this PSA containing additional terms. If there are, the terms of the following (each, an **"Addendum"** or collectively, the **"Addenda"**) are incorporated into this PSA by this reference:

Copyright © 2017, CCIM Utah. All rights reserved. Permission is granted to use it, but not to change it. If you have concerns about the veracity of the copy with which you are working, go to http://www.utahccimchapter.com/forms, where an original version of the form is available.

DocuSign Envelope ID: 86BEDAB6-EBDA-4029-9A91-F0486F1594C9

[    ] Seller Financing [    ] Financing Contingency [    ] ALTA Survey [    ] Assumption of Financing    [ X ] Other
Addendum

Form Approved 7-12-17                                                    Page 2 of 10
Copyright © 2017, CCIM Utah.  All rights reserved.  Permission is granted to use it, but not to change it.  If you have concerns about the veracity of the copy with which you are working, go to
http://www.utahccimchapter.com/forms, where an original version of the form is available.

DocuSign Envelope ID: 96BED458-EBBA-402B-9A91-9D4B8A464C9

# OFFER TO PURCHASE

**1.     OFFER TO PURCHASE.** Buyer offers to purchase the Property from Seller for the Purchase Price and otherwise upon the terms and subject to the conditions set forth in this PSA. Certain capitalized terms used in this PSA are defined in Section 27.

**2.     PROPERTY.** Unless excluded by another provision of this PSA or an Addendum or Counteroffer, the Property includes: (a) all non-trade fixtures presently attached to the Property; (b) all personal property owned by Seller and used primarily in connection with the Property; (c) Seller's right, if any, in any names or trademarks under which the Property is operated, but not including the generic name or trademarks of Seller; (d) all rights and easements appurtenant to the Property; and (e) all water rights and/or water shares, if any, that are the source for culinary or secondary water used in connection with the Property.

**3.     PAYMENT OF PURCHASE PRICE.** Unless the Loan Assumption Addendum or the Seller Financing Addendum is part of this PSA, the Purchase Price and all other sums shall be paid by federal funds wire transfer or other collected funds at the Closing.

**4.     SETTLEMENT AND CLOSING.** Settlement shall take place on the Settlement Deadline or on another date upon which the Parties agree in writing.

**4.1     Settlement.** "**Settlement**" shall be deemed to have occurred only when all of the following have been fully completed: (a) Buyer and Seller have signed and delivered to the Escrow Agent all documents required by this PSA, by any lender, or by Applicable Law; (b) any monies required to be paid by Buyer under this PSA (except for the proceeds of any new loan) have been delivered by Buyer to the Escrow Agent; and (c) any monies required to be paid by Seller under this PSA have been delivered by Seller to the Escrow Agent. Seller and Buyer shall each pay one-half (1/2) of the fee charged by the Escrow Agent for its services in the Settlement and Closing. Taxes and assessments for the current year, collected rents, association dues, utilities and charges accrued under contracts relating to the Property and assumed by Buyer, operating expenses relating to the Property and interest on any assumed obligations shall be prorated as of 11:59 p.m. on the day prior to Settlement unless otherwise agreed to in a settlement statement or other writing executed by the Parties. Tenant deposits (including, but not limited to, security deposits and prepaid rents) shall be paid or credited by Seller to Buyer at Settlement.

**4.2     Closing.** "**Closing**" means consummation of the transaction contemplated by this PSA and shall be deemed to have occurred only when: (a) Settlement has occurred; (b) the proceeds of any new loan have been delivered by the lender to the Escrow Agent; and (c) the applicable Closing documents have been recorded in the Official Records of the County Recorder of the County in which the Property is located. If a lender is funding a portion of the Purchase Price, loan proceeds must be delivered to Escrow Agent not later than the end of the fifth (5th) Business Day following completion of Settlement or Buyer shall be in default.

**5.     POSSESSION.** Seller shall deliver physical possession of the Property to Buyer at Closing or at such other date and time as is specified in an Addendum.

**6.     CONFIRMATION OF BROKERAGE FEES AND AGENCY DISCLOSURE.** Buyer and Seller each acknowledge prior receipt of written agency disclosure provided by their respective Agents that has disclosed the agency relationships that are confirmed in the Fundamental Terms. Buyer and Seller further acknowledge that brokerage fees due as a result of this transaction are being paid based upon the terms of a separate written agreement. If an Agent or Brokerage represents both Seller and Buyer, then he, she or it shall constitute a Limited Agent as defined in applicable regulations of the Utah Division of Real Estate.

**7.     DEED AND TITLE INSURANCE.**

**7.1     Deed.** Seller will convey title to Buyer at Closing by statutory form of Deed specified in the Fundamental Terms. Buyer agrees to accept title to the Property subject to: (a) the Permitted Exceptions (defined below); (b) any lease or property management agreement timely disclosed to Buyer pursuant to Section 8 below and not objected to by Buyer prior to the Due Diligence Deadline; and (c) any title exception arising by, through or under Buyer.

**7.2     Title Policy.** At Settlement, Seller agrees to pay for the Title Policy specified in the Fundamental Terms, in the amount of the Purchase Price insuring title to the Property to Buyer subject only to the Permitted Exceptions (the "**Title Policy**"). Buyer, at its sole option, cost and expense, may elect to obtain additional coverage or additional specific endorsements.

Copyright © 2017, CCIM Utah. All rights reserved. Permission is granted to use it, but not to change it. If you have concerns about the veracity of the copy with which you are working, go to http://www.utahccimchapter.com/forms, where an original version of the form is available.

**8.      SELLER DISCLOSURES.** No later than the Seller Disclosure Deadline, Seller shall provide to Buyer the following, to the extent they are within the possession or control of Seller, and at Seller's sole cost and expense (the "**Seller Disclosures**"):

      **(a)**      a title commitment (the "**Title Commitment**") from a title company selected by Seller (the "**Title Company**"), together with a copy of each instrument, agreement or document listed as an exception to title in such Title Commitment;

      **(b)**      a Seller property condition disclosure for the Property signed and dated by Seller;

      **(c)**      a true and correct copy of all management agreements and contracts affecting the Property;

      **(d)**      all copies in Seller's possession of studies and/or reports which have previously been performed in connection with or for the Property, including without limitation, environmental reports, soils studies, seismic studies, physical inspection reports, site plans and surveys, and identification of such studies of which Seller is aware but that are not in Seller's possession;

      **(e)**      all copies of written notices relating to a violation of Applicable Law including, without limitation, Environmental Law and laws relating to land use, zoning or compliance with building codes;

      **(f)**      evidence of any water rights and/or water shares used in connection with the Property;

      **(g)**      all other documents described as Seller's Disclosures in any Addenda or Counteroffers to this PSA;

      **(h)**      a true and correct copy of all leases and rental agreements now in effect with regard to the Property (the "**Leases**"), together with a current rent roll (the "**Rent Roll**"), each certified as correct and complete by Seller; and

      **(i)**      operating statements of the Property for its last three full fiscal years of operation plus the current fiscal year through the last day of the month prior to the Effective Date, certified as correct and complete by the Seller or by an independent certified public accountant (the "**Operating Statements**").

      **(j)**      To the Knowledge of Seller, there are no material defects or deficiencies in the design, construction, fabrication, manufacture or installation of the improvements to the Property or any part thereof or any system, element or component thereof, and all systems elements and components of the Property (including all machinery, fixtures and equipment, the roof, foundation and structural elements, and the elevator, mechanical, electrical and life safety systems) are in good working order and repair and sound operating condition in all material respects except for normal wear and tear.

**9.      BUYER'S DUE DILIGENCE AND RIGHT TO CANCEL.** No later than the Due Diligence Deadline, Buyer, at its sole cost and expense, shall: (a) conduct such Due Diligence as it deems necessary and appropriate; and (b) determine if the results of its Due Diligence are acceptable. The Due Diligence Deadline is subject to extension as set forth in any Addendum attached hereto. If, prior to Closing, the Title Company issues a supplemental or amended title report showing additional title exceptions (the "**Amended Title Commitment**"), Due Diligence Deadline shall be extended five (5) Business Days from the date of Buyer's receipt of such Amended Title Commitment.

      **9.1      Title and Survey Matters.** In conducting its due diligence prior to the Due Diligence Deadline, Buyer may review the Title Commitment, Survey and all other Seller Disclosures as referenced in Section 8. Seller agrees to cooperate with Buyer in connection with Buyer's Due Diligence investigation by providing additional information or documentation reasonably requested by Buyer.

      **(a)      Removal of Monetary Liens.** Notwithstanding anything in this PSA to the contrary, unless specifically set forth in an Addendum or Counteroffer, Seller covenants and agrees that all Monetary Liens shall be removed by Seller at Closing or insured against by the Title Insurer at Seller's sole cost and expense, regardless of whether Buyer has objected to such Monetary Lien(s). This provision will survive Closing.

      **(b)      Permitted Exceptions.** Those matters reflected in the Title Commitment to which Buyer does not object or agrees to waive following objection; provided however that Permitted Exceptions does not include (i) delinquent taxes or assessments, or (ii) deeds of trust, mortgages, judgment liens, mechanics' liens, materialmen's liens, and other liens or monetary encumbrances placed on or against the Property.

      **9.2      Inspection.** In conducting its Due Diligence prior to the Due Diligence Deadline, and at any time thereafter until Settlement, Buyer may, upon reasonable notice and at reasonable times, conduct inspections, appraisals and/or tests on the Property. Buyer shall enter to conduct such inspections and tests on the Property only during reasonable hours and with reasonable prior notice to Seller. Seller shall have the right to accompany Buyer and any of its agents on the Property at all times. All inspections and tests shall be conducted in a manner that does not unreasonably disrupt the activities and business of Seller and its tenants, and Buyer shall indemnify, hold harmless and defend Seller, its tenants and their employees, invitees and guests from and against any and all liabilities, claims, actions or damages (including reasonable attorneys' fees and court costs) which arise from, are caused by, or are in any manner connected with Buyer's Due Diligence and caused by or arising from the actions of

Copyright © 2017, CCIM Utah. All rights reserved. Permission is granted to use it, but not to change it. If you have concerns about the veracity of the copy with which you are working, go to http://www.utahrealestatechapter.com/forms, where an original version of the form is available.

DocuSign Envelope ID: 86BEDA56-EB5A-4029-9A91-F04611844C9

Buyer, including, without limitation, claims for payment for inspection services, claims for mechanic's liens, claims for physical damage to the Property and claims arising from personal injury.

      **9.3**    **Buyer's Right to Cancel or Resolve Objections.**

      **(a)**    **Right to Cancel or Object.** If Buyer, in Buyer's sole discretion, determines that the results of the Buyer's Due Diligence are not acceptable, then, not later than the Due Diligence Deadline, Buyer shall either: (a) cancel this PSA by providing written notice to Seller, in which event the Earnest Money Deposit shall be released to Buyer; or (b) provide to Seller one or more written notices setting forth Buyer's objections in reasonable detail (the "**Objections**").

      **(b)**    **Failure to Respond.** If Buyer does not timely take either of the actions described in Section 9.3, then the results of the Buyer's Due Diligence shall be deemed approved by Buyer, all Objections which Buyer could have asserted shall be deemed waived by Buyer and, unless another condition or contingency set forth in an Addendum or Counteroffer remains unsatisfied, the Earnest Money Deposit shall become nonrefundable except in the event of Seller's default.

      **(c)**    **Response by Seller.** If Buyer timely provides Objections to Seller, Buyer and Seller shall have five (5) Business Days after Seller's receipt of the Objections (the "**Response Period**") in which to agree in writing upon the manner of resolving the Objections. Seller may, but shall not be required to, resolve the Objections. If Buyer and Seller have not agreed in writing upon the manner of resolving the Objections prior to the expiration of the Response Period, Buyer may cancel this PSA by delivering written notice to Seller not later than five (5) Business Days after the end of the Response Period (the "**Termination Date**"); whereupon the Earnest Money Deposit shall be released to Buyer and neither Party shall have any further rights, obligations or liabilities under this PSA except as expressly set forth herein. If this PSA is not canceled by Buyer under this Section, the Objections shall be deemed waived by Buyer and the Earnest Money Deposit shall become nonrefundable except upon Seller's default. If the Response Period extends past the Settlement Deadline, the Settlement Deadline shall be extended to the date that is five (5) Business Days following the extended Termination Date. If the Termination Date extends past the Settlement Deadline, the Settlement Deadline shall be extended to the date that is five (5) Business Days following such Termination Date.

      **9.4**    **Estoppel Certificates.** For a Commercial Property involving commercial leases, Seller shall deliver to Buyer, not less than five (5) Business Days prior to the Closing Date, in form reasonably required by Buyer or its secured lender, or in the form required by the applicable Leases, executed estoppel agreements from all tenants of the Property except as set forth in an Addendum attached hereto. If Seller cannot cause the required tenants to execute estoppel agreements in a form reasonably acceptable to Buyer and to Buyer's lender at least five (5) Business Days prior to the Settlement Date, Buyer may, at its sole discretion, extend the Settlement Deadline for up to thirty (30) Business Days to allow Seller additional time to obtain the required estoppel certificates. If Seller does not obtain the required estoppel agreements, Buyer may terminate the PSA by written notice to Seller, in which event the Earnest Money Deposit shall be returned to Buyer, and no Party shall have any further rights, obligations, or liabilities under the PSA except as expressly set forth in the PSA. If Buyer does not timely terminate the PSA, then Buyer shall be deemed to have waived the provisions of this Section.

**10.**    **SELLER REPRESENTATIONS AND WARRANTIES.** Seller represents and warrants that the following statements are true and complete as of the Effective Date and shall be true and complete as of the Settlement and Closing. The following representations and warranties shall survive the date of Closing for one (1) year, and shall terminate and be null and void if or to the extent a legal action has not been filed in a court of competent jurisdiction prior to the expiration of such one (1) year period:

      **(a)**    there is no action, suit, administrative proceeding or other proceeding pending in any court or before any arbitrator of any kind or before or by any governmental body or, to Seller's knowledge, threatened against Seller and/or the Property which may adversely affect the transaction contemplated by this PSA;

      **(b)**    all work which has been or will be performed in, on or about the Property, or materials furnished to the Property which might in any circumstances give rise to a mechanic's or materialman's lien (other than relating to work performed by Buyer), will be paid and all necessary waivers of rights to a mechanic's or materialman's lien for such work will be obtained;

      **(c)**    Seller has not received any written notice or citation indicating that the Property is in material violation of Applicable Law;

      **(d)**    to Seller's knowledge, the consummation of the transactions contemplated by this PSA and the compliance by Seller with the terms of this PSA do not and will not conflict with or result in a material breach of any of the terms or provisions of any agreement, arrangement, undertaking, accord, document, or instrument to which Seller is a party or by which Seller or the Property is bound; and

      **(e)**    seller is not a "foreign person" as that term is defined in Code Section 1445 and shall deposit with Escrow Agent at or prior to Settlement, an affidavit in such form as may be required by the U.S. Internal Revenue

Form Approved 7-12-17

Copyright © 2017, CCIM Utah. All rights reserved. Permission is granted to use it, but not to change it. If you have concerns about the veracity of the copy with which you are working, go to http://www.utahccimchapter.com/forms, where an original version of the form is available.

DocuSign Envelope ID: 8C6ED436-EBB7-4025-9A91-F6489FF934C9

Service, setting forth Seller's full name, address and taxpayer identification number and stating under penalty of perjury that Seller is not a "**foreign person**" as so defined.

      **(f)**      except as set forth in writing, upon delivery and to Seller's knowledge, all copies Seller provides to Buyer under Section 8 above are true and correct copies of the originals or copies within Seller's possession.

      **(g)**      to the Knowledge of Seller, the Property is in compliance with all Applicable Law.

      **(h)**      to the Knowledge of Seller and except as disclosed by environmental reports provided to Buyer, no Hazardous Material is present in, on or under the Property or any nearby real property which could migrate to the Property. Seller has not used the Property or any part thereof, and to its Knowledge no other Person has used the Property or any part thereof, for the production, processing, manufacture, generation, treatment, handling, storage, transportation or disposal of Hazardous Material while the Property has been owned by Seller;

      **(i)**      except as disclosed by Seller in writing: (i) the Leases and all information shown in the Rent Roll will be and is accurate and complete; (ii) the Leases are in full force and effect and all rent is accruing without offset or deduction; (iii) there are no Persons leasing or, to the Knowledge of Seller, occupying the Property except the tenants described in the Rent Roll; (iv) the Leases have not been amended or modified except as stated in the Rent Roll; (v) no monthly rent has been paid more than one (1) month in advance and no security deposit or prepaid rent has been paid except as stated in the Rent Roll; (vi) no tenant is entitled to interest on any security deposit; (vii) the tenants have accepted possession of their respective premises and all improvements and construction required to be performed by the landlord under the Leases have been completed; (viii) no event has occurred and no condition now exists which, with or without notice or the passage of time, or both, would constitute a material breach or a default by the landlord or, to the Knowledge of Seller, by any tenant; (ix) no money is owed or will become owing to any tenant for improvements or otherwise under the Leases; and (x) there are no leasing commissions or other commissions, fees or compensation presently owed or which will become due and payable under any of the Leases or which could become due and payable in the future upon the exercise of any right or option contained in any of the Leases; and

      **(j)**      the Operating Statements delivered to Buyer are correct and complete in all material respects and accurately show and fairly present all income and expenses of the Property for the periods indicated in all material respects, subject to customary and consistent year-end adjustments.

**11.**    **NO OTHER REPRESENTATIONS AND WARRANTIES.** Except as expressly set forth in this PSA or in an Addendum or Counteroffer: (a) Buyer is purchasing the Property, and the Property shall be conveyed and transferred to Buyer, "**AS IS, WHERE IS, AND WITH ALL FAULTS**" and specifically and expressly without any warranties, representations or guarantees, either express or implied, of any kind, nature or type whatsoever from or on behalf of Seller; and (b) Seller has not, does not and will not, with respect to the Property, make any warranties or representations, express or implied, or arising by operation of law, including, but in no way limited to, any warranty of condition or merchantability, or with respect to the value, profitability, developability or marketability of the Property.

**12.**    **CHANGES PENDING CLOSING.** Between the Effective Date and the date of Closing, and except as and to the extent otherwise permitted by an Addendum hereto, Seller shall:

    (i) comply with all Applicable Law;

    (ii) continue and maintain all current casualty and liability insurance policies on the Property;

    (iii) manage, operate, maintain and repair the Property in the ordinary course of business in accordance with sound property management practice and in good repair and working order and condition; and,

    (iv) keep in force property insurance covering all buildings, structures, improvements, machinery, fixtures and equipment included in the Property insuring against all risks of physical loss or damage, subject to standard exclusions, in an amount equal to the actual replacement cost (without deduction for depreciation) of such buildings, structures, improvements, machinery, fixtures and equipment.

During such period Seller shall not:

    (i) create or suffer to be created any further Monetary Lien against the Property;

    (ii) make any substantial alterations or improvements to the Property; or,

    (iii) except for the usage and storage of normal and customary amounts of Hazardous Material found in cleaning and maintenance supplies stored and used in compliance with Environmental Law, shall not use, produce, process, manufacture, generate, treat, handle, store, release or dispose of any Hazardous Material in, on or under the Property.

      **12.1**   **Leasing Matters.**    Between the effective Date and the date of Closing, and except as and to the extent otherwise permitted by an addendum hereto. Seller shall provide Buyer with copies of any and all proposed Leases, Lease renewals, Lease modifications and Lease amendments which Seller proposes to execute. Buyer shall have no approval rights with respect to proposed Leases, Lease renewals, Lease modifications and Lease amendments until after the Due Diligence Deadline. From and after the Due Diligence Deadline, Seller will not enter into any new Lease relating to the Property, or any renewal, modification or amendment of any currently

Copyright © 2017, CCIM Utah. All rights reserved. Permission is granted to use it, but not to change it. If you have concerns about the veracity of the copy with which you are working, go to http://www.utahccimchapter.com/forms, where an original version of the form is available.

DocuSign Envelope ID: 96B5EDA5C-EB5A-4029-9A91-F8D468484C9

existing Leases, without first obtaining Buyer's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed. Unless the Parties otherwise agree in writing; any brokerage commission payable with respect to a new Lease, a Lease modification and/or Lease amendment executed after the Due Diligence Deadline shall be paid by Buyer; and all tenant improvements required under any Lease (and/or Lease modification and/or amendments) executed after the Due Diligence Deadline shall be completed at Buyer's sole cost and expense.

**13.    AUTHORITY OF SIGNERS.** If Buyer or Seller is a legal entity rather than an individual, each Person executing and delivering this PSA or any Addendum or Counteroffer for it unconditionally and irrevocably warrants his or her authority to do so and to bind Buyer or Seller. Each of Seller and Buyer further warrant that the execution and delivery of this PSA by it has been duly and validly authorized, and all requisite actions have been taken to make this PSA valid, binding and enforceable upon it.

**14.    COMPLETE CONTRACT.** This PSA together with any attached Addendum and Counteroffer, exhibit, and Seller Disclosures, constitutes the entire agreement between the Parties regarding the purchase and sale of the Property and supersedes and replaces any and all prior negotiations, representations, warranties, understandings or contracts between the Parties. This PSA cannot be changed except by written agreement of the Parties. Subject to the limitations on assignment expressly set forth in any Addendum or Counteroffer, this PSA shall inure to the benefit of and be binding on the Parties hereto and their respective heirs, legal representatives, successors and assigns.

**15.    MEDIATION.** If the Parties have elected to mediate by checking the appropriate box in the Fundamental Terms, any dispute relating to this PSA that arises prior to or after Closing shall first be submitted to mediation. Mediation is a process in which the Parties meet with an impartial Person who helps to resolve the dispute informally and confidentially. Mediators cannot impose binding decisions. The Parties to the dispute must agree in writing before any settlement is binding. The Parties will jointly appoint an acceptable mediator and will share equally in the cost of such mediation. The mediation, unless otherwise agreed, shall terminate in the event the entire dispute is not resolved thirty (30) days from the date written notice requesting mediation is sent by one Party to all other Parties. If mediation fails, the other procedures, rights and remedies available to the Parties under this PSA shall apply. Nothing in this Section shall prohibit any Party from seeking emergency equitable relief pending mediation including, without limitation, an injunction.

**16.    DEFAULT.** In the event of a default by Buyer, Seller shall be entitled, as Seller's sole and exclusive remedy, to terminate this PSA by written notice to Buyer, in which event the Earnest Money Deposit shall be paid to Seller as liquidated damages. In the event of a default by Seller, Buyer shall be entitled, at its option: (a) to terminate this PSA by written notice to Seller, in which event the Earnest Money Deposit shall be returned to Buyer and Buyer shall be entitled to and agrees to accept from Seller, a sum equal to the Earnest Money Deposit as liquidated damages; (b) to enforce Seller's obligations under this PSA by a suit for specific performance; or (c) accept a return of the Earnest Money Deposit, or Deposits, if applicable, and pursue any other remedies available at law. Upon termination of this PSA by either Party, no Party shall have any further rights, obligations, or liabilities hereunder except as expressly set forth in this PSA. The Parties acknowledge and agree that the actual damages upon default are uncertain in amount and difficult to ascertain, and that the amount of liquidated damages specified in this Section was reasonably determined.

**17.    ATTORNEYS' FEES AND COSTS.** In the event of litigation or binding arbitration arising out of this PSA, the prevailing Party shall be entitled to costs and reasonable attorneys' fees. Attorneys' fees shall not be awarded for participation in mediation under Section 15.

**18.    NOTICES.** All notices required under this PSA must be: (a) in writing; (b) signed by the Party giving notice; and (c) received by the other Party, the other Party's Agent or the other Party's Brokerage no later than the applicable date referenced in this PSA. Notices may be hand delivered, faxed, emailed, delivered by certified mail, return receipt requested or by a national overnight courier service such as, but not limited to, Federal Express. If a notice is sent by electronic transmission, the burden of proving receipt will be on the sender.

**19.    ABROGATION.** Except for the provisions of Sections 5, 7, 9.2, 14 and 15 and any other provisions of this PSA which expressly survive the termination of this PSA, the provisions of this PSA shall not be enforceable after Closing.

**20.    RISK OF LOSS; EMINENT DOMAIN.** All risk of loss to the Property, including physical damage or destruction to the Property or its improvements due to any cause except ordinary wear and tear and loss caused by a taking in eminent domain, shall be borne by Seller until Closing. In the event of any destruction exceeding five percent (5%) of the Purchase Price or any taking or commencement of a taking by any governmental agency of a

Copyright © 2017, CCIM Utah. All rights reserved. Permission is granted to use it, but not to change it. If you have concerns about the veracity of the copy with which you are working, go to http://www.utahccimchapter.com/forms, where an original version of the form is available.

DocuSign Envelope ID: 88BEDAB8-EBDA-4029-9A91-F046F1B94C9

material portion of the Property, Buyer may, at Buyer's sole discretion, terminate this PSA by written notice to Seller within ten (10) days of notice of the commencement of taking or event of destruction, in which event all the Earnest Money Deposit, together with any interest accrued thereon, shall be promptly refunded to Buyer. If Buyer does not terminate this PSA, the insurance or condemnation proceeds, or right to collect the same, shall be paid or assigned to Buyer at Closing.

**21.     TIME IS OF THE ESSENCE.**  Time is of the essence regarding the dates set forth in this PSA, and any extension of the time for performance of any obligation or satisfaction of any condition must be agreed to in writing by all Parties.  Unless otherwise explicitly stated in this PSA:  performance under this PSA which references a date shall absolutely be required by 5:00 P.M. Mountain Time on the stated date.  Business Days shall be counted (beginning on the day following the event which triggers the timing requirement (i.e., delivery of a specified notice, etc.).  If the date for performance falls, or the deadline expires on a day which is not a Business Day, performance shall be required or the deadline shall expire on the next Business Day thereafter.  Performance dates and times referenced herein shall not be binding upon title companies, lenders, appraisers and other Persons which are not Parties, except as otherwise agreed to in writing by such Persons.

**22.     ELECTRONIC TRANSMISSION AND COUNTERPARTS.**  Facsimile (fax) or Email transmissions of a signed copy of this PSA, any Addenda and Counteroffers thereto, and the retransmission of any signed fax or Email shall be the same as delivery of an original, subject to confirmation of receipt by the other party hereto.  This PSA and any Addenda and Counteroffers thereto may be executed in counterparts.

**23.     ACCEPTANCE.**  "Acceptance" occurs when Seller or Buyer, responding to an offer or counteroffer of the other: (a) signs the offer or counteroffer where noted to indicate acceptance; and (b) delivers to the other Party or to the other Party's Agent or Brokerage written acceptance of the offer or counteroffer by hand delivery, fax, email, delivery by certified mail, return receipt requested or by a national overnight courier service such as, but not limited to, Federal Express.  The burden of proving delivery will be on the sender.

**24.     DEADLINES.**  Buyer and Seller agree that Seller Disclosure Deadline, the Due Diligence Deadline and Settlement Deadline are as set forth in the Fundamental Terms, as modified by any Addendum hereto.

**25.     TAX DEFERRED EXCHANGE.**  Each Party shall cooperate with the other Party in effecting a tax deferred exchange under the I.R.S. Code; provided however, that the other Party's cooperation shall be conditioned on the following: (a) the exchange will be at no additional liability and cost to the other Party; (b) the exchange will not delay Settlement or Closing; and (c) the other Party shall not be required to acquire title to any proposed exchange properties to accommodate an exchange.  Except in cases of Default by a non-exchanging party, the exchanging Party hereby indemnifies and agrees to defend and hold the other Party harmless from and against any and all claims, demands, costs and expenses which the other Party may sustain or incur resulting from the attempt by the exchanging Party to consummate the sale or acquisition of the Property as a tax deferred exchange.

**26.     JOINT PREPARATION.**  The provisions of this PSA have been negotiated by all Parties hereto and should therefore not be interpreted or construed in favor of or with prejudice against any particular Party, but in accordance with the general tenor of the language used.

**27.     DEFINITIONS.**  Certain capitalized terms previously used in this PSA are defined above.  In addition to those capitalized terms, the following capitalized terms shall have the following meanings:

"**Agent**" means Buyer's Agent or Seller's Agent, as applicable.

"**Applicable Law**" shall mean and include any and all laws, rules, regulations or ordinances of any governmental authority having jurisdiction over a specified matter, as the same may be in effect from time to time, including, without limitation, any Environmental Law.

"**Brokerage**" means Buyer's Brokerage or Seller's Brokerage, as applicable.

"**Business Day**" shall mean any day other than a Saturday, Sunday, or legal holiday on which national banks in Utah are authorized by federal law to close.

"**Code**" shall mean the Internal Revenue Code of 1986, as amended, and the regulations issued thereunder.

Form Approved 7-12-17

Copyright © 2017, CCIM Utah. All rights reserved. Permission is granted to use it, but not to change it. If you have concerns about the veracity of the copy with which you are working, go to http://www.utahccimchapter.com/forms, where an original version of the form is available.

DocuSign Envelope ID: 8d8ED4B9-EBA4-4029-9A91-B448FF314C8

**"Counteroffer"** means a Counteroffer signed by the Party making the Counteroffer to this PSA, and which Counteroffer will be attached to this PSA as an addendum.

**"Deed"** means the form of Deed checked in the appropriate box on page 1 of this PSA in the Fundamental Terms.

**"Due Diligence"** means such investigations of and tests on or regarding the Property as Buyer deems necessary and appropriate.

**"Effective Date"** means the date both Seller and Buyer have executed this PSA and accepted Counteroffers and Addenda, as applicable.

**"Environmental Law"** shall mean any federal, state, or local law, statute, ordinance, rule, or regulation pertaining to health, industrial hygiene, or the environmental conditions on or under the Property, or relating to releases, discharges, emissions, or disposals from the Property to air, water, soil, or groundwater, or relating to the withdrawal or use of groundwater, or relating to the use, handling, or disposal of polychlorinated biphenyls, asbestos, or urea formaldehyde, or relating to the treatment, disposal, storage, or management of Hazardous Materials or relating to the transportation, storage, disposal, or management, including, without limitation, the Comprehensive Environmental Response Compensation, and Liability Act of 1980, as amended, and the Resource Conservation and Recovery Act of 1976, as amended, and all rules, and regulations, published pursuant thereto or promulgated thereunder.

**"Fundamental Terms"** means the Fundamental Terms of Offer to Purchase set forth on page 1 of this PSA as modified by an accepted Counteroffer or Addendum.

**"Hazardous Material"** shall mean and include, without limitation: (a) those substances included within the definitions of **"hazardous substances"** and **"hazardous waste"** in any Environmental Law; and (b) any material, waste, or substance which is or contains asbestos, polychlorinated biphenyls, petroleum and its derivative by-products, and other explosive or radioactive materials.

**"Knowledge"** means the actual knowledge of a Party and imposes a duty to investigate the applicable files and records but without a duty of further inquiry. The knowledge of a specific person may be set forth in an Addendum, if desired.

**"Lease"** shall have the meaning set forth in Section 8(h).

**"Monetary Liens"** means each of the following to the extent arising by, through or under Seller: judgment liens, mortgages, deeds of trust, mechanic's liens, pre-construction liens, liens that secure the payment of money or credit, and liens or charges for delinquent taxes.

**"Operating Statements"** shall have the meaning set forth in Section 8(i).

**"Parties"** means Seller and Buyer.

**"Party"** means Seller or Buyer.

**"Permitted Exception"** has the meaning set forth in Section 9.1(b).

**"Person"** means any natural individual human, any legal entity, a trust or the trustees of a trust acting in such capacity.

**"Reference Date"** means the date set forth in the Fundamental Terms on which the offer was prepared.

**"Title Commitment"** means a commitment issued by the Title Insurer for the Title Policy insuring the Owner's title in the Property in the full amount of the Purchase Price.

**"Title Policy"** means a standard 2019 ALTA Owner's Policy of Title Insurance issued by the Title Insurer.

**OFFER AND TIME FOR ACCEPTANCE.** Buyer offers to purchase the Property on the above terms and conditions. If Seller does not accept and deliver an acceptance of this Offer by 5:00 P.M. Mountain Time on <u>Friday,</u>

Copyright © 2017, CCIM Utah. All rights reserved. Permission is granted to use it, but not to change it. If you have concerns about the veracity of the copy with which you are working, go to http://www.utahccimchapter.com/forms, where an original version of the form is available.

DocuSign Envelope ID: 86BEDA66-EBB4-4023-3A91-F6A49FB34C9

March 1, 2019 this Offer shall lapse, and the Buyer's Brokerage or Escrow Agent, as applicable, shall return the Earnest Money Deposit to Buyer.

If Buyer is an individual or individuals:

| | | 2/22/2019 |
|---|---|---|
| *Joseph A. Allegretti* | Joseph Allegretti | |
| (Signature of Buyer) | (Print Name of Buyer) | (Date) |

| | | |
|---|---|---|
| (Signature of Buyer) | (Print Name of Buyer) | (Date) |

If Buyer is an entity:

Allegretti & Company
(Print Name of Entity)                                    (Date)

A California corporation
(State of Formation and Type of Entity)

By: *Joseph A. Allegretti*
88436... (Signature of Authorized Signer)

Name: Joseph Allegretti
(Print Name of Authorized Signer)

Its: COO
(Print Position of Signer)

Form Approved 7-12-17
Copyright © 2017, CCIM Utah. All rights reserved. Permission is granted to use it, but not to change it. If you have concerns about the veracity of the copy with which you are working, go to http://www.utahccimchapter.com/forms, where an original version of the form is available.

DocuSign Envelope ID: 86BEDAB6-EBDA-4029-9A91-F04461B94C9

## ACCEPTANCE/COUNTEROFFER/REJECTION

**CHECK ONE:**

[ ]    **ACCEPTANCE OF OFFER TO PURCHASE:** Seller accepts the foregoing offer on the terms and conditions specified above.

[X]    **COUNTEROFFER:** Seller presents for Buyer's acceptance the terms of Buyer's offer subject to the exceptions or modifications as specified in the attached Addendum No. _1_.

[ ]    **REJECTION**

If Seller is an individual or individuals:

_____    Richard M. Pachulski _____    2/26/19
(Signature of Seller)                            (Print Name of Seller)                            (Date)

_____    _____    _____
(Signature of Seller)                            (Print Name of Seller)                            (Date)

If Seller is an entity:

_____    _____
(Print Name of Entity)                            (Date)

_____
(State of Formation and Type of Entity)

By:_____
        (Signature of Authorized Signer)

Name:___Richard M. Pachulski_____
        (Print Name of Authorized Signer)

Its:_____
        (Print Position of Signer)

Copyright © 2017, CCIM Utah.  All rights reserved.  Permission is granted to use it, but not to change it.  If you have concerns about the veracity of the copy with which you are working, go to
http://www.utahccimchapter.com/forms, where an original version of the form is available.

DocuSign Envelope ID: 86BEDR86-EB5A-4028-9A91-F0464FB94C9

**CCIM** CCIM Chapter

## EARNEST MONEY RECEIPT
### (to be used if requested by Buyer or Seller)

The Buyer's Brokerage or Escrow Agent, as applicable, acknowledges receipt of the Earnest Money Deposit in the amount of $_____.

_____

(Date)

_____

(Print Name of Brokerage or Title Company)

By:_____

(Signature above acknowledges receipt of Earnest Money Deposit)

Name:_____

(Print Name of Signer)

Its:_____

(Print Position of Signer)

Seller's Initials _____ Date _____          Buyer's Initials _____ Date _____

Form Approved 7-12-17
Copyright © 2017, CCIM Utah. All rights reserved. Permission is granted to use it, but not to change it. If you have concerns about the veracity of the copy with which you are working, go to http://www.utahccimchapter.com/forms, where an original version of the form is available.

DocuSign Envelope ID: 905EDA65-EBB4-402B-BA91-F6A49FB94C9

CCIM Chapter

## DOCUMENT RECEIPT

State law requires Brokerage or Agent to furnish Buyer and Seller with copies of this PSA bearing all signatures. This document should be made part of the closing documents and signed prior to Settlement. (Fill in applicable Section below.)

A.   I acknowledge receipt of a final copy of the foregoing PSA bearing all signatures:

_____          _____          _____
(Signature of Buyer's Authorized Signer)          (Print Name of Authorized Signer)          (Date)


_____          _____          _____
(Signature of Seller's Authorized Signer)          (Print Name of Authorized Signer)          (Date)

B.   I personally caused a final copy of the foregoing PSA bearing all signatures to be  [  ] faxed [  ] Emailed  [  ] mailed
[  ] hand delivered on _____ (Date), postage prepaid, to the  [   ] Seller  [   ] Buyer.

Sent/Delivered by (specify):_____


_____          _____          _____
(Signature)          (Print Name of Signer)          (Date)

Seller's Initials _____ Date _____          Buyer's Initials _____ Date _____

Form Approved 7-12-17
Copyright © 2017, CCIM Utah.  All rights reserved.  Permission is granted to use it, but not to change it.  If you have concerns about the veracity of the copy with which you are working, go to http://www.utahccimchapter.com/forms, where an original version of the form is available.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California 90067**

A true and correct copy of the foregoing document entitled (*specify*):  **MOTION FOR ORDER (1)
AUTHORIZING SALE OF REAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS AND
ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 363(B) AND (F); (2) APPROVING BUYER AS
GOOD-FAITH PURCHASER PURSUANT TO 11 U.S.C. § 363(M); AND (3) AUTHORIZING
PAYMENT OF UNDISPUTED LIENS AND OTHER ORDINARY COSTS OF SALE;
MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF RICHARD M.
PACHULSKI AND RANDAL RUPERT IN SUPPORT THEREOF** will be served or was served **(a)** on the
judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
**March 19, 2019**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **March 19, 2019**, I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, 2019, I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is
filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| March 19, 2019 Sophia L. Lee | | /s/ Sophia L. Lee |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:
Mailing Information for Case 2:17-19548

- Wesley H Avery    wes@averytrustee.com, lucy@averytrustee.com;alexandria@averytrustee.com
- Jason Balitzer    jbalitzer@sulmeyerlaw.com,
  jbalitzer@ecf.inforuptcy.com;dwalker@ecf.inforuptcy.com;kmccamey@sulmeyerlaw.com
- Moises S Bardavid    mbardavid@hotmail.com
- Daniel I Barness    daniel@barnesslaw.com
- James W Bates    jbates@jbateslaw.com
- Darwin Bingham    cat@scalleyreading.net
- Martin J Brill    mjb@lnbrb.com
- William S Brody    wbrody@buchalter.com, dbodkin@buchalter.com;IFS_filing@buchalter.com
- Glenn R Bronson    grb@princeyeates.com, carolp@princeyeates.com
- Baruch C Cohen    bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- Jennifer Witherell Crastz    jcrastz@hrhlaw.com
- Beth Gaschen    bgaschen@wgllp.com,
  kadele@wgllp.com;vrosales@wgllp.com;cbmeeker@gmail.com;cyoshonis@wgllp.com
- Jeffrey I Golden    jgolden@wgllp.com,
  kadele@wgllp.com;vrosales@lwgfllp.com;cbmeeker@gmail.com
- M. Jonathan Hayes    jhayes@rhmfirm.com,
  roksana@rhmfirm.com;rosario@rhmfirm.com;janita@rhmfirm.com;susie@rhmfirm.com;max@rhmfir
  m.com;priscilla@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com
- Kimberly D Howatt    khowatt@gordonrees.com, sdurazo@grsm.com
- James KT Hunter    jhunter@pszjlaw.com
- Steven J Kahn    skahn@pszyjw.com
- Joseph M Kar    jkar@mindspring.com
- Richard W Labowe    richardwlabowe@gmail.com, llhlaw1631@aol.com
- Dare Law    dare.law@usdoj.gov
- David W. Meadows    david@davidwmeadowslaw.com
- Jessica Mickelsen Simon    jmsimon@hrhlaw.com
- Dennette A Mulvaney    dmulvaney@leechtishman.com, lmoya@leechtishman.com
- Rana Nader    rnader@naderlawgroup.com, monique@naderlawgroup.com
- Joel A Osman    osman@parkermillsllp.com, sanders@parkermillsllp.com
- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Brian A Paino    bpaino@mcglinchey.com, crico@mcglinchey.com;selizondo@mcglinchey.com
- Michael F Perlis    mperlis@lockelord.com,
  merickson@lockelord.com,jhagey@lockelord.com,RRJohnson@lockelord.com,bmungaray@lockelord.
  com
- Michael F Perlis    , merickson@lockelord.com
  jhagey@lockelord.com,RRJohnson@lockelord.com,bmungaray@lockelord.com
- Hamid R Rafatjoo    hrafatjoo@raineslaw.com, bclark@raineslaw.com;cwilliams@raineslaw.com
- Faye C Rasch    frasch@wgllp.com, kadele@wgllp.com;tziemann@wgllp.com
- Daniel H Reiss    dhr@lnbyb.com, dhr@ecf.inforuptcy.com
- Damion Robinson    dr@agzlaw.com
- Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com
- Daniel A Solitro    dsolitro@lockelord.com, ataylor2@lockelord.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Gary R Wallace    garyrwallace@ymail.com
- Alan J Watson    alan.watson@hklaw.com, rosanna.perez@hklaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012
DOCS_LA:320279.1

F 9013-3.1.PROOF.SERVICE

**Service List by U.S. First Class Mail**
**Mailing Information for Case 2:17-19548**

Layfield & Barrett, APC
Fka Layfield & Wallace, APC
Fka The Layfield Law Firm, APC
Attn:  Philip Layfield, Officer of Record
2720 Homestead Rd., Suite 210
Park City, UT 84098

Layfield & Barrett, APC
Fka Layfield & Wallace, APC
Fka The Layfield Law Firm, APC
Attn:  Any Officer Other Than Philip Layfield
2720 Homestead Rd., Ste. 210
Park City, UT 84098

Layfield & Barrett, APC
Fka Layfield & Wallace, APC
Fka The Layfield Law Firm, APC
Attn:  Philip Layfield, Officer of Record
Register No. 71408-050
MDC Los Angeles/Metropolitan Detention Ctr
P.O. Box 1500
Los Angeles, CA  90053

Philip J. Layfield
102 Moore's Cro # 7
Millsboro, Delaware 19966

Philip J. Layfield
1875 K St. NW
Washington, DC 20006

Philip J. Layfield
c/o Zenith Legal Services, LLC
1875 Connecticut Ave. NW, 10th Floor
Washington, DC 20009

Philip J. Layfield
8 The Green, Suite 6426
Dover, Delaware  19901

Philip J. Layfield
c/o Anthony M. Solis
APLC 23679 Calabasas Road, Suite 412
Calabasas, California 91302-1502

Philip J. Layfield
c/o Law Office of Steven Brody 350 S.
Figueroa Street, Suite 975
Los Angeles, California 90071

**SPECIAL NOTICE**

Roger G Jones
1600 Division St Ste 700
Nashville, TN 37203

Patricia Salcedo
The Dominguez Firm
3250 Wilshire Blvd #2200
Los Angeles, CA 90010

Timothy M Smith
McKinley Smith APC
3445 American River Dr., Ste A
Sacramento, CA 95864

Lance S Strumpf
Law Office of Lance S. Strumpf
5136 Woodley Ave.
Encino, CA 91436

Toll Creek Owners Association Inc
c/o Jacob Watterson
130 South Main Ste 200
Logan UT 84323-0525

Diane B Sherman
Law Offices of Diane B Sherman
1801 Century Park East Ste 1200
Los Angeles, CA 90067

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:320279.1

**F 9013-3.1.PROOF.SERVICE**

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:  10100 Santa Monica Boulevard, Suite 1300, Los Angeles, CA  90067

A true and correct copy of the foregoing document entitled: **CHAPTER 7 TRUSTEE'S OPPOSITION TO ALLEGRETTI & COMPANY'S MOTION FOR RELIEF OF ORDER APPROVING TRUSTEE'S SALE OF REAL PROPERTY ENTERED APRIL 5, 2019 [Doc 428]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) February 20, 2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) February 20, 2024, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Philip James Layfield
Register No. 71408-050
USP Tucson
U.S. Penitentiary Satellite Camp
P.O. Box 24549
Tucson, AZ  85734

☐    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) February 20, 2024, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA OVERNIGHT MAIL**
USBC, Central District of California
Attn:  Honorable Neil W. Bason
Edward R. Roybal Federal Bldg. & Courthouse
255 East Temple Street, Suite 1552 / Courtroom 1545
Los Angeles, CA  90012

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 20, 2023 | Nancy Brown | /s/ Nancy Brown |
| --- | --- | --- |
| *Date* | *Printed Name* | *Signature* |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4853-7595-0246.5 51414.003

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

**1.**    **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **Wesley H Avery**    wes@averytrustee.com, lucy@averytrustee.com;alexandria@averytrustee.com
- **Jason Balitzer**    jbalitzer@sulmeyerlaw.com, jbalitzer@ecf.inforuptcy.com;dwalker@ecf.inforuptcy.com;kmccamey@sulmeyerlaw.com
- **Moses S Bardavid**    mbardavid@hotmail.com
- **Daniel I Barness**    daniel@barnesslaw.com
- **James W Bates**    jbates@jbateslaw.com
- **Darwin Bingham**    cat@scalleyreading.net
- **Paul M Brent**    snb300@aol.com
- **Martin J Brill**    mjb@lnbrb.com
- **William S Brody**    wbrody@buchalter.com, dbodkin@buchalter.com;IFS_filing@buchalter.com;smartin@buchalter.com
- **Glenn R Bronson**    grbronson@traskbritt.com, cawatters@traskbritt.com
- **Jeffrey D Cawdrey**    jcawdrey@grsm.com, madeyemo@gordonrees.com;sdurazo@grsm.com
- **Baruch C Cohen**    bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- **Jennifer Witherell Crastz**    jcrastz@hrhlaw.com
- **Beth Gaschen**    bgaschen@go2.law, kadele@go2.law;cmeeker@go2.law;cyoshonis@go2.law;bgaschen@ecf.courtdrive.com;dfitzgerald@go2.law
- **Jeffrey I Golden**    jgolden@go2.law, kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeffreyi.b117954@notify.bestcase.com
- **David M Goodrich**    dgoodrich@go2.law, kadele@go2.law;dfitzgerald@go2.law;dgoodrich@ecf.courtdrive.com
- **Sevan Gorginian**    sevan@gorginianlaw.com, 2486@notices.nextchapterbk.com;ani@gorginianlaw.com
- **Stella A Havkin**    stella@havkinandshrago.com, shavkinesq@gmail.com
- **M. Jonathan Hayes**    jhayes@rhmfirm.com, roksana@rhmfirm.com;matt@rhmfirm.com;rosario@rhmfirm.com;sloan@rhmfirm.com;priscilla@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;russ@rhmfirm.com
- **Yana G Henriks**    yhenriks@law-mh.com, rmcmurray@law-mh.com;sridgill@law-mh.com;1457576420@filings.docketbird.com;ndilts@law-mh.com;cpinto@law-mh.com;dpham@law-mh.com;lburdeos@law-mh.com;paralegal@law-mh.com;apham@law-mh.com;dgharibian@law-mh.c
- **James KT Hunter**    jhunter@pszjlaw.com
- **Steven J Kahn**    skahn@pszyjw.com
- **Joseph M Kar**    jkar@mindspring.com
- **Michael S Kogan**    mkogan@koganlawfirm.com
- **Richard W Labowe**    richardwlabowe@gmail.com, llhlaw1631@aol.com
- **Dare Law**    dare.law@usdoj.gov
- **David W. Meadows**    david@davidwmeadowslaw.com
- **Jessica Mickelsen Simon**    simonjm@ballardspahr.com, carolod@ballardspahr.com;garciae@ballardspahr.com
- **Dennette A Mulvaney**    dmulvaney@leechtishman.com, lmoya@leechtishman.com;kgutierrez@leechtishman.com;NArango@LeechTishman.com
- **Rana Nader**    rnader@naderlawgroup.com, monique@naderlawgroup.com
- **Joel A. Osman**    osman@parkermillsllp.com, gonzalez@parkermillsllp.com
- **Richard M. Pachulski (TR)**    rmp@pszy.com
- **Malhar S Pagay**    mpagay@pszjlaw.com, bdassa@pszjlaw.com
- **Brian A Paino**    bpaino@mcglinchey.com, irvineECF@mcglinchey.com
- **Michael F Perlis**    mperlis@lockelord.com, merickson@lockelord.com,jhagey@lockelord.com,RRJohnson@lockelord.com,bmungaray@lockelord.com
- **Michael F Perlis**    , merickson@lockelord.com,jhagey@lockelord.com,RRJohnson@lockelord.com,bmungaray@lockelord.com
- **Hamid R Rafatjoo**    hrafatjoo@raineslaw.com, bclark@raineslaw.com
- **Faye C Rasch**    faye@wrlawgroup.com, travis@wrlawgroup.com;oa@wrlawgroup.com
- **Damion Robinson**    damion.robinson@diamondmccarthy.com, efiling@agzlaw.com
- **Larry D Simons**    larry@lsimonslaw.com, simonsecf@gmail.com;simonslr44533@notify.bestcase.com
- **Lindsey L Smith**    lls@lnbyb.com, lls@ecf.inforuptcy.com
- **Daniel A Solitro**    dsolitro@lockelord.com, ataylor2@lockelord.com
- **Olivier A Taillieu**    o@taillieulaw.com, mstephens@taillieulaw.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Robert G Uriarte**    rgulawoffice@gmail.com
- **Gary R Wallace**    garyrwallace@ymail.com
- **Alan J Watson**    alan.watson@hklaw.com, rosanna.perez@hklaw.com
- *Gary R Wallace*    *garyrwallace@ymail.com*
- *Alan J Watson*    *alan.watson@hklaw.com, rosanna.perez@hklaw.com*